## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the matter of:<br><br>MOTION TO QUASH SUBPOENAS TO NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. | Case: 1:25-mc-00129<br>Assigned To : AliKhan, Loren L.<br>Assign. Date : 8/6/2025<br>Description: Civ. Misc. |

## NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO QUASH SUBPOENAS
## OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Nonparty Financial Industry Regulatory Authority, Inc. ("FINRA") respectfully moves this Court pursuant to Rules 45 and 26 of the Federal Rules of Civil Procedure for an order quashing the subpoenas for the production of documents and a Rule 2004 examination (the "Subpoenas") issued to FINRA in *In re Meta Materials, Inc.*, Bk No. 24-50792-hlb (Bankr. D. Nev.) (the "*Meta Materials* Bankruptcy"). As set forth more fully in the accompanying Memorandum of Points and Authorities, the Subpoenas should be quashed because they unduly burden nonparty FINRA with requests for information pertaining to speculative, potential claims that have not been filed, which information could be obtained from more convenient sources, and which information is irrelevant, unhelpful, privileged, and would otherwise pose an undue burden and significant expense on nonparty FINRA. Fed. R. Civ. P. 45. In the alternative, FINRA seeks a protective order precluding the discovery or otherwise limiting the scope of the discovery. Fed. R. Civ. P. 26(c).

This Motion is based on the concurrently filed Memorandum of Points and Authorities and the exhibits thereto including the supporting Declarations of Stephanie Dumont and Troy Eads, as well as the filings in the above-captioned matter, the *Meta Materials* Bankruptcy, and the Securities and Exchange Commission's actions against Meta Materials, Inc., John Brda, and George Palikaras, which filings are subject to judicial notice. Fed. R. Evid. 201.

**RECEIVED**

AUG 0 6 2025



Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Pursuant to Local Civil Rule 7(m), counsel for nonparty FINRA and counsel for Christina Lovato, chapter 7 trustee (the "Trustee"), for the estate of Meta Materials, Inc., met-and-conferred regarding this Motion on August 4, 2025, but could not resolve their disagreements. The Trustee opposes this Motion. A proposed order is submitted herewith.

Dated: August 6, 2025

Respectfully submitted,

/s/ David S. Norris
David S. Norris (DC Bar No. 1024996)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Tel.: (202) 457-6000 | Fax: (202) 457-6315
david.norris@squirepb.com

*Counsel for Nonparty Financial Industry Regulatory Authority, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document is being served this day via email and mail on counsel for Christina Lovato, chapter 7 trustee, for the estate of Meta Materials, Inc.

/s/ David S. Norris
David S. Norris

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the matter of:

MOTION TO QUASH SUBPOENAS TO
NONPARTY FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.

Miscellaneous Action No.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S
MOTION TO QUASH SUBPOENAS
OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

David S. Norris (DC Bar No. 1024996)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Tel.: (202) 457-6000 | Fax: (202) 457-6315
david.norris@squirepb.com

*Counsel for Nonparty
Financial Industry Regulatory Authority, Inc.*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS...........................................................................................i

INDEX OF EXHIBITS...........................................................................................ii

TABLE OF AUTHORITIES ...................................................**Error! Bookmark not defined.**

INTRODUCTION ................................................................................................ 1

BACKGROUND .................................................................................................. 4

I.     FINRA's Role in Regulating the National Securities Markets. .......................... 4

II.    Meta Materials' Alleged Market Manipulation and Bankruptcy. ....................... 4

       A.    The First "Short Squeeze"—Metamaterial, Inc. Merges with Torchlight. ............. 4

       B.    The Second "Short Squeeze"—Meta Materials Spins Off MMTLP. ..................... 5

       C.    The SEC Asserts Charges Against Meta Materials and the Former CEOs. ............. 6

       D.    Meta Materials Files for Bankruptcy. ......................................................... 7

ARGUMENT ...................................................................................................... 8

I.     The Subpoenas Must Be Quashed Because They Unduly Burden Nonparty FINRA. ........ 8

       A.    The Subpoenas Unduly Burden Nonparty FINRA with Speculative Requests to Discover Potential Yet Unfiled Claims. ................................................. 9

       B.    The Subpoenas Unduly Burden Nonparty FINRA with Discovery Requests that Are Barred by the PSLRA Discovery Stay. ........................................ 12

       C.    The Subpoenas Unduly Burden Nonparty FINRA with Irrelevant Requests. ....... 13

       D.    The Subpoenas Unduly Burden Nonparty FINRA with Discovery that Can Be Obtained from a More Convenient Source—the Suspected Wrongdoers. 17

       E.    The Subpoenas Unduly Burden Nonparty FINRA with Requests for Information that Would Not Be Helpful. .................................................. 20

II.    The Subpoenas Seek Privileged and Confidential Documents. .......................... 21

       A.    The Court Must Quash the Subpoenas' Request for Privileged Information Protected by the Investigative File Privilege. ............................................ 21

       B.    The Court Must Quash the Subpoenas' Request for Protected Consolidated Audit Trail or "CAT" Data. .................................................................. 23

       C.    The Subpoenas Impose an Undue Burden on FINRA with Requests for Attorney-Client Privileged Materials. ..................................................... 25

III.    The Subpoenas Would Impose Significant Expense on FINRA ........................ 26

CONCLUSION.................................................................................................. 27

**INDEX OF EXHIBITS**

Exhibit 1 – Subpoena to Produce Documents, Information, or Objections, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev.) (the "Document Subpoena")

Exhibit 2 – Subpoena for Rule 2004 Examination, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev.) (the "Testimony Subpoena")

Exhibit 3 – Declaration of Stephanie Dumont (the "Dumont Decl.")

Exhibit 4 – Declaration of Troy Eads (the "Eads Decl.")

Exhibit 5 – *Ex Parte* Application to Employ Christian Attar, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev. filed Oct. 31, 2024) (Doc. 98) (the "Application")

Exhibit 6 – SEC, *SEC Charges Meta Materials and Former CEOs With Market Manipulation, Fraud and Other Violations* (last updated July 2, 2025), *available at* https://www.sec.gov/newsroom/press-releases/2024-77 ("*SEC Charges Meta*")

Exhibit 7 – Order, *In re Meta Materials, Inc.*, SEC No. 3-21976 (June 25, 2024) (the "SEC-Meta Settlement Order")

Exhibit 8 – Compl., *SEC v. Brda*, No. 1:24-cv-04806 (S.D.N.Y. filed June 25, 2024)

Exhibit 9 – Prospectus, Next Bridge Hydrocarbons, Inc. ("Next Bridge"), File No. 333-266143 (effective Nov. 18, 2022), *available at* https://www.sec.gov/Archives/edgar/data/1936756/000119312522292114/d302576d424b4.htm (the "Prospectus")

Exhibit 10 – Next Bridge, *Next Bridge Hydrocarbons, Inc. Announces Completion of Spin-Off From Meta Materials Inc.* (Dec. 20, 2022), *available at* https://www.sec.gov/Archives/edgar/data/1936756/000119983522000845/ex_99-1.htm

Exhibit 11 – SEC's Statement in Support of Consolidated Audit Trail, LLC's Objection to Rule 2004 Motion, *In re Sorrento Therapeutics, Inc.*, No. 23-90085 (Bankr. S.D. Tex. filed Mar. 22, 2024) (Doc. 2076)

Exhibit 12 – *Ex Parte* Motion for Order Requiring Custodian of Records for FINRA to Appear for Examination, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev. filed Mar. 6, 2025) (Doc. 1620)

Exhibit 13 – Order, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev. filed Mar. 10, 2025) (Doc. 1642)

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashland Inc. v. Morgan Stanley & Co.,*
   652 F.3d 333 (2d Cir. 2011)..................................................................................13, 14, 15

*ATSI Comm'cns, Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007).........................................................................................2, 16

*In re Bennett Funding Group, Inc.,*
   203 B.R. 24 (Bankr. N.D.N.Y. 1996) ............................................................................10

*Black v. Sheraton Corp.,*
   564 F.2d 531 (D.C. Cir. 1977) .......................................................................................21

*In re Carnegie Int'l Corp. Sec. Litig.,*
   107 F. Supp. 2d 676 (D. Md. 2000) ..............................................................................12

*Cartica Mgmt., LLC v. CorpBanca, S.A.,*
   50 F. Supp. 3d 477 (S.D.N.Y. 2014)..............................................................................14

*Dell Inc. v. DeCosta,*
   233 F. Supp. 3d 1 (D.D.C. 2017) ...................................................................................26

*Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP,*
   339 F.R.D. 334 (D.D.C. 2021)...........................................................................2, 17, 18

*In re Enron Corp.,*
   281 B.R. 836 (Bankr. S.D.N.Y. 2002) ..........................................................................10

*In re Fannie Mae Sec. Litig.,*
   362 F. Supp. 2d 37 (D.D.C. 2005) .................................................................................12

*Flatow v. Islamic Republic of Iran,*
   201 F.R.D. 5 (D.D.C. 2001)............................................................................................15

*G & E Real Est., Inc. v. Avison Young-Washington, D.C., LLC,*
   317 F.R.D. 313 (D.D.C. 2016).....................................................................................3, 26

*Gulf Coast Energy LLC v. Bank of Am. Corp.,*
   2014 WL 12616133 (S.D. Tex. Dec. 2, 2014)..............................................................3, 22

*Halliburton Co. v. Erica P. John Fund, Inc.,*
   573 U.S. 258 (2014)........................................................................................................16

*Hensley v. TD Ameritrade Inc.*,
  2023 WL 12068975 (W.D. Wash. Oct. 2, 2023) ................................................................13, 25

*Hensley v. TD Ameritrade, Inc.*,
  No. 3:23-cv-05159 (W.D. Wash. filed Feb. 28, 2023) ...........................................................25

*Hofman v. FINRA*,
  2023 U.S. Dist. LEXIS 81166 (C.D. Cal. May 8, 2023) ...................................................13, 25

*In re Interpictures, Inc.*,
  86 B.R. 24 (Bankr. E.D.N.Y. 1988)......................................................................................11

*Khorassani v. FINRA*,
  223 A.D.3d 589 (N.Y. App. 2024) ..................................................................................10, 13

*In re Lucille Holdings Pte. Ltd.*,
  2022 WL 1421816 (D.D.C. May 5, 2022).............................................................................9, 18

*In re Meta Materials, Inc.*,
  SEC No. 3-21976 (June 25, 2024) .......................................................................................1, 7

*In re Motion to Compel Subpoena to Dep't of Veterans Affs.*,
  257 F.R.D. 12 (D.D.C. 2009)..........................................................................2, 3, 9, 10, 17, 18

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
  659 F. Supp. 3d 54 (D.D.C. 2023) .......................................................................................19

*Nu Image, Inc. v. Does 1-23,322*,
  799 F. Supp. 2d 34 (D.D.C. 2011) .....................................................................................9, 10

*Phillips & Cohen, LLP v. Thorpe*,
  300 F.R.D. 16 (D.D.C. 2013)..............................................................................................9, 10

*Rolo v. SEC*,
  No. 3:24-cv-02053 (D. Conn. filed Apr. 1, 2025) (Doc. 49-3).................................................13

*Ross v. Bolton*,
  106 F.R.D. 22 (S.D.N.Y. 1985) ............................................................................................22

*Rossman v. EN Eng'g, LLC*,
  467 F. Supp. 3d 586 (N.D. Ill. 2020) ...................................................................................17

*In re Sealed Case*,
  856 F.2d 268 (D.C. Cir. 1988).........................................................................................21, 22

*SEC v. Brda*,
  2024 WL 4817475 (S.D.N.Y. Nov. 18, 2024)..................................................................*passim*

*SEC v. Brda,*
    No. 4:24-cv-01048 (E.D. Tex.) ........................................................................................7

*SEC v. McGinn,*
    2011 WL 13136028 (N.D.N.Y. Jan. 5, 2011) ................................................................22

*Stevens v. InPhonic, Inc.,*
    662 F. Supp. 2d 105 (D.D.C. 2009) ..............................................................................12

*Tawil v. FINRA,*
    2023 WL 7131840 (N.D. Fla. July 26, 2023) .........................................................13, 25

*United States v. All Assets Held at Bank Julius Baer & Co.,*
    202 F. Supp. 3d 1 (D.D.C. 2016) ....................................................................................9

*In re Vital Pharms., Inc.,*
    2025 WL 1189882 (Bankr. S.D. Fla. Apr. 23, 2025) .....................................................11

*Watts v. SEC,*
    482 F.3d 501 (D.C. Cir. 2007) ................................................................8, 13, 17, 20

*In re World Com, Inc. Sec. Litig.,*
    234 F. Supp. 2d 301 (S.D.N.Y. 2002).......................................................................12, 13

*In re WorldCom, Inc. Sec. Litig.,*
    336 F. Supp. 2d 310 (S.D.N.Y. 2004) ............................................................................14

*Wyoming v. USDA,*
    208 F.R.D. 449 (D.D.C. 2002) ................................................................................17, 18

**Statutes**

15 U.S.C. § 78o-3(b)(6) ........................................................................................................4

15 U.S.C. §§ 78q, 78s ..........................................................................................................4

15 U.S.C. § 78u-4(b)(3)(B) ...............................................................................................2, 12

**Other Authorities**

17 C.F.R. § 240.10b-17 .........................................................................................................4

17 C.F.R. § 242.613 ...................................................................................................3, 23, 24

81 Fed. Reg. 84696, 84698 (November 16, 2016) No. 34-79318 ....................................23

CAT NMS Order, 81 Fed. Reg. at 84706 ...........................................................................24

Fed. R. Bankr. P. 2004 ...............................................................................................10, 11, 23

Fed. R. Bankr. P. 9016 ..........................................................................................................10

Fed. R. Civ. P. 26 .......................................................................................................... *passim*

Fed. R. Civ. P. 45 .......................................................................................................... *passim*

FINRA, *About FINRA—How FINRA Serves Investors and Members* (last viewed
    Aug. 5, 2025), *available at* https://www.finra.org/about/how-finra-serves-
    investors-and-members ............................................................................................18

FINRA, *Equity Short Interest Data* (last visited Aug. 5, 2025), *available at*
    https://www.finra.org/finra-data/browse-catalog/equity-short-interest/data; ..........................20

FINRA Rule 6400 ...........................................................................................................4

FINRA Rule 6490 ...........................................................................................................4

FINRA, *Short Sale Volume* (last visited Aug. 5, 2025), *available at*
    https://www.finra.org/finra-data/browse-catalog/short-sale-volume; .....................................20

FINRA, *OTC (ATS & Non-ATS) Transparency* (last visited Aug. 5, 2025),
    *available at* https://www.finra.org/filing-reporting/otc-transparency; ..................................21

## INTRODUCTION

According to the Securities and Exchange Commission ("SEC"), Meta Materials, Inc. ("Meta Materials") and the former CEOs of its predecessor companies orchestrated an illegal "short squeeze." *SEC v. Brda*, 2024 WL 4817475, at *1 (S.D.N.Y. Nov. 18, 2024). The scheme the SEC alleges is complex. *See id.* But, in short, the SEC alleges that the former CEOs devised a scheme to issue "a preferred stock dividend ('the Preferred Dividend')" in connection with a reverse merger. *Id.* The former CEOs then "spread[] a narrative to investors that short sellers would not be able to obtain the Preferred Dividend" following the merger "thus pressuring short sellers to close their positions and artificially raising the price" of the company's common stock. *Id.* The SEC alleges the scheme worked and that Meta Materials' predecessor raised "$137.5 million" by selling its common stock into the inflated values shortly before the merger. *Id.* The SEC's case against the former CEOs is currently pending. *See id.* Meta Materials settled charges with the SEC last year. Order, *In re Meta Materials, Inc.*, SEC No. 3-21976 (June 25, 2024), Ex. 7 hereto.

Approximately a month after settling with the SEC, Meta Materials filed for bankruptcy. Petition, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev. filed Aug. 9, 2024). Despite the SEC's allegations that Meta Materials' predecessors made $137.5 million through an illegal short squeeze, the Chapter 7 trustee (the "Trustee") apparently suspects illegal short selling harmed Meta Materials. The Trustee has employed special counsel to "investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'" *Ex Parte* Application to Employ Christian Attar, *In re Meta Materials*, No. 24-50792-hlb (Bankr. D. Nev. filed Oct. 31, 2024) (Doc. 98) (the "Application"), Ex. 5 hereto. The Trustee has now issued two subpoenas to FINRA (the "Subpoenas")—seeking nine categories of documents and testimony (fifteen including subparts)—to discover information to support potential claims. Subpoenas, Exs. 1 & 2 hereto.

The Subpoenas are improper and must be quashed under Rule 45 for numerous reasons. As a threshold matter, it is axiomatic that subpoenas cannot be used for a fishing expedition to try and discover potential claims. *See, e.g.*, *In re Motion to Compel Subpoena to Dep't of Veterans Affs.*, 257 F.R.D. 12, 17 (D.D.C. 2009) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim."). Yet here, the express purpose of the Subpoenas is to "investigate **potential** claims … [of] **suspected** stock manipulation." Application, *In re Meta Materials*, No. 24-50792-hlb (Doc. 98). The discovery stay under the Private Securities Litigation Reform Act (the "PSLRA") also bars subpoenas to nonparties until the discovery stay has lifted. 15 U.S.C. § 78u-4(b)(3)(B).

The Subpoenas also must be quashed because they seek irrelevant information. A claim for illegal market manipulation requires damages "caused by reliance on assumption of an efficient market free of manipulation." *E.g.*, *ATSI Comm'cns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). Yet Meta Materials itself has already settled charges with the SEC for allegedly manipulating the market through an illegal "short squeeze." *Brda*, 2024 WL 4817475 at *1. The SEC's allegations that Meta Materials and its predecessors allegedly made $137.5 million through illegal market manipulation render it speculative how Meta Materials could allege that it "reli[ed] on an assumption of an efficient market free of manipulation." *ATSI Comm'cns*, 493 F.2d at 801.

The Subpoenas must be quashed for other reasons, as well. Litigants cannot unduly burden nonparties with discovery requests that can be obtained from the parties to the litigation. *See, e.g.*, *Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 339–40 (D.D.C. 2021) (quashing subpoenas; movants could "shift discovery burden from third parties to the primary parties"). Yet, by seeking "[r]ecords provided to FINRA" by the firms the Trustee "suspect[s]" of illegal trading, the Subpoenas unduly burden nonparty FINRA with requests that

could be obtained from the firms suspected of wrongdoing. *See* Subpoena Request Nos. 1–5, 8; *In re Motion to Compel Subpoena to Dep't of Veterans Affs.*, 257 F.R.D. 12, 19 (D.D.C. 2009) ("Until [plaintiff] at least makes the effort [to obtain discovery from parties] … this Court cannot possibly determine whether any subpoena to DVA, no matter how limited, is still unduly burdensome ….").

The Subpoenas are improper for numerous other reasons. The Subpoenas impermissibly seek privileged and protected material, including FINRA's "investigative records" that are protected by the investigative file privilege, Consolidated Audit Trail data that can only be used for regulatory purposes by law, and attorney-client privileged documents. *See, e.g., Gulf Coast Energy LLC v. Bank of Am. Corp.*, 2014 WL 12616133, at *2 (S.D. Tex. Dec. 2, 2014) (quashing subpoena to FINRA for materials protected by the investigative file privilege); 17 C.F.R. § 242.613(e)(2). And the Subpoenas would impose a significant expense on FINRA, as responding to just a few of the fifteen requests would require FINRA to collect, process, and produce approximately ***25 million*** records. *See* Declaration of Troy Eads ("Eads Decl.") ¶ 4, Ex. 4 hereto; *G & E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 315 (D.D.C. 2016) ("[T]he court 'must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.'").

For all these reasons, as set forth in greater detail below, FINRA respectfully requests that this Court quash the Subpoenas pursuant to Rule 45, or, in the alternative, issue a protective order pursuant to Rule 26 to preclude the discovery sought.

## BACKGROUND

### I.    FINRA's Role in Regulating the National Securities Markets.

FINRA is a self-regulatory organization ("SRO") headquartered in Washington, D.C., and registered with the SEC as a national securities association under the Maloney Act of 1938, 15 U.S.C. §§ 78o-3 *et seq.*, amending the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78a– 78rr. As an SRO, FINRA is part of the Exchange Act's comprehensive plan for regulating the national securities markets. *See* 15 U.S.C. §§ 78q, 78s. The Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, … and, in general, to protect investors and the public interest." 15 U.S.C. § 78o-3(b)(6). The Exchange Act also mandates that FINRA investigate and discipline member firms and their associated persons for violations of FINRA rules and the federal securities laws. *Id.*

FINRA performs several regulatory functions to oversee the over-the-counter ("OTC") market in which equity securities not listed on a national securities exchange may be traded and quoted. FINRA adopts rules regarding quoting and trading in OTC equity securities. *See* FINRA Rule 6400 *et seq.* FINRA reviews, processes, and announces information about corporate actions regarding OTC equity securities. *See* 17 C.F.R. § 240.10b-17; FINRA Rule 6490. FINRA is also authorized to halt trading and quoting of OTC equity securities if necessary to protect investors and the public interest. FINRA Rule 6440.

### II.    Meta Materials' Alleged Market Manipulation and Bankruptcy.

#### A.    The First "Short Squeeze"—Metamaterial, Inc. Merges with Torchlight.

Torchlight Energy Resources, Inc. ("Torchlight") was a Texas company engaged in oil and gas exploration and production. *SEC v. Brda*, 2024 WL 4817475 at *1. Torchlight was listed on the Nasdaq stock exchange under the ticker symbol "TRCH." *Id.*

According to the SEC, Torchlight's CEO John Brda ("Brda") "developed a scheme" to address "Torchlight's deteriorating financial condition" by manufacturing a "short squeeze." *Id.* The alleged plan was for Torchlight to execute a reverse merger with a company that "desired Torchlight's NASDAQ listing but *not* its oil and gas assets." *Id.* In the reverse merger, Torchlight would issue "a preferred stock dividend ('the Preferred Dividend'), through which the proceeds from the sale of Torchlight's oil and gas assets would be allocated to Torchlight's legacy shareholders." *Id.* Torchlight would "promote the Preferred Dividend in the hopes of spreading a narrative to investors that short sellers would not be able to obtain the Preferred Dividend thus **pressuring short sellers to close their positions and artificially raising the price of Torchlight common stock.**" *Id.* (emphasis added). Torchlight would then "capitalize on Torchlight's inflated common stock price by, among other things, raising capital through an at-the-market offering." *Id.*

Torchlight ultimately executed the reverse merger with Meta Materials' predecessor, Metamaterial, Inc. ("Meta I") and its then CEO George Palikaras ("Palikaras"), resulting in the creation of Meta Materials. *Id.* at *2. The SEC alleges that Brda and Palikaras "successfully manipulated the price of Torchlight's stock in June 2021, in advance of the merger." *Id.* at *3. "Before the merger, Torchlight's stock was trading below $1 per share," yet Torchlight ultimately sold 16.2 million shares shortly before the merger at an average price of $8.50, raising $137.5 million. *Id.* Following the reverse merger, Torchlight's common stock TRCH converted into common stock of Meta Materials, which traded under the ticker "MMAT." *Id.*

**B.    The Second "Short Squeeze"—Meta Materials Spins Off MMTLP.**

The Preferred Dividend created during the reverse merger traded on the OTC market under the ticker MMTLP. Prospectus at 23, Next Bridge Hydrocarbons, Inc. ("Next Bridge"), File No. 333-266143 (effective Nov. 18, 2022), *available at* https://www.sec.gov/Archives/edgar/data/ 1936756/000119312522292114/d302576d424b4.htm (hereinafter "Prospectus"), Ex. 9 hereto.

But Meta Materials never sold the oil and gas assets represented by MMTLP (the SEC alleges it never intended to). Compl. ¶ 75, *SEC v. Brda*, No. 1:24-cv-04806 (S.D.N.Y. filed June 25, 2024), Ex. 8 hereto. Meta Materials announced instead that it would spin out the oil and gas assets into a separate company, Next Bridge. *Id.* ¶¶ 78–81. Next Bridge then announced that anyone who held MMTLP shares as of the date of the spinoff would be entitled to receive one share of Next Bridge common Stock for each share of MMTLP. Prospectus at 5, Ex. 9 hereto.

Next Bridge's Prospectus suggested that the spinoff would trigger yet another short squeeze. *See id.* The Prospectus stated that Next Bridge shares would "not be eligible for electronic transfer through the Depository Trust Company or any other established clearing corporation." *Id.* "[I]f any investors have sold shares of MMTLP short, ... such investors may feel compelled to buy shares of MMTLP to cover such sales before the Distribution." *Id.* at 24. "If this were to occur, given the potential high demand from buyers with a relatively low supply of MMTLP shares available for sale on the OTC market, the MMTLP price per share ... **may rise significantly but not be representative of the value of the underlying shares.**" *Id.* (emphasis added).

On December 14, 2022, Next Bridge completed the spinoff and the MMTLP shares were cancelled by the issuer (Meta Materials). *See* Next Bridge, Next Bridge Hydrocarbons, Inc. Announces Completion of Spin-Off From Meta Materials Inc. (Dec. 20, 2022), *available at* https://www.sec.gov/Archives/edgar/data/1936756/000119983522000845/ex_99-1.htm, Ex. 10 hereto (hereinafter "*Next Bridge Announces Spin-Off Completion*").

C.    **The SEC Asserts Charges Against Meta Materials and the Former CEOs.**

The SEC filed charges against Meta Materials, Brda, and Palikaras related to the first short squeeze. SEC, *SEC Charges Meta Materials and Former CEOs With Market Manipulation, Fraud and Other Violations* (last updated July 2, 2025), *available at* https://www.sec.gov/newsroom/press-releases/2024-77, Ex. 6 hereto (hereinafter "*SEC Charges Meta*"). Meta Materials settled

the SEC's charges against it in an administrative proceeding through an offer of settlement, in which Meta Materials agreed that the SEC found it had violated the federal securities laws. *Id.* Meta Materials was ordered to cease and desist from further violations, pay a $1,000,000 penalty, and "cooperate in a Commission investigation and related enforcement action." Order, *In re Meta Materials, Inc.*, SEC No. 3-21976 (June 25, 2024) ("SEC-Meta Settlement Order"), Ex. 7 hereto.

The SEC commenced its action against Brda and Palikaras in the U.S. District Court for the Southern District of New York. *Brda*, 2024 WL 4817475, at *1. The SEC alleges Brda and Palikaras engaged in market manipulation in violation of the Securities Act of 1933 (the "Securities Act") and the Exchange Act, as well as aiding and abetting Meta Materials' securities violations. The case has been transferred to and is currently pending in the U.S. District Court for the Eastern District of Texas. *SEC v. Brda*, No. 4:24-cv-01048 (E.D. Tex.).

The SEC is conducting a separate "investigation regarding subsequent events related to Meta Materials (MMTLP)." *SEC Charges* Meta, Ex. 6 hereto.

**D.      Meta Materials Files for Bankruptcy.**

About a month after settling charges with the SEC, Meta Materials filed a voluntary petition for Chapter 7 Bankruptcy in the U.S. Bankruptcy Court for the District of Nevada. Petition, *In re Meta Materials, Inc.*, No. 24-50792-hlb (filed Aug. 9, 2024). In October 2024, the Trustee employed special counsel to "investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'" Application, *In re Meta Materials*, No. 24-50792-hlb, Ex. 5 hereto. The Application says the claims relate to a "preliminary investigation into activities related to a merger in which Meta Materials ('MMAT'), acquired Torchlight Energy Resources ('TRCH')." *Id.*

On July 22, 2025, the Trustee issued the Subpoenas to FINRA. Subpoenas, Exs. 1 & 2.

## ARGUMENT

**I.     The Subpoenas Must Be Quashed Because They Unduly Burden Nonparty FINRA.**

Rule 45 imposes a duty on parties issuing subpoenas to "avoid imposing undue burden or expense" on nonparties. Fed. R. Civ. P. 45(d)(1). District courts "must enforce this duty" by sanctioning any "party or attorney who fails to comply." *Id.* District courts also "must quash or modify a subpoena that … subjects a person to undue burden." *Id.* 45(d)(3).

"The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007) (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight" under Rule 45). Rule 26 also "requires district courts in '[a]ll discovery' to consider a number of factors potentially relevant to the question of undue burden, including: whether the discovery is 'unreasonably cumulative or duplicative;' whether the discovery sought is 'obtainable from some other source that is more convenient, less burdensome, or less expensive;' and whether 'the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)–(2)). Under Rule 26, a district court may also issue a protective order "for good cause" that "forbid[s] the disclosure or discovery" or "limit[s] the scope of disclosure or discovery" to protect a person from "undue burden." Fed. R. Civ. P. 26(c).

As set forth below, the Subpoenas must be quashed under Rule 45 or a protective order should issue under Rule 26 for numerous reasons, including that the Subpoenas seek: (1) discovery for speculative and unfiled claims; (2) premature discovery that is barred by the PSLRA; (3) irrelevant information; (4) duplicative or cumulative information that can be obtained from more convenient sources; and (5) unhelpful information that is outweighed by the burden or expense on nonparty FINRA.

A.     **The Subpoenas Unduly Burden Nonparty FINRA with Speculative Requests to Discover Potential Yet Unfiled Claims.**

Under the Federal Rules of Civil Procedure, litigants "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26(b)(1), Adv. Comm. Notes to 2000 Amendment. It is thus axiomatic that litigants cannot use subpoenas to discover potential but unfiled claims. *E.g.*, *In re Motion to Compel Subpoena to Dep't of Veterans Affs.*, 257 F.R.D. 12, 17 (D.D.C. 2009) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim.").

This Court routinely quashes (or refuses to enforce) subpoenas seeking information for unfiled claims. *E.g.*, *id.* (quashing subpoena; "That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request."); *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 17 (D.D.C. 2013) (quashing subpoena for "documents for use in a yet-to-be-filed lawsuit" because "the Subpoena is a naked attempt to gather information for use in evaluating" a potential claim); *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 41 (D.D.C. 2011) ("[I]t is not appropriate, and there is not good cause, to take third-party discovery in this case solely to obtain information that will be used in another lawsuit ...."). This Court similarly refuses to permit any discovery that relates to unfiled claims and defenses. *See, e.g.*, *United States v. All Assets Held at Bank Julius Baer & Co.*, 202 F. Supp. 3d 1, 9 (D.D.C. 2016) ("Claimant cannot lead a fishing expedition to find material that might possibly become relevant to an as-yet unpleaded defense."); *In re Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *13 (D.D.C. May 5, 2022) ("[I]nvestigat[ing] whether litigation is possible in the first place ... is not an appropriate [basis] to compel discovery.").

Here, the Subpoenas improperly seek to unduly burden nonparty FINRA with discovery requests relating to "**potential** claims." Application, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev. filed Oct. 31, 2024). The Trustee applied to employ special litigation counsel to "investigate **potential** claims … related to **suspected** stock manipulation." *Id.* Before the Trustee has asserted claims, nonparty discovery is improper. *See, e.g., In re Motion to Compel Dep't of Veterans Affs.*, 257 F.R.D. at 17; *Phillips*, 300 F.R.D. at 17; *Nu Image*, 799 F. Supp. 2d at 41; *accord Khorassani v. FINRA*, 223 A.D.3d 589, 590 (N.Y. App. 2024) (allegation that "certain equities [] declined in value in late 2022 as a result of unspecified market manipulation … fall far short of the showing necessary to obtain pre-action disclosure").

Bankruptcy Rule 2004 does not permit an end-run around the nonparty protections in Rule 45. *See, e.g., In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) ("[C]ourts have expressed concern that Rule 2004 examinations [should] not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure."). While the bankruptcy rules may generally permit discovery relating to the assets and administration of the estate, Bankruptcy Rule 2004 expressly adopts and incorporates the protections for nonparties in Rule 45. Fed. R. Bank. P. 2004(c) (incorporating Rule 9016 into Rule 2004 requests); Fed. R. Bankr. R. 9016 ("Fed. R. Civ. P. 45 applies in a bankruptcy case."). Rule 45's mandatory prohibition against unduly burdening nonparties with fishing expeditions to discover potential claims applies to the improper Subpoenas issued to FINRA. *See, e.g., In re Enron Corp.*, 281 B.R. at 841; *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("[C]ourts are wary of attempts to utilize Fed. R. Bank. P. 2004 to avoid the restrictions of the Fed. R. Civ. P. …").

Nor are the Subpoena requests even permissible under Bankruptcy Rule 2004. Bankruptcy Rule 2004 provides that "the **court** may order the examination of any entity" on "a party in

interest's motion." Fed. R. Bank. P. 2004. But the local rules for the U.S. Bankruptcy Court for the District of Nevada expressly provide that the "[p]roduction of documents may **not** be obtained via an order under Fed. R. Bankr. P. 2004." Bankr. D. Nev. L-R 2004(c). When the Trustee applied *ex parte* to examine FINRA pursuant to Rule 2004, the Trustee nonetheless sought an order compelling FINRA to produce three categories of documents. *Ex Parte* Motion for Order Requiring Custodian of Records for FINRA to Appear for Examination, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev. filed Mar. 6, 2025) (Doc. 1620), Ex. 12 hereto. **But the bankruptcy court specifically <u>denied</u> the motion as to the document requests**, removing from its order any requirement that FINRA produce records pursuant to Rule 2004. *See* Order, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev. filed Mar. 10, 2025) (Doc. 1642), Ex. 13 hereto. Yet the Subpoenas improperly purport to require FINRA to produce a now-expanded **nine** categories of documents, well beyond the three categories the Trustee sought from the bankruptcy court yet did not receive. *See* Rule 2004 Subpoena, Ex. 2 hereto. Not only did the bankruptcy court reject the Trustee's request to obtain these documents pursuant to Rule 2004, but Rule 2004 does not permit unfettered discovery into speculative, potential claims, anyways. *See, e.g., In re Vital Pharms., Inc.*, 2025 WL 1189882, at *4 (Bankr. S.D. Fla. Apr. 23, 2025) (Rule 2004 requests cannot be predicated on "[s]pecualtive" claims or to support a fishing expedition into "potential … litigation claims rather than a genuine concern for the administration of the estate"); *In re Interpictures, Inc.*, 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988) (rejecting a Rule 2004 examination sought "for the purpose of discovery in a pending or proposed proceeding" as "beyond the scope of Bankruptcy Rule 2004").

**B.     The Subpoenas Unduly Burden Nonparty FINRA with Discovery Requests that Are Barred by the PSLRA Discovery Stay.**

Under the PSLRA, a private litigant alleging securities fraud must establish the sufficiency of their complaint before they can obtain discovery. 15 U.S.C. § 78u-4(b)(3)(B). Private litigants thus must file claims and survive a motion to dismiss before issuing discovery requests. *Id.*; *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005) ("[D]iscovery in securities actions is permitted only after the court has sustained the legal sufficiency of the complaint."). The PSLRA discovery stay is intended to eliminate burdensome discovery before a private litigant demonstrates they can allege a cognizable claim. *In re World Com, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (PSLRA discovery stay "minimiz[es] the incentives to plaintiffs to file frivolous securities class actions" hoping to "find during discovery some suitable claim not alleged in the complaint"); *Stevens v. InPhonic, Inc.*, 662 F. Supp. 2d 105, 119 (D.D.C. 2009) ("The purpose of the PSLRA's heightened pleading requirements is to impose special burdens on plaintiffs in order to deter 'nuisance filings, the targeting of deep-pocket defendants, and vexatious discovery requests.'").

The PSLRA discovery stay applies to nonparty subpoenas. *See, e.g.*, *In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 679 (D. Md. 2000) ("**There is no distinction between discovery of non-parties and parties** for the PSLRA discovery stay.") (emphasis added).

The PSLRA discovery stay provides an independent basis to quash the Subpoenas. The PSLRA prohibits a *plaintiff* who has *filed litigation* from seeking pre-answer discovery against *defendants to that litigation* to prevent speculative fishing expeditions. *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d at 38. Here, the Trustee *has not filed* any claims on behalf of Meta Materials, and the Subpoenas impose burdensome discovery requests *on a nonparty* to identify "potential claims." *See* Application, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev. filed Oct.

- 12 -

31, 2024); *see also In re World Com, Inc. Sec. Litig.*, 234 F. Supp. 2d at 305 (plaintiff cannot file a lawsuit to "find during discovery some suitable claim not alleged in the complaint").

In addition, while the Trustee has yet to file any private securities claims on behalf of Meta Materials, a number of private securities claims have already been filed against FINRA and have been dismissed on the pleadings. *See, e.g., Hofman v. FINRA*, 2023 U.S. Dist. LEXIS 81166, *18 (C.D. Cal. May 8, 2023); *Tawil v. FINRA*, 2023 WL 7131840, at *2 (N.D. Fla. July 26, 2023); *Hensley v. TD Ameritrade Inc.*, 2023 WL 12068975, at *1 (W.D. Wash. Oct. 2, 2023). FINRA has also moved to stay discovery in some of those cases that remain pending. *E.g.*, Motion to Stay at 3 n.2, *Rolo v. SEC*, No. 3:24-cv-02053 (D. Conn. filed Apr. 1, 2025) (Doc. 49-3); *accord Khorassani*, 223 A.D.3d at 590 (denying pre-suit discovery into MMTLP matters). This is further reason why pre-suit discovery on nonparty FINRA—who has been subject to private securities claims—is improper under the PSLRA.

**C.     The Subpoenas Unduly Burden Nonparty FINRA with Irrelevant Requests.**

The Subpoenas also impose an undue burden on nonparty FINRA because "the burden or expense of the proposed discovery outweighs its likely benefit" as the Subpoenas seek irrelevant information. *Watts*, 482 F.3d at 508.

1.     The Subpoenas Seek Irrelevant Information Regarding MMTLP.

The Trustee told the bankruptcy court that it is investigating claims for "suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing'" of MMAT and TRCH shares. Application, *In re Meta Materials*, No. 24-50792-hlb, Ex. 5 hereto. These are not causes of action under federal law but presumably would serve as a theory of liability for market manipulation claims under §§ 9 or 10(b) of the Exchange Act. 15 U.S.C. §§ 78i; 78(j).

To state a claim for market manipulation, the plaintiff must have bought and sold a security due to a manipulative act. *E.g., Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 337 n.2 (2d

Cir. 2011). "Typically, a 'holder' of securities lacks standing to prosecute a claim under the federal securities laws." *Id.*; *see also Cartica Mgmt., LLC v. CorpBanca, S.A.*, 50 F. Supp. 3d 477, 485 (S.D.N.Y. 2014) (private civil remedies for violations of §§ 9 and 10 of the Exchange Act "were expressly limited to purchasers or sellers of securities"); *In re WorldCom, Inc. Sec. Litig.*, 336 F. Supp. 2d 310, 319 (S.D.N.Y. 2004) ("Because a 'holder' claim is not 'verifiable by documentation' and depends entirely on 'oral recollection,' a 'holder' cause of action is likely to encourage frivolous and 'vexatious litigation' that is difficult to resolve on the merits without a trial.").

Here, as discussed *supra* (at 4), the SEC alleges Meta Materials and the former CEOs of Meta I, Torchlight, and Meta Materials—Brda and Palikaras—issued the Preferred Dividend, which later traded as MMTLP, to create a "short squeeze" narrative. *Brda*, 2024 WL 4817475, at *1. The SEC alleges that Brda and Palikaras promoted the narrative that "short sellers would not be able to obtain the Preferred Dividend, thus pressuring short sellers to close their positions and artificially raising the price of Torchlight common stock." *Id.* Approximately 18 months after the Meta Materials merger, the MMTLP shares were spun off into Next Bridge, and Next Bridge suggested (like Brda and Palikaras before it) the spinoff might trigger a short squeeze. Prospectus at 5, File No. 333-266143, Ex. 9 hereto ("[I]f any investors have sold shares of MMTLP short, … such investors may feel compelled to buy shares of MMTLP to cover such sales … [and MMTLP] may rise significantly but not be representative of the value of the underlying shares."). That spinoff was completed in December 2022, Meta Materials cancelled the MMTLP shares, and prior holders of MMTLP now hold common stock in Next Bridge. *Next Bridge Announces Spin-Off Completion*, Ex. 10 hereto.

It is thus unclear and entirely speculative how **Meta Materials** could assert stock manipulation claims relating to **MMTLP**. Meta Materials was not a retail investor who bought and sold MMTLP. Nor was MMTLP a common or treasury stock of Meta Materials. Meta Materials may have "held" some of the Preferred Dividend following the reverse merger, but "a 'holder' of securities lacks standing to prosecute a claim under the federal securities laws." *Ashland*, 652 F.3d at 337 n.2. Nor is it clear whether or why Meta Materials itself would have traded MMTLP during the short squeeze that its spinoff partner Next Bridge announced might occur. Put simply, without specific allegations from Meta Materials in an actual lawsuit, it is entirely speculative whether Meta Materials could assert private securities litigation claims relating to MMTLP. *See, e.g.*, *Flatow v. Islamic Republic of Iran*, 201 F.R.D. 5, 8 (D.D.C. 2001) ("[I]nasmuch as the subpoena in its current form seeks information relating to assets which the plaintiff has no right to attach, the subpoena is overbroad in violation of Rule 45.").

In fact, when the Trustee applied to retain special counsel to investigate potential market manipulation claims, the Trustee **did not even mention MMTLP**. *See* Application, *In re Meta Materials, Inc.*, No. 24-50792-hlb (Bankr. D. Nev. filed Oct. 31, 2024). Instead, the Trustee told the bankruptcy court it was investigating "activities related to a merger in which Meta Materials ('MMAT'), acquired Torchlight Energy Resources ('TRCH'), both of which were listed on NASDAQ." *Id.* ¶ 2. This is the same reverse merger for which the SEC alleged Meta Materials and the former CEOs engaged in stock manipulation. *Brda*, 2024 WL 4817475, at *1. Thus, there is no legitimate basis for the Subpoenas to demand nonparty FINRA to produce documents and testimony relating to MMTLP.

2.     The Subpoenas Seeks Irrelevant Information About MMAT and TRCH.

To state a claim for market manipulation, a private plaintiff must allege: (1) manipulative acts; (2) damage (3) caused by reliance on assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI Comm'cns*, 493 F.3d at 101; *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014). Manipulation complaints "must plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants." *ATSI Comm'cns*, 493 F.3d at 101.

Here, it is entirely speculative whether or how Meta Materials could plead stock manipulation claims as to MMAT or TRCH. The Trustee has retained special counsel to investigate potential claims relating to the Torchlight-Meta I reverse merger, which is the same merger that is the subject of Meta Materials' settlement with the SEC. SEC-Meta Settlement Order, Ex. 7 hereto. Specifically, Meta Materials consented to the entry of an SEC Cease-and-Desist Order against it that included findings by the SEC that Meta Materials "raised $137.5 million in an at-the-market offering" in which Meta Materials "artificially inflated the value of its common stock by structuring a merger" between Torchlight and Meta I "specifically designed to cause a 'short squeeze.'" *Id.* ¶ 2. Having settled such charges, it is speculative whether or how Meta Materials could allege with particularity that it was damaged by selling its stock in "reliance on assumption of an efficient market free of manipulation." *ATSI Comm'cns*, 493 F.3d at 101.

In addition, Brda and Palikaras, the former CEOs of Meta I, Torchlight, and Meta Mateirals are currently defendants in an SEC action alleging they "schem[ed] to manipulate the stock price." *Brda*, 2024 WL 4817475 at *1. This includes allegations that Brda and Palikaras "issu[ed] false or misleading statements and omissions about the Preferred Dividend in Torchlight's public filings and proxy statements" and "aggressively used social media" to promote the narrative that "short

- 16 -

sellers would not be able to obtain the Preferred Dividend, thus pressuring short sellers to close their positions and artificially raising the price of Torchlight common stock." *Id.* at \*1–\*2. It is thus (again) speculative whether Meta Materials could plead that it "reli[ed] on [an] assumption of an efficient market free of manipulation" when the former CEOs are alleged to have engaged in such manipulation themselves.

### D.     The Subpoenas Unduly Burden Nonparty FINRA with Discovery that Can Be Obtained from a More Convenient Source—the Suspected Wrongdoers.

Rule 45 requires district courts to consider "whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive" or is otherwise "cumulative or duplicative." *Watts*, 482 F.3d at 508. The cornerstone of this obligation is that litigants cannot unduly burden nonparties with requests for information that can be obtained from the actual parties to the litigation. *Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 339–40 (D.D.C. 2021) (quashing subpoenas because movants could "shift discovery burden from third parties to the primary parties"); *Wyoming v. USDA*, 208 F.R.D. 449, 455 (D.D.C. 2002) (quashing subpoenas; "the plaintiff [could] obtain the information needed … from the federal defendants"); *In re Motion to Compel Dep't of Veterans Affs.*, 257 F.R.D. at 19 ("Until [Plaintiff] at least makes the effort [to obtain documents from the parties] … I must conclude that the subpoena constitutes an undue burden to the [nonparty] and order it quashed."); *accord Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 590 (N.D. Ill. 2020) (citing cases) ("A non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative.").

The Subpoenas here unduly burden FINRA with requests for information that can be obtained from the firms or brokers suspected to have engaged in the wrongdoing, who presumably will be defendants in any litigation the Trustee files on Meta Materials' behalf. For example:

- 17 -

- Requests 1–5 seek records that firms "provided to FINRA." Subpoena Request No. 1–2 (requesting "**[r]ecords provided to FINRA** … in the original format received by FINRA"); Subpoena Request Nos. 3–5 (seeking "[r]ecords utilized in the production of report data … **for each ATS/firm with trade reporting obligations**");

- Request 8 seeks communications brokers sent to FINRA. Subpoena Request No. 8 (seeking "communications … between FINRA … and **any prime broker, broker, dealer, market-maker or hedge fund** concerning Meta and/or MMTLP issues");

- Request 9 seeks "[a]ll data records **provided to FINRA** by member firms." Subpoena Request No. 9(i).

The Trustee can and must seek this information from a more convenient source—the "firms" or "brokers" who supposedly "provided" these records or communications to FINRA to avoid unduly burdening a nonparty. *See Wyoming*, 208 F.R.D. at 455 (quashing subpoenas; plaintiff had "not shown that it has made reasonable attempts to obtain the information elsewhere before asking for this extraordinarily broad discovery request of the non-party witnesses"); *Diamond Servs.*, 339 F.R.D. at 339–40; *In re Motion to Compel Dep't of Veterans Affs.*, 257 F.R.D. at 19.

In fact, the Trustee could substantially narrow the discovery sought in the Subpoenas by directing them to the suspected wrongdoers. *E.g., In re of Lucille*, 2022 WL 1421816 at *11 ("[A] clear identification of the likely claims[ and] parties … will aid in determining the … relevancy and burdensomeness, such as whether the requested discovery is likely to be available from a [more convenient source]."). FINRA has more than 3,250 member firms who employ more than 625,000 registered representatives. *See, e.g.*, FINRA, *About FINRA—How FINRA Serves Investors and Members* (last viewed Aug. 5, 2025), *available at* https://www.finra.org/about/how-finra-serves-investors-and-members. As the primary examining authority for the broker-dealer

industry, FINRA conducts routine examinations and other investigations to ensure member conduct complies with FINRA rules and the federal securities laws, it surveils the national securities markets, and it disciplines member firms and registered representatives. The Subpoenas require nonparty FINRA to search for records and communications with all of its members and their registered representatives instead of properly directing the requests to particular defendants or the suspected wrongdoers to produce just their communications with nonparties. *E.g.*, Subpoena Request No. 8 (requesting "communications … by and between FINRA … and any prime broker, broker, dealer, market-maker or hedge fund concerning Meta and/or MMTLP issues").

A cursory examination of the Subpoenas' discovery requests to nonparty FINRA demonstrate they are overly broad and unduly burdensome in other respects. For example:

- The Requests Are Not Limited to Particular Defendants or Suspected Wrongdoer: The Subpoenas' require nonparty FINRA to search for and produce communications and records with all 3,250 member firms or 625,000 registered representatives instead of Trustee narrowing the discovery requests to the actual defendants in a lawsuit or to the suspected wrongdoers.

- The Requests Are Not Limited to the At-Issue Conduct: The Subpoenas demand discovery relating to three separate stocks (MMAT, TRCH, and MMTLP) over a four-year period. *See* Subpoenas at 1. The Subpoenas do not even limit their scope to the particular conduct that the Trustee told the bankruptcy court it was investigating—"activities related to a merger in which Meta Materials ('MMAT'), acquired Torchlight Energy Resources ('TRCH')." *See* Application, *In re Meta Materials*, No. 24-50792-hlb, Ex. 5 hereto; *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 60 (D.D.C. 2023) (requests seeking "virtually every document" over several year period were unduly burdensome).

- <u>The Requests Are Not Limited to a Relevant Time Period</u>: Relatedly, the "merger in which Meta Materials ... acquired Torchlight" that the Trustee told the bankruptcy court it was investigating completed in June 2021. Yet the Subpoenas are not limited to this relevant time period and instead seek documents through 2024, years following the completion of the merger.

**E.    The Subpoenas Unduly Burden Nonparty FINRA with Requests for Information that Would Not Be Helpful.**

Not only are the documents and testimony the Subpoenas seek irrelevant, but the massive amounts of data and records sought by the Subpoenas would not even be helpful for the prospective claims and what exists is otherwise publicly available. *Watts*, 482 F.3d at 508 (subpoena must be quashed if "the burden or expense of the proposed discovery outweighs its likely benefit").

The Trustee has stated it is investigating whether specific financial firms or broker dealers engaged in "naked shorting" or "spoofing." Application, *In re Meta Materials*, No. 24-50792-hlb, Ex. 5 hereto. The Subpoenas thus specifically and repeatedly seek records provided "by firms" "including broker and account details." *E.g.,* Subpoena Request Nos. 1–5, 8. But FINRA generally does not collect or maintain account level data from member firms, and in many situations, FINRA collects data from *clearing* firms rather than at the individual firm or broker level. *See* Declaration of Stephanie Dumont (the "Dumont Decl.") ¶ 20, Ex. 3 hereto. For example, FINRA does not have data at the individual firm or broker level in response to Subpoena Request 1. *Id.*

In addition, FINRA already publishes much of the existing data. FINRA publishes data on short interest data. FINRA, *Equity Short Interest Data* (last visited Aug. 5, 2025), *available at* https://www.finra.org/finra-data/browse-catalog/equity-short-interest/data; Subpoena Request No. 1 (seeking "Short Interest Reporting Data"). FINRA publishes short sale volumes reported through a Trade Reporting Facility or "TRF"). FINRA, *Short Sale Volume* (last visited Aug. 5, 2025), *available at* https://www.finra.org/finra-data/browse-catalog/short-sale-volume; Subpoena

Request No. 2 (seeking "[r]ecords provided to FINRA through a FINRA trade reporting facility (TRF)"); Subpoena Request No. 3 (seeking [r]ecords utilized in the production of report data involving daily short sale aggregated volume … reported to a FINRA trade reporting facility"). FINRA also publishes data on OTC trades. FINRA, *OTC (ATS & Non-ATS) Transparency* (last visited Aug. 5, 2025), *available at* https://www.finra.org/filing-reporting/otc-transparency; Subpoena Request Nos. 4–5 (seeking "monthly" and "weekly" "aggregate trade data for OTC (ATS and non-ATS) trading data"). The Subpoenas thus seek information that "can be derived or summarized utilizing data that FINRA already makes public." Dumont Decl. ¶ 20, Ex. 3 hereto.

## II.     The Subpoenas Seek Privileged and Confidential Documents.

Pursuant to Rule 45, the Court "must quash" a subpoena that "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3). In addition, the Court may quash a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." *Id.* The Subpoenas must and should be quashed on these grounds for three separate reasons.

### A.     The Court Must Quash the Subpoenas' Request for Privileged Information Protected by the Investigative File Privilege.

The Subpoenas must be quashed pursuant to Rule 45 because they seek information exempt from disclosure under the investigative file privilege. Fed. R. Civ. P. 45(d)(3).

The investigative file privilege is based on the "public interest in minimizing disclosure of documents that would tend to reveal law enforcement investigative techniques or sources." *Black v. Sheraton Corp.*, 564 F.2d 531, 545 (D.C. Cir. 1977). The D.C. Circuit has applied the privilege to the SEC's investigative files. *In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988) (investigatory privilege applies to SEC). And other courts have consistently held the privilege applies to FINRA's investigatory files due to the importance of FINRA's regulatory and investigatory functions as an

- 21 -

SRO. *See, e.g.*, *Gulf Coast Energy*, 2014 WL 12616133, at *2 ("FINRA is not required to produce documents or responses subject to … the investigative file privilege."); *SEC v. McGinn*, 2011 WL 13136028, at *5–*8 (N.D.N.Y. Jan. 5, 2011) (quashing subpoena; "courts have applied the investigative privilege to FINRA"); *Ross v. Bolton*, 106 F.R.D. 22, 24 (S.D.N.Y. 1985) (investigative privilege applied to FINRA's predecessor, the NASD; the "strong public interest in maintaining the integrity of effective industry self-regulation … would clearly be undermined by making NASD's files fair game for any of the thousands of private securities fraud litigants across the country who wish to shortcut their own discovery efforts and instead to reap the benefits of [NASD's] ongoing, statutorily governed work").

To invoke the privilege, three requirements need to be met: "(1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *In re Sealed Case*, 856 F.2d at 271.

Here, the investigative file privilege applies. The Subpoena expressly seeks all "investigative records associated with any FINRA investigation concerning Meta and/or MMTLP." Subpoena Request No. 6. The Subpoenas also seek other internal FINRA records relating to FINRA investigations. *See* Subpoena Requests Nos. 7–8. These are an improper attempt to obtain privileged "investigative records." *Id.* FINRA has submitted herewith a declaration from Stephanie Dumont, head of FINRA's Market Regulation and Transparency Services Department, in which Ms. Dumont asserts the privilege. Dumont Decl. ¶¶ 11–16, Ex. 3 hereto. As Ms. Dumont's Declaration makes clear, FINRA's assertion of the investigative file privilege is based on actual considerations by Ms. Dumont, who provides specific reasons the

privilege applies. *Id.* Specifically, the Subpoenas expressly request "investigative records" arising from FINRA investigations conducted pursuant to its self-regulatory obligations. *Id.* In addition, disclosure of FINRA's investigative files would interfere with FINRA's ability to effectively complete its investigations and would frustrate FINRA's mission to protect investors and safeguard market integrity. *Id.*

**B.      The Court Must Quash the Subpoenas' Request for Protected Consolidated Audit Trail or "CAT" Data.**

The Subpoena also seeks Consolidated Audit Trail or "CAT" data. *See, e.g.*, Subpoena Request No. 12 (seeking "[e]ach reportable CAT event" and records "managed by FINRA's CAT HelpDesk."). The Court must quash this impermissible request for "privileged or other protected matter" pursuant to Fed. R. Civ. P. 45(d)(3).

CAT data is protected by law, and it is critically important to the SEC and SROs like FINRA. *See* 17 C.F.R. § 242.613. CAT data allows regulators to track activity throughout the U.S. markets in National Market System ("NMS") securities, and CAT data captures vast amounts of confidential and sensitive customer and order information in NMS securities to "enhance the ability of SROs and the Commission to oversee today's securities markets and fulfill their responsibilities under the federal securities laws." Joint Industry Plan; Order Approving the National Market System Plan Governing the Consolidated Audit Trail, Release No. 34-79318, 81 Fed. Reg. 84696, 84698 (November 16, 2016) ("CAT NMS Order"); Dumont Decl. ¶¶ 9–25, Ex. 3 hereto.

Given the critical importance of CAT data, the SEC has previously intervened against attempts by private litigants to gain access to CAT data. *See, e.g.*, SEC's Statement in Support of Consolidated Audit Trail, LLC's Objection to Rule 2004 Motion, *In re Sorrento Therapeutics, Inc.*, No. 23-90085 (Bankr. S.D. Tex. filed Mar. 22, 2024) (Doc. 2076), Ex. 11 hereto. As the SEC

stated in that case, "no request by a private litigant for CAT data would be appropriate." *Id.* at 9. "Protective orders would not be sufficient to" protect CAT data. *Id.* at 7. The SEC thus confirmed its position that requests for CAT data must be quashed pursuant to Rule 45. *Id.* at 7–9. (The Court ultimately denied the motion for production of CAT data for lack of standing. Order at 1, *In re Sorrento Therapeutics, Inc.*, No. 23-90085 (Bankr. S.D. Tex. filed Oct. 15, 2024) (Doc. 2488).)

Moreover, SEC Rule 613(e)(2) provides that "access to and use of" CAT data may only be **"for the purpose of performing [] respective regulatory and oversight responsibilities** pursuant to the federal securities laws, rules, and regulations." 17 C.F.R. § 242.613(e)(2) (emphasis added). Accordingly, FINRA is not a proper party from whom CAT data can be obtained pursuant to a subpoena. The SEC-approved CAT NMS Plan provides that "access to and use of the CAT Data" is **"solely for the purpose of performing [the plan participants']** **respective regulatory and oversight responsibilities** pursuant to the federal securities laws, rules and regulations or any contractual obligations." 7 CAT NMS Plan, § 6.5(c)(i); *see also* CAT NMS Order, 81 Fed. Reg. at 84706 ("[A]ccess to and use of the CAT Data stored in the Central Repository [will be provided to plan participants] **solely for the purpose of performing their** **respective regulatory and oversight responsibilities** pursuant to the federal securities laws, rules and regulations or any contractual obligations."); Dumont Decl. ¶ 25, Ex. 3 hereto. The CAT NMS Plan therefore imposes a legal obligation on FINRA to only use CAT data for regulatory and oversight purposes, and any disclosure of CAT data for any other purpose, including responding to a subpoena, would be a violation of the CAT NMS Plan. 17 C.F.R. § 242.613(h)(2). FINRA therefore has "never produced CAT Data in response to a subpoena issued by private parties in civil litigation." Dumont Decl. ¶ 25, Ex. 3 hereto.

- 24 -

C.    **The Subpoenas Impose an Undue Burden on FINRA with Requests for Attorney-Client Privileged Materials.**

The Subpoenas are also unduly burdensome because they request attorney-client privileged materials. Request 7 seeks all "communications" and "notes considered in the preparation" of any "public communications by FINRA (e.g. Notices, FAQs) concerning Meta and/or MMTLP issues." Subpoena Request No. 7. This Request seeks, *inter alia*, FINRA's internal documents regarding two FAQs that FINRA published regarding the MMTLP trade halt in March and November 2023. *See* Dumont Decl. ¶¶ 9–10 & Exs. B & C thereto.

By the time FINRA issued the first FAQ on March 16, 2023, at least three separate litigants had filed lawsuits against FINRA relating to the MMTLP trading halt. The first MMTLP-related lawsuit was filed against FINRA on December 12, 2022. *Tawil v. FINRA*, 4:22-cv-00440 (N.D. Fla. filed Dec. 12, 2022). Two additional lawsuits were filed in December 2022 and February 2023, respectively. *Hofman v. FINRA*, 2:23-cv-00881 (removed to C.D. Cal. Feb. 6, 2023; originally filed in Superior Court in the County of Los Angeles, CA, Dec. 15, 2022); *Hensley v. TD Ameritrade, Inc.*, No. 3:23-cv-05159 (W.D. Wash. filed Feb. 28, 2023). All three courts ultimately dismissed the claims against FINRA, but the dismissals were months *after* FINRA published the first FAQ. *Hofman v. FINRA*, 2023 U.S. Dist. LEXIS 81166, *18 (C.D. Cal. May 8, 2023); *Tawil v. FINRA*, 2023 WL 7131840, at *2 (N.D. Fla. July 26, 2023); *Hensley v. TD Ameritrade Inc.*, 2023 WL 12068975, at *1 (W.D. Wash. Oct. 2, 2023).

In light of the pending litigation, the drafting and preparation of the FAQs was done by FINRA's attorneys. Thus, virtually every document and communication related to the preparation of the FAQs are privileged. The Subpoenas' demand that FINRA wade through the innumerable privileged materials on a fishing expedition in the hopes that FINRA identifies some unprivileged materials that are relevant to hypothetical claims that have not been filed imposes an undue burden.

*See, e.g., Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3-4 (D.D.C. 2017) (finding discovery requests to be "overbroad and unduly burdensome" when a third party was expected to review thousands of privileged documents).

**III.    The Subpoenas Would Impose Significant Expense on FINRA**

If a court orders compliance with a subpoena over a nonparty's objection, "the court 'must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.'" *G & E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 315 (D.D.C. 2016) (citing Fed. R. Civ. P. 45(d)(2)(B)(ii)). Cost-shifting under Rule 45 is mandatory whenever the expense of compliance is "significant." *Id.* ("[I]f expenses are significant, the district court must shift the expenses above the level of 'significance' to the party serving the subpoena."). This Court has previously held that compliance costs of $3,148.44 are "significant." *Id.* at 320–21 (ordering subpoenaing party to pay $3,148.44 in "significant" compliance costs).

If this Court does not quash the Subpoenas entirely, then, at minimum cost shifting is mandatory to protect FINRA from the significant compliance expenses. The Subpoenas seek fifteen (15) separate categories of information (including subparts) for three separate stocks over four years of trading. *See* Subpoenas at 1–3. Responding to just a *few* of these fifteen requests will require the collection and production of *millions* of records. *See* Eads Decl. ¶ 4, Ex. 4 hereto. Specifically, Request 2 demands "[r]ecords provided to FINRA through a FINRA trade reporting facility" for TRCH, MMAT, or MMTLP. Subpoena Request No. 2. There are approximately *23.5 million* such records for TRCH and MMAT for the period of September 21, 2020, to August 21, 2024. Eads Decl. ¶ 4, Ex. 4 hereto. There are also over 1 million OTC Reporting Facility ("ORF") records for MMTLP for the period June 28, 2021, to December 14, 2022 in response to Request Nos. 3–4. *Id.* This equates to approximately *25 million* records that must be collected, exported, and produced to respond to just these three requests. *See id.* . Further, given the size of the

- 26 -

responsive data, FINRA's Market Regulation and Transparency Services Department would have to manually upload the responsive data onto a secured hard drive. *Id.*

FINRA presently does not know how much it would cost to produce data responsive to all 15 categories of requests, but the cost will undoubtedly be substantial. To determine the cost to produce the internal documents and communications sought by the Subpoenas (*e.g.*, Requests 6–8), FINRA would have to identify the custodians who may have responsive documents, collect emails and records from those custodians, load those documents into an e-discovery database, and review the records for responsiveness, privilege, and personal confidential information. It would likely take months just to collect and load such records into an e-discovery database, and then an additional time and expenses to review and produce the records. If FINRA is ordered to produce such communications and additional records, FINRA respectfully requests the opportunity to provide supplemental information regarding the cost to the Court for appropriate cost shifting under Rule 45. Fed. R. Civ. P. 45(d)(2)(B)(ii).

## CONCLUSION

For the foregoing reasons, this Court should quash the Subpoenas pursuant to Rule 45 or, in the alternative, issue a protective order pursuant to Rule 26 precluding or otherwise limiting the discovery sought. A proposed order is filed herewith.

Dated: August 6, 2025

Respectfully submitted,

/s/ *David S. Norris*
David S. Norris (DC Bar No. 1024996)
**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW
Washington, DC 20037
Tel.: (202) 457-6000 | Fax: (202) 457-6315
david.norris@squirepb.com

*Counsel for Nonparty Financial Industry Regulatory Authority, Inc.*

- 27 -

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document is being served this day via email and mail on counsel for Christina Lovato, chapter 7 trustee, for the estate of Meta Materials, Inc.

*/s/ David S. Norris*
David S. Norris
