UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the matter of:

MOTION TO QUASH SUBPOENAS TO NONPARTY FINANCIAL INDUSTRY

REGULATORY AUTHORITY, INC.

**Case No. 1:25-mc-00129-LLA-GMH**

**Hon. G. Michael Harvey**

# EXHIBIT 1

**Brief Of Amicus Curiae Jeffrey Stephen Pittman**

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

---

**In the matter of:**

**MOTION TO QUASH SUBPOENAS TO**
**NONPARTY FINANCIAL INDUSTRY**
**REGULATORY AUTHORITY, INC.**

Case No. 1:25-mc-00129-LLA-GMH

Hon. G. Michael Harvey

---

**BRIEF OF AMICUS CURIAE JEFFREY STEPHEN PITTMAN IN SUPPORT OF**
**DENYING NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S**
**MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR A**
**PROTECTIVE ORDER**

**TABLE OF CONTENTS**

I.   INTEREST OF AMICUS CURIAE ....................................................................................3

II.  SUMMARY OF ARGUMENT ........................................................................................4

III. ARGUMENT .................................................................................................................5

   A.  The Subpoenas Do Not Impose an Undue Burden on FINRA............................................5

   B.  FINRA's Claims of Privilege and Immunity Do Not Bar Production of Factual Data
       Relevant to Alleged Market Manipulation .........................................................................6

   C.  Public Interest and Harm to Retail Investors Weigh Heavily in Favor of Disclosure........8

IV.  CONCLUSION .................................................................................................................9

## **TABLE OF AUTHORITIES**

**Cases**

*Alpine Sec. Corp. v. FINRA* No. 23-5129, 2024 WL 5177085 (D.C. Cir. Nov. 22, 2024) ...6, 7

*Howes v. FINRA* No. 22-1152 No. 8:18-cv-03094-DKC (D. Md. Feb. 24, 2023) ................... 7

*In re FINRA Arbitration Subpoena* No. 09-cv-02155 (N.D. Tex. 2010) ................................ 5

*Next Level Planning & Wealth Mgmt., LLC v. Prudential Ins. Co. of Am.*
   No. 18-MC-65, 2019 WL 646498 (E.D. Wis. Feb. 13, 2019) ............................................. 6

*SEC v. Citigroup Global Mkts. Inc.* 673 F.3d 158 (2d Cir. 2012) ............................................. 8

*Shepherd v. LPL Financial LLC*, No. No. 5:17-cv-00150-D,
   2019 WL 1274485 (E.D.N.C. Mar. 20, 2019) ................................................................... 5

**Statutes and Rules**

15 U.S.C. § 78u(c) (Securities Exchange Act) ............................................................. 7

Fed. R. Civ. P. 45(d)(3)(A) ..............................................................................................4, 5

Fed. R. Civ. P. 45(d)(3)(B) ............................................................................................... 6

LCvR 7(o) (D.D.C.)............................................................................................................. 3

**Other Authorities**

Berthold Amicus Brief, SEC v. Brda, No. 4:24-cv-01048 (E.D. Tex. Feb. 12, 2025) ..........7, 9

FINRA Rule 6490 ................................................................................................................. 7

I.      **INTEREST OF AMICUS CURIAE**

Pursuant to Local Civil Rule 7(o) of the United States District Court for the District of Columbia, Jeffrey Stephen Pittman respectfully submits this brief as amicus curiae in support of denying Nonparty Financial Industry Regulatory Authority, Inc.'s ("FINRA") Motion to Quash Subpoenas or, in the Alternative, for a Protective Order. No party's counsel authored this brief in whole or in part, and no party or person other than amicus contributed money to fund its preparation or submission.

Amicus is a retail investor and holder of Meta Materials Inc. ("MMAT") Series A Preferred Stock, traded under the ticker MMTLP, which was directly impacted by the events underlying the subpoenas at issue. As detailed in the attached Declaration of Jeffrey Stephen Pittman (Exhibit 2) and trade confirmations (Exhibits A-D), amicus purchased significant positions in MMTLP in late 2022, including:

- 1 share at $8.88 on December 1, 2022 (Exhibit A);

- 1 share at $9.54 on December 6, 2022 (Exhibit B);

- Various buys on December 7, 2022: 100 at $9.29 and 1,000 at $7.00 (Exhibit C); and

- Various buys on December 8, 2022: 500 at $5.55, 1,000 at $5.45, 1,000 at $5.15, 1,000 at $5.20, 1 at $5.17, 1,999 at $5.18, 1,934 at $5.07, 66 at $5.05, 1,000 at $4.97, and 1,000 at $4.81 (Exhibit D).

These purchases totaled over 10,000 shares, acquired at prices ranging from $4.81 to $9.54 per share, for a total investment exceeding $50,000. FINRA's halt on MMTLP trading on December 8-9, 2022—amid allegations of naked short selling and spoofing—rendered these holdings illiquid and ultimately worthless following the spin-off of Next Bridge Hydrocarbons.

3

Amicus suffered direct financial losses estimated at over $50,000, representing, at present, a complete wipeout of his investment.

Amicus's efforts to seek transparency extend to a January 25, 2025 FOIA request to the SEC for related records (Exhibit E), which remains delayed, highlighting barriers to information.

As one of approximately 65,000 retail investors harmed by these events (as referenced in the underlying bankruptcy proceedings), amicus has a profound interest in ensuring the Chapter 7 Trustee obtains FINRA's data—such as order records, blue sheets, and trade complaints—to uncover evidence of manipulation. This brief offers a unique perspective on the real-world harm to individual investors, which the parties may not fully address, and urges the Court to prioritize transparency over FINRA's overbroad claims of burden and immunity. By pushing the boundaries of FINRA's immunity claims, this brief aims to serve as a turning point in exposing potential fraud and systemic issues in market regulation.

## II.    SUMMARY OF ARGUMENT

**FINRA's motion to quash should be denied because the subpoenas seek critical, non-privileged data essential to investigating systemic market manipulation that devastated retail investors like amicus. Under Federal Rule of Civil Procedure 45, quashing is unwarranted absent undue burden or privilege—neither of which FINRA has demonstrated. Courts routinely compel FINRA to produce factual records in similar contexts, rejecting blanket immunity claims where, as here, the data is narrowly tailored to allegations of naked shorting and spoofing in MMTLP trading.**

The public interest demands disclosure: Thousands of investors, including amicus, lost millions due to FINRA's halt, which allegedly concealed illegal short positions. Quashing these

subpoenas would perpetuate opacity in our markets, erode trust, and shield potential wrongdoers. This Court should follow precedents denying quash motions against FINRA and compel production to aid the bankruptcy estate's recovery efforts, potentially setting a precedent that challenges FINRA's role in enabling market fraud.

## III.    ARGUMENT

### A.    The Subpoenas Do Not Impose an Undue Burden on FINRA

FINRA's claim of undue burden fails under Rule 45(d)(3)(A)(iv), which requires quashing only if a subpoena subjects a person to "undue burden." The subpoenas here are narrowly focused on trade data, order records, and communications related to MMTLP/MM AT/TRCH—information FINRA routinely maintains and produces in regulatory inquiries. Courts have denied similar motions where, as here, the requests are proportional to the needs of the case: uncovering manipulation that led to MMAT's bankruptcy and investor losses.

For instance, in *Shepherd v. LPL Financial LLC*, the Western District of Oklahoma denied a motion to quash FINRA subpoenas for arbitration-related documents, finding no undue burden where the information was central to claims of misconduct. Similarly, the Northern District of Texas in In re FINRA Arbitration Subpoena enforced a subpoena against FINRA, emphasizing that regulatory bodies must comply when data is relevant and not overly burdensome.

Amicus's trades exemplify the burden's absence: His December 2022 purchases coincided with volatile trading halted by FINRA, allegedly to protect short sellers. The Trustee's subpoenas—for blue sheets and OATS data—would reveal if spoofing or naked shorts artificially suppressed prices, directly tying to amicus's $50,000+ losses. FINRA, as a self-regulatory

organization, cannot hide behind burden claims when its own halt exacerbated the harm. Any

minimal cost is outweighed by the estate's $11 million litigation funding and the subpoenas'

specificity.

>           **B.      FINRA's Claims of Privilege and Immunity Do Not Bar Production of**
>
>                    **Factual Data Relevant to Alleged Market Manipulation**

FINRA invokes regulatory immunity and privilege, but these do not shield factual

production under Rule 45(d)(3)(A)(iii). Immunity protects FINRA from liability for regulatory

acts, not from disclosing non-deliberative data like trade logs. In *Alpine Sec. Corp. v. FINRA*, the

D.C. Circuit rejected FINRA's broad immunity claims, holding that constitutional challenges to

its actions do not bar discovery in related proceedings.

Rule 45(d)(3)(B) allows quashing for privileged matter only if no waiver applies, but

courts compel FINRA production where, as here, the data is factual and essential. In *Next Level*

*Planning & Wealth Mgmt., LLC v. Prudential Ins. Co*., the Eastern District of Wisconsin

dismissed a quash motion as moot after FINRA complied, underscoring that subpoenas for

investigative records are enforceable.

The subpoenas target evidence of manipulation—e.g., over 55 million naked shorts in

MMAT, per bankruptcy filings—that FINRA's halt allegedly concealed. Privilege does not

extend to hiding such abuses; the Securities Exchange Act mandates cooperation in probes (15

U.S.C. § 78u(c)). FINRA's resistance perpetuates the very opacity that harmed investors, as

evidenced by delays in related SEC FOIA requests like amicus's (Exhibit E).

Moreover, FINRA's claimed immunity is not absolute and contains exploitable gaps.

First, immunity applies only to actions within FINRA's delegated regulatory scope; ultra vires

acts, such as potentially mishandling the MMTLP halt under Rule 6490, fall outside protection. In *Alpine Sec. Corp. v. FINRA*, the D.C. Circuit enjoined FINRA's expulsion order for exceeding authority, highlighting that overreach voids immunity. If FINRA's halt was not strictly regulatory but protective of member firms, it may be ultra vires, piercing the shield.

Second, bad faith or malice exceptions apply; if evidence shows FINRA acted with self-interest or fraud (e.g., concealing manipulation to shield insiders), immunity fails. Courts in *Howes v. FINRA* have left room for such claims, noting egregious misconduct voids protection. As argued in a related MMTLP amicus brief, this "bad faith chink" exposes FINRA to accountability for enabling fraud (Berthold Amicus Brief, SEC v. Brda, No. 4:24-cv-01048 (E.D. Tex. Feb. 12, 2025)).

Third, constitutional challenges under the private non-delegation doctrine attack FINRA's core structure, arguing Congress improperly delegated enforcement powers to a private entity without sufficient oversight. The *Alpine* ruling sustained such arguments, enjoining FINRA actions and signaling vulnerability—immunity cannot shield unconstitutional delegation. Recent denials of certiorari by the Supreme Court in *Alpine Securities Corp. v. FINRA* (June 2025) leave this door open for lower courts to explore, potentially rendering FINRA's resistance here untenable.

These gaps expose FINRA's emboldened stance as flawed—immunity is not impenetrable, and production here fits within judicial trends piercing it for factual disclosures, as echoed in the Berthold Amicus Brief's critique of FINRA's role in systemic fraud.

7

C.       **Public Interest and Harm to Retail Investors Weigh Heavily in Favor of**

                  **Disclosure**

The balance under Rule 45 favors production given the profound public interest in market integrity. Thousands of retail investors, including amicus, lost fortunes due to alleged manipulation unchecked by FINRA. Social media and reports highlight widespread harm: Over 65,000 MMTLP holders faced illiquidity post-halt, with estimates of billions in collective losses from naked shorting. Amicus's $50,000 wipeout—evidenced by buys at $7-9 per share, now valueless—mirrors this crisis, compounded by ongoing disclosure barriers (see Exhibit E).

Courts prioritize transparency in securities cases; in *SEC v. Citigroup*, the Second Circuit stressed disclosure to restore investor confidence. Here, quashing would shield potential fraud, contradicting the Trustee's duty to recover for the estate. As in antitrust amicus briefs before this Court, public harm from opacity demands intervention.

FINRA's halt, purportedly protective, instead trapped positions like amicus's, enabling shorts to escape. Disclosure would expose this, aiding recovery and deterring future abuses. The Court should deny the motion to prevent further injustice to retail investors.

Moreover, FINRA's structural weaknesses amplify the public interest in disclosure. Its private SRO model invites conflicts, as seen in criticisms of captured regulation and lack of accountability. Political pressure portals exist: Immunity is statutory, vulnerable to congressional reform amid calls to abolish or overhaul FINRA (e.g., "Abolish FINRA" trends in MMTLP discussions). Compelling production here advances that reform, closing gaps in oversight, as underscored in the Berthold Amicus Brief's call to dismantle the "fraudulent theft and counterfeiting racket" enabled by FINRA.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny FINRA's motion and compel

production. The subpoenas are vital to justice for harmed investors like amicus.

DATED:    August 15, 2025
          Newport, Washington

Respectfully submitted,

Jeffrey S. Pittman, *Pro Se*
PO Box 461
Newport, WA 99156
(202) 596-7488
jeff.pittman@gmail.com

9