## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the matter of:

MOTION TO QUASH SUBPOENAS TO
NONPARTY FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.

Miscellaneous Action No.
1:25-mc-00129-LLA-GMH

## RESPONDENT CHRISTINA W. LOVATO, TRUSTEE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FED. R. CIV. P. 45(F) TRANSFER

i

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................ 3

      A.  The Trustee's Subpoenas to FINRA ........................................................... 3

      B.  FINRA's Motion to Quash the Subpoenas .................................................. 4

      C.  Other Motions to Quash the Trustee's Subpoenas ...................................... 5

III.  LEGAL STANDARD ........................................................................................... 6

IV.   ARGUMENT ........................................................................................................ 7

      A.  FINRA's Motion Should be Transferred Under FRCP 45(f) ...................... 7

            1.  Complexity, Procedural Posture, and Overlapping Issues Argue in Favor of
            Transfer ............................................................................................................. 10

            2.  Keeping FINRA's Motion to Quash in This Court Would Disrupt the Bankruptcy
            Court's Management of *In re Meta Materials* ............................................ 12

            3.  Keeping FINRA's Motion to Quash in This Court Would be Inefficient and Risks
            Inconsistent Rulings ......................................................................................... 15

            4.  There is No Burden to FINRA in Having the Bankruptcy Court Hear FINRA's
            Motion ............................................................................................................... 15

      B.  This Court May Wish to Consult With the Bankruptcy Court ................... 20

V.    CONCLUSION .................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Doe v. Am. Nat. Red Cross*,
   112 F.3d 1048 (9th Cir. 1997) ............................................................................ 17

*FDIC v. Galan-Alvarez*,
   No. 1:15-mc-00752, 2015 U.S. Dist. LEXIS 130545 (D.D.C. Sep. 4, 2015)............................ 9

In *Hood v. City of Chicago*,
   No. 1:19-mc-00123, 2019 U.S. Dist. LEXIS 180554 (D.D.C. Oct. 18, 2019)......................... 9

*In re Braden*,
   344 F. Supp. 3d 83 (D.D.C. 2018) .............................................................. *passim*

*In re Disposable Contact Lens Antitrust Litig*.,
   306 F. Supp. 3d 372 (D.D.C. 2017) ......................................................... 7, 8, 17

*\*In re Meta Materials Inc*.,
   No. 24-50792-hlb (Bankr. D. Nev.)............................................................... 1

*In re Meta Materials, Inc., Motion to Quash Non-Party Subpoena in Underlying Bankruptcy
   Case No. 3:24-50792-hlb (U.S. Bankruptcy Court for the District of Nevada),
   No. 1:25-mc-00453 (SDNY)* ................................................................. 6, 14

*\*Iyer v. Nexus Pharms., Inc*.,
   No. 23-mc-8, 2023 U.S. Dist. LEXIS 69626 (D.D.C. Apr. 21, 2023).......................... *passim*

**Statutes**

11 U.S.C. §§ 701–784............................................................................ 1, 3, 21

**Rules**

Bankruptcy Rule 2004 ......................................................................... *passim*

Bankruptcy Rule 9016 ..................................................................... 4, 11, 12, 13

Fed. R. Civ. P. 45(a)(1)(C) ......................................................................... 12

Fed. R. Civ. P. 45(f)......................................................................... *passim*

U.S. Bankruptcy Court for the District of Nevada, Local Rule 2004(c) ............................ 12, 13

## I.    INTRODUCTION

Christina W. Lovato, the Respondent in this Miscellaneous Action, files this supplemental brief pursuant to the Court's November 3, 2025 scheduling order.  Dkt. No. 17.  The order noted that "The Court has the authority to transfer this matter to the court that issued the subpoena upon consent of the parties or if it finds 'exceptional circumstances,'" citing Fed. R. Civ. P. 45(f) and this Court's decision in *Iyer v. Nexus Pharms., Inc*., No. 23-mc-8, 2023 U.S. Dist. LEXIS 69626 (D.D.C. Apr. 21, 2023) (Harvey, J.).  The Court requested additional briefing on the merits of Ms. Lovato's transfer request.  Dkt. No. 17 at 1.  For the following reasons, Ms. Lovato respectfully requests that the Court transfer this matter to Judge Gary A. Spraker of the U.S. Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), who is presiding over *In re Meta Materials Inc*., No. 24-50792-hlb (Bankr. D. Nev.) (the "Bankruptcy").  Ms. Lovato files this brief in opposition to Non-Party Financial Industry Regulatory Authority, Inc.'s Opening Brief Regarding Rule 45(f) Transfer (Dkt. No. 18) ("FINRA Br.").

As explained in Ms. Lovato's opposition to FINRA's pending Motion to Quash (Dkt. No. 14) (the "Opposition"), Ms. Lovato is the chapter 7 trustee appointed to administer the estate of Meta Materials.   The Trustee served subpoenas on FINRA and eight other parties in the Bankruptcy in March 2025 as part of a pre-litigation investigation into potential manipulation of Meta Materials stock prior to the Bankruptcy.  Opp. at 7-10.  The subpoenas direct FINRA and the other parties to produce documents and trade data to support the Trustee's investigation.  The Bankruptcy Court so-ordered the Trustee's investigation, the hiring of Special Litigation Counsel (including the undersigned), and the Trustee's Rule 2004 subpoenas to FINRA and others.  *Id*. at 11-13.

Rather than complying with the subpoenas served on it (the "Subpoenas"), FINRA chose to move to quash them.  And rather than moving to quash in the Bankruptcy, like three hedge funds

served with subpoenas have done, FINRA chose to file in this court.  Dkt. No. 1.  Doing so forced the Trustee to hire D.C.-barred counsel for this matter and appear in this Court to oppose FINRA's Motion to Quash.  FINRA and the Trustee have fully briefed the Motion to Quash, submitting almost 500 pages of briefing and supporting materials.

The Court's November 3 order pinpoints the crucial threshold question:  which court is better suited to hear FINRA's Motion to Quash.  For the reasons below, FINRA's challenge to the Subpoenas properly belongs with the Bankruptcy Court in which the Subpoenas were issued, not this Court.  FINRA's arguments for keeping the matter in this Court are flawed, as explained herein.

FINRA's Motion relies on fact- and law-intensive arguments about the Trustee's investigation, the relevance of FINRA's documents, and the federal and local Nevada bankruptcy rules.  The Bankruptcy Court, not this Court, is best qualified to evaluate those facts and rules.  The Subpoenas were issued in the Bankruptcy, they were so-ordered by the Bankruptcy Court, and they seek discovery for use by the Trustee in her court-approved investigation of potential fraud.  Judge Spraker is familiar with the topics at issue here:  the Bankruptcy Court recently heard two hours of oral argument on three other subpoena recipients' joint motion to quash, which involves overlapping issues as FINRA's Motion to Quash.  Judge Spraker made statements on the record suggesting that the Trustee's discovery is permissible, though the Court has requested supplemental briefing.  Resolving FINRA's Motion to Quash in this Court would disrupt Judge Spraker's management of the Bankruptcy and would risk inconsistent rulings.  Moreover, Nasdaq has asked an S.D.N.Y. court for leave to file a motion to quash, and other subpoena recipients could move to quash in other districts, as well.

Finally, any burden on FINRA from transferring its Motion to Quash to the Bankruptcy is minimal. FINRA is a sophisticated, well-capitalized quasi-governmental entity with ample resources. Its outside counsel in this matter, Squire Patton Boggs, is a global law firm. If this matter is transferred, FINRA's counsel, David Norris, can appear for FINRA in the Bankruptcy "as an officer of the issuing court." FRCP 45(f). Judge Spraker has been holding hearings remotely over Zoom, so FINRA's counsel should not need to appear in person in Nevada. Finally, there is no reason a D.C. federal court is better qualified to hear FINRA's legal arguments, or should do so, just because it is located in this district. The Bankruptcy Court can and should decide FINRA's Motion to Quash.

## II.    FACTUAL BACKGROUND

The Trustee incorporates by reference the Factual Background section of her Opposition. Opp. at 7-16. In short, Meta Materials, Inc. filed for chapter 7 bankruptcy liquidation in the United States Bankruptcy Court, District of Nevada in August 2024. Ms. Lovato was duly appointed by the United States Trustee as the chapter 7 trustee. Opp. at 7. The Bankruptcy has been very active in the 15 months since, with more than 2,300 docket filings.

### A.    The Trustee's Subpoenas to FINRA

As part of her statutory duties to investigate the debtor's financial affairs, the Trustee is investigating possible manipulation of Meta Materials stock by third parties in the leadup to the Bankruptcy filing. Stock manipulation may have driven down the stock price and perhaps contributed to the chapter 7 filing. Opp. at 7-9. The Bankruptcy Court granted the Trustee's application to retain Special Litigation Counsel from several law firms to "investigate potential claims and, if meritorious, pursue litigation related to suspected [Meta Materials] stock manipulation through illegal trading practices . . . ." *Id.* at 8. The Trustee also retained experts in

3

securities trading who will analyze the trade data and related information, once produced by FINRA and others, to assess whether the stock was manipulated.  The Bankruptcy Court also so-ordered Bankruptcy Rule 2004 examinations of FINRA and other parties.  *Id*. at 11.  FINRA did not object to the motion or order, nor to the Trustee's notice filed with the Bankruptcy Court advising that she intended to serve a Rule 9016 document subpoena on FINRA.  *Id*. at 11-12.

The Trustee served subpoenas on FINRA and others, seeking financial data and documents about trading in Meta Materials stock.  Decl. Exhs. I-J.[1]  ***FINRA has not opposed any of the Trustee's filings in the Bankruptcy***, including the Rule 2004 motion and the Notice of Issuance of Subpoena to FINRA.  On the contrary, FINRA served responses and objections to the Subpoenas (Decl. Ex. K) and conferred with undersigned counsel on a possible production.  Opp. at 13.  FINRA ultimately chose not to comply with the Subpoenas and moved to quash in this Court, rather than in the Bankruptcy, requiring the Trustee to hire D.C.-barred counsel and appear in this Court two thousand miles away from the Bankruptcy.  By refusing to produce highly relevant information in its possession, FINRA has obstructed the Trustee's court-approved securities fraud investigation.  FINRA is not the aggrieved party here, the Trustee is.

**B.    FINRA's Motion to Quash the Subpoenas**

FINRA filed its Motion to Quash on August 6, 2025.  Dkt. No. 1.  The Trustee filed her Opposition brief, three declarations, and 20 exhibits on September 29, 2025.  Dkt. No. 14.  The Opposition included a lengthy factual background section, necessary to educate this Court given the complicated history and this Court's lack of prior knowledge.  *Id.* at 7-16.  The Trustee asked

---

[1] References to "Decl. Ex." are exhibits to the Declaration of David D. Burnett in support of the Trustee's Opposition, Dkt. No. 14-1.  References to "Suppl. Ex." are exhibits to the Supplemental Declaration of David D. Burnett in support of this brief, filed herewith.

the Court to transfer this action to the Bankruptcy, pursuant to Fed. R. Civ. P. 45(f), though the arguments were not fleshed-out. *Id.* at 17, 43. FINRA filed its reply brief on October 27, 2025. Dkt. No. 16. Combined, the parties have submitted ***100 pages of substantive briefing and nearly 500 pages of filings***. FINRA wants this Court to resolve its Motion to Quash, effectively asking that this Court wade through nearly 500 pages of dense legal, procedural, and factual information about a discovery dispute that belongs in Nevada.

On November 3, 2025, the Court directed the parties to file supplemental briefs on FRCP 45(f), seizing on that argument even though the Trustee did not focus on it in her Opposition.

### C.    Other Motions to Quash the Trustee's Subpoenas

Citadel, Anson, and Virtu filed a joint motion to quash in the Bankruptcy on August 5, 2025. Suppl. Ex. A. Those parties are not based in Nevada, yet they moved to quash in the Bankruptcy. Like FINRA, their arguments turn on fact-intensive application of federal and local Bankruptcy rules, and their arguments overlap with FINRA's arguments in the Motion to Quash. The Trustee opposed their motion (Suppl. Ex. B), raising defenses similar to her arguments against FINRA's Motion to Quash, and movants replied (Suppl. Ex. C). Judge Spraker heard two hours of oral argument on the motion on October 30, 2025, during which he signaled that he was likely to deny their motion, siding with the Trustee on her power to seek discovery as part of an investigation, and he ordered supplemental briefing. Suppl. Ex. D (hearing transcript). FINRA hardly mentions this motion and does not acknowledge that Judge Spraker heard argument. FINRA Br. at 8.

5

Like FINRA, Nasdaq also challenged its subpoenas by filing a new action, this time in the Southern District of New York.[2]  Nasdaq filed a letter-brief on October 15, 2025, seeking a pre-motion conference before moving to quash.  Suppl. Ex. E.  Nasdaq's arguments overlap with those made by both FINRA and Citadel, Anson, and Virtu.  The Trustee opposed Nasdaq's letter-brief, asking the S.D.N.Y. court to transfer Nasdaq's motion to the Bankruptcy Court pursuant to Fed. R. Civ. P. 45(f), as in this brief.  Suppl. Ex. F.  S.D.N.Y. Magistrate Judge Henry Ricardo ordered FINRA and Nasdaq to appear for a telephonic conference on December 10, 2025.  Suppl. Ex. G.

## III.    LEGAL STANDARD

Fed. R. Civ. P. 45(f) permits this Court to transfer FINRA's motion to Judge Spraker, the "issuing court," "if the court finds exceptional circumstances."  *See also* Dkt. No. 17 at 1 (same holding).  The Committee Notes on Rules—2013 Amendment for FRCP 45 (hereinafter the "FRCP 45 Committee Notes") explain that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."  *Id.* (cited by *Iyer*, 2023 U.S. Dist. LEXIS 69626, at *13-14).  As stated by this Court in *Iyer*, this list "is not exhaustive," and "courts determining whether 'exceptional circumstances' exist to warrant transfer have considered '[case] complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'"  *Id.* at *14 (citation omitted).  *Iyer* articulates a test for FRCP 45(f) analysis:

---

[2] *In re Meta Materials, Inc., Motion to Quash Non-Party Subpoena in Underlying Bankruptcy Case No. 3:24-50792-hlb (U.S. Bankruptcy Court for the District of Nevada),* No. 1:25-mc-00453 (SDNY).

> [I]n analyzing a request to transfer a subpoena-related motion to the issuing court, the court where compliance is required should engage in a 'balancing test,' considering 'on one hand . . . the burden on the party responding to the subpoena in the event of a transfer, and on the other hand . . . factors such as judicial economy, docket management, and the risk of inconsistent rulings.'

*Id.* (quotations and citation omitted).  *See also In re Disposable Contact Lens Antitrust Litig*., 306 F. Supp. 3d 372, 376 (D.D.C. 2017) (Brown Jackson, J.) ("[C]ourts weighing transfer under Rule 45(f) must carefully balance the 'interest of the nonparty in obtaining local resolution of [a subpoena-related] motion' against the interest 'in ensuring the efficient, fair and orderly progress of ongoing litigation before the issuing court.'") (citation omitted).

## IV.    ARGUMENT

Transferring FINRA's Motion to Quash to the Bankruptcy Court is warranted by "exceptional circumstances" under Fed. R. Civ. P. 45(f), as elaborated upon by the FRCP 45 Committee Notes and *Iyer*.

### A.    FINRA's Motion Should be Transferred Under FRCP 45(f)

FINRA's Motion to Quash should be transferred to the Bankruptcy Court "to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." FRCP 45 Committee Notes.  Judge Spraker is already hearing Citadel, Anson, and Virtu's joint motion to quash, and already signaled he is likely to deny their motion, as long as there is a link between the requested stock trading data and a possible claim by Meta Materials, the debtor.  Suppl. Ex. D, Tr. at 77:21-78:4.

Nasdaq also moved to quash, albeit in the S.D.N.Y.  If this Court were to retain and decide FINRA's Motion to Quash, that would disrupt Judge Spraker's management of the underlying

7

Bankruptcy, including the other subpoenas and the Trustee's court-approved investigation of potential Meta Materials stock manipulation.

FINRA spuriously argues that there is no "underlying litigation" here (FRCP 45 Committee Notes, cited by *Iyer*, 2023 U.S. Dist. LEXIS 69626, at *13-14), and thus FRCP 45(f) transfer is inapplicable, because the Trustee has not filed litigation (or adversary proceedings) against any party for securities fraud.  FINRA Br. at 2, 4.  But the "underlying litigation" here obviously refers to the *In re Meta Materials* Bankruptcy in which the Subpoenas were approved and served.  In any case, any litigation filed by the Trustee in the future related to stock manipulation would almost certainly be filed in the Bankruptcy, the same "underlying litigation."

Courts in this district regularly transfer subpoenas to issuing courts presiding over the underlying cases, pursuant to Fed. R. Civ. P. 45(f).  For example, in *Iyer*, this Court granted a request to transfer a subpoena recipient's motion to quash to the Northern District of Illinois, which was hearing the underlying litigation.  The Court found that the "burden of transfer on [the subpoena recipient] is slight," in part, because the party opposing transfer was represented by an international law firm, "Rule 45 itself allows an attorney authorized to practice in the compliance court to appear in the issuing court,"[3] and the issuing court holds remote hearings.[4]  In *In re Disposable Contact Lens Antitrust Litigation*, then-Judge Ketanji Brown Jackson transferred a motion to enforce a subpoena to avoid substantial disruption of the underlying litigation, because

---

[3] Fed. R. Civ. P. 45(f):  "[I]f the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court.") (cited by *Iyer*, 2023 U.S. Dist. LEXIS 69626, at *18).

[4] "If the motion is transferred, judges are encouraged to permit telecommunications methods to minimalize the burden a transfer imposes on nonparties, if it is necessary for attorneys admitted in the court where the motion is made to appear in the court in which the action is pending."  FRCP 45 Committee Notes (cited by *Iyer*, 2023 U.S. Dist. LEXIS 69626, at *18-19).

the burden of respondent was "negligible," and because the issuing court was best positioned to address the merits.  306 F. Supp. 3d at 376.  In a third case, the court found that "transfer is appropriate to avoid disrupting the underlying litigation," in part "to allow the court that is most familiar with [movant's] core arguments—[here, the Bankruptcy Court]—to evaluate the importance of the documents sought in the subpoenas at issue to those core arguments."  *In re Braden*, 344 F. Supp. 3d 83, 91, 95 (D.D.C. 2018).

FINRA cites only two decisions from this district where courts denied motions to transfer (FINRA Br. at 2, 4), both unreported and both clearly distinguishable.[5]  In *Hood v. City of Chicago*, No. 1:19-mc-00123, 2019 U.S. Dist. LEXIS 180554, at *7-8 (D.D.C. Oct. 18, 2019), the court found that the issues were "neither complicated nor so bound up with prior rulings in the underlying case," and the motion to quash was "isolated" and would not affect other discovery.  Here, in contrast, FINRA's Motion to Quash, like the Citadel and Nasdaq motions, is very complicated and is bound up with the Trustee's investigation, the Bankruptcy Court's prior orders, and the pending Citadel motion there.  In *FDIC v. Galan-Alvarez*, No. 1:15-mc-00752, 2015 U.S. Dist. LEXIS 130545, at *3 (D.D.C. Sep. 4, 2015), the court found that "the legal and factual issues presented by the motion to quash are not particularly complex and do not require deep familiarity with the underlying lawsuit," unlike here.  FDIC's motion to quash in that case presented "a legal question severable from the merits of the underlying litigation," unlike here, where FINRA's Motion to Quash asks this Court to decide fact-intensive issues related to the Trustee's investigation, her potential securities claims, potential wrongdoers, and the relevance of FINRA's

---

[5] FINRA's Brief also cites decisions from several other districts, which is surprising given the wealth of caselaw in this district on FRCP 45(f) transfer.  The Trustee's analysis herein focuses on caselaw from this district.

documents.  *See generally* Dkt. No. 1.  *Galan-Alvarez* also involved depositions of witnesses located in D.C. and the FDIC requested judicial supervision of the depositions in D.C.  *Id.* at *8. Here, the Trustee seeks documents from FINRA, not deposition testimony (unless a custodian of records deposition is necessary to learn about FINRA's document management).

1.    <u>Complexity, Procedural Posture, and Overlapping Issues Argue in Favor of Transfer</u>

In *Iyer*, this Court explained that "courts determining whether 'exceptional circumstances' exist to warrant transfer have considered '[case] complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'"  2023 U.S. Dist. LEXIS 69626, at *14 (internal citation omitted).  Here, each of those factors justify transfer to the Bankruptcy Court.

The *Meta Materials* Bankruptcy is exceptionally complex, with more than 2,300 docket entries and counting, as are the factual and legal issues implicated by the Trustee's Subpoenas to FINRA—as reflected by the parties' 100 pages of substantive briefing on FINRA's Motion to Quash.  The procedural history underlying the Subpoenas is lengthy and centers on the Bankruptcy:  the Bankruptcy Court approved the Trustee's investigation of stock manipulation, so-ordered the Trustee's Rule 2004 subpoenas, received notice of the Trustee's subpoenas, and so-ordered two protective orders between the Trustee and other subpoena recipients (which are similar to the proposed protective order that the Trustee sent to FINRA repeatedly).  Opp. at 7-12.  *See In re Braden*, 344 F. Supp. 3d at 94 ("Transfer is also necessary to allow the court that issued the protective order to determine the impact of that order on [movant's] . . . privilege arguments."  Judge Spraker recently heard two hours of oral argument on the motion to quash filed by Citadel,

10

Anson, and Virtu, during which he signaled support for the Trustee's power to seek this third-party discovery.  Suppl. Ex. D (hearing transcript).

Judge Spraker has been a Bankruptcy Judge for the District of Alaksa since 2012 and has served as a visiting judge in Nevada since 2013.  Though the *Meta Materials* Bankruptcy was recently reassigned to him, respectfully, he is better-suited than this Court to evaluate the facts of this case and the bankruptcy rules at issue.  FINRA's Motion to Quash relies on Bankruptcy Rules 2004 and 9016 as well as Nevada's Local Rules of Bankruptcy Practice 2004.  Motion to Quash at 11-12.

There is also overlap in "the issues pending before, or already resolved by, the issuing court."  For example, FINRA argues that the Subpoenas are impermissible because the Bankruptcy Court's local rules do not permit document requests under Local Rule 2004.  *Id.* at 10-11.  Citadel, Anson, and Virtu raised the same argument in their motion to quash in the Bankruptcy (Suppl. Ex. A at 9-10).  During the oral argument on that motion, the Bankruptcy Court suggested he was likely to deny their motion to quash, assuming that the requested third-party discovery of Meta Materials trade data could be relevant to a legal claim held by the debtor.[6]  That preliminary ruling is directly relevant to FINRA's argument that the Subpoenas are unduly burdensome and seek irrelevant information.  Dkt. No. 1 at 8-21.  At the October 30 argument, Judge Spraker also made preliminary oral rulings on the meaning of Local Rule 2004(c),[7] the same issue raised by FINRA.

---

[6] Judge Spraker stated that if Citadel, Anson, and Virtu possess information about Meta Materials stock transactions, and "If those transactions might lead to a cause of action held by the estate, that's all I need at this point.  So . . . to the extent that there is any viable cause of action out there for the estate as the estate, then I think, you know, some preliminary use of pre-discovery . . . whether it is [Bankruptcy Rule] 2004 or [FRCP] 45 . . . is likely going to be warranted."  Suppl. Ex. D., Tr. at 77:21-78:4.

[7] On whether Local Rule 2004(c) "modifies Federal Rule of Bankruptcy Procedure 2004 to preclude any document production within the scope of 2004," as Judge Spraker put it, he does not

Dkt. No. 1 at 10-11.  Judge Spraker discussed the permissible scope of discovery for the Trustee's pre-litigation investigation,[8] which FINRA also addresses, arguing that the Trustee's Subpoenas impermissibly seek information about unfiled claims.  Dkt. No. 1 at 9-10.  The Bankruptcy Court also addressed the circumstances under which it issued the Rule 2004 orders (Supp. Ex. D, Tr. at 34:11-35:5), which FINRA also commented on.  Dkt. No. 1 at 11.

Judge Spraker also ordered supplemental briefing on Citadel, Anson, and Virtu's motion to quash (Supp. Ex. D, Tr. at 73:22-75:12), so the Bankruptcy Court will be getting even more deeply involved in the legal and factual issues surrounding the third-party subpoenas, and the motion will not be resolved for months.

**2.**      **Keeping FINRA's Motion to Quash in This Court Would Disrupt the Bankruptcy Court's Management of *In re Meta Materials***

The FRCP 45 Committee Notes state that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."  Judge Spraker is already deciding the similar motion to quash brought by Citadel, Anson, and Virtu (Suppl. Ex. A), so it would disrupt the Bankruptcy Court for this Court to decide overlapping issues in FINRA's Motion to Quash.  Both motions arise from the

---

think so.  Rather, the local rule "means that the Rule 2004 order cannot compel the production of documents, that you have to go through a subpoena, as envisioned by Federal Bankruptcy Rule 2004.  I do not believe that District of Nevada precludes any obtaining of documents through any 2004 process."  He described Citadel's argument on this topic as an "overreach."  Suppl. Ex. D, Tr. at 19:16-20:13.  The court later observed that Local Rule 2004(c) provides that "Production of documents may, however, be obtained via subpoena, as provided by Federal Rule of Civil Procedure 45(a)(1)(C), as adopted by Federal Bankruptcy Rule 9016."  *Id.*, Tr. at 29:2-8.

[8] Judge Spraker:  "[W]hen, if at all, does a use of [Rule] 2004 change from the more generic information gathering, the wide net, into litigation preparation and when, if ever, that becomes improper under [Rule] 2004."  Supp. Ex. D, Tr. at 51:22-52:1.

Bankruptcy Court's prior orders approving of the Trustee's stock manipulation investigation and subpoenas. Both motions turn on fact-intensive application of Federal Rules of Bankruptcy Procedure 2004 and 9016, as well as Local Rule 2004(c). Both briefs argue that the subpoenas are burdensome, not authorized by the bankruptcy rules, and seek irrelevant and privileged information. *Compare* Dkt. No. 1 (Motion to Quash) *with* Suppl Ex. A.

The Trustee opposed the Citadel, Anson, and Virtu joint motion in September 2025 (Suppl. Ex. B), raising arguments similar to those in her opposition to FINRA's Motion to Quash (Dkt. No. 14). For example, in both briefs the Trustee argues that the challenged subpoenas comply with the bankruptcy rules, they seek permissible pre-litigation discovery to support the Trustee's investigation, they seek highly relevant information, and the requests are not burdensome. Citadel, Anson, and Virtu filed their reply in October 2025 (Suppl. Ex. C).

Keeping FINRA's Motion to Quash in this Court would also disrupt the Bankruptcy Court's management of *In re Meta Materials* because the Bankruptcy encompasses the Trustee's Rule 2004 pre-litigation investigation of potential Meta Materials stock manipulation. FINRA's refusal to produce relevant information in its possession is stalling and undermining the Trustee's court-authorized examination by withholding information which the Trustee and her experts need. If this Court retains FINRA's Motion to Quash and grants its motion, doing so would further obstruct the Trustee's investigation, which is under this Court's purview. It does not matter that the Trustee's stock manipulation investigation is "just one part of the bankruptcy," as FINRA describes it. FINRA Br. at 4. This investigation is an *important* part of the Bankruptcy, since "A successful litigation outcome [if the Trustee filed an adversary proceeding against wrongdoers, after finishing an analysis using information from FINRA and other parties] could result in tens of millions of dollars in recovery, providing much-needed funds to the Estate, creditors and equity

holders." Opp. at 42 fn. 50. Nor does it matter that the Trustee has subpoenaed eight other non-parties (FINRA Br. at 4), because the discovery the Trustee is requesting from FINRA is unique and cannot be obtained from those other parties.

Transfer may also be warranted where "the same issues are likely to arise in discovery in many districts." FRCP 45 Committee Notes. Nasdaq filed a motion to compel in the Southern District of New York in October (*In re Meta Materials*, No. 1:25-mc-00453 (SDNY)), so the Trustee is currently forced to oppose motions to quash in the Bankruptcy, this Court, and the S.D.N.Y. In its letter-brief seeking a pre-motion conference before moving to quash (Suppl. Ex. E), Nasdaq argued that the Subpoenas are beyond the scope of Bankruptcy Rule 2004 and Nevada's local bankruptcy rules. *Id.* at 3-4. These arguments are similar to FINRA's arguments for moving to quash (Dkt. 1 at 10-11) and Citadel, Anson, and Virtu's arguments (Suppl. Ex. A at 9-16). Nasdaq also argues that the Subpoenas are overbroad, irrelevant, and unduly burdensome. Suppl. Ex. E at 4-5. FINRA makes the same arguments (Dkt. No. 1 at 8-21), as did Citadel, Anson, and Virtu (Suppl. Ex. A at 16-20). The Trustee opposed Nasdaq's letter-brief, asking the S.D.N.Y. court to transfer Nasdaq's motion to the Bankruptcy Court pursuant to Fed. R. Civ. P. 45(f), raising similar arguments as those herein. Suppl. Ex. F. S.D.N.Y. Magistrate Judge Henry Ricardo scheduled a telephonic conference on December 10, 2025. Suppl. Ex. G. At the hearing, the Trustee will repeat her request that the S.D.N.Y. court transfer Nasdaq's dispute to the Bankruptcy pursuant to FRCP 45(f).

The Trustee served subpoenas on several other parties, too, any of whom could move to quash in other districts, so "the same issues" could arise in additional districts. FRCP 45 Committee Notes. The DTCC is headquartered in New Jersey, Charles Schwab & Co. is headquartered in Texas, and TradeStation Securities is headquartered in Florida. The DTCC has

stopped communicating and cooperating with the Trustee, and it might move to quash the subpoenas in New Jersey. Schwab and TradeStation are continuing to negotiate productions with the Trustee, but they could stop cooperating, like FINRA and other parties.

3.    **Keeping FINRA's Motion to Quash in This Court Would be Inefficient and Risks Inconsistent Rulings**

*Iyer* articulates a "balancing test" for FRCP 45(f) analysis, balancing "the burden on the party responding to the subpoena in the event of a transfer" with "factors such as judicial economy, docket management, and the risk of inconsistent rulings." 2023 U.S. Dist. LEXIS 69626, at *14 (internal quotations and citation omitted). These factors all favor transferring FINRA's Motion to Quash to the Bankruptcy. It would be less efficient for this Court to decide FINRA's motion, since the Bankruptcy Court is already deciding Citadel, Anson, and Virtu's joint motion. Transferring FINRA's matter to the Bankruptcy Court avoids the risk of inconsistent rulings, since this Court and Judge Spraker could decide the pending motions to quash differently. Transferring FINRA's matter also allows Judge Spraker to manage his docket better, given the motion to quash already pending there. Judge Spraker can choose when and how to hear FINRA's Motion to Quash.

4.    **There is No Burden to FINRA in Having the Bankruptcy Court Hear FINRA's Motion**

The FRCP 45 Committee Notes state that "The prime concern [in transferring a subpoena to the issuing court] should be avoiding burdens on local nonparties subject to subpoenas," and in *Iyer*, this Court held that a court should consider the "burden on the party responding to the subpoena in the event of a transfer." 2023 U.S. Dist. LEXIS 69626, at *14. Here, any burden on FINRA from having its Motion to Quash transferred to the Bankruptcy would be insignificant.

*First*, FRCP 45(f) provides that when a motion to quash a subpoena is transferred to the issuing court, "if the attorney for a person subject to a subpoena is authorized to practice in the

15

court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court." In *Iyer*, this Court cited this rule as one reason for granting a motion to transfer. 2023 U.S. Dist. LEXIS 69626, at *18. Here, FINRA's counsel, Mr. Norris, is admitted in D.C., where he filed the Motion to Quash.[9] FRCP 45(f) provides that he may appear for FINRA on its Motion to Quash in the Bankruptcy. If there is any doubt, Mr. Norris could apply for admission *pro hac vice* in the Bankruptcy Court, associated with Nevada counsel, like the undersigned has done. Lead counsel for Citadel, Anson, and Virtu are likewise not Nevada-barred attorneys, but have partnered with Nevada counsel, and their motion to quash lists the lead counsel as "*pro hac vice* forthcoming." Suppl. Ex. A at 20-21.

*Second*, as in *Iyer*, "there is a strong possibility that [FINRA's] counsel will not even need to leave Washington, D.C. to litigate the motion." 2023 U.S. Dist. LEXIS 69626, at *19. Judge Spraker regularly holds virtual Zoom hearings in the Bankruptcy: he held a virtual Zoom hearing on Citadel, Anson, and Virtu's motion to quash (*In re Meta Materials*, Dkt. No. 2135, order on Zoom hearing), on two creditors' motions (*id.*, Dkt. No. 2194, same), and he is holding a Zoom hearing on two compensation applications (*id.*, Dkt. No. 2269, same). No parties appeared in person for the Zoom hearings. We can assume that a hearing on FINRA's Motion to Quash in the Bankruptcy Court would also be virtual.[10] *See also In re Braden*, 344 F. Supp. 3d at 95 (transfer will not impose undue burden, in part, given the issuing court's telephonic hearings).

---

[9] https://www.squirepattonboggs.com/en/professionals/n/norris-david-s (last accessed Nov. 28, 2025).

[10] FINRA cites one court opinion for the proposition that it "should not have to travel to issuing courts across the United States to litigate subpoena disputes" (FINRA Br. at 5), but FINRA's counsel almost certainly will not have to travel to litigate its motion in the Bankruptcy. In any event, that opinion is from the Ninth Circuit, from 1997, and it concerns a "government employee"

*Third*, FINRA's Motion to Quash has already been fully briefed.  FINRA cites the holding in *In re Disposable Contact Lens Antitrust Litigation* that the respondent would not be unduly burdened by transfer because "subpoena recipient had 'already submitted a full set of briefs on the subpoena issues in the [issuing] court.'"  FINRA Br. at 6, citing *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 376.  That holding actually supports the Trustee, because FINRA and the Trustee could refile the same briefs in the Bankruptcy (with any modifications to caselaw or other revisions they see fit to make).  *See In re Braden*, 344 F. Supp. 3d at 95 ("[T]ransferring a motion to the jurisdiction where the underlying litigation is pending requires few, if any, modifications of the written submissions, [and] does not rise to the level of unfair prejudice.").

*Fourth*, like in *Iyer*, FINRA's counsel is an international law firm with hundreds of lawyers and many offices, so they are eminently qualified to litigate FINRA's motion in the Bankruptcy. Squire Patton Boggs describes itself as "a full-service global law firm," "one of the strongest and most diverse law firms in the world."  https://www.squirepattonboggs.com/en (last accessed Dec. 2, 2025).  The firm has 40+ offices across four continents, with "1,500+ specialist practicing lawyers."  *Id.*  It has 16 offices in the United States.  The firm states that "We have one of the largest, most experienced and respected global restructuring and insolvency practices of any law firm, with more than 130 experienced lawyers in 36 offices in 15 countries collaborating on

---

and not a sophisticated entity.  *Id.,* citing *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997).

domestic and cross-border restructuring matters."[11]  Mr. Norris, FINRA's counsel of record, is listed as a partner in the firm's D.C., New York, and Phoenix offices.[12]

*Fifth*, similarly, FINRA is a sophisticated quasi-governmental entity with enormous financial and personnel resources, "part of the Exchange Act's comprehensive plan for regulating the national securities markets."  FINRA Br. at 5.  It is "funded by member firms and other sources," and it has 3,250 member firms with more than 625,000 registered representatives. https://www.finra.org/about/how-finra-serves-investors-and-members (last accessed Dec. 2, 2025).  Its net revenue in 2024 was $1.6 billion.  https://www.finra.org/sites/default/files/2025-06/2024-finra-annual-financial-report.pdf (last accessed Dec. 2, 2025).  FINRA has the resources to comply with the Subpoenas, whether in this Court or the Bankruptcy Court.

*Sixth*, FINRA did not oppose the Bankruptcy Court's order authorizing the Trustee's Rule 2004 subpoena of FINRA.  Opp. at 11-12.  FINRA also did not challenge the Bankruptcy Court's jurisdiction, nor the Nevada venue, at any time during the five-month period between receipt of the Subpoenas and filing its Motion to Quash.  *Id.* at 12-13.  FINRA did not signal an objection to resolution in the Bankruptcy Court until it initiated this miscellaneous action.

*Seventh*, conversely, FINRA has little or no interest in "obtaining local resolution of the motion" (FRCP 45 Committee Notes) before this Court, because this Court has no prior knowledge of the Bankruptcy and is surely less familiar with the federal and local bankruptcy rules at issue. FINRA might prefer to keep its dispute in this Court for forum-shopping reasons, seeking

---

[11]  https://www.squirepattonboggs.com/en/services/practice-areas/restructuring--insolvency  (last accessed Dec. 2, 2025).

[12]  https://www.squirepattonboggs.com/en/professionals/n/norris-david-s  (last accessed Dec. 2, 2025).

protection against discovery obligations from a sympathetic home court, but that is no reason to accede to its wishes. FINRA notes that the parties' briefs on its Motion to Quash, and FINRA's supplemental brief, rely on caselaw from this district and the D.C. Circuit Court of Appeals. FINRA Br. at 6. But that is only because FINRA filed its motion to quash in this district, so FINRA's argument is circular and deserves no weight. The parties would likely have cited Nevada caselaw, as the parties did in briefing Citadel, Anson, and Virtu's joint motion (Suppl. Exhs. A-C), if FINRA's motion was filed in the Bankruptcy Court. The Trustee's citation to D.C. caselaw in her Opposition was advisable given the venue, not a concession that the Motion to Quash should be heard in this Court.

*Eighth,* it is unnecessary to ask this Court to resolve FINRA's Motion to Quash solely because of this Court's D.C. location. FINRA argues that its Motion to Quash "involves important issues to FINRA's self-regulatory responsibilities" (FINRA Br. at 7), like whether its materials are privileged or otherwise protected against disclosure, but the Bankruptcy Court is equally capable of resolving such topics. In any event, FINRA's arguments based on its self-regulatory status are just several among FINRA's overall arguments for moving to quash. They fall within the broader context of the Subpoenas, the Bankruptcy, the Trustee's investigation, and FINRA's Motion to Quash, and such arguments should not dictate the appropriate venue for the motion.

*Ninth*, FINRA's burden arguments do not withstand scrutiny. FINRA complains that it receives many subpoenas but does not substantiate that claim. FINRA Br. at 2, 5. Even if true, that is no reason to allow FINRA to force the parties issuing subpoenas, like the Trustee here, to come to D.C. to enforce their subpoenas when FINRA refuses to comply. FINRA also states that it "has no claim or interest in the underlying bankruptcy proceeding," and thus should not have to litigate there (FINRA Br. at 5), but having a "claim or interest" in the underlying litigation is not

part of the FRCP 45(f) or *Iyer* criteria.  In any case, FINRA **does have an interest in the Bankruptcy**:  it was served with two Subpoenas in the Bankruptcy, issued by the Trustee pursuant to the Bankruptcy Court's orders, and FINRA wishes to be shielded from any obligation to comply with those Subpoenas.

### B.    This Court May Wish to Consult With the Bankruptcy Court

Finally, the FRCP 45 Committee Notes, in discussing transfer of subpoenas to the issuing court, observe that "Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions." This Court may find it useful to discuss these matters with Judge Spraker.  *See, e.g., In re Braden*, 344 F. Supp. 3d at 95 ("As suggested in the 2013 Advisory Committee Note to Federal Rule 45(f), this Court has consulted with [the issuing court], who does not disagree with the Court's assessment that the complexity and posture of the underlying case and the interests of judicial efficiency would be best served by transferring the subpoena disputes" to the issuing court).

## V.    CONCLUSION

For the reasons stated herein, the Trustee respectfully requests that the Court (1) transfer FINRA's Motion to Judge Gary A. Spraker of the U.S. Bankruptcy Court for the District of Nevada, who is presiding over *In re Meta Materials*, for further proceedings in that court; and (2) administratively close the above-captioned matter before this Court.

Dated: December 2, 2025

Respectfully submitted,

/s/ *David D. Burnett*
David D. Burnett (DC Bar No. 1720119)
**SCHNEIDER WALLACE**

20

**COTTRELL KIM LLP**
1050 30th Street NW
Washington, DC 20007
Tel.: (415) 421-7000
dburnett@schneiderwallace.com

*Counsel for Respondent Christina W. Lovato,*
*chapter 7 trustee for the estate of Meta Materials,*
*Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document is being served this day on counsel for FINRA via the automatic notice of filing sent by the CM/ECF filing software. A paper copy of the foregoing document is being served this day on Jeffrey Stephen Pittman—the *pro se* movant who filed an *Amicus Curiae* brief, with leave of Court, in support of denying FINRA's Motion to Quash (Dkt. No. 13)—via mail to his address of record, PO Box 461, Newport, WA 99156, and via email to his email address listed in his filings, jeff.pittman@gmail.com. LCvR 5.4(d).

Dated: December 2, 2025

/s/ *David D. Burnett*
David D. Burnett (DC Bar No. 1720119)