# EXHIBIT A

1   Ryan J. Works (NSBN 9224)
    Jimmy F. Dahu (NSBN 17061)
2   McDONALD CARANO LLP
    2300 West Sahara Avenue, Suite 1200
3   Las Vegas, Nevada 89102
    Telephone: (702) 873-4100
4   rworks@mcdonaldcarano.com
    jdahu@mcdonaldcarano.com
5
    *Attorneys for Non-Party Citadel Securities LLC*
6
    Michael R. Hogue, Esq. (NSBN 12400)
7   10845 Griffith Peak Drive, Suite 600
    GREENBERG TRAURIG, LLP
8   Las Vegas, NV 89135
    Telephone: (702) 938-6909
9   Email: hoguem@gtlaw.com
10  *Attorneys for Non-Party Anson Funds Management LP*
11  Jarrod L. Rickard, Esq. (NSBN 10203)
    SEMENZA RICKARD LAW
12  10161 Park Run Dr., Ste. 150
    Las Vegas, Nevada 89145
13  Telephone: (702) 835-6803
    Email: jlr@semenzarickard.com
14
    *Attorneys for Non-Party Virtu Financial, LLC*
15
                UNITED STATES BANKRUPTCY COURT
16
                      DISTRICT OF NEVADA
17

18  In re                                    Case No.: 24-50792-hlb
                                             Chapter 7
19  META MATERIALS, INC.,
                                             **NON-PARTY CITADEL SECURITIES
20              Debtor.                       LLC, ANSON FUNDS MANAGEMENT LP,
                                             AND VIRTU FINANCIAL, LLC'S
21                                           MEMORANDUM OF LAW IN SUPPORT
                                             OF MOTION TO QUASH AND/OR FOR A
22                                           PROTECTIVE ORDER**

23                                           **Hearing Date: TBD**
                                             **Hearing Time: TBD**
24

25

26

27

28

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ........................................................................ 1

II.  JURISDICTION ....................................................................................... 3

III.  BACKGROUND ....................................................................................... 3

    A.  Meta Materials Files For Bankruptcy And Retains Special Litigation Counsel ........... 3

    B.  The Trustee's Targets and Claims.................................................... 4

    C.  The Trustee's Overbroad & Duplicative Subpoenas ........................... 5

      1. Subpoenas to Non-Party Citadel Securities ................................ 5

      2. Subpoenas to Non-Party Anson ............................................... 6

      3. Subpoenas to Non-Party Virtu ................................................. 7

IV.  ARGUMENT............................................................................................. 8

    A.  Legal Standards ....................................................................... 8

    B.  The Rule 2004 Subpoenas Should Be Quashed And/Or A Protective Order Issued Because They Far Exceed Rule 2004's Limited Purpose................................ 9

      1. The Document Requests In The Rule 2004 Subpoenas Are Both Procedurally Improper And Unauthorized ................................................... 9

      2. The Rule 2004 Subpoenas Should Be Quashed Because They Lack Any Connection To The Debtor's Estate, Assets, Or Current Financial Condition....................... 11

      3. The Trustee's Conduct Confirms She Has Already Identified The Non-Parties As Litigation Targets, Further Highlighting The Impropriety Of The Rule 2004 Subpoenas .. 13

    C.  The Rule 45 Subpoenas Should Be Quashed Because They Are Overbroad, Irrelevant, And Unduly Burdensome ................................................... 16

      1. The Requests In The Rule 45 Subpoenas Are Facially Overbroad........................... 16

      2. The Trustee's Failure To Articulate Her Discovery Need Is Dispositive .................. 17

      3. The Subpoenas Impose An Extraordinary And Disproportionate Burden On Non-Parties.................................................................... 18

V.  CONCLUSION ......................................................................................... 20

Non-Parties Citadel Securities LLC ("Citadel Securities"), Anson Funds Management LP ("Anson"), and Virtu Financial, LLC ("Virtu," and collectively, the "Non-Parties") respectfully move to quash and/or for a protective order (the "Motion") as to the six operative[1] subpoenas served on them by Trustee Christine Lovato (the "Trustee") of Meta Materials, Inc. (the "Debtor"): one subpoena each for a Rule 2004 Examination ("Rule 2004 Subpoenas") and one subpoena each to Produce Documents, Information, and to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) ("Rule 45 Subpoenas," and with the Rule 2004 Subpoenas, the "Subpoenas"). This Motion is supported by the following Memorandum of Points and Authorities and the exhibits attached thereto; the pleadings on file in the above-captioned case, which the Non-Parties respectfully request the Court to take judicial notice of under FED. R. EVID. 201; and the declarations of counsel filed contemporaneously herewith[2] pursuant to Local Rule 7037(a) discussing counsel's good faith, yet unsuccessful, attempts to resolve this matter via multiple meet and confers with the Trustee regarding the Subpoenas.

## I. **PRELIMINARY STATEMENT**

The Non-Parties respectfully move to quash and/or for a protective order as to each of the six Subpoenas served on them by the Trustee.

As an initial matter, the Rule 2004 Subpoenas should be quashed because they contain document requests not only in direct violation of Local Rule 2004(c) but also in violation of the Court's own Orders in this case. Local Rule 2004(c) expressly provides that "[p]roduction of documents may not be obtained via an order under FED. R. BANKR. P. 2004." Moreover, this Court, when granting the *ex parte* motions to issue Rule 2004 Subpoenas to Non-Parties Citadel Securities and Anson, declined to authorize the document requests proffered in the Trustee's proposed orders. *Compare* ECF Nos. 1614 and 1616 *with* 1635 and 1686. In the case of Non-Party Virtu, the Trustee did not even include document requests in her proposed order, *see* ECF No. 1632, but nonetheless

---

[1] The operative Rule 2004 Subpoenas and Rule 45 Subpoenas are attached hereto as Exhibits 1-2 (Citadel Securities), Exhibits 3-4 (Anson), and Exhibits 5-6 (Virtu). The Non-Parties refer to these subpoenas as "operative" in that the Trustee has served "replacement" (yet still improper) subpoenas to Anson and Virtu to fully replace her prior subpoenas.
[2] Separately filed pursuant to Local Rule 9014(c)(2).

1    proceeded to improperly issue a Rule 2004 Subpoena that purported to request documents.

2            More fundamentally, the Trustee has not—and cannot—establish a permissible proper

3    purpose (much less good cause) to justify the Rule 2004 Subpoenas.  First, Rule 2004 permits

4    examinations that "relate *only* to" the acts, conduct, or property or to the liabilities and financial

5    condition of the debtor, or to any matter that may affect the administration of the debtor's estate.

6    The purpose of a Rule 2004 subpoena is to permit the court to gain a clear picture of the condition

7    and whereabouts of the bankrupt's estate.  But the Trustee's Subpoenas were issued for a wholly

8    improper purpose: to advance what she admits is "pre-litigation discovery" for alleged market

9    manipulation claims against already identified potential defendants as part of a plan to "provide

10   recovery for the shareholders"—not the Debtor. FED. R. BANKR. P. 2004(b) (emphasis added); ECF

11   No. 98-1 at 3.  When asked directly during the meet and confer process, the Trustee's counsel refused

12   to answer questions about the Subpoenas, claiming the information was protected by purported

13   litigation strategy and the work product doctrine.  This striking response is dispositive, as it is a clear

14   admission that the Subpoenas serve a litigation purpose outside the investigatory function of Rule

15   2004.  Second, courts have been clear that Rule 2004 may also not be used beyond the point where,

16   as here, the Trustee already has sufficient information to file any complaint and consistently reject

17   such misuse of Rule 2004: use of the Rule is "not permitted" where a party "has identified [the

18   recipient] as a litigation target and is seeking to utilize the liberal discovery available under Rule

19   2004 to further this ultimate litigation." *In re Transmar Commod. Grp., Ltd.*, No. 16-13625-JLG

20   (Bankr. S.D.N.Y.), June 9, 2017 Hr'g Tr. (ECF No. 367) ("Transmar Transcript") at 22:7-11.

21           The Trustee's failure to establish good cause for the Rule 2004 Subpoenas is further

22   evidenced by her counsel's inability to articulate any legitimate basis for the information sought.

23   When questioned about fundamental aspects—such as the relevance of requested documents or

24   justification for the four-year discovery period—counsel initially either refused to answer or

25   admitted they "did not know," and now refuses to answer on the basis that those questions intrude

26   on "litigation strategy."  Compounding this impropriety, the Subpoenas would impose substantial

27   burdens on the Non-Parties—financial institutions with no direct relationship to the Debtor—who

28   are being asked to compile, review, and produce extensive trading records, proprietary business

2

information, and "all communications" about those records, spanning four years, all for improper purposes that go far beyond the permissible bounds of Rule 2004.

The Rule 45 Subpoenas are likewise improper for multiple independent reasons. As a threshold matter, the Trustee failed to comply with Local Rule 9016(b)'s requirement to file the Rule 45 Subpoenas "concurrently with the[ir] issuance and service," which is basis alone to quash these Subpoenas.

Beyond this procedural defect, the Rule 45 Subpoenas are also facially overbroad, unduly burdensome, and entirely disproportionate to any purported relevance. The Trustee's sweeping requests for four years of trading records and "all communications" related to those records will not assist the Trustee in locating the Debtor's assets or administering its estate, but will instead impose a significant undue burden on the Non-Parties. Critically, the Trustee has failed to articulate any legitimate connection between its requests and the Debtor's current financial condition or the administration of the bankruptcy estate. The Non-Parties should not be forced to bear substantial expense and time responding to far-reaching demands so that the Trustee can trawl for documents supporting litigation against those very same Non-Parties for the benefit of shareholders rather than the estate.

This Court should reject the Trustee's improper tactics and quash the Subpoenas in their entirety and/or issue a protective order shielding the Non-Parties from undertaking anything further with respect to the Subpoenas.

## II.    JURISDICTION

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334. Venue in this Court is proper under 28 U.S.C. § 1409. Pursuant to Local Rule 9014(b), the Non-Parties consent to the Court's entry of final judgment if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III.   BACKGROUND

### A.    Meta Materials Files For Bankruptcy And Retains Special Litigation Counsel

On August 9, 2024, the Debtor filed for Chapter 7 bankruptcy. ECF No. 1. Christina Lovato

was appointed Trustee on August 15, 2024.  ECF No. 14.  Within weeks, the Trustee began assembling a litigation team, ultimately retaining four separate law firms as "special counsel."  ECF Nos. 98, 105, 1956.

The scope and purpose of these engagements leave no doubt about special counsel's end game here: the Trustee hired Christian Attar and Kasowitz Benson Torres LLP specifically to pursue litigation for alleged stock manipulation.  According to the Trustee's own filing, Christian Attar had already conducted a "preliminary investigation" before the bankruptcy that purportedly uncovered a fraud scheme involving "persistent and extensive spoofing" through "millions of 'Baiting Orders.'"  ECF No. 98 at 2, 98-1 at 2.  The special counsel's pre-petition investigation was purportedly comprehensive, allegedly identifying:

- "[O]ver 55 million shares of MMAT and 92 million shares of TRCH that were impacted by this fraudulent activity;"
- "[E]xtreme financial losses for more than 65,000 retail shareholders;"
- Specific trading practices constituting the alleged manipulation; and
- Market "manipulation that occurred persistently and over several years…"

ECF No. 98-1 at 2.  The application also stated that special counsel had obtained approximately $11 million in litigation funding, including $500,000 reallocated from an ongoing case litigated by the same special counsel who unsuccessfully sought similar third-party discovery from two of the Non-Parties in this matter.  ECF No. 98-2 at 3-4.  An investigation of this scale has provided the Trustee with more than enough information necessary to bring an adversary proceeding, if any—and is yet another reason these requests fall outside the purview of Rule 2004.

Moreover, the Trustee simultaneously hired Robison, Sharp, Sullivan & Brust to conduct Rule 2004 examinations and "eventual voidable transfer litigation."  ECF No. 105 at 1.  Months later, the Trustee belatedly filed a motion to employ Schneider Wallace Cottrell Konecky LLP as special counsel to "join with Christian Attar and Kasowitz, Torres & Benson, to investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'"  ECF No. 1956 at 1.

### B.  The Trustee's Targets and Claims

The Trustee's filings reveal that, having conducted an investigation, she is now preparing for

litigation, not on behalf of the Debtor or its creditors, but rather, on behalf of shareholders against already-identified defendants. The summary of "potential litigation" attached to the Christian Attar retention application reads like a complaint, complete with:

- Identified defendants ("potential defendants" or "targets");

- Specific wrongful conduct ("persistent and extensive spoofing");

- A theory of liability (market manipulation through "Baiting Orders");

- Damages calculations ("extreme financial losses"); and

- Non-Debtor plaintiffs ("more than 65,000 retail shareholders").

ECF No. 98-1 at 2.

The Trustee has already launched a coordinated discovery campaign against a specific list of financial institutions and regulators. In addition to the Non-Parties, the Trustee has issued substantially similar subpoenas to Trust Clearing Co., FINRA, Nasdaq, Charles Schwab, TD Ameritrade, and TradeStation Securities.

On March 6, 2025, the Trustee also filed *ex parte* Motions for Rule 2004 Examinations as to each of the Non-Parties and in each case suggested that she was seeking an examination relating to the Debtor's "assets, liabilities, and financial affairs" and how potential share price manipulation "affected Debtor's financial condition for possible recovery on behalf of Debtor's estate." *See* ECF Nos. 1614, 1616, and 1632. The Court granted these *ex parte* motions, with orders limiting the requested discovery to examinations of the Non-Parties. *See* ECF Nos. 1635, 1641, and 1686.

## C. The Trustee's Overbroad & Duplicative Subpoenas

### 1. Subpoenas to Non-Party Citadel Securities

On March 18, 2025, the Trustee attempted to serve a Rule 2004 subpoena and a Rule 45 subpoena on Citadel Securities via certified mail. Ex. 1 & Ex. 2. The Trustee's transmittal letter acknowledged the subpoenas are duplicative, stating Citadel Securities could satisfy both by producing documents. *Id.*[3] The subpoenas' five document requests, however, are extraordinary in scope, seeking extensive communications, records, and data from September 21, 2020 through

---

[3] While the Trustee failed to properly serve Citadel Securities, Citadel Securities agreed to accept service by email.

August 7, 2024. *Id.* For example, the subpoenas seek information related to *any* trades in "Meta and/or MMTLP," records relating to Citadel Securities' own positions in the same securities, as well as "all communications" related to trades of Meta securities made by Citadel Securities or its clients—over a nearly four-year period. *Id.*

Citadel Securities objected to these subpoenas in writing on June 13, 2025. Ex. 7. When Citadel Securities' counsel asked during an initial meet and confer why this specific time period was chosen, the Trustee's counsel admitted he "did not know" and that "the team looking into the matter for the Trustee had suggested that timeframe." Ex. 8. More troubling still, when asked to explain why the Trustee needed this discovery from Citadel Securities specifically, counsel refused to answer, claiming the information was protected by "attorney-client privilege and our work product." *Id.* On July 31, 2025, the Trustee's counsel belatedly admitted that she was seeking "pre-litigation discovery" as part of an investigation of market manipulation including "spoofing and shorting by third parties such as Citadel [Securities]." *Id.* The Trustee's counsel further stated that the Relevant Time Period was tied to the merger between Meta and Torchlight "and the subsequent period running through to the bankruptcy" without any explanation of why that "period" was relevant. *Id.* When Citadel Securities spoke with the Trustee during a subsequent meet and confer on August 1, 2025, the Trustee again refused to explain the factual basis for the subpoenas to Citadel Securities, citing a need to protect "litigation strategy and work product." During this meet and confer, the Trustee's counsel also broadened, rather than narrowed, her requests. Counsel took the position that "messages" in requests seeking "All messages relating to" refers to "any form of communication." *See* Ex. 8. Citadel Securities confirmed the parties were at an impasse on the requested discovery prior to service of this Motion. *See* Declaration of Peter H. Fountain; Ex. 8.

### 2.     Subpoenas to Non-Party Anson

On March 20, 2025, the Trustee served Anson[4] with the original subpoenas by certified mail. *See* Ex. 9. Anson timely responded and objected to these subpoenas on April 7, *see* Ex. 10, and the parties then engaged in several meet and confers and written exchanges regarding inquiries posed

---

[4]  Anson was misidentified as "Anson Funds USA" on the subpoenas that were served.

by Anson as to the bases for these subpoenas and the purported authorities supporting the Trustee's position. The Trustee provided limited authority in response, all of which was categorically distinguishable. The Trustee thereafter requested that Anson accept service through counsel of replacement subpoenas, namely one of the Rule 2004 Subpoenas and one of the Rule 45 Subpoenas, and Anson agreed to do so as a professional courtesy. Both of these replacement subpoenas still seek the production of broad categories of trade-related documents and records related to the non-debtor assets, such as all order routing and execution records related to "Meta"[5] securities and Anson's alleged positions in the same. Ex. 3 & 4. *Id.* The Trustee set a date range of September 21, 2020 through August 21, 2024 for records related to MMAT and TRCH and June 28, 2021 to December 14, 2022 for records related to MMTLP. *Id.* Anson objected in writing on July 11, 2025 to these new replacement subpoenas. Ex. 11. Anson, too, conducted a final meet and confer on August 1, 2025—which was unsuccessful—prior to filing this Motion. *See* Declaration of Sylvia E. Simson ("Simson Decl.").

### 3. Subpoenas to Non-Party Virtu

On March 18, 2025, the Trustee served Virtu with the original subpoenas by certified mail. Virtu timely responded and objected to these subpoenas on April 29, 2025. Ex. 13. Virtu has similarly accepted service of replacement subpoenas and objected to them in writing on June 26, 2025. Ex. 14; *see also* Ex. 5-6 (operative Virtu Subpoenas). The Trustee has requested production of documents from Virtu, which are akin to the replacement requests served on Anson. Ex. 5 & 6. As with Anson, the Trustee set a similar requested date range of September 21, 2020 through August 7, 2024 for records related to MMAT and TRCH and June 28, 2021 to December 14, 2022 for records related to MMTLP. *Id.* Virtu, too, conducted a final meet and confer with the Trustee's counsel on July 25, 2025, which was unsuccessful. *See* Declaration of Barry Gold. Overall, these latest rounds of subpoenas seek production of extensive trading-related records over four years and information including third-parties (*e.g.*, brokers, customers, and other market participants). *See* Exs. 3-6.

---

[5] "Meta" was defined as four different CUSIPs or tickers, two styled as MMAT, one styled as TRCH, and one styled as MMTLP.

1     **IV.**    <u>**ARGUMENT**</u>

2       **A.**    <u>**Legal Standards**</u>

3        Rule 2004 permits examination relating only to "the acts, conduct, or property or to the

4 liabilities and financial condition of the debtor, or to any matter which may affect the administration

5 of the debtor's estate." FED. R. BANKR. P. 2004(b). "[I]ts scope is not limitless." *Snyder v. Soc'y*

6 *Bank*, 181 B.R. 40, 41-42 (S.D. Tex. 1994) (finding the use of Rule 2004 to further another action

7 "constitutes an abuse of Rule 2004"). An order granting a Rule 2004 examination "may be granted

8 *ex parte,* but a party to be examined may oppose the examination by a motion to quash the

9 subpoena." *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993). Once a motion to quash is filed,

10 "the examiner bears the burden of proving that good cause exists for taking the requested discovery."

11 *Bank of Am., N.A. v. Landis*, 2011 WL 6104495, at *6 (D. Nev. Dec. 7, 2011) (reversing bankruptcy

12 court's denial of a motion to quash a Rule 2004 examination). Courts consider the "totality of the

13 circumstances" in deciding whether good cause exists. *Id.* The burden of establishing good cause

14 is particularly high when seeking discovery from non-parties to the bankruptcy proceeding. *In re*

15 *Wilcher,* 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (rejecting "wholesale investigation of a non-

16 debtor's private business affairs").

17        Although document discovery may be sought under Local Rule 2004(c), Local Rule 9016,

18 and FED. R. CIV. P. 45, the court "must" quash a subpoena that "subjects a person to undue burden."

19 Fed. R. Civ. P. 45(d)(3)(A)(iv). As explained in *In re Mod. Plastics Corp.*:

20            In deciding whether a subpoena imposes an undue burden upon a non-party, the
           courts undertake a case specific inquiry, considering such factors as relevance,
21            the need of the party for the documents, the breadth of the document request, the time
           period covered by it, the particularity with which the documents are described and
22            the burden imposed . . . The court must consider, and weigh, the need of [the
           subpoenaing party] for the discovery it seeks, against the burdens imposed on the
23            Recipients.

24

25 2015 WL 13866302, at *6 (Bankr. W.D. Mich. July 23, 2015), *aff'd*, 577 B.R. 690 (W.D. Mich.

26 2017) (internal quotation marks and citations omitted). Relevant here, "[t]he Federal Rules also

27 afford nonparties special protection against the time and expense of complying with subpoenas."

28 *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (citing Fed. R. Civ.

P. 45(c)(3)(A)(ii)); *see also In re Mod. Plastics*, 2015 WL 13866302, at *6 (noting "a particular solicitude for strangers to the litigation such as the [subpoena] Recipients" and "the status of a person as a non-party is a factor that weighs against disclosure") (internal quotation marks and citation omitted).

### B. The Rule 2004 Subpoenas Should Be Quashed And/Or A Protective Order Issued Because They Far Exceed Rule 2004's Limited Purpose

Good cause for a Rule 2004 examination may exist when "the examination is *necessary* to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Dinubilo,* 177 B.R. at 943 (emphasis added); *In re Enron Corp.*, 281 B.R. 836, 840 (S.D.N.Y. 2002) ("Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate…"); *In re J&R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010) (noting "one purpose for such an examination is to give the trustee the information needed to determine *whether* litigation should be filed.") (emphasis added). Good cause does not exist here.

The Trustee cannot meet the good cause standard for several reasons. As an initial matter, she has already "identified [the Non-Parties] as [] litigation target[s] and is seeking to utilize the liberal discovery available under Rule 2004 to further this ultimate litigation. That's not permitted." Ex. 16, Transmar Transcript 22:7-11. The Rule 2004 Subpoenas also lack the requisite connection to the Debtor's estate. *See infra*, Section IV.B(2). And, the Trustee cannot make a showing of necessity, let alone undue hardship or injustice when she already has, or will soon have, the information she seeks from other subpoena recipients. *See infra*, Section IV.C(3). Because the Trustee cannot carry her burden to establish good cause, the Rule 2004 Subpoenas should be quashed and/or a protective order issued with respect thereto.

#### 1. The Document Requests In The Rule 2004 Subpoenas Are Both Procedurally Improper And Unauthorized

The Rule 2004 Subpoenas include document requests in clear contradiction to Local Rule 2004(c), which states "[p]roduction of documents may not be obtained via an order under Fed. R. Bankr. P. 2004." This defect alone is dispositive and requires that the document requests in the Rule

2004 Subpoenas be quashed.  As this Court noted in *In re CWNevada LLC*, such requests "run afoul of Local Rule 2004(c)" and cannot be enforced.  602 B.R. 717, 721 n.3 (Bankr. D. Nev. 2019).  The Local Rules provide no exceptions, and the Trustee's failure to comply with this clear procedural requirement renders the Rule 2004 Subpoenas fatally defective.

More troubling is that the Trustee persisted with the document requests she included in her proposed orders accompanying the *ex parte* motions for Rule 2004 Examinations of Non-Parties Citadel Securities and Anson, despite this Court's decision not to authorize them.  *See* ECF Nos. 1614, 1616.  The Court's orders granting the motions explicitly removed those document requests, thereby limiting its grant of the motions only to the request for an examination of each Non-Parties' custodian of records.  *See* ECF No. 1635, 1686.[6]  Disregarding the Court's orders, the Trustee still proceeded to include document requests in all of the Rule 2004 Subpoenas. Ex. 1, 3, 5.

Further, when the Trustee issued revised Rule 2004 Subpoenas to Non-Parties Anson and Virtu, not only did the Rule 2004 Subpoenas again include document requests, but the Trustee also disregarded the Local Rules and failed to seek approval from the Court for these new subpoenas and their new, expanded document requests.  Local Rule 2004(a) requires "[a]ll requests" for orders under Rule 2004 to "be made by motion," not merely initial requests.  Consequently, the Trustee improperly proceeded without the necessary approval for her new subpoenas.  When asked during meet and confers the basis on which she did so, the Trustee's counsel said that they were not aware of this limitation in Local Rule 2004, but did not agree to withdraw the Rule 2004 Subpoenas. *See, e.g.*, Ex. 8.

The clear limitations of Local Rule 2004, and the Trustee's disregard for the Court's Orders, justify quashing the Rule 2004 Subpoenas in their entirety.

---

[6]  As for Virtu, the document requests in the Rule 2004 Subpoena exceed even the Trustee's own proposed order.  The amended *ex parte* motion for a Rule 2004 examination of Virtu's custodian of records *removed* the document requests from the proposed order, *compare* ECF No. 1630 *with* No. 1632, and the Court's order authorizing issuance of the subpoena did not add or otherwise authorize them, *see* ECF No. 1641.

## 2. The Rule 2004 Subpoenas Should Be Quashed Because They Lack Any Connection To The Debtor's Estate, Assets, Or Current Financial Condition

The Rule 2004 Subpoenas also fail because they lack any connection to the Debtor or its estate. It is well-settled that, albeit potentially broad in scope, a Rule 2004 examination is to be used solely for the legitimate purpose of obtaining information relating to "the financial affairs of the debtor." *In re Johns-Manville Corp.,* 42 B.R. 362, 365 (S.D.N.Y. 1984). Here, the Rule 2004 Subpoenas have no connection to "[t]he purpose of a Rule 2004 examination[, that] is[,] to allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate," *id*. at 364 (citing *Cameron v. United States*, 231 U.S. 710, 717 (1914)), and should therefore be quashed because there is no "good cause" for these examinations.

On its face, Rule 2004 permits examination of matters relating ***only*** to: "(A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge." FED. R. BANKR. P. 2004(b).[7] The Rule 2004 Subpoenas seek none of those matters. In contrast, they seek information about, among other topics:

- The Non-Parties' trading and share-related activity, positions as to, and orders placed in Meta Materials and related entities;

- Internal business practices and procedures, compliance records, and other proprietary and sensitive business information;

- Other non-parties, such as customers and broker-dealers;

- Communications between non-Debtors; and

- Messages to third-party exchanges or other third parties sent on behalf of the Non-Parties.

None of this information relates to the Debtor's acts or conduct, property, liabilities, or

---

[7]  The Trustee's *ex parte* applications for Rule 2004 examination claimed to seek information related to the "assets, liabilities, and financial affairs" of the Debtor. *See* ECF Nos. 1614, 1616, and 1632. To the extent the Trustee may argue that her Subpoenas also seek information related to "the administration of the debtor's estate," such an argument fails. The "administration of the estate" refers to administrative matters such as distributing the property of the estate, *In re Harper*, 557 B.R. 171, 176 (Bankr. D. Ariz. 2016), and procedural concerns including the selection or removal of a trustee, *In re Dinubilo*, 177 B.R. 932, 936 (E.D. Cal. 1993). This provision provides no basis to obtain the information the Trustee seeks from the Non-Parties.

financial condition. At most, it relates to trades in the Debtor's publicly traded securities by third parties. But market trading by unrelated parties does not become the Debtor's "property" or "conduct" simply because the trades involved the Debtor's stock—this stock (bought and sold in secondary market transactions by third parties) is property of non-debtors, not property of the Debtor. Put differently, any claims of purported market manipulation belong to the shareholders, not the Debtor itself, and so could not possibly concern administration of the Debtor's estate because these claims belong to the shareholders and are not assets of the estate. *See In re J&R Trucking, Inc.*, 431 B.R. at 822-23 (denying Rule 2004 examination where it was employed as "a private collection device for creditors" rather than a tool "to efficiently administer bankruptcy estates."). In that vein, the Rule 2004 Subpoenas are similar to those recently rejected in *In re Vital Pharms., Inc.*, where the bankruptcy court denied Rule 2004 discovery because it was predicated on "[s]peculative or inflammatory claims – unsupported by any facts" and to fish for information to "assert potential personal litigation claims rather than a genuine concern for the administration of the estate." 2025 WL 1189882, at *4 (Bankr. S.D. Fla. Apr. 23, 2025).

Further, when asked for legal authority supporting its Rule 2004 Subpoenas, the Trustee cited a facially distinguishable order from *In re Sorrento Therapeutics, Inc.*, No. 23-90085 (Bankr. S.D. Tex. Apr. 4, 2023), ECF No. 334. *See, e.g.*, Ex. 8. In *Sorrento*, Judge David R. Jones granted an unopposed motion seeking narrow Rule 2004 discovery needed to identify beneficial owners of shares in a company in which the Debtor itself held a majority equity interest. *Id.* The information was required for a specific administrative purpose—to ensure proper delivery of proxy materials for an imminent shareholder meeting that directly affected the Debtor's ability to govern and protect its largest asset. *Sorrento*, ECF No. 330 ¶ 13. Unlike in *Sorrento*, where the Debtor sought information to protect an existing asset, the Trustee here seeks to construct speculative "pre-litigation" claims against already-identified targets, related to non-debtor assets, a purpose that falls squarely outside Rule 2004's limited scope. Moreover, the limited, administrative discovery sought in *Sorrento* bears no resemblance to the Trustee's sweeping demands for four years of proprietary trading data, internal communications, and confidential business information from the Non-Parties with no direct

1    relationship to the Debtor.  The other authorities cited by the Trustee in communicating with the

2    Non-Parties are equally inapposite.

3         The requests for the Non-Parties' proprietary position data (Citadel Securities Request 5,

4    Anson Request 3, Virtu Request 5) are particularly problematic.  How Citadel Securities, Anson,

5    and Virtu managed their trading books or business activities has zero bearing on the Debtor's assets

6    or the administration of the estate.  This is exactly the type of "wholesale investigation of a non-

7    debtor's private business affairs" that Rule 2004 prohibits.  *In re Wilcher,* 56 B.R. at 434.  The other

8    Requests similarly seek information about the Non-Parties' clients' trading data and practices, as

9    well as proprietary business information concerning how the Non-Parties handle the trading orders

10   they receive from non-debtors.  *See e.g.*, Ex. 1 & 2.  As noted above, "examination … as to matters

11   having no relationship to the debtor's affairs or no effect on the administration of [its] estate is

12   improper."  *In re Wilcher,* 56 B.R. at 433 (citation omitted).  These improper requests warrant

13   quashing the Rule 2004 Subpoenas and/or issuing a protective order as to them.

14        **3.    The Trustee's Conduct Confirms She Has Already Identified The Non-
                   Parties As Litigation Targets, Further Highlighting The Impropriety Of
15                 The Rule 2004 Subpoenas**

16        As courts consistently recognize, Rule 2004 discovery must be "proper," and Rule 2004

17   cannot be used as an end-run around those rules that would govern civil litigation in federal or state

18   court once a litigation target has been identified.  *In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr.

19   D. Mass. 1983) (declining to permit Rule 2004 examination, *see infra* at 14-15); *see also e.g.*, *In re

20   Defoor Ctr., LLC*, 634 B.R. 630, 632 (Bankr. M.D. Fla. 2021) (denying a Rule 2004 examination

21   because "[a] Rule 2004 examination is meant to provide the Debtor with the preliminary information

22   needed to file a complaint. Here, the Debtor already has that information.").  To find that the Rule

23   2004 Subpoenas exceed Rule 2004's limited scope, this Court need look no further than the Trustee's

24   own admissions.  During an initial meet and confer with Citadel Securities, the Trustee was asked

25   basic questions about the Subpoenas—including why the Trustee was requesting this information

26   from Citadel Securities—and the Trustee's counsel refused to answer.  His stated reason for his

27   refusal speaks volumes: the information was protected by "*attorney-client privilege and our work

28   product*."  Ex. 8 (emphasis added).  Similar representations of attorney-client privilege and work

13

product protections were made to the other Non-Parties, first during a telephonic meet and confer with Anson on June 10, 2025. During subsequent meet and confers with Non-Parties, the Trustee again refused to answer questions about the Subpoenas on the basis they intruded on "litigation strategy" and were work product protected.

These admissions end the inquiry. The work product doctrine protects only materials prepared "in anticipation of litigation." FED. R. CIV. P. 26(b)(3)(A); *In re Datacom Sys., Inc.*, 2014 WL 10077651, at *5 (Bankr. D. Nev. July 25, 2014). By invoking this protection to shield her reasons for seeking discovery, in addition to admitting the need to protect her "litigation strategy," the Trustee has necessarily admitted again that the Subpoenas were issued "in anticipation of litigation" and she is seeking information for use in litigation, not for the limited purposes authorized by Rule 2004. The Trustee's choice to invoke this doctrine is a judicial admission that forecloses any argument that the Subpoenas serve a legitimate Rule 2004 purpose.

Moreover, the Trustee crossed this line into pre-litigation, and beyond the boundaries of Rule 2004, long ago. Before the bankruptcy case was even filed, the Debtor's advisors had completed their investigation and reached their conclusions. They claim to have:

- Analyzed trading in over 147 million shares;
- Identified specific unlawful trading practices;
- Quantified the impact on shareholders; and
- Determined the temporal scope of the alleged manipulation.

ECF No. 98-1 at 2. The Rule 2004 Subpoenas are thus not preliminary fact-gathering—they are post-investigation litigation preparation by a Trustee armed with the information she already believes supports an adversary proceeding. The court's ruling in *In re GHR Energy* is instructive in this regard: "From the evidence presented to me, it seems that the debtors are now in a position to file an action against certain of the individuals and entities if they so choose. It appears the debtors are attempting to use Rule 2004 to circumvent the procedural safeguards provided a litigant by the Federal Rules of Civil Procedure." 35 B.R. at 538. This Court should not countenance such tactics.

Lest there be any doubt, the Trustee's engagement letters with special counsel confirm that litigation decisions have already been made and approximately $11 million in litigation funding has

been obtained, including $500,000 from a case in which special counsel unsuccessfully sought similar discovery from two of the instant Non-Parties regarding alleged market manipulation on the part of those Non-Parties. ECF No. 98 at 2, 98-2 at 3-4. Christian Attar was hired specifically to pursue claims for "illegal trading practices known as 'naked short selling' or 'spoofing.'" ECF No. 98 at 1. Kasowitz Benson was brought in as litigation co-counsel. *Id.* And then the Trustee retained both Robinson, Sharp, Sullivan & Brust and Schneider Wallace Cottrell Konecky as litigation co-counsel. ECF Nos. 105, 1956. The Trustee does not need four law firms to conduct an investigation; these are not investigatory retentions, but rather, are litigation retentions. In fact, the Trustee sent Non-Party Virtu a draft Protective Order that discussed "litigation," "pretrial discovery," and even "Virtu's claims or defenses." Ex. 15 (proposed protective order). In discussions with the Non-Parties, the Trustee also confirmed that its Subpoenas sought "pre-litigation discovery" concerning "whether Meta's stock was manipulated"—the same "potential litigation" the Trustee described to the Court, ECF No. 98-1. *See, e.g.*, Ex. 8.

Courts have consistently rejected this misuse of Rule 2004 subpoenas. For example, as noted above, in *In re Transmar*, the court denied a Rule 2004 application where the subpoena recipient was identified "as a litigation target" and the Rule 2004 subpoena was being sought to further that litigation, because that is an impermissible use of a Rule 2004 subpoena. Transmar Transcript at 22:7-11, Ex. 16. In *In re Interpictures, Inc.*, the court rejected a Rule 2004 examination where "it is apparent from the application that Mr. Miller seeks the examination not so much to discover the existence of assets on behalf of the debtor, but rather for the purpose of discovery in a pending or proposed proceeding," as that is "beyond the scope of Bankruptcy Rule 2004 and must be [] pursuant to proper discovery." 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988). And in *In re Waddell*, Rule 2004 discovery was rejected where it was suggested that the information sought "might be useful in other litigation—a purpose for which Rule 2004 examinations are not available." 2025 WL 957733, at *7 (Bankr. S.D.N.Y. Mar. 28, 2025) (citing *In re Enron*, 281 B.R. at 842)).

The same is true here. The Trustee has completed her investigation at least in significant part, identified certain entities of interest, and is now seeking to use Rule 2004 to build her litigation case. The Trustee's message to the Non-Parties has been consistent and clear over the last few

15

months of meet and confer exchanges and related communications: these Subpoenas are an attempt to gain a strategic advantage in imminent litigation. Necessarily, the Trustee is attempting an improper end-run around the Federal Rules of Civil Procedure that should be rejected by this Court. *See In re Defoor Ctr.*, 634 B.R. at 639 (denying Rule 2004 examination where it "would give the Debtor an unfair strategic advantage."); *In re Enron*, 281 B.R. at 841 (explaining how "courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure" and collecting cases). This issue also underscores the Trustee's inability to establish "good cause" for the Rule 2004 Subpoenas. *In re J&R Trucking, Inc.*, 431 B.R. at 822 (noting "one purpose for such an examination is to give the trustee the information needed to determine *whether* litigation should be filed.") (emphasis added). The Rule 2004 Subpoenas should accordingly be quashed and/or a protective order issued.

### C. The Rule 45 Subpoenas Should Be Quashed Because They Are Overbroad, Irrelevant, And Unduly Burdensome

#### 1. The Requests In The Rule 45 Subpoenas Are Facially Overbroad

The Rule 45 Subpoenas should be quashed because they are grossly overbroad and wildly disproportionate to the alleged needs of the Debtor. The requests seek voluminous trading records and associated documents in sweeping categories over a four-year period.

Consider Request 1 to Citadel Securities, which demands "[a]ll messages relating to the routing of orders of any type" for Meta Materials shares. Moreover, during a recent meet and confer, the Trustee confirmed that each of its request for "messages" should be to read to mean "any form of communication" This would encompass every single communication related to every single order for Meta Materials shares—buy, sell, market, limit—over a four-year period regardless of whether that order had any connection to the alleged manipulation the Trustee claims to be investigating. Similar requests abound in the Rule 45 Subpoenas to Anson and Virtu. Courts routinely quash subpoenas with this type of "any and all" language as facially overbroad. *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (finding requests for "any and all" documents overbroad without temporal or other reasonable limitation).

The requests also expand beyond the Non-Parties' own activities, seeking information about trades by "client broker-dealers of Citadel [Securities]" and "customer info" and "broker info" relating to Anson and Virtu's trading activities. This is information to which the Non-Parties may not even have access, let alone the right to produce. Multiple requests also seek documents or communications exchanged with clients or other third parties over a four-year period, demanding production of documents outside the Non-Parties' possession, custody, or control.[8] The "unreasonably wide breadth of the [Trustee's] document subpoenas"—combined with the Trustee's counsel's refusal to provide any information during meet and confers about the relevance or necessity of the information sought— weighs heavily in favor of quashing here. *In re Morreale Hotels LLC*, 517 B.R. 184, 198 (Bankr. C.D. Cal. 2014).

## 2. The Trustee's Failure To Articulate Her Discovery Need Is Dispositive

"[T]he need of the party for the documents" is a factor considered when evaluating whether a subpoena imposes an undue burden, which is to be weighed against "the burdens imposed on the [Non-Parties]." *In re Modern Plastics Corp.*, 2015 WL 13866302, at *6-7 (finding a "half-hearted explanation" as to relevance unpersuasive). Here, the Trustee's inability to explain the basis for her discovery requests is yet another basis under which they should clearly be quashed. For example, during the initial meet and confer with Citadel Securities, when asked basic questions about the Subpoenas, the Trustee's counsel could not or would not provide answers:

- Why the specific four-year time period? Counsel "did not know."

- Why does the Trustee need discovery from Citadel Securities? Counsel claimed this was protected by "attorney-client privilege and our work product."

- What is the relevance of the requested documents? No explanation provided beyond stating "every party will have different data and documents."

Ex. 8. Similarly ambiguous (at best) responses were provided to Anson and Virtu. For example, when Anson asked the Trustee to support the scope and relevancy of her requests with legal authority, the Trustee was also unable to articulate a meaningful rationale. *See* Ex. 12.

---

[8] *See Sci. Games Corp. v. AGS LLC*, 2017 WL 3013251, at *2 (D. Nev. July 13, 2017) (noting a "party is entitled to seek only those documents in the subpoenaed person's 'possession, custody, or control.'") (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)).

As a matter of black-letter law, the Trustee "may not simply argue in conclusory fashion that all of the discovery [s]he seeks is relevant." *Heilman v. Chernis*, 2012 WL 5187732, at *4 (E.D. Cal. Oct. 18, 2012) (internal quotation marks and citation omitted). The Trustee must articulate and be "able to explain the ways in which the underlying information bears on the issues as that party understands them." FED. R. CIV. P. 26(b), advisory committee's notes to 2015 amendment. The Trustee's vague assertion that "every party will have different data" is precisely the type of blanket speculation that courts consistently reject.

The Trustee's later attempts to explain relevance fare no better. In a July 31, 2025 email, the Trustee's counsel admitted that she was seeking "pre-litigation discovery" against an identified potential defendant, Citadel Securities, because, according to the Trustee, "Meta's stock price plummeted over time, which may be due in part to spoofing and shorting by third parties such as Citadel, which is what the Trustee is investigating." Ex. 8. Instead of articulating a legitimate connection to the Debtor's estate, the Trustee went on to cite to inapposite caselaw and merely insist that Rule 2004 (tellingly not Rule 45) discovery is a permissible "fishing expedition," further confirming the improper purpose of the Subpoenas. Similar statements of purported relevance and reliance on distinguishable case law were made during meet and confers with the other Non-Parties.

### 3. The Subpoenas Impose An Extraordinary And Disproportionate Burden On Non-Parties

First, the cost and burden to the Non-Parties would be substantial. Compliance with the Subpoenas will require the Non-Parties to search for, review, and produce potentially millions of documents spanning nearly four years. Confirming the broad scope of the requested documents, in meet and confer discussions, the Trustee's counsel explained that the "messages" in the request for "[a]ll messages relating to" the data referred not only to trading data, but to "any form of communications." Ex. 8. Review of the requested data will be complex and time-consuming given the volume of data requested and the need to review for third-party confidentiality, privileged information, and proprietary business information. Producing FIX protocol messages and similar trading data, as requested by the Trustee here, is extraordinarily complex and resource-intensive. FIX messages utilize a standardized electronic format comprising hundreds of predefined fields,

requiring specialized expertise and software to accurately extract, interpret, and process. For the four-year period requested, this would involve extensive technical resources to compile, review, and validate the messages. On top of that, the collection and review of email and other documents encompassed by "all communications" would impose an even greater burden on the Non-Parties. All told, this process would require the costly diversion of significant resources from existing business priorities. This extraordinary burden far exceeds what is appropriate for a non-party, especially when weighed against the Trustee's inability to articulate any legitimate need for the information. *See* Fed. R. Civ. P. 26(b)(1) (made applicable by FED. R. BANKR. P. 7026).

Second, the Trustee has already obtained or will obtain much of this information from other sources. The Trustee here has issued similar subpoenas to FINRA (seeking broker-level trading data), Nasdaq (seeking all order messages), and numerous other financial institutions. *See, e.g.*, ECF No. 1621, 1623. Moreover, recent filings indicate that the Trustee will receive data from exchanges, which function more like centralized repositories for the data the Trustee is requesting. *See, e.g.*, ECF No. 1955 (stipulated protective order between the Trustee and Nasdaq). Any relevant information (to the extent there is any) would be captured in these other productions, making the Non-Parties' production cumulative and duplicative. Indeed, the Trustee, even before issuing these Subpoenas, has already identified "55 million shares of MMAT and 92 million shares of TRCH" she claims were impacted by certain trading activity, ECF No. 98-1 at 2, indicating she already possesses substantial information concerning relevant trades even without the ongoing productions from other entities such as Nasdaq. *See Trevino v. Burke*, 2024 WL 2853262, at *1 (E.D. Cal. June 5, 2024) (explaining "a Rule 45 subpoena should be directed to non-parties for information that cannot be readily obtained from a party to the case."). Trustee's counsel's claim during meet and confer discussions that there is no basis to believe this information may be obtained from other sources is entirely unsupported, providing yet another basis to quash the Subpoenas. *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement*, 2016 WL 159842, at *3 (D. Ariz. Jan. 14, 2016) ("If the party seeking … the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena." (quotation omitted)).

Courts routinely quash non-party subpoenas that are far less burdensome and far more

1   proportionate than those here. *See Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal.

2   May 9, 2011) (quashing subpoena where party "ha[d] not drawn their request narrowly enough");

3   *Brown v. Rasley*, 2017 WL 6451706, at *4 (E.D. Cal. Dec. 18, 2017) (denying subpoena where

4   records obtainable by document request and not clear plaintiff exhausted other "reasonably available

5   means").  The Rule 45 Subpoenas here should be similarly quashed too.[9]

6   ## V.    CONCLUSION

7   The Non-Parties respectfully request that the Court quash the Subpoenas in their entirety and/or

8   enter a Protective Order prohibiting the Trustee from seeking the same or similar discovery from the

9   Non-Parties.

10          Dated this 5th day of August, 2025.

11                              McDONALD CARANO LLP

12                              */s/ Ryan J. Works*
                                Ryan J. Works, Esq. (NSBN 9224)
13                              Jimmy F. Dahu, Esq. (NSBN 17061)
                                2300 West Sahara Avenue, Suite 1200
14                              Las Vegas, Nevada 89102
                                rworks@mcdonaldcarano.com
15                              jdahu@mcdonaldcarano.com

16                              QUINN EMANUEL URQUHART & SULLIVAN, LLP
17                              Peter H. Fountain, Esq. (*pro hac vice forthcoming*)
                                Madeleine Zabriskie, Esq. (*pro hac vice forthcoming*)
18                              295 Fifth Avenue
                                New York, NY 10016
19                              pterfountain@quinnemanuel.com
                                madeleinezabriskie@quinnemanuel.com
20
                                *Attorneys for Non-Party Citadel Securities LLC*
21

22

23

24

25

26   _____

27   [9]  The replacement Rule 45 Subpoenas are also procedurally improper because they fail to comply with Local Rule
     9016.  Local Rule 9016 provides the "attorney for the party serving the subpoena duces tecum must file a notice of the
     subpoena duces tecum on the docket of the case concurrently with the issuance and service of the subpoena."  The
28   Trustee failed to file any notice on the docket regarding the new Rule 45 Subpoenas issued to both Anson and Virtu.
     This procedural impropriety also warrants quashing.

1   GREENBERG TRAURIG, LLP

2   /s/ Michael R. Hogue
    Michael R. Hogue, Esq. (NSBN 12400)
3   10845 Griffith Peak Drive, Suite 600
    Las Vegas, NV 89135
4   hoguem@gtlaw.com

5   Sylvia E. Simson, Esq. (*pro hac vice forthcoming*)
    One Vanderbilt Avenue
6   New York, NY 10017
    Sylvia.Simson@gtlaw.com
7
    Alan J. Brody, Esq. (*pro hac vice forthcoming*)
8   500 Campus Drive, Suite 400
    Florham Park, NJ 07932
9   brodya@gtlaw.com

10  *Attorneys for Non-Party Anson Funds Management LP*

11
    SEMENZA RICKARD LAW
12
    /s/ Jarrod L. Rickard
13  Jarrod L. Rickard, Esq., (NSBN 10203)
    10161 Park Run Dr., Ste. 150
14  Las Vegas, Nevada 89145
    jlr@semenzarickard.com
15
    DAVIS WRIGHT TREMAINE, LLP
16  Michael Rella, Esq. (*pro hac vice forthcoming*)
    Shanaye Carvajal, Esq. (*pro hac vice forthcoming*)
17  1251 Avenue of the Americas
    New York, NY 10020
18  michaelrella@dwt.com
    shanayecarvajal@dwt.com
19
20  *Attorneys for Non-Party Virtu Financial, LLC*

21

22

23

24

25

26

27

28

# EXHIBIT 1

# EXHIBIT 1

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of <u>NEVADA</u>

In re <u>META MATERIALS, INC.,</u>
<div align="center">Debtor</div>

Case No. <u>24-50792-hlb</u>

Chapter <u>_____</u>

## SUBPOENA FOR RULE 2004 EXAMINATION

To: <u>The Custodian of Records for CITADEL SECURITIES LLC | 131 South Dearborn Street, Chicago, IL 60603</u>

<div align="center">*(Name of person to whom the subpoena is directed)*</div>

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| U.S. Legal Support<br>200 West Jackson Blvd., Suite 600<br>Chicago, IL 60606 | April 8, 2025 OR otherwise arranged with Trustee Lovato's counsel (contact information below) |

The examination will be recorded by this method: <u>stenographic and/or audiovisual means</u>

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**See attachment titled "Items to be Produced" along with the attachment "Definitions and Instructions"**

---

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: <u>_____</u>

CLERK OF COURT

OR

<u>_____</u>
<div align="center">*Signature of Clerk or Deputy Clerk*</div>

<u>/s/ Clayton P. Brust</u>
<div align="center">*Attorney's signature*</div>

The name, address, email address, and telephone number of the attorney representing *(name of party)*
<u>Christina Lovato, Chapter 7 Trustee</u> , who issues or requests this subpoena, are:

<u>Clayton P. Brust | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com</u>

<div align="center">**Notice to the person who issues or requests this subpoena**</div>
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

1.      "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.      "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### INSTRUCTIONS

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

1

parents or subsidiaries, and persons under their control.

1.      Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.      Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3.      All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4.      Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5.      If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6.      If there are no Documents responsive to any particular request, the response shall state so in writing.

7.      In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8.      Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

2

and label them to correspond to the enumerated requests of the demand.

10. Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

11. These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary

## **ITEMS TO BE PRODUCED**

Please note that all documents requested below are for the time frame of **September 21, 2020** through **August 7, 2024.** These requested documents are in respect to Meta, MMTLP, or other CUSIPs or legend identifiers pertaining to Meta or MMTLP.

Request 1:

All messages relating to the routing of orders of any type for shares Meta and/or MMTLP using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, received from client broker-dealer of Citadel and sent to client broker-dealers of Citadel.

Request 2:

All messages relating to the routing of orders of any type for shares Meta and/or MMTLP using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, routed to an exchange or off-exchange trading venue on behalf of a client broker-dealer of Citadel and received from an exchange or off-exchange trading venue on behalf of a client broker-dealer of Citadel.

Request 3:

All messages relating to the routing of orders of any type for shares Meta and/or MMTLP using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, routed to an exchange or off-exchange trading venue on behalf of Citadel and received from an exchange or off-exchange trading venue on behalf of Citadel.

Request 4:

All communications electronically stored in the original format captured, including transactions records and emails, related to locating, securing, borrowing, and delivering shares of Meta and/or MMTLP, including records of instances where Citadel failed to deliver (FTD) shares of Meta

1

and/or MMTLP and records of how Citadel rectified the outstanding FTDs.

Request 5:

All records of position data representing Citadel's position in Meta and/or MMTLP, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to naked short sales), produced at the frequency such data was recorded).

# EXHIBIT 2

# EXHIBIT 2



## Robison | Sharp | Sullivan | Brust

Kent R. Robison

Thomas L. Belaustegui
(Co-Founder, Retired)

F. DeArmond Sharp

Michael E. Sullivan

Clayton P. Brust

Stefanie T. Sharp

Michael A. Burke

Hannah E. Winston

Brett W. Pilling

Shelby L. Webb

Russell J. Carr

March 18, 2025

**Via U.S. Certified Mail to:**
The Custodian of Records for
CITADEL SECURITIES LLC
131 Dearborn Street
Chicago, IL 60603

Re:     **In re META MATERIALS, INC., U.S. Bankruptcy Court Case No. 24-50792-hlb**

**Subpoena to Produce Documents and for Rule 2004 Examination**

Dear Custodian of Records:

By way of introduction, my name is Clayton P. Brust, Esq. and I am counsel for Christina Lovato, Chapter 7 Trustee in the above-referenced Bankruptcy Court matter. Enclosed with this letter are two documents for your review: the (1) *Subpoena for Rule 2004 Examination* and the (2) *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding).*

In regard to the first subpoena (for 2004 examination), you are entitled to substituting the appearance of the Custodian of Records for the Rule 2004 Examination with the production of the items listed in the "Items to be Produced" section attached, which will also constitute your compliance with the second subpoena. Please let me know your preference as soon as possible, so I can arrange the set up or cancellation of the Court Reporter.

You are regardless welcome to deliver your items physically to the Court Reporter and/or legal office listed in the subpoena for production, or make arrangements with me for electronic delivery. I am happy to have my assistant forward you a Citrix Sharefile link for the upload of any and all responsive documents. Please note that the due date for the responsive documents is set for 21 days from the date of this letter, **April 8, 2025**. You are, again, welcome to contact me if there are any anticipated issues with this due date.

71 Washington St
Reno, Nevada 89503

RSSBLAW.COM

P: 775.329.3151
F: 775.329.7941

Page 1 of 2



## Robison | Sharp | Sullivan | Brust

Kent R. Robison

Thomas L. Belaustegui
(Co-Founder, Retired)

F. DeArmond Sharp

Michael E. Sullivan

Clayton P. Brust

Stefanie T. Sharp

Michael A. Burke

Hannah E. Winston

Brett W. Pilling

Shelby L. Webb

Russell J. Carr

     If you have any questions or concerns regarding the above, you can reach me at my office number of 775-329-3151 or via email at CBrust@rssblaw.com. Thank you for your anticipated cooperation.

     Sincerely,

     ROBISON, SHARP, SULLIVAN & BRUST

     */s/ Clayton P. Brust*

     Clayton P. Brust, Esq.

CPB:ime
Encl. as noted

71 Washington St
Reno, Nevada 89503

RSSBLAW.COM

P: 775.329.3151
F: 775.329.7941

Page 2 of 2

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

### District of Nevada

In re META MATERIALS INC.,
                    Debtor

Case No. 24-50792-hlb

*(Complete if issued in an adversary proceeding)*

Chapter 7

_____
                    Plaintiff
                    v.

_____
                    Defendant

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:    The Custodian of Records for CITADEL SECURITIES LLC | 131 South Dearborn Street, Chicago, IL 60603

*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: see "Items to be Produced" attached hereto, along with the attachment "Definitions and Instructions"

| PLACE U.S. Legal Support<br>200 West Jackson Blvd., Suite 600<br>Chicago, IL 60606 | DATE AND TIME<br>April 8, 2025 OR otherwise arranged with<br>Trustee Lovato's counsel (contact information<br>below) |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

    The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

            CLERK OF COURT

                            OR      /s/ Clayton P. Brust

    _____         _____
    *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Christine Lovato, Chapter 7 Trustee      , who issues or requests this subpoena, are:

Clayton P. Brust, Esq. | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


       I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it
...

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

1.      "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.      "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### INSTRUCTIONS

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

1

parents or subsidiaries, and persons under their control.

1. Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2. Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3. All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4. Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5. If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6. If there are no Documents responsive to any particular request, the response shall state so in writing.

7. In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8. Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9. Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

2

and label them to correspond to the enumerated requests of the demand.

    10.    Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

    11.    These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary

3

**ITEMS TO BE PRODUCED**

Please note that all documents requested below are for the time frame of **September 21, 2020** through **August 7, 2024.** These requested documents are in respect to Meta, MMTLP, or other CUSIPs or legend identifiers pertaining to Meta or MMTLP.

Request 1:

All messages relating to the routing of orders of any type for shares Meta and/or MMTLP using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, received from client broker-dealer of Citadel and sent to client broker-dealers of Citadel.

Request 2:

All messages relating to the routing of orders of any type for shares Meta and/or MMTLP using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, routed to an exchange or off-exchange trading venue on behalf of a client broker-dealer of Citadel and received from an exchange or off-exchange trading venue on behalf of a client broker-dealer of Citadel.

Request 3:

All messages relating to the routing of orders of any type for shares Meta and/or MMTLP using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, routed to an exchange or off-exchange trading venue on behalf of Citadel and received from an exchange or off-exchange trading venue on behalf of Citadel.

Request 4:

All communications electronically stored in the original format captured, including transactions records and emails, related to locating, securing, borrowing, and delivering shares of Meta and/or MMTLP, including records of instances where Citadel failed to deliver (FTD) shares of Meta

1

and/or MMTLP and records of how Citadel rectified the outstanding FTDs.

Request 5:

All records of position data representing Citadel's position in Meta and/or MMTLP, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to naked short sales), produced at the frequency such data was recorded).

# EXHIBIT 3

# EXHIBIT 3

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of <u>NEVADA</u>

In re <u>META MATERIALS, INC.,</u>
　　　　　　　　Debtor

Case No. <u>24-50792-hlb</u>

Chapter _____

## SUBPOENA FOR RULE 2004 EXAMINATION

To: <u>The Custodian of Records of ANSON FUNDS USA | 16000 Dallas Parkway, Suite 800, Dallas, TX 75248</u>
*(Name of person to whom the subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Lexitas<br>325 North St. Paul Street, #1900<br>Dallas, TX 75201 | July 11, 2025 OR as arranged with Trustee Lovato's counsel (see contact info below) |

The examination will be recorded by this method: <u>stenographic and/or audiovisual means</u>

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attachment titled "Items to be Produced" along with the attachment "Definitions and Instructions"

　　　　　The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

　　　　　　　CLERK OF COURT

　　　　　　　　　　　　　　　　OR　　/s/ Clayton P. Brust
_____　　　　_____
*Signature of Clerk or Deputy Clerk*　　　*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
<u>Christina Lovato, Chapter 7 Trustee</u> , who issues or requests this subpoena, are:

Clayton P. Brust | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date: _____


                                                    _____
                                                              *Server's signature*


                                                    _____
                                                              *Printed name and title*


                                                    _____
                                                              *Server's address*


Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**DEFINITIONS AND INSTRUCTIONS**

**DEFINITIONS**

1.      "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.      "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

**INSTRUCTIONS**

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

parents or subsidiaries, and persons under their control.

1. Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2. Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3. All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4. Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5. If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6. If there are no Documents responsive to any particular request, the response shall state so in writing.

7. In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8. Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9. Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

2

and label them to correspond to the enumerated requests of the demand.

      10.    Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

      11.    These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary.

**SUPPLEMENTAL INSTRUCTIONS (updated June 12, 2025)**

**1.     CUSIPs and tickers:**  Anson should produce documents related to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPs, tickers, or legend identifiers related to Meta Materials Inc. (all together, "Meta"):

- MMAT:  59134N 10 4  META MATLS INC
- MMAT:  59134N 30 2  META MATLS INC
- TRCH:  89102U103
- MMTLP:  59134N 20 3  PFD META MATLS

**2.     Date range:**  records related to the MMAT and TRCH CUSIPs should be produced from a date range of September 21, 2020 through August 21, 2024.  Records related to the MMTLP CUSIP should be produced from a date range of June 28, 2021 to December 14, 2022.

**3.     Regulatory obligations:**  The records requested below should include, but are limited to, electronically-stored records that Anson retained to satisfy its regulatory and compliance obligations during the relevant time period.

**ITEMS TO BE PRODUCED (updated June 12, 2025)**

**Request No. 1:**

All relevant order routing and execution records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to the routing of orders of any type for shares in Meta CUSIPs, using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including records of orders sent by Anson to any broker-dealer, exchange or off-exchange trading venue and orders received by Anson from any broker-dealer, exchange or off-exchange trading venue.

1

Order routing and execution records provided by Anson should reflect the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records include but are not limited to cancel/replaces, order forwarding, executions, and expired orders.

**Request No. 2:**

All records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to locating, securing, borrowing, and delivering shares of Meta CUSIPs, including any records of instances where Anson failed to deliver shares of Meta and records of how Anson rectified the outstanding failures to deliver, where applicable.

**Request No. 3:**

All records of position data showing Anson's positions in all Meta CUSIPs, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to any naked short sales), produced with full data in the frequency such data was recorded, in the original format in which the data was generated.

# EXHIBIT 4

# EXHIBIT 4

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

## District of Nevada

In re META MATERIALS INC.,

<div align="center">Debtor</div>

*(Complete if issued in an adversary proceeding)*

Case No. 24-50792-hlb

_____

<div align="center">Plaintiff</div>

<div align="center">v.</div>

Chapter 7

_____

<div align="center">Defendant</div>

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: The Custodian of Records of ANSON FUNDS USA | 16000 Dallas Parkway, Suite 800, Dallas, TX 75248

<div align="center">*(Name of person to whom the subpoena is directed)*</div>

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: see "Items to be Produced" attached hereto, along with the attachment "Definitions and Instructions"

| PLACE Lexitas<br>325 North St. Paul Street, #1900<br>Dallas, TX 75201 | DATE AND TIME<br>July 11, 2025 OR as arranged with Trustee<br>Lovato's counsel (see contact info below) |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

<div align="center">CLERK OF COURT</div>

<div align="center">OR</div>

/s/ Clayton P. Brust

_____          _____
*Signature of Clerk or Deputy Clerk*               *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Christine Lovato, Chapter 7 Trustee_____ , who issues or requests this subpoena, are:

Clayton P. Brust, Esq. | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

<div align="center">**Notice to the person who issues or requests this subpoena**</div>

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*


Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
 (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

 (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**DEFINITIONS AND INSTRUCTIONS**

**DEFINITIONS**

1.      "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.      "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

**INSTRUCTIONS**

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

1

parents or subsidiaries, and persons under their control.

1.　　Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.　　Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3.　　All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4.　　Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5.　　If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6.　　If there are no Documents responsive to any particular request, the response shall state so in writing.

7.　　In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8.　　Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9.　　Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

and label them to correspond to the enumerated requests of the demand.

10.     Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

11.     These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary.

**SUPPLEMENTAL INSTRUCTIONS (updated June 12, 2025)**

**1.     CUSIPs and tickers:**  Anson should produce documents related to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPs, tickers, or legend identifiers related to Meta Materials Inc. (all together, "Meta"):

- MMAT:  59134N 10 4  META MATLS INC
- MMAT:  59134N 30 2  META MATLS INC
- TRCH:  89102U103
- MMTLP:  59134N 20 3  PFD META MATLS

**2.     Date range:**  records related to the MMAT and TRCH CUSIPs should be produced from a date range of September 21, 2020 through August 21, 2024.  Records related to the MMTLP CUSIP should be produced from a date range of June 28, 2021 to December 14, 2022.

**3.     Regulatory obligations:**  The records requested below should include, but are limited to, electronically-stored records that Anson retained to satisfy its regulatory and compliance obligations during the relevant time period.

**ITEMS TO BE PRODUCED (updated June 12, 2025)**

**Request No. 1:**

All relevant order routing and execution records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to the routing of orders of any type for shares in Meta CUSIPs, using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including records of orders sent by Anson to any broker-dealer, exchange or off-exchange trading venue and orders received by Anson from any broker-dealer, exchange or off-exchange trading venue.

1

Order routing and execution records provided by Anson should reflect the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records include but are not limited to cancel/replaces, order forwarding, executions, and expired orders.

**Request No. 2:**

All records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to locating, securing, borrowing, and delivering shares of Meta CUSIPs, including any records of instances where Anson failed to deliver shares of Meta and records of how Anson rectified the outstanding failures to deliver, where applicable.

**Request No. 3:**

All records of position data showing Anson's positions in all Meta CUSIPs, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to any naked short sales), produced with full data in the frequency such data was recorded, in the original format in which the data was generated.

2

# EXHIBIT 5

# EXHIBIT 5

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of NEVADA

In re META MATERIALS, INC.,

Debtor

Case No. 24-50792-hlb

Chapter _____

## SUBPOENA FOR RULE 2004 EXAMINATION

To: The Custodian of Records of VIRTU FINANCIAL, LLC, c/o The Corporation Trust Co | 1209 Orange St, Wilmington, DE 19801

*(Name of person to whom the subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Lexitas<br>1330 King Street<br>Wilmington, DE 19801 | June 26, 2025 OR as arranged with Trustee Lovato's counsel (see contact info below) |

The examination will be recorded by this method: stenographic and/or audiovisual means

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attachment titled "Items to be Produced" along with the attachment "Definitions and Instructions"

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

/s/ Clayton P. Brust
_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Christina Lovato, Chapter 7 Trustee , who issues or requests this subpoena, are:

Clayton P. Brust | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


       I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

1.     "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.     "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### INSTRUCTIONS

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

1

parents or subsidiaries, and persons under their control.

1. Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2. Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3. All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4. Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5. If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6. If there are no Documents responsive to any particular request, the response shall state so in writing.

7. In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8. Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9. Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

and label them to correspond to the enumerated requests of the demand.

        10.    Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

        11.    These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary.

3

### SUPPLEMENTAL INSTRUCTIONS

1.  **CUSIPs and tickers:**  The following document requests relate to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPs, tickers, or legend identifiers related to Meta Materials Inc. (all together, "Meta"):

- MMAT:  59134N 10 4  META MATLS INC

- MMAT:  59134N 30 2  META MATLS INC

- TRCH:  89102U103

- MMTLP:  59134N 20 3  PFD META MATLS

2.  **Date range:**  records related to MMAT and TRCH should be produced from a date range of September 21, 2020 through August 7, 2024.  Records related to MMTLP should be produced from a date range of June 28, 2021 to December 14, 2022.

3.  **Regulatory obligations:**  The records requested below should include, but not limited to, electronically stored records that fulfill Virtu's regulatory and compliance obligation to retain customer and firm order and execution records as required of Virtu in its capacity as a broker-dealer. See Securities Exchange Act Rule 10b-10 and Securities Exchange Act Section 17a-3.

4.  **Entities:**  The Trustee is seeking records from the following Virtu entities, at a minimum:  Virtu Financial LLC, Virtu Americas LLC, and Virtu KCG Holdings LLC.

### ITEMS TO BE PRODUCED (UPDATED JUNE 2, 2025)

**Request No. 1:**

All order routing and execution records for client-facing transactions related to the routing of orders of any type for Meta shares using FIX or binary protocol, or any other protocol used for similar purposes, in the original format the data was saved.  Such records should include those related to 1) orders received from customers and/or broker-dealer clients of Virtu and 2) orders

sent to customers and/or broker-dealer clients of Virtu.

Order routing and execution records provided by Virtu should reflect the lifespan transactions of orders from origination to completion, capturing all relevant information (i.e. broker info, customer info, long or short indicators, and unique ID), with precision timestamps. These records should also include, but are not limited to, cancel/replaces, order forwarding, executions, and expired orders.

**Request No. 2:**

All relevant order routing and execution records for agency, principal, and riskless principal transactions related to the routing of orders of any type for Meta shares using FIX or binary protocol, or any other protocol used for similar purposes, in the original format the data was saved. Such records should include those related to 1) orders routed to an exchange or off-exchange trading venue on behalf of customers and/or broker-dealer clients of Virtu and 2) orders received from an exchange or off-exchange trading venue on behalf of customers and/or broker-dealer clients of Virtu.

Order routing and execution records provided by Virtu should reflect the lifespan transactions of orders from origination to completion, capturing all relevant information (i.e. broker info, customer info, long or short indicators, and unique ID), with precision timestamps. These records should also include, but are not limited to, cancel/replaces, order forwarding, executions, and expired orders. These records should also include transactions where Virtu served as counterparty to the customer and/or broker-dealer client executions on a principal or riskless principal basis and/or executed customers transactions and/or broker-dealer client transactions on an agency basis.

2

**Request No. 3:**

All order routing and execution records for Virtu's proprietary trading and/or market-making transactions related to the routing of orders of any type for Meta shares using FIX or binary protocol, or any other protocol used for similar purposes, in the original format the data was saved. Such records should include 1) orders routed to an exchange or off-exchange trading venue on behalf of Virtu and 2) orders received from an exchange or off-exchange trading venue on behalf of Virtu.

Order routing and execution records provided by Virtu should reflect orders' lifespans from origination to completion, capturing all relevant information (i.e. broker info, customer info, long or short indicators, and unique ID), with precision timestamps for all related transactions. These records should include, but are not limited to, cancel/replaces, order forwarding, executions, and expired orders.

**Request No. 4:**

All records related to locating, securing, borrowing, and delivering Meta shares, including records of any instances in which Virtu failed to deliver Meta shares and records of how Virtu rectified any outstanding failures to deliver.

**Request No. 5:**

All records of position data regarding Virtu's positions in Meta, including 1) records of Meta shares sold short by Virtu that were located and/or successfully borrowed, and 2) records of Meta shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to naked short sales). Virtu's production should reflect the same frequency in which such data was recorded.

# EXHIBIT 6

# EXHIBIT 6

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

## District of Nevada

In re META MATERIALS INC.,

Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 24-50792-hlb

_____

Plaintiff

v.

_____

Defendant

Chapter 7

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: The Custodian of Records of VIRTU FINANCIAL, LLC, c/o The Corporation Trust Co | 1209 Orange St., Wilmington, DE 19801

*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: see "Items to be Produced" attached hereto, along with the attachment "Definitions and Instructions"

| PLACE Lexitas<br>1330 King Street<br>Wilmington, DE 19801 | DATE AND TIME<br>June 26, 2025 OR as arranged with Trustee<br>Lovato's counsel (see contact info below) |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____          /s/ Clayton P. Brust

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Christine Lovato, Chapter 7 Trustee , who issues or requests this subpoena, are:

Clayton P. Brust, Esq. | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

       I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

     (i) is a party or a party's officer; or

     (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

   *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

   *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

     (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

     (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

   *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     (i) fails to allow a reasonable time to comply;

     (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

     (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

     (iv) subjects a person to undue burden.

   *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     (i) disclosing a trade secret or other confidential research, development, or commercial information; or

     (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

   *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

     (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

     (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

   *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

   *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

   *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

   *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

   *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

     (i) expressly make the claim; and

     (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

   *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS AND INSTRUCTIONS

### DEFINITIONS

1.    "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.    "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### INSTRUCTIONS

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

1

parents or subsidiaries, and persons under their control.

1.      Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.      Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3.      All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4.      Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5.      If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6.      If there are no Documents responsive to any particular request, the response shall state so in writing.

7.      In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8.      Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

2

and label them to correspond to the enumerated requests of the demand.

10.    Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

11.    These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary.

**SUPPLEMENTAL INSTRUCTIONS**

**1.     CUSIPs and tickers:**  The following document requests relate to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPs, tickers, or legend identifiers related to Meta Materials Inc. (all together, "Meta"):

- MMAT:  59134N 10 4  META MATLS INC

- MMAT:  59134N 30 2  META MATLS INC

- TRCH:  89102U103

- MMTLP:  59134N 20 3  PFD META MATLS

**2.     Date range:**  records related to MMAT and TRCH should be produced from a date range of September 21, 2020 through August 7, 2024.  Records related to MMTLP should be produced from a date range of June 28, 2021 to December 14, 2022.

**3.     Regulatory obligations:**  The records requested below should include, but not limited to, electronically stored records that fulfill Virtu's regulatory and compliance obligation to retain customer and firm order and execution records as required of Virtu in its capacity as a broker-dealer. See Securities Exchange Act Rule 10b-10 and Securities Exchange Act Section 17a-3.

**4.     Entities:**  The Trustee is seeking records from the following Virtu entities, at a minimum:  Virtu Financial LLC, Virtu Americas LLC, and Virtu KCG Holdings LLC.

**ITEMS TO BE PRODUCED (UPDATED JUNE 2, 2025)**

**Request No. 1:**

All order routing and execution records for client-facing transactions related to the routing of orders of any type for Meta shares using FIX or binary protocol, or any other protocol used for similar purposes, in the original format the data was saved.  Such records should include those related to 1) orders received from customers and/or broker-dealer clients of Virtu and 2) orders

1

1  sent to customers and/or broker-dealer clients of Virtu.

2      Order routing and execution records provided by Virtu should reflect the lifespan
3  transactions of orders from origination to completion, capturing all relevant information (i.e. broker
4  info, customer info, long or short indicators, and unique ID), with precision timestamps. These
5  records should also include, but are not limited to, cancel/replaces, order forwarding, executions,
6  and expired orders.

8  **Request No. 2:**

9      All relevant order routing and execution records for agency, principal, and riskless principal
10  transactions related to the routing of orders of any type for Meta shares using FIX or binary
11  protocol, or any other protocol used for similar purposes, in the original format the data was saved.
12  Such records should include those related to 1) orders routed to an exchange or off-exchange
13  trading venue on behalf of customers and/or broker-dealer clients of Virtu and 2) orders received
14  from an exchange or off-exchange trading venue on behalf of customers and/or broker-dealer
15  clients of Virtu.

17      Order routing and execution records provided by Virtu should reflect the lifespan
18  transactions of orders from origination to completion, capturing all relevant information (i.e. broker
19  info, customer info, long or short indicators, and unique ID), with precision timestamps. These
20  records should also include, but are not limited to, cancel/replaces, order forwarding, executions,
21  and expired orders. These records should also include transactions where Virtu served as
22  counterparty to the customer and/or broker-dealer client executions on a principal or riskless
23  principal basis and/or executed customers transactions and/or broker-dealer client transactions on
24  an agency basis.

2

**Request No. 3:**

All order routing and execution records for Virtu's proprietary trading and/or market-making transactions related to the routing of orders of any type for Meta shares using FIX or binary protocol, or any other protocol used for similar purposes, in the original format the data was saved. Such records should include 1) orders routed to an exchange or off-exchange trading venue on behalf of Virtu and 2) orders received from an exchange or off-exchange trading venue on behalf of Virtu.

Order routing and execution records provided by Virtu should reflect orders' lifespans from origination to completion, capturing all relevant information (i.e. broker info, customer info, long or short indicators, and unique ID), with precision timestamps for all related transactions. These records should include, but are not limited to, cancel/replaces, order forwarding, executions, and expired orders.

**Request No. 4:**

All records related to locating, securing, borrowing, and delivering Meta shares, including records of any instances in which Virtu failed to deliver Meta shares and records of how Virtu rectified any outstanding failures to deliver.

**Request No. 5:**

All records of position data regarding Virtu's positions in Meta, including 1) records of Meta shares sold short by Virtu that were located and/or successfully borrowed, and 2) records of Meta shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to naked short sales). Virtu's production should reflect the same frequency in which such data was recorded.

# EXHIBIT 7

# EXHIBIT 7

**quinn emanuel** trial lawyers | new york

295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

<div align="right">

WRITER'S DIRECT DIAL NO.
**(212) 849-7000**

WRITER'S EMAIL ADDRESS
**peterfountain@quinnemanuel.com**

</div>

June 13, 2025

<u>VIA E-MAIL</u>

Clayton P. Brust
Robison, Sharp, Sullivan & Brust
71 Washington St
Reno, Nevada 89503

Re:     *In re Meta Materials, Inc.*, U.S. Bankruptcy Court for the District of Nevada (Case No. 24-50792-hlb)

Dear Mr. Brust:

    We represent non-party Citadel Securities LLC ("Citadel Securities"). Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure and the Local Rules of Bankruptcy Practice for the Bankruptcy Court for the District of Nevada, Citadel Securities, through undersigned counsel, submits these Responses & Objections to Trustee Christina Lovato's ("Trustee") (i) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) and (ii) Subpoena for Rule 2004 Examination (together, the "Subpoenas").

<div align="center">

**GENERAL OBJECTIONS**

</div>

    The following General Objections apply to the Subpoenas and to each request in each subpoena (each individually a "Request"). By providing responses to the Subpoenas, in whole or in part, Citadel Securities does not intend to waive, and does not waive, any of these General Objections, or any specific objection with respect to any Request.

    1. Citadel Securities objects to the Subpoenas to the extent that they seek, or may be construed to seek, information protected from disclosure by the attorney-client privilege, attorney work product doctrine, common interest doctrine, and/or any other applicable privilege or protection. Any such information will not be provided, and any inadvertent production of any information that Citadel Securities believes is immune from discovery pursuant to any applicable privilege or protection shall not be deemed a waiver.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

2. Citadel Securities objects to the Subpoenas, and the Definitions and Instructions therein, to the extent that they purport to impose obligations greater than those required by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Nevada, the Local Rules of Bankruptcy Practice for Bankruptcy Court for the District of Nevada, or other applicable rules and procedures ("Applicable Rules"). Citadel Securities will construe its obligations in responding to the Subpoenas and their Definitions and Instructions as limited by the Applicable Rules.

3. Citadel Securities objects to the Subpoenas to the extent that they seek documents that contain, reflect, refer, or relate to confidential or proprietary information and/or trade secrets. *Sci. Games Corp. v. AGS LLC*, No. 217CV00343JADNJK, 2017 WL 3013251, at *3 (D. Nev. July 13, 2017) ("Courts may quash or modify a subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information."). Citadel Securities further objects to each Request to the extent that it seeks information, documents, or things subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Citadel Securities is required to protect or maintain the confidentiality of any third party's information or documents. Citadel Securities will not produce any such documents until an appropriate protective order is in place governing the treatment of those documents, and reserves the right to redact such confidential information. Inadvertent disclosure of any confidential information, documents, or things shall not operate as a waiver of any applicable confidentiality protection or obligations.

4. Citadel Securities objects to the "Relevant Time Period" of "September 21, 2020 through August 7, 2024" as overbroad and unduly burdensome, including because neither the Trustee's *Ex Parte* Motion nor the Subpoenas make any specific allegations to support such a timeframe, and because counsel for the Trustee was unable to articulate any basis for the requested time period during the parties' conference. *Daughtery v. Wilson*, No. 08CV0408-WQH BLM, 2008 WL 4748042, at *3 (S.D. Cal. Oct. 23, 2008), *report and recommendation adopted*, No. 08CV408WQHBLM, 2009 WL 124322 (S.D. Cal. Jan. 16, 2009) (entering protective order where the proposed relevant time frame was detached from the events at issue); *see* Fed. R. Civ. P. 26(b), advisory committee's notes to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").

5. Citadel Securities objects to the Subpoenas because they appear designed for an improper purpose. Rule 2004 examinations are limited to investigating the "acts, conduct, or property or ... the liabilities and financial condition of the debtor, or ... any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b). The Subpoenas, however, appear designed to investigate potential claims against third parties for purported stock manipulation rather than to investigate the debtor's financial condition or estate. *See, e.g.*, *In re Transmar Commodity Group, Ltd.*, No. 16-13625 (JLG) (Bankr. S.D.N.Y.) [ECF No. 367] Tr., Hr'g June 9, 2017 pp. 22:7-11 (explaining it is "not permitted" to use Rule 2004's liberal discovery to further imminent litigation against a litigation target).

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. Citadel Securities objects to Definition No. 1 to the extent it purports to require Citadel Securities to search for or produce documents in a format other than the format Citadel Securities maintains those documents in the ordinary course of business. Citadel Securities will only search for or produce documents in the format they are maintained in the ordinary course of business.

2. Citadel Securities objects to Definition No. 2 because it purports to require Citadel Securities to search for and produce "identical information" if maintained in "different types of media," which would be duplicative and unduly burdensome. Citadel Securities will not treat "identical information" as "different original documents."

3. Citadel Securities objects to Definition No. 3 as overbroad and unduly burdensome to the extent it defines "ESI" to include any and all forms of electronically stored information regardless of where stored, including on personal devices. Citadel Securities will limit its search to business records maintained on Citadel Securities' systems in the ordinary course of business.

4. Citadel Securities objects to the definition of "Document" as overly broad, unduly burdensome, and disproportionate to the needs of the case, and to the extent that it seeks to impose obligations on Citadel Securities beyond those required or contemplated by the applicable provisions of the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Nevada or the Bankruptcy Court for the District of Nevada.

5. Citadel Securities objects to the Instructions because they purport to impose an obligation to produce documents in the "possession, custody, or control of any of Your attorneys, directors, agents, employees, representatives, associates, division affiliates, partnerships, parents or subsidiaries, and persons under their control," which is overbroad, unduly burdensome, and would invade the attorney-client and work product privileges. Citadel Securities will only search for and produce documents within Citadel Securities LLC's possession, custody, or control.

6. Citadel Securities objects to Instruction No. 2 because it purports to require Citadel Securities to search for, review, and produce every "non-identical version[]" of any produced document, and accordingly would impose an undue burden on a non-party. Citadel Securities will not comply with Instruction No. 2.

7. Citadel Securities objects to Instruction No. 4 because it purports to seek documents "authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period" as overbroad and unduly burdensome because it would require Citadel Securities to investigate and attempt to determine, among other things, the time that any document was "authored, "reproduced," "in effect," etc. Citadel Securities will not comply with Instruction No. 4.

8. Citadel Securities objects to Instruction Nos. 5, 6, 7, and 9 to the extent they purport to impose obligations broader than those imposed by the Applicable Rules. Citadel Securities will construe its obligations as limited by the Applicable Rules.

3

9. Citadel Securities objects to Instruction No. 8 to the extent it purports to require Citadel Securities to make duplicative Responses and/or productions in response to any Request. Citadel Securities may construe the references to other Requests for the purpose of limiting the scope of its Responses and/or productions.

10. Citadel Securities objects to Instruction No. 10 to the extent the ESI Protocol – to which Citadel Securities is not a party – may be inconsistent with the manner in which the Firm keeps documents in the ordinary course.

11. Citadel Securities objects to Instruction No. 11 to the extent it purports to deem the Subpoenas' Requests continuing in nature, because the obligation to provide supplemental responses to document requests applies to parties pursuant to FRCP 26(e); FRCP 45 does not impose a similar obligation on non-parties.

## RESPONSES AND OBJECTIONS
## TO SPECIFIC REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION 1**: All messages relating to the routing of orders of any type for shares Meta and/or MMTLP using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, received from client broker-dealer of Citadel and sent to client broker-dealers of Citadel.

## RESPONSE AND OBJECTIONS TO REQUEST FOR PRODUCTION 1:

Citadel Securities incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. Citadel Securities further objects as follows:

***First***, Citadel Securities objects to this Request because it fails to define key terms, rendering the request unintelligible. The Request does not define, for example, "messages," "Meta," "MMTLP," or "client broker-dealer," making the Request impermissibly vague. *See Matter of Grand Jury Subpoenas Issued May 3, 1994 for Nash*, 858 F. Supp. 132, 135-36 (D. Ariz. 1994) ("Each subpoena includes overly broad language directing the witness to disclose 'communications with persons … who are not defendants.' The subpoena does not specify who is contemplated by 'persons' … In light of this undisciplined language, the subpoenas exceed even the breadth of the subpoena found objectionable" in other cases). Citadel Securities cannot fully

assess the validity, scope, or burden of this Request due to these undefined key terms, and expressly reserves the right to raise additional objections.

**Second**, Citadel Securities objects to this Request because it is overbroad and unduly burdensome. The Request seeks "[a]ll messages relating to the routing of orders of any type for shares [of] Meta and/or MMTLP using FIX or binary protocol or any other protocol used for similar purposes " involving any client broker-dealer of Citadel Securities over a nearly four-year period, which would require an extraordinarily burdensome search and review process. *See Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) ("[T]he court agrees that … requests for 'any and all' documents Plaintiff received or submitted to or from USCIS or any other Government agency in connection with an application for immigration status or work authorization in the United States is overbroad without a temporal or other reasonable limitation.").

**Third**, Citadel Securities objects to this Request because it purports to require Citadel Securities to produce documents outside its possession, custody, or control because it purports to require the production of documents "received from" or "sent to" any client broker-dealer of Citadel Securities, by any party. *Sci. Games Corp. v. AGS LLC*, No. 217CV00343JADNJK, 2017 WL 3013251, at *2 (D. Nev. July 13, 2017) (noting a "party is entitled to seek only those documents in the subpoenaed person's 'possession, custody, or control.'") (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)).

**Fourth**, Citadel Securities, a non-party, objects to this Request to the extent that it seeks information, documents, or things that are readily available to the Trustee from other sources. *Brown v. Rasley*, 1:13-CV-02084-AWI-BAM PC, 2017 WL 6451706, at *4 (E.D. Cal. Dec. 18, 2017) (denying subpoena where records were obtainable by document request and not clear plaintiff exhausted other "reasonably-available means" before requesting subpoena).

*Fifth*, Citadel Securities objects to this Request because its relevance to the underlying bankruptcy is unclear and the Trustee has been unable to, or outright declined, to explain the relevance of the information sought. *See Heilman v. Chernis*, No. 2:11-CV-0042 JAM EFB, 2012 WL 5187732, at *4 (E.D. Cal. Oct. 18, 2012) (noting a party seeking discovery "may not simply argue in conclusory fashion that all of the discovery he seeks is relevant…") (quoting *Freeland v. Sacramento City Police Dep't,* No. Civ. S–06–0917 LKK DAD, 2009 U.S. Dist. LEXIS 20282, at *10 (E.D. Cal. Mar. 3, 2009)); *see* Fed. R. Civ. P. 26(b), advisory committee's notes to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").

*Sixth*, Citadel Securities further objects to this Request to the extent it purports to seek information about Citadel Securities' or its clients' positions in a security, which is well outside the scope of a Rule 2004 examination. *See* Rule 2004 ("The examination … may relate *only* to: (A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge.") (emphasis added).

*Finally*, Citadel Securities objects to the Request to the extent that it seeks information already in the Trustee's possession. The Trustee has purportedly already analyzed "55 million shares of MMAT," identified specific trading practices it argues are unlawful, and quantified the impact on shareholders, indicating that the Trustee currently possesses information concerning relevant trades or has the capabilities to obtain the information itself. *See Trevino v. Burke*, No. 2:21-cv-01415-DJC-JDP (PC), 2024 WL 2853262, at *1 (E.D. Cal. June 5, 2024) (explaining "a

Rule 45 subpoena should be directed to non-parties for information that cannot be readily obtained from a party to the case.").

On the basis of these objections, Citadel Securities will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION 2**:   All messages relating to the routing of orders of any type for shares Meta and/or MMTLP using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, routed to an exchange or off-exchange trading venue on behalf of a client broker-dealer of Citadel and received from an exchange or off-exchange trading venue on behalf of a client broker-dealer of Citadel.

**RESPONSE AND OBJECTIONS TO REQUEST FOR PRODUCTION 2:**

Citadel Securities incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.  Citadel Securities further objects as follows:

*First*, Citadel Securities objects to this Request because it fails to define key terms, rendering the request vague, unduly burdensome, and unintelligible.  The Request does not define, for example, "messages," "Meta," "MMTLP," or "client broker-dealer," making the Request impermissibly vague. *See Matter of Grand Jury Subpoenas Issued May 3, 1994 for Nash*, 858 F. Supp. at 135-36 ("Each subpoena includes overly broad language directing the witness to disclose 'communications with persons … who are not defendants.' The subpoena does not specify who is contemplated by 'persons' … In light of this undisciplined language, the subpoenas exceed even the breadth of the subpoena found objectionable" in other cases).  Citadel Securities cannot fully assess the validity, scope, or burden of this Request due to these undefined key terms, and expressly reserves the right to raise additional objections.

*Second*, Citadel Securities objects to this Request because it is overbroad and unduly burdensome.  The Request seeks "[a]ll messages relating to the routing of orders of any type for shares [of] Meta and/or MMTLP using FIX or binary protocol or any other protocol used for

similar purposes" involving any client-broker of Citadel Securities over a nearly four-year period, which would require an extraordinarily burdensome search and review process. *See Guillen*, 341 F.R.D. at 71 ("[T]he court agrees that … requests for 'any and all' documents Plaintiff received or submitted to or from USCIS or any other Government agency in connection with an application for immigration status or work authorization in the United States is overbroad without a temporal or other reasonable limitation.").

**Third**, Citadel Securities objects to this Request because it purports to require Citadel Securities to produce documents outside its possession, custody, or control as it requires information from or sent to client broker-dealers of Citadel Securities. *Sci. Games Corp.*, 2017 WL 3013251, at *2 (noting a "party is entitled to seek only those documents in the subpoenaed person's 'possession, custody, or control.'") (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)).

**Fourth**, Citadel Securities, a non-party, objects to this Request to the extent that it seeks information, documents, or things that are readily available to the Trustee from other sources. *Brown*, 2017 WL 6451706, at *4 (denying subpoena where records were obtainable by document request and not clear plaintiff exhausted other "reasonably-available means" before requesting subpoena).

**Fifth**, Citadel Securities objects to this Request because its relevance to the underlying bankruptcy is unclear and the Trustee has been unable to, or outright declined, to explain the relevance of the information sought. *See Heilman*, 2012 WL 5187732, at *4 (noting a party seeking discovery "may not simply argue in conclusory fashion that all of the discovery he seeks is relevant…") (quoting *Freeland*, 2009 U.S. Dist. LEXIS 20282, at *10); *see* Fed. R. Civ. P. 26(b), advisory committee's notes to 2015 amendment ("A party claiming that a request is

important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").

**Sixth**, Citadel Securities further objects to this Request to the extent it purports to seek information about Citadel Securities' or its clients' positions in a security, which is well outside the scope of a Rule 2004 examination. *See* Rule 2004 ("The examination … may relate *only* to: (A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge.") (emphasis added).

**Finally**, Citadel Securities objects to the Request to the extent that it seeks information already in the Trustee's possession. The Trustee has purportedly already analyzed "55 million shares of MMAT," identified specific trading practices it argues are unlawful, and quantified the impact on shareholders, indicating that the Trustee currently possesses information concerning relevant trades or has the capabilities to obtain the information itself. *See Trevino*, 2024 WL 2853262, at *1 (explaining "a Rule 45 subpoena should be directed to non-parties for information that cannot be readily obtained from a party to the case.").

On the basis of these objections, Citadel Securities will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION 3**: All messages relating to the routing of orders of any type for shares Meta and/or MMTLP using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, routed to an exchange or off-exchange trading venue on behalf of Citadel and received from an exchange or off-exchange trading venue on behalf of Citadel.

**RESPONSE AND OBJECTIONS TO REQUEST FOR PRODUCTION 3:**

Citadel Securities incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. Citadel Securities further objects as follows:

**First**, Citadel Securities objects to this Request because it fails to define key terms, rendering the request vague, unduly burdensome, and unintelligible. The Request does not define, for example, "messages," "Meta," "MMTLP," or "exchange," making the Request impermissibly vague. *See Matter of Grand Jury Subpoenas Issued May 3, 1994 for Nash*, 858 F. Supp. at 135–36 ("Each subpoena includes overly broad language directing the witness to disclose 'communications with persons … who are not defendants.' The subpoena does not specify who is contemplated by 'persons' … In light of this undisciplined language, the subpoenas exceed even the breadth of the subpoena found objectionable" in other cases). Citadel Securities cannot fully assess the validity, scope, or burden of this Request due to these undefined key terms, and expressly reserves the right to raise additional objections.

**Second**, Citadel Securities objects to this Request because it purports to require Citadel Securities to produce documents outside its possession, custody, or control as it requires information from or sent to third party exchanges or off-exchange trading venues. *Sci. Games Corp.*, 2017 WL 3013251, at *2 (noting a "party is entitled to seek only those documents in the subpoenaed person's 'possession, custody, or control.'") (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)).

**Third**, Citadel Securities objects to this Request because it is overbroad and unduly burdensome. The Request seeks "[a]ll messages relating to the routing of orders of any type for shares [of] Meta and/or MMTLP using FIX or binary protocol or any other protocol used for similar purposes" involving Citadel Securities over a nearly four-year period, which would require an extraordinarily burdensome search and review process. *See Guillen*, 341 F.R.D. at 71 ("[T]he court agrees that … requests for 'any and all' documents Plaintiff received or submitted to or from USCIS or any other Government agency in connection with an application for immigration status

or work authorization in the United States is overbroad without a temporal or other reasonable limitation.").

**Fourth**, Citadel Securities, a non-party, objects to this Request to the extent that it seeks information, documents, or things that are readily available to the Trustee from other sources. *Brown*, 2017 WL 6451706, at *4 (denying subpoena where records obtainable by document request and not clear plaintiff exhausted other "reasonably-available means" before requesting subpoena).

**Fifth**, Citadel Securities objects to this Request because its relevance to the underlying bankruptcy is unclear and the Trustee has been unable to, or outright declined, to explain the relevance of the information sought. *See Heilman*, 2012 WL 5187732, at *4 (noting a party seeking discovery "may not simply argue in conclusory fashion that all of the discovery he seeks is relevant…") (quoting *Freeland*, 2009 U.S. Dist. LEXIS 20282, at *10); *see* Fed. R. Civ. P. 26(b), advisory committee's notes to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").

**Sixth,** Citadel Securities objects to this Request to the extent it purports to seek information about Citadel Securities' or its clients' positions in a security, which is well outside the scope of a Rule 2004 examination. *See* Rule 2004 ("The examination … may relate *only* to: (A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge.") (emphasis added).

**Finally**, Citadel Securities objects to the Request to the extent that it seeks information already in the Trustee's possession. The Trustee has purportedly already analyzed "55 million

shares of MMAT," identified specific trading practices it argues are unlawful, and quantified the impact on shareholders, indicating that the Trustee currently possesses information concerning relevant trades or has the capabilities to obtain the information itself. *See Trevino*, 2024 WL 2853262, at *1 (explaining "a Rule 45 subpoena should be directed to non-parties for information that cannot be readily obtained from a party to the case.").

On the basis of these objections, Citadel Securities will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION 4**: All communications electronically stored in the original format captured, including transactions records and emails, related to locating, securing, borrowing, and delivering shares of Meta and/or MMTLP, including records of instances where Citadel failed to deliver (FTD) shares of Meta and/or MMTLP and records of how Citadel rectified the outstanding FTDs.

**RESPONSE AND OBJECTIONS TO REQUEST FOR PRODUCTION 4:**

Citadel Securities incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. Citadel Securities further objects as follows:

*First*, Citadel Securities objects to this Request because it fails to define key terms, rendering the request vague, unduly burdensome, and unintelligible. The Request does not define, for example, "Meta," or "MMTLP," making the Request impermissibly vague. *See Matter of Grand Jury Subpoenas Issued May 3, 1994 for Nash*, 858 F. Supp. at 135–36 ("Each subpoena includes overly broad language directing the witness to disclose 'communications with persons … who are not defendants.' The subpoena does not specify who is contemplated by 'persons' … In light of this undisciplined language, the subpoenas exceed even the breadth of the subpoena found objectionable" in other cases). Citadel Securities cannot fully assess the validity, scope, or burden of this Request due to these undefined key terms, and expressly reserves the right to raise additional objections.

**Second**, Citadel Securities objects to this Request because it is overbroad and unduly burdensome. The Request seeks "[a]ll communications … including transaction records and emails, related to locating, securing, borrowing, and delivering shares of Meta and/or MMTLP," without any limitation as to the purchasers of the shares involved or type of orders, which would require an extraordinarily burdensome search and review process. *See Guillen*, 341 F.R.D. at 71 ("[T]he court agrees that … requests for 'any and all' documents Plaintiff received or submitted to or from USCIS or any other Government agency in connection with an application for immigration status or work authorization in the United States is overbroad without a temporal or other reasonable limitation.").

**Third**, Citadel Securities objects to this Request because it purports to require Citadel Securities to produce documents outside its possession, custody, or control as it requires information relating to any transactions records and emails related to shares of Meta and/or MMTLP. *Sci. Games Corp.*, 2017 WL 3013251, at *2 (noting a "party is entitled to seek only those documents in the subpoenaed person's 'possession, custody, or control.'") (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)).

**Fourth**, Citadel Securities, a non-party, objects to this Request to the extent that it seeks information, documents, or things that are readily available to the Trustee from other sources. *Brown*, 2017 WL 6451706, at *4 (E.D. Cal. Dec. 18, 2017) (denying subpoena where records obtainable by document request and not clear plaintiff exhausted other "reasonably-available means" before requesting subpoena).

**Fifth**, Citadel Securities objects to this Request because its relevance to the underlying bankruptcy is unclear and the Trustee has been unable to, or outright declined, to explain the relevance of the information sought. *See Heilman*, 2012 WL 5187732, at *4 (noting a party

seeking discovery "may not simply argue in conclusory fashion that all of the discovery he seeks is relevant…") (quoting *Freeland*, 2009 U.S. Dist. LEXIS 20282, at *10); *see* Fed. R. Civ. P. 26(b), advisory committee's notes to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").

*Sixth,* Citadel Securities objects to this Request to the extent it purports to seek information about Citadel Securities' positions in a security and its trading strategies and practices, all of which are well outside the scope of a Rule 2004 examination. *See* Rule 2004 ("The examination … may relate *only* to: (A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge.") (emphasis added); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393–94 (Bankr. W.D. Pa. 2008) ("[W]hile Rule 2004 allows a fishing expedition to some extent, it may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs.").

*Finally*, Citadel Securities objects to the Request to the extent that it seeks information already in the Trustee's possession. The Trustee has purportedly already analyzed "55 million shares of MMAT," identified specific trading practices it argues are unlawful, and quantified the impact on shareholders, indicating that the Trustee currently possesses information concerning relevant trades or has the capabilities to obtain the information itself. *See Trevino*, 2024 WL 2853262, at *1 (explaining "a Rule 45 subpoena should be directed to non-parties for information that cannot be readily obtained from a party to the case.").

On the basis of these objections, Citadel Securities will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION 5**:  All records of position data representing Citadel's position in Meta and/or MMTLP, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to naked short sales), produced at the frequency such data was recorded).

## RESPONSE AND OBJECTIONS TO REQUEST FOR PRODUCTION 5:

Citadel Securities incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.  Citadel Securities further objects as follows:

*First*, Citadel Securities objects to this Request because it fails to define key terms, rendering the request vague, unduly burdensome, and unintelligible. The Request does not define, for example, "Meta," or "MMTLP," making the Request impermissibly vague.  *See Matter of Grand Jury Subpoenas Issued May 3, 1994 for Nash*, 858 F. Supp. at 135–36 ("Each subpoena includes overly broad language directing the witness to disclose 'communications with persons … who are not defendants.' The subpoena does not specify who is contemplated by 'persons' … In light of this undisciplined language, the subpoenas exceed even the breadth of the subpoena found objectionable" in other cases).  Citadel Securities cannot fully assess the validity, scope, or burden of this Request due to these undefined key terms, and expressly reserves the right to raise additional objections.

*Second,* Citadel Securities objects to this Request because it purports to seek information about Citadel Securities' positions in a security, which is well outside the scope of a Rule 2004 examination.  *See* Rule 2004 ("The examination …  may relate *only* to: (A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge.") (emphasis added).

***Third***, Citadel Securities objects to this Request because it is overbroad and unduly burdensome. The Request seeks "[a]ll records of position data representing Citadel Securities' position in Meta and/or MMTLP" over a nearly four-year period, which would require an extraordinarily burdensome search and review process. *See Guillen*, 341 F.R.D. at 71 ("[T]he court agrees that … requests for 'any and all' documents Plaintiff received or submitted to or from USCIS or any other Government agency in connection with an application for immigration status or work authorization in the United States is overbroad without a temporal or other reasonable limitation.").

***Fourth***, Citadel Securities objects to this Request because its relevance to the underlying bankruptcy is unclear and the Trustee has been unable to, or outright declined, to explain the relevance of the information sought. *See Heilman*, 2012 WL 5187732, at *4 (noting a party seeking discovery "may not simply argue in conclusory fashion that all of the discovery he seeks is relevant…") (quoting *Freeland*, 2009 U.S. Dist. LEXIS 20282, at *10); *see* Fed. R. Civ. P. 26(b), advisory committee's notes to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").

***Finally***, Citadel Securities objects to the Request to the extent that it seeks information already in the Trustee's possession. The Trustee has purportedly already analyzed "55 million shares of MMAT," identified specific trading practices it argues are unlawful, and quantified the impact on shareholders, indicating that the Trustee currently possesses information concerning relevant trades or has the capabilities to obtain the information itself. *See Trevino*, 2024 WL 2853262, at *1 (explaining "a Rule 45 subpoena should be directed to non-parties for information that cannot be readily obtained from a party to the case.").

On the basis of these objections, Citadel Securities will not produce documents in response to this Request.

Sincerely,

*/s/ Peter Fountain*

Peter H. Fountain

# EXHIBIT 8

# EXHIBIT 8

# Madeleine Zabriskie

| | |
|---|---|
| **From:** | Peter Fountain |
| **Sent:** | Tuesday, August 5, 2025 6:35 PM |
| **To:** | David D. Burnett; Madeleine Zabriskie |
| **Cc:** | Jeff Hartman; James Wes Christian; Stephen W. Tountas; Ryan R. C. Hicks; Holly Pappas; Clay Brust |
| **Subject:** | RE: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb) |

David,

I write regarding several issues concerning the Trustee's subpoenas. First, the Rule 2004 subpoena with document requests contravenes Local Rule 2004(c), which states that "[p]roduction of documents may not be obtained via an order under Fed. R. Bankr. P. 2004." When we asked how you could pursue Rule 2004 subpoenas for documents in light of this rule, you said you were not aware of the rule but would look into it.

We also explained that we remain concerned that the Trustee is using Rule 2004 as an improper substitute for adversary proceeding discovery. Your characterization of this as "pre-litigation discovery" and your admission that the Trustee is investigating "spoofing and shorting by third parties such as Citadel" confirms that the Trustee has already identified Citadel Securities as a litigation target. When we asked about this during the call, you said that Rule 2004 permits a "fishing expedition" but otherwise refused to explain the factual basis for the subpoenas to Citadel Securities, citing a need to protect litigation strategy and work product. As we discussed, courts consistently reject this misuse of Rule 2004, as the examination is "not permitted" where a party "has identified [the recipient] as a litigation target and is seeking to utilize the liberal discovery available under Rule 2004 to further this ultimate litigation." *In re Transmar Commod. Grp., Ltd.*, No. 16-13625-JLG (Bankr. S.D.N.Y.), June 9, 2017 Hr'g Tr. at 22:7-11.

The *Sorrento Therapeutics* case you cited is fundamentally different and inapposite from our situation. There, the court granted an unopposed motion seeking limited information about shareholders who owned the debtor's own securities *for the specific purpose of enabling proper notice for an imminent shareholder meeting*. That narrow, administrative purpose bears no resemblance to the extensive trading data and internal business information the Trustee seeks from Citadel Securities for admittedly pre-litigation purposes. When asked about the relevance of that case to the subpoenas, you said that the order in *Sorrento* was obtained in a "pre-litigation context" and that you subsequently obtained records from brokers. We do not see any such reference in the motion or order, nor do we agree with your analysis of the case.

We also discussed that the Trustee already possesses public trading data that purportedly identified "55 million shares of MMAT and 92 million shares of TRCH" allegedly subject to manipulation. When asked what specific information the Trustee is seeking from Citadel Securities that is not already available in that data, you said that what data the Trustee already has obtained is irrelevant because our client has an independent obligation to produce information.

Relatedly, regarding productions from other subpoena recipients, you refused to tell us what types of information you have already received and from whom, telling us instead that because our client has an independent obligation to produce documents, what you received from others was not relevant.

Finally, as you indicated in your email that production of trading data would only "partly satisfy" the document requests, we asked what else would be necessary. You responded that your requests seek "All messages relating to" the data, and that "messages" refers to "any form of communication."

In light of the Trustee's refusal to provide information about the basis of her subpoenas, her admitted improper purpose of seeking pre-litigation discovery regarding purported market manipulation by our client, and the significant and undue

burden associated with the subpoenas, Citadel Securities will stand on its responses & objections and not produce documents in response to the Trustee's subpoenas.

Sincerely,
Peter

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, July 31, 2025 8:24 PM
**To:** Peter Fountain <peterfountain@quinnemanuel.com>; Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas <hpappas@christianattarlaw.com>; Clay Brust <cbrust@rssblaw.com>
**Subject:** Re: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

[EXTERNAL EMAIL from dburnett@schneiderwallace.com]

---

Peter:

In advance of our call, here are responses to the main points raised in your June 13 Responses and Objections to the Trustee's subpoena.  We can reschedule the call to next week if you'd like.

Pages 1-2 of your R&Os, objections based on privilege and confidentiality.  We'd like to enter into a protective orders between Citadel and the Trustee, as we've done with other subpoena recipients, which will address your concern.

Page 2, the relevant time period of Sept. 21, 2020 through August 7, 2024.  Regarding the end date, Meta filed for Chapter 7 bankruptcy on August 9, 2024.  The start date is three months before Meta and Torchlight announced a definitive agreement for business combination.  We believe Torchlight, Meta's predecessor, had a substantial number of shares that were issued but not delivered which were carried into the Meta merger.  Trading in Meta shares was ultimately halted by FINRA on December 9, 2022.  The months leading up to the merger, and the subsequent period running through to the bankruptcy, are key to the Trustee's investigation of whether Meta's stock was manipulated.

Page 2, allegedly improper purpose.  As you note, Rule 2004 provides for investigating "the liabilities and financial condition of the debtor" and "any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b).  11 U.S.C. Section 704 states that the Trustee "shall . . . Investigate the financial affairs of the debtor."  "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate."  In re Bollinger, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015).  The Trustee is investigating possible manipulation of the debtor's stock which may have affected its financial condition.  Meta's stock price plummeted over time, which may be due in part to spoofing and shorting by third parties such as Citadel, which is what the Trustee is investigating.  That is a proper purpose.  Courts have endorsed subpoenas in cases with similar fact patterns.  See the attached order from *In re: Sorrento Therapeutics, Inc*., No. 23-90085 (Bankr. S.D. Tex. Apr. 4, 2023), Dkt. No. 334.  The decision granted the attached Debtors' Emergency

2

Motion from that case, Dkt. No. 330. The motion concerned documents requested from 25 brokers, dealers, and other firms (Exhibit A to the motion). The motion includes citation to caselaw about the broad scope of a Rule 2004 examination. Page 6 of 12. See also *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626-28 (Bankr. D. Del. 2016), and the authorities cited therein. In *Millenium*, the court (like others) described Rule 2004 discovery as a permissible "fishing expedition," which speaks to this discovery mechanism as a unique and powerful tool for the Trustee to investigate on the debtor's behalf: "Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a 'fishing expedition' and 'an inquisition.' Indeed, a Rule 2004 examination is generally not available once an adversary proceeding or contested matter has been commenced; at that point, discovery is made pursuant to the Federal Rules of Bankruptcy Procedure." 562 B.R. at 626 (internal citations and certain quotations omitted). There is ample additional caselaw stating that the scope of examination under Rule 2004 is broad, broader than under the FRCP, and the investigatory powers extend to third parties with any information relevant to the debtor's financial affairs. There are many other examples of Rule 2004 discovery being granted for pre-litigation discovery in bankruptcies.

Page 4, objections to key terms. We can talk through the requests with you. If necessary we can have our data person speak with yours. The four relevant tickers are: MMAT: 59134N 10 4 META MATLS INC; MMAT: 59134N 30 2 META MATLS INC; TRCH: 89102U103; and MMTLP: 59134N 20 3 PFD META MATLS.

Page 5, burden. We would like Citadel to produce trade data, which should not be burdensome and would at least partly satisfy the document requests. Producing trade data should simply be a matter of generating spreadsheets from Citadel's databases, and would not entail a document-by-document review of extensive materials. The Trustee has received productions of trade data from multiple other subpoena recipients, without a fuss. We will cite those to the Court in contrast with Citadel's refusals. If Citadel will agree to produce, we need to discuss the following, at a minimum: 1) have you discussed Citadel's records and a production with them, 2) what data and/or documents does Citadel have which are responsive to the Trustee's document requests, 3) does Citadel have records for all relevant tickers from the full date range specified, 4) what will Citadel produce, and 5) on what timeframe.

Page 5, possession. The Trustee is seeking documents in Citadel's possession, from Citadel's databases. We are obviously not seeking documents from parties or sources outside of Citadel's control.

Page 5, other sources. Citadel has an obligation to comply with the subpoena by producing responsive information in its possession, custody, or control. It is not a defense to suggest, without proof, that theoretically some of its data might be found elsewhere. In any event, the subpoenas call for trade data in Citadel's possession, and there is no basis to believe any of Citadel's internal information can be found from other parties. No other party can narrow or satisfy Citadel's obligation to produce its own records.

Page 6, relevance. See above.

Page 6, scope of 2004 investigation. See above.

Page 6, data in the Trustee's possession. The reference to 55 million shares was from an investigation using public trade data. What we are seeking from Citadel is non-public data in Citadel's possession. The Trustee does not have that information—it can only be obtained from Citadel.

Best,
David



**SCHNEIDER² WALLACE**
**COTTRELL KIM LLP**

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com
***Admitted in New York and District of Columbia.***

---

**From:** Peter Fountain <peterfountain@quinnemanuel.com>
**Sent:** Wednesday, July 30, 2025 2:21 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas <hpappas@christianattarlaw.com>; Clay Brust <cbrust@rssblaw.com>
**Subject:** RE: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

I'm following up on our attempt to schedule a meet and confer with the Trustee.  As you know, Citadel Securities served responses & objections on June 13.  We did not hear from the Trustee for more than a month.  Then, on July 17, the Trustee threatened to "promptly" move to compel.  We offered a meet and confer, but counsel said they were unavailable on the day we offered and would aim to send written responses to Citadel Securities' R&Os on either July 25 or July 28.

It is now July 30, and we have not heard from the Trustee.  Despite the Trustee's delays, Citadel Securities continues to be open to a constructive discussion, and our client would like us to determine whether the parties can reach an agreement.  We have availability to confer tomorrow morning and on Friday.  Please let us know when would work for you and we will send a calendar invitation.

Thank you,
Peter

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, July 24, 2025 3:29 PM
**To:** Peter Fountain <peterfountain@quinnemanuel.com>; Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas

&lt;hpappas@christianattarlaw.com&gt;; Clay Brust &lt;cbrust@rssblaw.com&gt;
**Subject:** Re: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

[EXTERNAL EMAIL from dburnett@schneiderwallace.com]

Peter:

We can't confer tomorrow, but agree that it could be helpful to send you written responses to the points made in your Responses and Objections.  We'll aim to get that to you tomorrow or Monday, and then let's speak soon after that.  I mentioned a motion to compel below as fair notice that if Citadel will not agree to produce, the Trustee will promptly move to compel.  We've been discussing the subpoenas since May and your Responses and Objections seemed clear that you would not produce.  So yes, let's speak early to mid next week after one more email from us responding to your Responses and Objections.

Best,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line:  (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com
***Admitted in New York and District of Columbia.***

**From:** Peter Fountain &lt;peterfountain@quinnemanuel.com&gt;
**Sent:** Tuesday, July 22, 2025 10:32 AM
**To:** David D. Burnett &lt;dburnett@schneiderwallace.com&gt;; Madeleine Zabriskie &lt;madeleinezabriskie@quinnemanuel.com&gt;
**Cc:** Jeff Hartman &lt;jlh@bankruptcyreno.com&gt;; James Wes Christian &lt;jchristian@christianattarlaw.com&gt;; Stephen W. Tountas &lt;STountas@kasowitz.com&gt;; Ryan R. C. Hicks &lt;rhicks@schneiderwallace.com&gt;; Holly Pappas &lt;hpappas@christianattarlaw.com&gt;; Clay Brust &lt;cbrust@rssblaw.com&gt;
**Subject:** RE: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

Thank you for your email.  While we are disappointed that the Trustee's first outreach—more than a month after we served our Responses & Objections—is a threat to move to compel, we remain open to conferring about these matters.  If you'd like to send materials in advance of our conferral, please do, and we can discuss the subpoenas to determine if there's a path forward that addresses Citadel Securities' concerns as set forth in our Responses and Objections.

This Friday would be best if that's workable on your end - we can be relatively flexible that day.  Let us know if there are times that work for you on Friday, and we'll send a calendar invitation.

Sincerely,

Peter

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, July 17, 2025 3:34 PM
**To:** Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>; Peter Fountain <peterfountain@quinnemanuel.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas <hpappas@christianattarlaw.com>; Clay Brust <cbrust@rssblaw.com>
**Subject:** Re: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

**[EXTERNAL EMAIL from dburnett@schneiderwallace.com]**

---

Peter and Madeleine:

It appears from Citadel's Responses and Objections that Citadel is unwilling to produce any documents in response to the Trustee's two subpoenas.  Is that correct?  You state in response to each of the five document requests that "On the basis of these objections, Citadel Securities will not produce documents in response to this Request."

If Citadel is willing to produce, we would like to confer about such production.  I can send you a list of questions for discussion in advance of the call.

If Citadel refuses to produce, we nonetheless need to speak by phone about this discovery dispute, pursuant to Bankr. D. Nev. Local Rule 7037, before the Trustee moves to compel in the bankruptcy court. The parties can talk through Citadel's objections and why the Trustee disagrees, and we can try to reach agreement or confirm that we're at impasse. In our view, all of your objections could be amicably addressed and overcome through discussion and negotiation, if Citadel is open to it. You raise standard objections in the Responses and Objections and nothing you have stated is fatal to these subpoenas. Notwithstanding your many objections, we expect that Citadel has electronic records of trades in its computer systems and could mostly satisfy its discovery obligations in response to the subpoenas' requests by generating and producing spreadsheets of relevant trading data from those computer systems, which we do not believe would be burdensome. We are prepared to discuss the parameters of Citadel's production on our call, but if the parties are at impasse the Trustee plans to promptly move to compel.

We're available next week other than Monday for a call. Please let us know your available time windows, preferably Tuesday or Wednesday.

David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

---

**From:** Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>
**Sent:** Friday, June 13, 2025 7:13 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Peter Fountain <peterfountain@quinnemanuel.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly

Pappas <hpappas@christianattarlaw.com>; Clay Brust <cbrust@rssblaw.com>
**Subject:** RE: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

Counsel,

Please see attached Citadel Securities' Responses & Objections to the Trustee's subpoenas.

Sincerely,

Maddie

**Madeleine Zabriskie**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP

295 Fifth Avenue
New York, NY 10016
212-849-7122 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
madeleinezabriskie@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, June 2, 2025 4:51 PM
**To:** Peter Fountain <peterfountain@quinnemanuel.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas <hpappas@christianattarlaw.com>; Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>; Clay Brust <cbrust@rssblaw.com>
**Subject:** Re: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

[EXTERNAL EMAIL from dburnett@schneiderwallace.com]

Peter:

That's fine with the Trustee—we acknowledge that Citadel has accepted service of both subpoenas by email, as of May 30, and that you'll serve responses and objections by June 13.  We'll ask for a call soon after you serve the responses and objections to further discuss the contours of Citadel's production(s).

The Rule 2004 subpoena calls for both documents and testimony, as stated in the subpoena, and I noted in my May 29 email below that "The Rule 2004 subpoena is not duplicative of the subpoena to produce documents because the former seeks a deposition of a custodian of records, in addition to documents . . . ."  So the Rule 2004 subpoena is not limited to testimony.  But as a practical matter, Citadel's production of documents will satisfy the document requests in both subpoenas.

David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:      (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

**From:** Peter Fountain <peterfountain@quinnemanuel.com>
**Sent:** Friday, May 30, 2025 9:01 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas <hpappas@christianattarlaw.com>; Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>;

Clay Brust <cbrust@rssblaw.com>
**Subject:** RE: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

While we are disappointed that the Trustee will not agree to withdraw the duplicative Rule 2004 subpoena, in the interest of efficiency Citadel Securities will accept service of the two subpoenas by email, effective today.  We will serve responses & objections within the allotted time period (that is, on or before June 13).

Please note that in accepting service by email, Citadel Securities is not waiving any objections to the subpoenas and continues to reserve all rights.

We note your representation that the Rule 2004 subpoena "seeks a deposition of [Citadel Securities'] custodian of records" and is intended to "preserve [the Trustee's] right to seek testimony from a custodian of records." We understand this to confirm that the Rule 2004 subpoena is limited to deposition testimony and does not seek the same document production as the Rule 45 subpoena.

Have a nice weekend.

Sincerely,

Peter

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, May 29, 2025 3:56 PM
**To:** Peter Fountain <peterfountain@quinnemanuel.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas <hpappas@christianattarlaw.com>; Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>; Clay Brust <cbrust@rssblaw.com>
**Subject:** Re: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

**[EXTERNAL EMAIL from dburnett@schneiderwallace.com]**

Peter:

We can't agree to your proposal to drop the Rule 2004 examination subpoena, as explained in my prior email.  The Rule 2004 subpoena is not duplicative of the subpoena to produce documents because the former seeks a deposition of a custodian of records, in addition to documents, and the Trustee needs to reserve the right to take a deposition.

We can serve the subpoenas in person, but given that we are already in communication with you as Citadel's counsel, that would put form over function and needlessly delay this process.  We'd rather proceed to negotiating the scope.

Given that, please let us know 1) if Citadel will agree to accept email service of either subpoena; 2) whether you will respond to either subpoena today, as tentatively discussed; and 3) if you won't accept electronic service, whether you have a preference or recommendation for which Citadel address to use for physical service.  We see that Citadel has offices in Miami, NY, and Chicago, among other places, and a registered agent in Delaware.

David

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** Peter Fountain <peterfountain@quinnemanuel.com>
**Sent:** Friday, May 23, 2025 6:12 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>;
Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly
Pappas <hpappas@christianattarlaw.com>; Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>;
Clay Brust <cbrust@rssblaw.com>
**Subject:** RE: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

---

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

Thanks for getting back to us.  It appears there is a misunderstanding about the proposal.  Our offer was that we would accept service by email and agree to a May 29 response date *provided that* the Trustee would proceed only with the document subpoena and drop the duplicative Rule 2004 examination subpoena.  This has efficiency benefits for both sides, as the Trustee would not need to attempt to properly serve Citadel Securities, and Citadel Securities would not need to respond to a subpoena that is wholly duplicative.

Your email purports to accept only part of our conditional proposal, which creates no agreement.  The offer that we made on May 16 still stands – please let us know the Trustee's position.  Thank you.

Sincerely,

Peter

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, May 22, 2025 4:15 PM
**To:** Peter Fountain <peterfountain@quinnemanuel.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W.
Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas
<hpappas@christianattarlaw.com>; Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>; Clay Brust
<cbrust@rssblaw.com>
**Subject:** Re: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

**[EXTERNAL EMAIL from dburnett@schneiderwallace.com]**

Peter:

Yes, thanks for the call.

We agree to a response date of May 29, 2025 for Citadel's written responses and objections to both subpoenas. Thanks for confirming that you will accept email service. In so doing, you'll also withdraw your objection to the means of service.

The Trustee cannot agree to withdraw the Rule 2004 examination subpoena seeking a deposition of Citadel's custodian of records. To our recollection, that is not something you raised on our call as a condition to the May 29 response date, either. The Trustee had authority to serve the Rule 2004 subpoena and has done so with all similarly-situated third parties. We do not yet know what responsive information Citadel has nor to what extent your client will comply with the subpoenas, including providing information about Citadel's records. The Trustee needs to preserve its right to seek testimony from a custodian of records, if necessary, but we are hopeful that conferring with you with obviate such a need.

As for why the Trustee is seeking discovery from Citadel: I explained that the Trustee has served many subpoenas on many parties involved in trading Meta securities, and noted that every party will have different data and documents. Beyond that, information about the Trustee's reasons for serving the Citadel subpoenas intrudes on attorney-client privilege and our work product.

As discussed, we'd like to confer the week after your responses—the first week of June—to discuss what information Citadel has responsive to the subpoenas and discuss a timeline for production. Noted that you have a trial beginning June 2, and that we can work around that.

Best,

David

13

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:      (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

**\*Admitted in New York and District of Columbia.**

---

**From:** Peter Fountain <peterfountain@quinnemanuel.com>
**Sent:** Friday, May 16, 2025 2:57 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Clay Brust <cbrust@rssblaw.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas <hpappas@christianattarlaw.com>; Kent Robison <krobison@rssblaw.com>; Hannah Winston <hwinston@rssblaw.com>; Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>
**Subject:** RE: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

Thank you for speaking with us yesterday about the Trustee's subpoenas to Citadel Securities.  During the meet and confer, we asked the basis for the timeframe in the subpoenas (September 21, 2020 through August 7, 2024), and you said that you did not know and that the team looking into the matter for the Trustee had suggested that timeframe.  We also asked why the Trustee needed the requested information from Citadel Securities, and you said that you could not answer that question due to the deliberative process or attorney-client privilege.

We have conferred with our client and are willing to accept service by email and to set a response date of May 29, 2025, provided that the Trustee agrees to proceed only with its subpoena to produce documents, information, or objects or to permit inspection of premises in a bankruptcy case (or adversary proceeding) and to drop its duplicative subpoena seeking an examination of Citadel Securities' custodian of records.  To our understanding, the requests in the two subpoenas are identical.

14

Please let us know whether the Trustee agrees to this proposal.  Thank you.


Sincerely,

Peter

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 12, 2025 5:17 PM
**To:** Peter Fountain <peterfountain@quinnemanuel.com>; Clay Brust <cbrust@rssblaw.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas <hpappas@christianattarlaw.com>; Kent Robison <krobison@rssblaw.com>; Hannah Winston <hwinston@rssblaw.com>; Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>
**Subject:** Re: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)


[EXTERNAL EMAIL from dburnett@schneiderwallace.com]

---

Thanks, Peter.  I've checked with my colleagues, and we propose 10 am on Thursday.


David




**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Peter Fountain
**Sent:** Monday, May 12, 2025 12:40 PM
**To:** David D. Burnett; Clay Brust
**Cc:** Jeff Hartman; James Wes Christian; Stephen W. Tountas; Ryan R. C. Hicks; Holly Pappas; Kent Robison; Hannah Winston; Madeleine Zabriskie; Peter Fountain
**Subject:** RE: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

---

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

---

David,

Thank you for your email.  As noted previously, Citadel Securities was not properly served, but we're happy to have a call to discuss the response date.  We're available on Wednesday between 4 and 5:30 pm ET or Thursday between 9 and 11 am ET.

Please let me know what time works, and I'll send a calendar invitation.

Sincerely,

Peter

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Friday, May 9, 2025 1:12 PM
**To:** Peter Fountain <peterfountain@quinnemanuel.com>; Clay Brust <cbrust@rssblaw.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas <hpappas@christianattarlaw.com>; Kent Robison <krobison@rssblaw.com>; Hannah Winston <hwinston@rssblaw.com>; Madeleine Zabriskie <madeleinezabriskie@quinnemanuel.com>
**Subject:** Re: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

**[EXTERNAL EMAIL from dburnett@schneiderwallace.com]**

Peter:

I'm following up on my colleague Clay's emails with you below regarding the two Citadel subpoenas in this case. We're contacting you on behalf of the Trustee.

We weren't able to schedule a call during your times below, but please advise your availability for a call early to mid next week. We can discuss the subpoenas and negotiate a path forward.

Thanks,

David

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Peter Fountain
**Sent:** Tuesday, May 06, 2025 11:04 AM
**To:** Clay Brust
**Cc:** Jeff Hartman; James Wes Christian; David D. Burnett; Stephen W. Tountas; Ryan R. C. Hicks; Holly Pappas; Kent Robison; Hannah Winston; Madeleine Zabriskie
**Subject:** RE: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

Clay,

Thank you for your email.  As I noted, because Citadel Securities was not properly served, there is currently no response date for the subpoena.  We are available for a call to discuss the response date tomorrow between 2 and 3 pm ET and Thursday between 10 and 1 pm ET.

Please let us know what time works, and I can send a dial-in.

Sincerely,

Peter

---

**From:** Clay Brust <cbrust@rssblaw.com>
**Sent:** Monday, May 5, 2025 2:24 PM
**To:** Peter Fountain <peterfountain@quinnemanuel.com>
**Cc:** Jeff Hartman <jlh@bankruptcyreno.com>; James Wes Christian <jchristian@christianattarlaw.com>; David D. Burnett <dburnett@schneiderwallace.com>; Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Holly Pappas <hpappas@christianattarlaw.com>; Kent Robison <krobison@rssblaw.com>; Hannah Winston <hwinston@rssblaw.com>
**Subject:** Re: In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb)

**[EXTERNAL EMAIL from cbrust@rssblaw.com]**

---

Peter,

An extension to May 29 seems long for my team.  What date/time in the next 7 days would work for you to have a call to discuss your concerns and an extension?

Thank you,

Clay

Clayton P. Brust



71 Washington Street
Reno, NV 89503

Direct - 775.236.2366
www.rssblaw.com

CONFIDENTIALITY:  This email (including attachments) is intended solely for the use of
the individual to whom it is addressed and may contain information that is privileged,
confidential, or otherwise exempt from disclosure under applicable law.  If you are not
the intended recipient, please do not read, copy, or re-transmit this communication.  If you
are the intended recipient, this communication may only be copied or transmitted with the
consent of the sender.  If you have received this email in error, please contact
the sender immediately by return email and delete the original message and
any attachments from your system.  Thank you in advance for your cooperation
and assistance.

IRS CIRCULAR 230 DISCLAIMER:  Any tax advice contained in this email is not intended
to be used, and cannot be used by any taxpayer, for the purpose of avoiding Federal tax
penalties that may be imposed on the taxpayer.  Further, to the extent any tax
advice contained in this email may have been written to support the promotion
or marketing of the transactions or matters discussed in this email, every taxpayer
should seek advice based on such taxpayer's particular circumstances from
an independent tax advisor.

On Apr 29, 2025, at 2:42 PM, Peter Fountain <peterfountain@quinnemanuel.com> wrote:

Dear Mr. Brust,

We have been retained by Citadel Securities in connection with a subpoena from your firm in In re Meta Materials, Inc. (Bankr. D. Nev. No. 24-50792-hlb). Our understanding is that Citadel Securities was not properly served with the subpoena, and therefore does not currently have a response date. As we are in the process of getting up to speed on this matter, we propose May 29, 2025 as a response date for the subpoena. Please let us know whether that date works for you.

Thank you,

Peter

**Peter H. Fountain**
*Partner*
Quinn Emanuel Urquhart & Sullivan, LLP

295 Fifth Avenue
New York, NY 10016
212-849-7187 Direct
212-849-7000 Main Office Number
peterfountain@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT 9

# EXHIBIT 9



# Robison | Sharp | Sullivan | Brust

Kent R. Robison

Thomas L. Belaustegui
(Co-Founder, Retired)

F. DeArmond Sharp

Michael E. Sullivan

Clayton P. Brust

Stefanie T. Sharp

Michael A. Burke

Hannah E. Winston

Brett W. Pilling

Shelby L. Webb

Russell J. Carr

March 20, 2025

**Via U.S. Certified Mail to:**
The Custodian of Records for
ANSON FUNDS USA
16000 Dallas Parkway, Suite 800
Sallas, TX 75248

**Re:** **In re META MATERIALS, INC., U.S. Bankruptcy Court Case No. 24-50792-hlb**

**Subpoena to Produce Documents and for Rule 2004 Examination**

Dear Custodian of Records:

By way of introduction, my name is Clayton P. Brust, Esq. and I am counsel for Christina Lovato, Chapter 7 Trustee in the above-referenced Bankruptcy Court matter. Enclosed with this letter are two documents for your review: the (1) *Subpoena for Rule 2004 Examination* and the (2) *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding)*.

In regard to the first subpoena (for 2004 examination), you are entitled to substituting the appearance of the Custodian of Records for the Rule 2004 Examination with the production of the items listed in the "Items to be Produced" section attached, which will also constitute your compliance with the second subpoena. Please let me know your preference as soon as possible, so I can arrange the set up or cancellation of the Court Reporter.

You are regardless welcome to deliver your items physically to the Court Reporter and/or legal office listed in the subpoena for production, or make arrangements with me for electronic delivery. I am happy to have my assistant forward you a Citrix Sharefile link for the upload of any and all responsive documents. Please note that the due date for the responsive documents is set for 21 days from the date of this letter, **April 8, 2025**. You are, again, welcome to contact me if there are any anticipated issues with this due date.

71 Washington St
Reno, Nevada 89503

RSSBLAW.COM

P: 775.329.3151
F: 775.329.7941

Page 1 of 2



# Robison | Sharp | Sullivan | Brust

Kent R. Robison

Thomas L. Belaustegui
(Co-Founder, Retired)

F. DeArmond Sharp

Michael E. Sullivan

Clayton P. Brust

Stefanie T. Sharp

Michael A. Burke

Hannah E. Winston

Brett W. Pilling

Shelby L. Webb

Russell J. Carr

71 Washington St
Reno, Nevada 89503

RSSBLAW.COM

P: 775.329.3151
F: 775.329.7941

       If you have any questions or concerns regarding the above, you can reach me at my office number of 775-329-3151 or via email at CBrust@rssblaw.com. Thank you for your anticipated cooperation.

                     Sincerely,

                     ROBISON, SHARP, SULLIVAN & BRUST

                     */s/ Clayton P. Brust*

                     Clayton P. Brust, Esq.

CPB:ime
Encl. as noted

Page 2 of 2

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT
### District of Nevada

In re META MATERIALS INC.,
           Debtor

         *(Complete if issued in an adversary proceeding)*

        Case No. 24-50792-hlb

_____
            Plaintiff
            v.

        Chapter 7

_____
           Defendant

        Adv. Proc. No. _____

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: The Custodian of Records of ANSON FUNDS USA | 16000 Dallas Parkway, Suite 800, Dallas, TX 75248
_____
*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: see "Items to be Produced" attached hereto, along with the attachment "Definitions and Instructions"

| PLACE   Lexitas | DATE AND TIME |
|---|---|
| 325 North St. Paul Street, #1900<br>Dallas, TX 75201 | April 8, 2025 OR as arranged with Trustee Lovato's counsel (see contact info below) |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

      The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

          CLERK OF COURT

                        OR     **/s/ Clayton P. Brust**

_____      _____
*Signature of Clerk or Deputy Clerk*         *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Christine Lovato, Chapter 7 Trustee , who issues or requests this subpoena, are:

Clayton P. Brust, Esq. | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com
### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## **DEFINITIONS AND INSTRUCTIONS**

### **DEFINITIONS**

1. "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3. "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### **INSTRUCTIONS**

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

1

parents or subsidiaries, and persons under their control.

1. Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2. Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3. All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4. Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5. If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6. If there are no Documents responsive to any particular request, the response shall state so in writing.

7. In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8. Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9. Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

2

1    and label them to correspond to the enumerated requests of the demand.

2         10.    Documents, including ESI, will be produced pursuant to the ESI Protocol agreed

3    to by the parties and/or ordered by the Court.

4         11.    These Requests shall be deemed continuing requests so as to require supplemental

5    responses if You obtain or discover additional Documents between the time of initial production

6    and the time of the trial. Such supplemental Documents must be produced promptly upon

7    discovery. Plaintiffs specifically reserve the right to seek supplementary

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ITEMS TO BE PRODUCED**

Please note that all documents requested below are for the time frame of **September 21, 2020** through **August 7, 2024.** These requested documents are in respect to Meta, MMTLP, or other CUSIPs or legend identifiers pertaining to Meta or MMTLP.

Request 1:

All records of order routing instructions for shares Meta and/or MMTLP received by Broker from a customer, such as the relevant security, quantity, or price, through an electronic interface or any other means of receiving such instructions and all records of responses sent to a customer related to Broker executing such instructions.

Request 2:

All messages relating to the routing of orders for shares Meta and/or MMTLP of any type using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, routed to an exchange or off-exchange trading venue on behalf of a customer of Broker and received from an exchange or off-exchange trading venue on behalf of a customer of Broker.

Request 3:

All communications electronically stored in the original format captured, including transactions records and emails, related to locating, securing, borrowing, and delivering shares of Meta and/or MMTLP, including records of instances where Broker failed to deliver (FTD) Meta and/or MMTLP and records of how Broker rectified the outstanding FTDs.

Request 4:

All records of position data representing both Broker's net position as well as the net position of each of Broker's customers in Meta and/or MMTLP, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located

1

1   and/or successfully borrowed (e.g. the position corresponding to naked short sales), produced at

2   the frequency such data was recorded ).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of NEVADA

In re META MATERIALS, INC.,

Debtor

Case No. 24-50792-hlb

Chapter _____

## SUBPOENA FOR RULE 2004 EXAMINATION

To: The Custodian of Records of ANSON FUNDS USA | 16000 Dallas Parkway, Suite 800, Dallas, TX 75248

*(Name of person to whom the subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Lexitas<br>325 North St. Paul Street, #1900<br>Dallas, TX 75201 | April 8, 2025 OR as arranged with Trustee Lovato's counsel (see contact info below) |

The examination will be recorded by this method: stenographic and/or audiovisual means

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**See attachment titled "Items to be Produced" along with the attachment "Definitions and Instructions"**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

/s/ Clayton P. Brust

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Christina Lovato, Chapter 7 Trustee , who issues or requests this subpoena, are:

**Clayton P. Brust | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com**

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

      I declare under penalty of perjury that this information is true and correct.

Date: _____

 

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

#### (c) Place of compliance.

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

#### (d) Protecting a Person Subject to a Subpoena; Enforcement.

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

#### (e) Duties in Responding to a Subpoena.

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## **DEFINITIONS AND INSTRUCTIONS**

### **DEFINITIONS**

1.      "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.      "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### **INSTRUCTIONS**

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

1

parents or subsidiaries, and persons under their control.

1.     Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.     Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3.     All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4.     Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5.     If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6.     If there are no Documents responsive to any particular request, the response shall state so in writing.

7.     In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8.     Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9.     Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

2

1  and label them to correspond to the enumerated requests of the demand.

2  10.  Documents, including ESI, will be produced pursuant to the ESI Protocol agreed

3  to by the parties and/or ordered by the Court.

4  11.  These Requests shall be deemed continuing requests so as to require supplemental

5  responses if You obtain or discover additional Documents between the time of initial production

6  and the time of the trial. Such supplemental Documents must be produced promptly upon

7  discovery. Plaintiffs specifically reserve the right to seek supplementary

**ITEMS TO BE PRODUCED**

Please note that all documents requested below are for the time frame of **September 21, 2020** through **August 7, 2024.** These requested documents are in respect to Meta, MMTLP, or other CUSIPs or legend identifiers pertaining to Meta or MMTLP.

Request 1:

All records of order routing instructions for shares Meta and/or MMTLP received by Broker from a customer, such as the relevant security, quantity, or price, through an electronic interface or any other means of receiving such instructions and all records of responses sent to a customer related to Broker executing such instructions.

Request 2:

All messages relating to the routing of orders for shares Meta and/or MMTLP of any type using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, routed to an exchange or off-exchange trading venue on behalf of a customer of Broker and received from an exchange or off-exchange trading venue on behalf of a customer of Broker.

Request 3:

All communications electronically stored in the original format captured, including transactions records and emails, related to locating, securing, borrowing, and delivering shares of Meta and/or MMTLP, including records of instances where Broker failed to deliver (FTD) Meta and/or MMTLP and records of how Broker rectified the outstanding FTDs.

Request 4:

All records of position data representing both Broker's net position as well as the net position of each of Broker's customers in Meta and/or MMTLP, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located

1

1  and/or successfully borrowed (e.g. the position corresponding to naked short sales), produced at

2  the frequency such data was recorded ).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 10

# EXHIBIT 10

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| **In re**<br><br>**META MATERIALS, INC.,**<br><br>**Debtor.** | Case No. 24-50792-hlb<br>(Chapter 7) |

To:   Clayton P. Brust, Esq.
       Robison, Sharp, Sullivan and Brust
       71 Washington Street
       Reno, Nevada 89503
       *Counsel for Chapter 7 Trustee Christina Lovato*

### NON-PARTY ANSON FUNDS MANAGEMENT LP'S
### OBJECTIONS TO SUBPOENAS FOR RULE 2004 EXAMINATION

Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, which incorporates Federal Rule of Civil Procedure 45, non-party Anson Funds Management LP ("Anson Funds"), misidentified as Anson Funds USA, hereby provides its Objections (the "Objections") to the March 20, 2025 Subpoenas (the "Subpoenas") served by Chapter 7 Trustee Christina Lovato (the "Trustee") in connection with the above captioned bankruptcy case (the "Bankruptcy") of Meta Materials, Inc. ("Meta Materials"). These Objections are made to both the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (the "First Subpoena") and the Subpoena for Rule 2004 Examination (the "Second Subpoena"). Unless otherwise indicated, every Objection herein is made to both the First Subpoena and the Second Subpoena. Pursuant to and subject to these Objections, Anson Funds **will not** produce any documents at the address indicated in both the First Subpoena and Second Subpoena on April 8, 2025, and **will not** produce any witness to provide testimony on April 8, 2025, pursuant to the Second Subpoena.  Anson Funds does remain available to meet and confer with the Trustee.

1

Anson Funds' Objections to the Subpoenas are based on the best information currently available to Anson Funds. Anson Funds reserves the right to amend, supplement, correct, or clarify its Objections in accordance with the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any applicable court order. In doing so, Anson Funds assumes no obligation not required by the Federal or Local Rules to supplement Anson Funds' Objections to the Requests.

## **GENERAL OBJECTIONS**

Each of the foregoing General Objections is incorporated into each and every Specific Objection set forth below. Notwithstanding the Specific Objection to any individual request in either of the Subpoenas, Anson Funds does not waive any of its General Objections. Anson Funds may repeat a General Objection below for emphasis or for some other reason, and the failure to repeat a General Objection shall not be construed as a waiver of any General Objection to any of the requests in either of the Subpoenas. Below, Anson Funds will refer to the request in both of the Subpoenas as the "Subpoena Requests."

1. Anson Funds objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, which permits examination which "relate[s] only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b).

2. Anson Funds objects to the Subpoenas to the extent they were pursued and/or served *ex parte* and without any notice to or opportunity by Anson Funds to object to their issuance, including before the Court overseeing the Bankruptcy.

3. Anson Funds objects to the Subpoena Requests to the extent they seek information irrelevant to the Bankruptcy, are not proportional to the needs of the Bankruptcy, are not reasonably calculated to lead to the discovery of admissible evidence, or are otherwise beyond the scope of

permissible discovery under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, applicable case law, and/or any other source of applicable law.

4.     Anson Funds objects to the Subpoena Requests as they appear to be targeted at seeking discovery beyond the administration of the estate of Meta Materials, included but not limited to seeking information relating to non-party Anson Funds, its business, and Anson Funds' business with further non-debtor third parties.  The Trustee has no basis, whether under Bankruptcy Rule 2004 or otherwise, on which to seek the information it is seeking through the Subpoena Requests.

5.     Anson Funds objects to the Subpoena Requests to the extent they could be interpreted to call for the disclosure of protected information and/or communications, including, but not limited to, (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

6.     Anson Funds objects to the Subpoena Requests to the extent they seek to end-run compliance with any applicable and/or official process, procedure, law, or rule on obtaining ex-U.S. discovery.

7.     Anson Funds objects to the Subpoena Requests to the extent that they seek (a) information that is protected from disclosure by law and/or confidentiality obligations that Anson Funds has to non-parties, its employees, its clients, or others or (b) discovery of sensitive and non-public personal, business, or proprietary information that concerns such other non-parties and is

irrelevant to the Bankruptcy of Meta Materials. Anson Funds will not violate any such confidentiality obligations to non-parties in responding to the Subpoenas.

8.      Anson Funds objects to the Subpoena Requests to the extent they imply or suggest that Anson Funds bears any responsibility or liability, in whole or in part, for Meta Materials pursuing its Bankruptcy.

9.      Anson Funds objects to the Subpoena Requests to the extent that they are vague, overbroad, harassing, oppressive, and/or unduly burdensome and/or where compliance with any or all of the Subpoena Requests would be unreasonably difficult, prohibitively expensive, and/or unduly time-consuming pursuant to the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

10.     Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to produce information or documents not within Anson Funds' possession, custody, or control.

11.     Anson Funds objects to the Subpoena Requests to the extent that they purport to seek discovery from any entity or individual other than Anson Funds. The Objections herein are made only on behalf of Anson Funds.

12.     Anson Funds objects to the Subpoena Requests to the extent they seek to impose obligations on Anson Funds beyond those imposed under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

13. Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to provide information that cannot be obtained by a reasonably diligent investigation and search.

14. Anson Funds objects to the Subpoena Requests to the extent that they assume facts that do not exist or are incorrect, assume legal conclusions, or relate to the construction of applicable law. Any statement herein does not indicate and should not be construed as an agreement by Anson Funds as to the truth or accuracy of any of the Trustee's characterizations of fact or law, the factual expressions or assumptions contained in any of the Subpoena Requests, the propriety of the Subpoena Requests, or the relevance or admissibility of any Subpoena Requests or documents produced in response thereto, if any.

15. Anson Funds objects to the four-year "time frame" identified in the Subpoenas as overbroad, disproportionate to the administration of the Meta Materials estate, and unduly burdensome on Anson Funds, a non-party.

## OBJECTIONS TO THE SUBPOENAS' DEFINITIONS

16. Anson Funds objects to the definitions of "Acceptable Records", "ESI" and "electronically stored information" as overbroad, vague, and ambiguous, and insofar as they seek to impose obligations on Anson Funds inconsistent with, greater than, or not permitted under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, or any other source of applicable law. Anson Funds further objects to all of these definitions to the extent they call for the disclosure of (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or

communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

## OBJECTIONS TO THE SUBPOENAS' INSTRUCTIONS

17. Anson Funds objects to the instructions of both Subpoenas on the grounds that they seek to impose upon Anson Funds duties that are greater and more burdensome than those imposed by the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any other sources of applicable law. Anson Funds object to the instructions of both Subpoenas which direct Anson Funds to produce "information in the possession, custody, or control of any of Your attorney's, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships, parents or subsidiaries, and persons under their control" as overbroad and unduly burdensome for Anson Funds, a non-party.

18. Anson Funds objects to Instruction 1 of both Subpoenas on the grounds that the instructions to produce "attachments, enclosures, memoranda, and cover letters" as well as an explanation for any documents which cannot be produced are vague, ambiguous, and unduly burdensome for Anson Funds, a non-party.

19. Anson Funds objects to Instruction 2 of both Subpoenas on the grounds that the instructions to produce documents "without abbreviation or redaction" calls for Anson Funds to produce privileged or otherwise protected information or information that may be sensitive, proprietary, and/or confidential to other non-parties.

20. Anson Funds objects to Instruction 10 of both Subpoenas on the grounds that the reference to the "ESI Protocol agreed to by the parties and/or ordered by the court" presumes that Anson Funds is a party to Meta Materials' Bankruptcy or that it has agreed to any ESI Protocol. Anson Funds is a non-party and has not agreed to any ESI Protocol.

21.     Anson Funds objects to Instruction 11 of both Subpoenas on the grounds that they are incomplete and ambiguous, abruptly cutting off midsentence after the word "supplementary." As such, Anson Funds is unable to interpret these instructions. Anson Funds also will not agree to be subject to continuing obligations under the Subpoenas as a non-party.

## SPECIFIC OBJECTIONS TO REQUESTS FOR PRODUCTION

The General Objections are incorporated into each and every Specific Objection as if set forth fully therein. Because the requests for production in the First Subpoena and Second Subpoena are substantively identical, the below Specific Objections apply equally to the Requests in both Subpoenas.

## REQUEST NO. 1:

All records of order routing instructions for shares Meta and/or MMTLP received by Broker from a customer, such as the relevant security, quantity, or price, through an electronic interface or any other means of receiving such instructions from all records of responses sent to a customer related to Broker executing such instructions.

## OBJECTION TO REQUEST NO. 1:

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "Broker," "customer," "electronic interface," and "relevant security, quantity, or price." Anson Funds further objects to this Request as it calls for the production of materials outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks documents which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate [...]." Fed. R. Bankr. P. 2004(b). The documents sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to

the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party. Anson Funds further objects to this Request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004.

**REQUEST NO. 2:**

All messages relating to the routing of orders for shares Meta and/or MMTLP of any type using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, routed to an exchange or off-exchange trading venue on behalf of a customer of Broker and received from an exchange or off-exchange trading venue on behalf of customers of Broker.

**OBJECT TO REQUEST NO. 2:**

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "FIX," "binary protocol," "Broker," "customers of Broker," and "exchange or off-exchange trading venue." Anson Funds further objects to this Request as it calls for the production of materials outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks documents which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate [...]." Fed. R. Bankr. P. 2004(b). The messages sought by this Request bears no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party. Anson Funds further objects to this Request to the extent it calls on Anson

8

Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004.

**REQUEST NO. 3:**

All communications electronically stored in the original form captured, including transactions records and emails, related to locating, securing, borrowing, and delivering shares of Meta and/or MMTLP, including records of instances where Broker failed to deliver (FTD) Meta and/or MMTLP and records of how Broker rectified the outstanding FTDs.

**OBJECTION TO REQUEST NO. 3:**

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "transactions records," "Broker," "failed to deliver," and "rectified." Anson Funds further objects to this Request as it calls for the production of materials outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks communications which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b). The communications sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party. Anson Funds further objects to this Request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004. Anson Funds further objects to this Request to the extent it presumes that there were instances that Anson Funds "failed to deliver" shares of certain stocks.

**REQUEST NO. 4:**

All records of position data representing both Broker's net position as well as the net position of each of Broker's customers in Meta and/or MMTLP, including tallies of shares sold short that were located and/or successfully borrowed as well as shares that were sold short that were not located and/or successfully borrowed (e.g. the position corresponding to naked short sales), produced at the frequency such data was recorded).

**OBJECTION TO REQUEST NO. 4:**

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "position data," "Broker," "customers," "successfully borrowed," and "naked short sales." Anson Funds further objects to this Request as it calls for the production of documents outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks documents which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b). The documents sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party. Anson Funds further objects to this request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004.

*\*\*\**

Subject to and without waiving its General Objections and Specific Objections, and as set forth above, Anson Funds responds that it is willing to meet and confer with the Trustee.

Dated: April 7, 2025

GREENBERG TRAURIG, LLP

*/s/ Sylvia E. Simson*

_____
Sylvia E. Simson
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9275
Sylvia.Simson@gtlaw.com

*/s/ Alan Brody*

_____

Alan Brody
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932-0677
Tel: (973) 443-3543
BrodyA@gtlaw.com

*Attorneys for Anson Funds Management LP*

# EXHIBIT 11

# EXHIBIT 11

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

**In re**

**META MATERIALS, INC.,**

**Debtor.**

Case No. 24-50792-hlb
(Chapter 7)

To:   Clayton P. Brust, Esq.
       Robison, Sharp, Sullivan and Brust
       71 Washington Street
       Reno, Nevada 89503

       David Burnett, Esq.
       Schneider Wallace Cottrell Kim LLP
       1050 30th Street NW
       Washington, DC 20007

*Counsel for Chapter 7 Trustee Christina Lovato*

## NON-PARTY ANSON FUNDS MANAGEMENT LP'S
## OBJECTIONS TO NON-PARTY SUBPOENAS

Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, which incorporates Federal Rule of Civil Procedure 45, as well as the applicable Federal Rules of Civil Procedure, non-party Anson Funds Management LP ("Anson Funds"), misidentified as Anson Funds USA, hereby provides its Objections (the "Objections") to the June 27, 2025 Subpoenas (the "Subpoenas") served by Chapter 7 Trustee Christina Lovato (the "Trustee") in connection with the above captioned bankruptcy case (the "Bankruptcy") of Meta Materials, Inc. ("Meta Materials"). Pursuant to the Trustee's email dated June 27, 2025, the Subpoenas were "replacement subpoenas" that "replace the prior, initial subpoenas" served on Anson Funds by the Trustee and "are not additional subpoenas." That notwithstanding, Anson Funds incorporates by reference its prior

1

Objections to the "prior, initial subpoenas" served onto it by the Trustee, which were served on April 7, 2025.

For the avoidance of doubt, these Objections are made to both the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) (the "First Subpoena") and the Subpoena for Rule 2004 Examination (the "Second Subpoena"), the latter of which included requests for the production of documents identical to that in the First Subpoena. Necessarily, the Specific Objections herein to these Requests for Production (hereinafter, the "Subpoena Requests") apply to both the First Subpoena and the Second Subpoena with equal force. And unless otherwise indicated, every Objection herein is made to both the First Subpoena and the Second Subpoena.

Pursuant to and subject to these Objections, Anson Funds **will not** produce any documents at the address indicated in both the First Subpoena and Second Subpoena on July 11, 2025, and **will not** produce any witness to provide testimony (nor produce any documents) on July 11, 2025 pursuant to the Second Subpoena. Anson Funds does remain available to continue to meet and confer with the Trustee.

Anson Funds' Objections to the Subpoenas are based on the best information currently available to Anson Funds. Anson Funds reserves the right to amend, supplement, correct, or clarify its Objections in accordance with the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any applicable court order. In doing so, Anson Funds assumes no obligation not required by the Federal or Local Rules to supplement Anson Funds' Objections to the Requests.

## GENERAL OBJECTIONS

Each of the foregoing General Objections is incorporated into each and every Specific Objection set forth below. Notwithstanding the Specific Objection to any individual request in either of the Subpoenas, Anson Funds does not waive any of its General Objections. Anson Funds may repeat a General Objection below for emphasis or for some other reason, and the failure to repeat a General Objection shall not be construed as a waiver of any General Objection to any of the requests in either of the Subpoenas. Below, Anson Funds will refer to the request in both of the Subpoenas as the "Subpoena Requests."

1.     Anson Funds objects to the First Subpoena on the basis that the Trustee failed to comply with Local Rule 9016(b)'s requirement to file subpoenas under Federal Rule of Civil Procedure 45 "concurrently with the[ir] issuance and service." LR 9016(b). The Trustee has not filed the First Subpoena to the docket as required by the Local Rules.

2.     Anson Funds further objects to the First Subpoena on the basis that there is no adversary proceeding pending against Anson Funds, nor does any contested matter exist under Fed. R. Bankr. P. 9014, and therefore discovery under the Federal Rules of Civil Procedure is not permissible.

3.     Anson Funds further objects to the First Subpoena on the basis that it is facially overbroad, unduly burdensome, and entirely disproportionate to the scope of permissible non-party discovery under the applicable Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 45, and would require Anson Funds, a non-party, to devote significant resources to collecting, processing, and reviewing highly sensitive and proprietary trading data and records.

4.     Anson Funds objects to the Second Subpoena as seeking material well beyond the scope of Bankruptcy Rule 2004, which permits examination which "relate[s] only to the acts,

3

conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b).

5. Anson Funds objects to the Second Subpoena as the Trustee cannot establish good cause for the Rule 2004 examination requested.

6. Anson Funds objects to the Second Subpoena as improper to the extent the Trustee has already identified it as a potential or actual litigation target, as this would render the Second Subpoena an improper use of Rule 2004.

7. Anson Funds objects to the document requests contained in the Second Subpoena as the Court's Order relating to the requested Rule 2004 Examination was limited to an examination and because Local Rule 2004(c) does not permit the production of documents by court order under Rule 2004 in any event.

8. Anson Funds objects to the Second Subpoena to the extent that the Trustee's motion for non-party Rule 2004 examination of Anson Funds was pursued *ex parte* and without any notice to or opportunity by Anson Funds to object to its issuance (or to the issuance of either of the Subpoenas), including before the Court overseeing the Bankruptcy.

9. Anson Funds objects to the Subpoena Requests as they are nothing more than a broad-based fishing expedition to potentially obtain information that would support a lawsuit against Anson Funds and/or other non-parties, as the Trustee has intimated in various filings to the Bankruptcy Court.

10. Anson Funds objects to the Subpoena Requests to the extent they seek information irrelevant to the Bankruptcy, are not proportional to the needs of the Bankruptcy, are not reasonably calculated to lead to the discovery of admissible evidence, or are otherwise beyond the scope of permissible discovery under the Federal Rules of Civil Procedure, Federal Rules of

Bankruptcy Procedure, the Local Rules of this Court, applicable case law, and/or any other source of applicable law.

11.     Anson Funds objects to the Subpoena Requests as they appear to be targeted at seeking discovery beyond the assets of the debtor or the administration of the estate of Meta Materials, included but not limited to seeking information relating to non-party Anson Funds, its business, and Anson Funds' business with further non-debtor third parties.  The Trustee has no basis, whether under Bankruptcy Rule 2004, the Federal Rules of Civil Procedure, or any other applicable rule, on which to seek the information it is seeking through the Subpoena Requests.

12.     Anson Funds objects to the Subpoena Requests to the extent they could be interpreted to call for the disclosure of protected information and/or communications, including, but not limited to, (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

13.     Anson Funds objects to the Subpoena Requests to the extent they seek to end-run compliance with any applicable and/or official process, procedure (including but not limited to the appropriate procedure by which one can seek document discovery in federal courts), law, the Federal Rules of Civil Procedure, or rule on obtaining ex-U.S. discovery.

14.     Anson Funds objects to the Subpoena Requests to the extent that they seek (a) information that is protected from disclosure by law and/or confidentiality obligations that Anson Funds has to non-parties, its employees, its clients, or others or (b) discovery of sensitive and non-public personal, business, or proprietary information that concerns such other non-parties and is

irrelevant to the Bankruptcy of Meta Materials. Anson Funds will not violate any such confidentiality obligations to non-parties in responding to the Subpoenas.

15.     Anson Funds objects to the Subpoena Requests to the extent they imply or suggest that Anson Funds has engaged in any misconduct and/or bears any responsibility or liability, in whole or in part, for Meta Materials pursuing its Bankruptcy.

16.     Anson Funds objects to the Subpoena Requests to the extent that they are vague, overbroad, harassing, oppressive, and/or unduly burdensome and/or where compliance with any or all of the Subpoena Requests would be unreasonably difficult, prohibitively expensive, and/or unduly time-consuming pursuant to the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

17.     Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to produce information or documents not within Anson Funds' possession, custody, or control.

18.     Anson Funds objects to the Subpoena Requests to the extent that they purport to seek discovery from any entity or individual other than Anson Funds. The Objections herein are made only on behalf of Anson Funds.

19.     Anson Funds objects to the Subpoena Requests to the extent they seek to impose obligations on Anson Funds beyond those imposed under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

20.     Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to provide information that cannot be obtained by a reasonably diligent investigation and search.

21.     Anson Funds objects to the Subpoena Requests to the extent that they assume facts that do not exist or are incorrect, assume legal conclusions, or relate to the construction of applicable law. Any statement herein does not indicate and should not be construed as an agreement by Anson Funds as to the truth or accuracy of any of the Trustee's characterizations of fact or law, the factual expressions or assumptions contained in any of the Subpoena Requests, the propriety of the Subpoena Requests, or the relevance or admissibility of any Subpoena Requests or documents produced in response thereto, if any.

## OBJECTIONS TO THE SUBPOENAS' DEFINITIONS

22.     Anson Funds objects to the definitions of "Acceptable Records", "ESI" and "electronically stored information" as overbroad, vague, and ambiguous, and insofar as they seek to impose obligations on Anson Funds inconsistent with, greater than, or not permitted under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, or any other source of applicable law.  Anson Funds further objects to all of these definitions to the extent they call for the disclosure of (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

## OBJECTIONS TO THE SUBPOENAS' INSTRUCTIONS

23.     Anson Funds objects to the instructions of both Subpoenas on the grounds that they seek to impose upon Anson Funds duties that are greater and more burdensome than those imposed by the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any other sources of applicable law. Anson Funds object to the instructions of both Subpoenas which direct Anson Funds to produce "information in the possession, custody, or control of any of Your attorney's, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships, parents or subsidiaries, and persons under their control" as overbroad and unduly burdensome for Anson Funds, a non-party.

24.     Anson Funds objects to Instruction 1 of both Subpoenas on the grounds that the instructions to produce "attachments, enclosures, memoranda, and cover letters" as well as an explanation for any documents which cannot be produced are vague, ambiguous, and unduly burdensome for Anson Funds, a non-party.

25.     Anson Funds objects to Instruction 2 of both Subpoenas on the grounds that the instructions to produce documents "without abbreviation or redaction" calls for Anson Funds to produce privileged or otherwise protected information or information that may be sensitive, proprietary, and/or confidential to other non-parties.  The request in Instruction 2 of both Subpoenas to produce "all non-identical versions" of every document is overly burdensome for a non-party like Anson Funds and so Anson Funds objections to this Instruction on that basis, too.

26.     Anson Funds objects to Instruction 4 of both Subpoenas as the "Relevant Time Period" is approximately four years rendering the Subpoenas unduly burdensome.

27.     Anson Funds objects to Instructions 5 and 6 of both Subpoenas as it need not do more than object to each of the Subpoena Requests and relay the bases for each objection.

28. Anson Funds objects to Instruction 9 of Both Subpoenas on the grounds that it assumes that Anson Funds will be producing all of the requested documents in the Subpoenas.

29. Anson Funds objects to Instruction 10 of both Subpoenas on the grounds that the reference to the "ESI Protocol agreed to by the parties and/or ordered by the court" presumes that Anson Funds is a party to Meta Materials' Bankruptcy or that it has agreed to any ESI Protocol. Anson Funds is a non-party and has not agreed to any ESI Protocol.

30. Anson Funds objects to Instruction 11 of both Subpoenas on the grounds that they are incomplete and ambiguous, abruptly cutting off midsentence after the word "supplementary." As such, Anson Funds is unable to interpret these instructions. Anson Funds also will not agree to be subject to continuing obligations under the Subpoenas as a non-party.

## OBJECTIONS TO THE SUBPOENAS' SUPPLEMENTAL INSTRUCTIONS

31. Anson Funds objects to Supplemental Instruction 1 of both Subpoenas on the grounds that the request for "documents related to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPS, tickers, or legend identifiers related to Meta Materials Inc." is overbroad and unduly burdensome.

32. Anson Funds objects to Supplemental Instruction 2 of both Subpoenas on the grounds that the four-year "date range" identified is overbroad, disproportionate to the administration of the Meta Materials estate, and unduly burdensome on Anson Funds, a non-party.

33. Anson Funds objects to Supplemental Instruction 3 of both Subpoenas on the grounds that the instruction that produced materials "should include but are limited to" is contradictory, vague, and ambiguous. Anson Funds further objects to Supplemental Instruction 3 on the grounds that the term "regulatory and compliance obligations during the relevant time

period" is vague and ambiguous. Anson Funds further objections to Supplemental Instruction 3 as it requests highly sensitive, proprietary, privileged, and/or work product protected information.

## SPECIFIC OBJECTIONS TO REQUESTS FOR PRODUCTION

The General Objections are incorporated into each and every Specific Objection as if set forth fully therein. As noted above, because the requests for production in the First Subpoena and Second Subpoena are substantively identical, the below Specific Objections apply equally to the Requests in both Subpoenas, unless otherwise indicated.

## REQUEST NO. 1:

All relevant order routing and execution records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to the routing of orders of any type for shares in Meta CUSIPs, using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including records of orders sent by Anson to any broker-dealer, exchange or off-exchange trading venue and orders received by Anson from any broker-dealer, exchange or off-exchange trading venue.
Order routing and execution records provided by Anson should reflect the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records include but are not limited to cancel/replaces, order forwarding, executions, and expired orders.

## OBJECTION TO REQUEST NO. 1:

In addition to its General Objections, which are incorporated herein by reference, Anson Funds objects to Request No. 1 as overbroad, unduly burdensome, oppressive, and harassing on Anson Funds, a non-party. Anson Funds further objects to the use of undefined and ambiguous language in this Request, including the terms "broker-dealer" and "exchange or off-exchange trading venue." Anson Funds further objects to this Request as it calls for the production of materials outside the scope of the applicable Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure. The documents sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or

financial condition of the debtor. Anson Funds further objects to this Request to the extent it calls

on Anson Funds to disclose its own confidential business information, confidential information

from its customers, or other parties, or proprietary information.

**REQUEST NO. 2:**

All records retained by Anson in the course of conducting its business and/or fulfilling its
compliance obligations related to locating, securing, borrowing, and delivering shares of Meta
CUSIPs, including any records of instances where Anson failed to deliver shares of Meta and
records of how Anson rectified the outstanding failures to deliver, where applicable.

**OBJECTION TO REQUEST NO. 2:**

In addition to its General Objections, which are incorporated herein by reference, Anson

Funds objects to Request No. 2 as overbroad, unduly burdensome, oppressive, and harassing on

Anson Funds, a non-party. Anson Funds further objects to the use of inflammatory and

unsubstantiated language in this Request, including the terms "failed to deliver" and "rectified."

Anson Funds further objects to this Request to the extent it presumes that there were instances that

Anson Funds "failed to deliver" shares of certain stocks.  Anson Funds further objects to this

Request as it calls for the production of materials outside the scope of the applicable Federal Rules

of Civil Procedure and Federal Rules of Bankruptcy Procedure. The documents sought by this

Request bear no nexus to the administration of the debtor's estate and are not relevant to the

conduct, property, liabilities, or financial condition of the debtor.  Anson Funds further objects to

this Request to the extent it calls on Anson Funds to disclose its own confidential business

information, confidential information from its customers or other parties, or proprietary

information.

**REQUEST NO. 3:**

All records of position data showing Anson's positions in all Meta CUSIPs, including
tallies of shares sold short that were located and/or successfully borrowed as well as shares sold
short that were not located and/or successfully borrowed (e.g. the position corresponding to any

naked short sales), produced with full data in the frequency such data was recorded, in the original format in which the data was generated.

## OBJECTION TO REQUEST NO. 3:

In addition to its General Objections, which are incorporated herein by reference, Anson Funds objects to Request No. 3 as overbroad, unduly burdensome, oppressive, and harassing on Anson Funds, a non-party. Anson Funds further objects to the use of inflammatory and unsubstantiated language in this Request, including the terms "sold short" and "naked short sales." Anson Funds further objects to this Request to the extent it presumes that Anson Funds or any other party engaged in "naked short sales" of certain stocks. Anson Funds further objects to this Request as it calls for the production of materials outside the scope of the applicable Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure. The records sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information.

***

Subject to and without waiving its General Objections and Specific Objections, and as set forth above, Anson Funds responds that it is willing to continue to meet and confer with the Trustee. Further, Anson Funds reserves the right to take any action or position that it is permitted to take Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any applicable court order and/or to amend, supplement, correct, or clarify the above Objections.

Dated: July 11, 2025

GREENBERG TRAURIG, LLP

*/s/ Sylvia E. Simson*

_____

Sylvia E. Simson
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9275
Sylvia.Simson@gtlaw.com

*/s/ Alan J. Brody*

_____

Alan J. Brody
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932-0677
Tel: (973) 443-3543
BrodyA@gtlaw.com

*Attorneys for Anson Funds Management LP*

# EXHIBIT 12

# EXHIBIT 12

## Madeleine Zabriskie

| | |
|---|---|
| **From:** | dburnett@schneiderwallace.com |
| **Sent:** | Friday, May 23, 2025 3:23 PM |
| **To:** | Sylvia.Simson@gtlaw.com; BrodyA@gtlaw.com |
| **Cc:** | rhicks@schneiderwallace.com; cbrust@rssblaw.com; STountas@kasowitz.com; jchristian@christianattarlaw.com; jlh@bankruptcyreno.com |
| **Subject:** | Re: In re Meta Materials - Objections to Subpoenas |
| **Attachments:** | In re Meta Materials Anson Funds protective order -- May 23 draft.docx |

Sylvia:

Please let us know your availability for a meet and confer next week about the Anson subpoenas. I've copied my colleagues who also represent the trustee.

I've attached a proposed protective order between the parties, in anticipation of Anson's future productions after we've conferred. We've used the same template with all subpoena recipients, and the Court so-ordered a nearly-identical one yesterday.

You asked us for substantive responses to your objections to the subpoenas before agreeing to a meet and confer. That does not bode well for the likelihood that Anson will comply with the subpoenas. Nonetheless, as requested:

The two subpoenas were issued pursuant to Fed. R. Civ. P. 45 and Fed. R. Bankr. P. 9016, as stated on their cover pages. Rule 9016 allows for service of subpoenas in bankruptcy proceedings, stating that "Fed. R. Civ. P. 45 applies in a bankruptcy case." Local Rule 2004 of the U.S. Bankruptcy Court for the District of Nevada provides as follows: "(c) Production of documents. Production of documents[may] be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016."

Fed. R. Bankr. P. 2004, Examinations, provides that "On a party in interest's motion, the court may order the examination of any entity," and such examination can involve "any matter that may affect the administration of the debtor's estate." Section (c) of Rule 2004 provides as follows: "Compelling Attendance and the Production of Documents or Electronically Stored Information. Regardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information. An attorney may issue and sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court."

Fed. R. Bankr. P. 6009 is the "Right of the Trustee or Debtor in Possession to Prosecute and Defend Proceedings." It states that "With or without court approval, the trustee or debtor in possession may: . . . (b) commence and prosecute in any tribunal an action or proceeding on the estate's behalf."

Authorities in this district explain these rules further: "Outside the usual discovery tools available in federal civil practice, Bankruptcy Rule 2004 also allows any party in interest to seek a court order permitting the examination of any entity. To assist in such examinations or production of records, Bankruptcy Rule 9016 provides for the issuance of subpoenas under Civil Rule 45. Like compelled discovery and testimony of third parties in federal civil practice, the usual protections and limitations

may be sought." *Cash Cloud, Inc. v. Lux Vending, LLC (In re Cash Cloud, Inc.)*, 2024 Bankr. LEXIS 2159, *15 (Bankr. D. Nev. Sept. 10, 2024). In *In re Quicker Liquor LLC*, 2022 Bankr. LEXIS 1846, *5 (Bankr. D. Nev. June 22, 2022), the court explained that

> Any party in interest may request permission to conduct a 2004
> Examination. Fed.R.Bankr.P. 2004(a). The examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a
> discharge." Fed.R.Bankr.P. 2004(b). The "..production of documents or electronically stored information ...may be compelled as provided in Rule 9016 for the attendance of a witness as a hearing or trial." Fed.R.Bankr.P. 2004(c). Bankruptcy Rule 9016 provides for the attendance of witnesses to be compelled by issuance of a subpoena under Civil Rule 45.
> See Fed.R.Bankr.P. 9016. In addition to compelling a witness to give testimony, subpoenas issued under Civil Rule 45 also may compel the production of documents and electronically stored information . . . .

Also, 11 U.S. Code § 704, part of the Chapter 7 bankruptcy statutes, sets forth the "Duties of trustee." "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate." *In re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015). Section 704 provides in relevant part that "(a) The trustee *shall* . . . (4) investigate the financial affairs of the debtor" (emphasis added). Those financial affairs include, here, the Trustee's investigation of trading in the debtor's stock, which may have affected the debtor's financial affairs in various ways. "The role of counsel for the trustee . . . is to perform those tasks [under 11 U.S. Code § 704] that require special expertise beyond that expected of an ordinary trustee." *In re Virissimo*, 354 B.R. 284, 290.

Christina Lovato, the Trustee in this bankruptcy action, *In re Meta Materials Inc*., Case No.: 24-50792-hlb (Bankr. D. Nev.), acting through counsel, has chosen to issue subpoenas to many parties related to the trading of Meta securities (including the tickers MMAT, TRCH, and MMTLP). We believe that Anson traded Meta securities during the time period listed in the subpoenas. The subpoenas were issued as part of the Trustee's ongoing investigations into the financial affairs of the debtor. The decisionmaking behind which parties received subpoenas and why, including as it relates to the Anson subpoenas, is not something we can disclose given privilege and attorney work product concerns.

Best,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:      (510) 740-2939
Facsimile: (415) 421-7105

www.schneiderwallace.com
*Admitted in New York and District of Columbia.*

**From:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>
**Sent:** Friday, May 9, 2025 11:17 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>;
STountas@kasowitz.com <STountas@kasowitz.com>
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have not received the authorities requested to be provided by the Trustee in support of its position, so we assume the call is going to be rescheduled until those are sent.  Please advise as to when we can expect to hear from the Trustee with those authorities and your corresponding availability thereafter for a meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Simson, Sylvia (Shld-NY-LT)
**Sent:** Wednesday, May 7, 2025 11:37 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

David,

Throughout the subpoena, Anson Funds made clear it objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, that bears no nexus to the administration of the debtor's estate, and is irrelevant to the conduct, property, liabilities, or financial condition of the debtor.  If the Trustee has specific case law/authorities involving trading transactions by non-debtor parties that it believes supports the subpoena requests, please provide them in advance of any call and by Thursday COB if we are having a call on Friday.  This request is not intended to limit, waive, or alter any of Anson Funds' other valid objections but so that we understand the Trustee's position in advance of any meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

**GT** GreenbergTraurig

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, May 6, 2025 5:19 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Friday works for me any time during your time window, but I'll let my colleagues chime in on their availability as well.  As for authorities that support the Trustee's position, do you mean authority supporting the Trustee's responses to all of the objections raised in your April 7 Objections to Subpoenas document?  I anticipate discussing the parties' positions on our call.  Or are you speaking specifically about authority for the Trustee's grounds for serving the subpoenas?

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:    (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Sylvia.Simson@gtlaw.com
**Sent:** Monday, May 05, 2025 10:32 PM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We are willing to have a call regarding our objections and are available Thursday afternoon between 2 and 5 EST and Friday between 10:30 and 2 EST.  However, before any call, please identify what authorities the Trustee has that support the Trustee's position so we can review them in advance of the call.  Please note Anson is not committing to anything by virtue of us agreeing to a call and that Anson reserves all rights.


Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

**\*EXTERNAL TO GT\***

Sylvia:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Anson Funds in this case.  We're contacting you on behalf of the Trustee.  My colleagues and I, copied, would like to schedule a call to discuss your objections.  Please let us know your availability later this week.  We'd like to discuss the requests and map out a plan for Anson to produce responsive materials, starting with trade data.  We believe the parties should be able to find common ground.

In the interim, to address your objections about producing confidential information:  there isn't an applicable protective order in place yet but we can send you a proposed one.

Thanks,
David


   Begin forwarded message:



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024

Direct:    (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*
**From:** <Sylvia.Simson@gtlaw.com>
**Subject: In re Meta Materials - Objections to Subpoenas**
**Date:** April 7, 2025 at 11:16:26 AM PDT
**To:** <CBrust@rssblaw.com>
**Cc:** <BrodyA@gtlaw.com>

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# EXHIBIT 13

# EXHIBIT 13



21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Barry S. Gold**
tel: (212) 880-3978
fax: (212) 880-3998

barrygold@dwt.com

April 29, 2025

<u>**Via Email**</u>

Clayton P. Brust, Esq.
Robison, Sharp, Sullivan & Brust
71 Washington Street
Reno, Nevada 89503
Email: cbrust@rssblaw.com

   Re:  *In re Meta Materials Inc., Debtor*
      <u>**Bankr. Ct. D. Nev. - Case No. 24-50792-hlb**</u>

Dear Mr. Brust:

  We represent Virtu Financial, LLC ("Virtu") in connection with the two Subpoenas – (1) to Produce Documents and (2) for Rule 2004 Examination – you issued as counsel to Trustee Christina Lovato in the above-referenced bankruptcy proceeding. This letter constitutes Virtu's written objections and responses to the Subpoena to Produce Documents (the "Subpoena") pursuant to the Federal Rules of Bankruptcy Procedure. Per your March 18, 2025 letter, it is Virtu's preference that we meet and confer regarding the Subpoena with the expectation that the outcome will be that there will be no need for a Rule 2004 Examination. In the meantime, Virtu objects and reserves all its rights with respect to the Subpoena for Rule 2004 Examination.

  Virtu's response below is with respect to the Subpoena.

<u>**RESERVATION OF RIGHTS**</u>

  1.  As a non-party, Virtu may not be aware of all appropriate and necessary objections. Virtu expressly reserves the right to amend, expand, or delete any part of the objections stated herein at any time. Virtu reserves the right to object to the admission in evidence of any of the information or documents provided in response to the Subpoena on any ground including, but not limited to, the ground that any such information or document is irrelevant to the issues in this bankruptcy proceeding (the "Proceeding"). Virtu reserves its right to rely on a fact, document, or other evidence that may develop or which may come to its attention at a later time.

  2.  Virtu reserves the right to object to the use (for any purpose) of these objections or any information or document that Virtu produces or provides pursuant to the Subpoena.

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.
4910-6350-4700v.1 0120140-000042

Clayton P. Brust, Esq.
April 29, 2025
Page 2

Virtu reserves the right to interpose any such objection at any time or as required by the Federal Rules of Bankruptcy Procedure, any applicable Local Rule, any applicable court rule, as well as other applicable statutory provisions, rules, caselaw, and court orders (the "Applicable Rules").

     3.     Virtu reserves the right not to produce documents to the extent that the Requests, including the Definitions and Instructions contained therein, (a) are overly broad, unduly burdensome, and/or call for documents or information that is obtainable from some other source that is more convenient, less burdensome, or less expensive; (b) are vague, ambiguous, duplicative, cumulative, do not identify with reasonable particularity the information sought, or are otherwise incomprehensible; (c) call for production of documents or information that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (d) seek to impose obligations on Virtu beyond, or inconsistent with, those required by the Applicable Rules; (e) purport to seek documents or information not in Virtu's possession, custody, or control; (f) impose an unwarranted and undue burden on Virtu, a non-party in this Proceeding, or (g) call for the production of publicly available documents or information, or documents or information to which the Trustee has equal or better access, and thus for which the burden on Virtu is equal to or greater than that of the Trustee in obtaining the requested documents and/or information.

     4.     To the extent Virtu is required to produce any documents in response to the Subpoena, it will not do so unless and until an appropriate Stipulation and Order governing the production of possible Confidential and Highly Confidential Information is entered into by the parties and So Ordered by the Court.

     5.     Virtu does not admit the truth of any purported fact contained in the Subpoena, and no response by Virtu shall be deemed an admission of any such fact or waiver of any right to contest any such fact at an appropriate time.

     6.     Any information produced by Virtu pursuant to the Subpoena is produced without conceding the information's relevance or its admissibility, authenticity, or probative value.

     7.     Virtu reserves the right to obtain reimbursement for any cost or expense incurred in connection with the Subpoena, though reimbursement of cost and expense alone does not diminish the burden imposed by the Subpoena.

     8.     Virtu has not completed its evaluation of the Subpoena, and these objections and responses are based only on information currently known by Virtu. Virtu reserves the right to supplement or otherwise amend any response or objection based on the results of its continuing evaluation.

## <u>OBJECTIONS</u>

     Virtu makes the following General Objections to the Requests and incorporates them into its responses to each and every Request, whether or not specifically stated in the individual response. An assertion of the same, similar, or additional objections in response to a specific

Clayton P. Brust, Esq.
April 29, 2025
Page 3

Request does not waive any of these General Objections as to that or any Request. Virtu's failure to object to a specific Request on any particular ground shall not be construed as a waiver of its right to object on any ground.

      1.      Virtu objects to the Subpoena's Definitions, Instructions and Requests to the extent they seek to impose obligations on Virtu in excess of what is required under the Applicable Rules. Virtu's responses to the Requests are on behalf of Virtu only and will be limited to documents or information currently available to Virtu. To the extent Virtu is required to produce any documents, it will not search for, collect, or produce documents in the possession of Virtu's attorneys or other third parties, including parents, affiliates and subsidiaries.

      2.      Virtu objects to any Request seeking the production of "all" messages (Request Nos. 1-3), "all" communications (Request No. 4) or "all" records of position (Request No. 5) on the ground that it is overly broad and unduly burdensome, particularly in the context of electronically stored information. Virtu cannot ensure that it has located every message, communication, or record of position responsive to a particular Request. Subject to the General Objections and any qualifications below, with respect to any Request seeking "all" messages, communications, and/or records of position and to the extent Virtu is required to produce responsive documents, Virtu will produce the responsive, non-privileged documents within its possession, custody, and control that can be located after a reasonable search conducted in good faith. Specifically, if required to produce responsive documents, Virtu will conduct a reasonable and good faith search for documents in the files of key custodians that it has identified as the most likely to have information responsive to the Subpoena and, with respect to electronic information, reserves the right to and will apply date restrictions and search terms before reviewing documents for responsiveness.

      3.      Each of the five Requests seeks production of documents relating to Citadel's involvement in trading of shares of Meta and/or MMTLP. Request No. 1 seeks production of documents "relating to the routing of orders of any type for shares Meta and/or MMTLP . . . received from client broker-dealer of Citadel and sent to client broker-dealers of Citadel." Request No. 2 seeks production of documents "relating to the routing of orders of any type for shares Meta and/or MMTLP . . . routed to an exchange or off-exchange trading venue on behalf of a client broker-dealer of Citadel and received from an exchange or off-exchange trading venue on behalf of a client broker-dealer of Citadel." Request No. 3 seeks production of documents "relating to the routing of orders of any type for shares Meta and/or MMTLP . . . routed to an exchange or off-exchange trading venue on behalf of Citadel and received from an exchange or off-exchange trading venue on behalf of Citadel." Request No. 4 seeks production of documents "related to locating, securing, borrowing, and delivering shares of Meta and/or MMTLP, including records of instances where Citadel failed to deliver (FTD) shares of Meta and/or MMTLP and records of how Citadel rectified the outstanding FTDs." Request No. 5 seeks production of documents "representing Citadel's position in Meta and/or MMTLP, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to naked short sales), produced at the frequency such data was recorded)." Virtu objects to requests for documents regarding orders and trading related to another entity – Citadel – and states that

Clayton P. Brust, Esq.
April 29, 2025
Page 4

the Trustee should request such documents and information from Citadel, as Citadel's documents and trading records are not within Virtu's possession, custody, or control.

     4.     Virtu objects to the Requests to the extent they seek trading-related information regarding the purchasers and sellers of Meta and/or MMTLP.  That information can be obtained directly from the broker-dealers who interacted directly with the purchasers and sellers.  Virtu should not be burdened searching for documents and information that the Trustee can obtain more easily from the broker-dealers.

     5.     Virtu objects to the Requests to the extent they seek discovery of information that is protected from disclosure by the attorney-client privilege, the work-product doctrine, and/or any other applicable privileges, immunities, or exceptions.  To the extent Virtu is required to produce any documents, it will only produce non-privileged documents.  Nothing contained in these responses – including, but not limited to, any inadvertent production of documents or materials – is intended as, or shall in any way be deemed, a waiver of any attorney-client privilege, work-product doctrine, and/or any other applicable privileges, immunities, or exceptions.

     6.     Virtu objects to the Requests to the extent they call for the production of documents outside of Virtu's possession, custody, or control and, therefore, are overly broad and unduly burdensome.

     7.     Virtu objects to the Requests to the extent they purport to require disclosure by Virtu of irrelevant and/or private information.

     8.     Virtu objects to the Requests to the extent they seek the production of confidential, commercially sensitive, proprietary, and/or trade secret information prior to the entry of a Stipulation and Order governing the production of Confidential and Highly Confidential Information in this Proceeding.

     9.     Virtu objects to the Requests to the extent they would require Virtu to draw a legal conclusion to make a proper response.

     10.     Virtu's responses to the Requests are made without in any way waiving or intending to waive: (a) any objections as to the competency, relevancy, materiality, privileged status, or admissibility as evidence, for any purpose, of any documents or information provided in response to the Requests; or (b) the right to object on any ground at any time to a demand for further responses to the Requests.

     11.     Virtu objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests.  Virtu's responses are not intended to mean that Virtu agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests.

     12.     Virtu objects to the "time frame" purporting to govern the Requests on the grounds that the time period is overly broad, unreasonable, unduly burdensome and harassing (in that it will

Clayton P. Brust, Esq.
April 29, 2025
Page 5

entail production costs and burdens that would far outweigh any likely benefit or probative value); inconsistent with the Applicable Rules; and because it would require production of documents and information neither relevant to the subject matter involved in this Proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the Subpoena purports to require Virtu to search for and produce material from an overly broad and unduly burdensome nearly four-year time period, which begins almost five years ago (September 21, 2020 through August 7, 2024).  This is particularly true inasmuch as it is Virtu's understanding that the Meta and/or MMTLP shares at issue traded only during the period October 2021 – December 2022,

13.     Virtu objects to Definition No. 3 ("ESI") to the extent it imposes obligations inconsistent with the Applicable Rules, including without limitation, to the extent it purports to require Virtu to (a) perform anything more than a reasonable and diligent search of ESI, including without limitation, applying reasonable search terms to any relevant universe of ESI; (b) provide documents maintained only in electronic or digital form on backup tapes, servers, or other similar archival media that would be unreasonable as well as unduly burdensome and expensive to search; (c) produce documents without allowing removal of exact duplicate documents or deduplicating emails to produce only the most complete iteration of an email chain; (d) produce documents, including ESI, in a specified format; and/or (e) provide all of the metadata associated with the document.

14.     Any indication that Virtu will produce documents in response to a Request is not intended as a representation by Virtu that such documents exist or that any such documents are in Virtu's possession, custody, or control.

15.     Virtu objects to the Subpoena on the basis that the Trustee lacks standing to seek documents to support potential claims by third-parties, including but not limited to shareholders of MMTLP, as MMTLP does not have standing to bring claims for potential losses that MMTLP shareholders allegedly sustained or to seek documents to support such claims.  Virtu further objects to the extent that the Subpoena was issued for an improper purpose to the extent that it seeks documents in a bankruptcy proceeding in an attempt to support potential third-party claims that could only be brought in a separate proceeding.  Virtu will not produce any documents in furtherance of a fishing expedition seeking to manufacture baseless claims.

16.     The responses set forth above are based upon information presently known to Virtu and Virtu reserves the right at any time to supplement, amend, revise, add to, correct, and/or clarify its responses and objections as additional knowledge or information makes such action appropriate.  Should Virtu at any time supplement or amend its responses to these Requests, by agreement or otherwise, Virtu expressly reserves the right to assert any applicable objection, privilege, or other protection in connection with such supplementation or amendment.

The foregoing Objections apply to each of the specific Requests.  If Virtu has possession, custody, or control of non-privileged documents responsive to those requests, it is withholding them at this time on the basis of these objections.

Clayton P. Brust, Esq.
April 29, 2025
Page 6

     Please do not hesitate to call me to discuss Virtu's objections to the Subpoena.

          Very truly yours,

          Davis Wright Tremaine LLP

          Barry S. Gold

# EXHIBIT 14

# EXHIBIT 14



21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Barry S. Gold**
 tel:  (212) 880-3978
 fax: (212) 880-3998

barrygold@dwt.com

June 26, 2025

<u>**Via Email**</u>

David Burnett, Esq.
Schneider Wallace Cottrell Konecky LLP
1050 30th Street NW
Washington, DC 20007
Email: dburnett@schneiderwallace.com

> Re:   *In re Meta Materials Inc., Debtor*
>       <u>Bankr. Ct. D. Nev. - Case No. 24-50792-hlb</u>

Dear David:

As you know, we represent Virtu Financial, LLC ("Virtu") in connection with the two new Subpoenas you served on behalf of the Trustee Christina Lovato on June 12, 2025 – (1) to Produce Documents ("Document Subpoena") and (2) for Rule 2004 Examination ("Examination Subpoena") –  in the above-referenced bankruptcy proceeding.  This letter constitutes Virtu's written objections and responses to the two Subpoenas.

<u>**RESERVATION OF RIGHTS**</u>

1.      As a non-party, Virtu may not be aware of all appropriate and necessary objections.  Virtu expressly reserves the right to amend, expand, or delete any part of the objections stated herein at any time.  Virtu reserves the right to object to the admission in evidence of any of the information or documents provided in response to the Subpoenas on any ground including, but not limited to, the ground that any such information or document is irrelevant to the issues in this bankruptcy proceeding (the "Proceeding").  Virtu reserves its right to rely on a fact, document, or other evidence that may develop or which may come to its attention at a later time.

2.      Virtu reserves the right to object to the use (for any purpose) of these objections and responses or any information or document that Virtu produces or provides pursuant to the Subpoenas.  Virtu reserves the right to interpose any such objection at any time or as required by the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, any applicable Local Rule, any applicable court rule, as well as other applicable statutory provisions, rules, caselaw, and court orders (the "Applicable Rules").

**DWT.COM**

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

David Burnett, Esq.
June 26, 2025
Page 2

3.       Virtu reserves the right not to produce documents to the extent that the Requests, including the Definitions and Instructions contained therein, (a) are overly broad, unduly burdensome, and/or call for documents or information that is obtainable from some other source that is more convenient, less burdensome, or less expensive; (b) are vague, ambiguous, duplicative, cumulative, do not identify with reasonable particularity the information sought, or are otherwise incomprehensible; (c) call for production of documents or information that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (d) seek to impose obligations on Virtu beyond, or inconsistent with, those required by the Applicable Rules; (e) purport to seek documents or information not in Virtu's possession, custody, or control; or (f) call for the production of publicly available documents or information, or documents or information to which the Trustee has equal or better access, and thus for which the burden on Virtu is equal to or greater than that of the Trustee in obtaining the requested documents and/or information.

4.       To the extent Virtu is required to produce any documents in response to the Document Subpoena, it will not do so unless and until an appropriate Stipulation and Order governing the production of possible Confidential and Highly Confidential Information is entered into by the parties and So Ordered by the Court.

5.       Virtu does not admit the truth of any purported fact contained in the Subpoenas, and no response by Virtu shall be deemed an admission of any such fact or waiver of any right to contest any such fact at an appropriate time.

6.       Any document or information produced by Virtu pursuant to the Subpoenas is produced without conceding the document's or information's relevance or its admissibility, authenticity, or probative value.

7.       Virtu reserves the right to obtain reimbursement for any cost or expense incurred in connection with responding to the Subpoenas, though reimbursement of cost and expense alone does not diminish the burden imposed by the Subpoenas.

8.       Virtu has not completed its evaluation of the Subpoenas, and these objections and responses are based only on information currently known by Virtu.  Virtu reserves the right to supplement or otherwise amend any objection or response based on the results of its continuing evaluation.

## OBJECTIONS TO EXAMINATION SUBPOENA

1.       Virtu objects to the Trustee's issuance of the Examination Subpoena under Bankruptcy Rule 2004 because the Trustee seeks impermissible pre-litigation discovery against a potential defendant not permitted by Bankruptcy Rule 2004.  The Trustee has already conducted a thorough investigation, identified alleged wrongdoing, quantified supposed damages, and prepared to file a lawsuit.  Instead of following the proper procedure – filing a complaint and conducting discovery under the Federal Rules of Civil Procedure – the Trustee seeks to weaponize Rule 2004 to obtain extensive discovery while circumventing the procedural

David Burnett, Esq.
June 26, 2025
Page 3

safeguards that would otherwise apply.

      2.      Virtu objects to the Examination Subpoena as procedurally improper and in violation of FRBP 9016 and FRCP 45(c)(1)(A) as it calls for testimony by a Virtu witness at an office in Wilmington, Delaware which is not within 100 miles of any location where Virtu regularly transacts business.

      3.      Virtu objects to the Examination Subpoena on the basis that the Trustee lacks standing to obtain testimony to support potential claims by third-parties, including but not limited to shareholders of MMTLP, MMAT and/or TRCH, as the Trustee does not have standing to bring claims for potential losses that those shareholders allegedly sustained or to seek documents to support such claims. Virtu further objects to the extent that the Examination Subpoena was issued for an improper purpose to the extent that it seeks testimony in a bankruptcy proceeding in an attempt to support potential third-party claims that could only be brought in a separate proceeding. Virtu will not produce a witness in furtherance of a fishing expedition seeking to manufacture baseless claims.

## OBJECTIONS TO DOCUMENT SUBPOENA

      Virtu makes the following General Objections to the Requests and incorporates them into its responses to each and every Request in the Document Subpoena, whether or not specifically stated in the individual response. An assertion of the same, similar, or additional objections in response to a specific Request does not waive any of these General Objections as to that or any Request. Virtu's failure to object to a specific Request on any particular ground shall not be construed as a waiver of its right to object on any ground.

      1.      Virtu objects to the Trustee's issuance of the Document Subpoena under Bankruptcy Rule 2004 because the Trustee seeks impermissible pre-litigation discovery against a potential defendant not permitted by Bankruptcy Rule 2004. The Trustee has already conducted a thorough investigation, identified alleged wrongdoing, quantified supposed damages, and prepared to file a lawsuit. Instead of following the proper procedure – filing a complaint and conducting discovery under the Federal Rules of Civil Procedure – the Trustee seeks to weaponize Rule 2004 to obtain extensive discovery while circumventing the procedural safeguards that would otherwise apply.

      2.      Virtu objects to the Document Subpoena as procedurally improper and in violation of FRBP 9016 and FRCP 45(c)(2)(A) as it calls for production of documents at an office in Wilmington, Delaware which is not within 100 miles of any location where Virtu regularly transacts business.

      3.      Virtu objects to the Document Subpoena on the basis that the Trustee lacks standing to request production of documents to support potential claims by third-parties, including but not limited to shareholders of MMTLP, MMAT and/or TRCH, as the Trustee does not have standing to bring claims for potential losses that those shareholders allegedly sustained or to seek documents to support such claims. Virtu further objects to the extent that the

David Burnett, Esq.
June 26, 2025
Page 4

Examination Subpoena was issued for an improper purpose to the extent that it seeks documents in a bankruptcy proceeding in an attempt to support potential third-party claims that could only be brought in a separate proceeding. Virtu will not produce any documents in furtherance of a fishing expedition seeking to manufacture baseless claims.

4. Virtu objects to the Subpoena's Definitions, Instructions and Requests to the extent they seek to impose obligations on Virtu in excess of what is required under the Applicable Rules. Virtu's responses to the Requests are on behalf of Virtu only and will be limited to documents or information currently available to Virtu. To the extent Virtu is required to produce any documents, it will not search for, collect, or produce documents in the possession of Virtu's attorneys or other third parties, including parents, affiliates and subsidiaries. Thus, Virtu objects to Supplemental Instruction No. 4 which states that "The Trustee is seeking records from the following Virtu entities, at a minimum: Virtu Financial LLC, Virtu Americas LLC, and Virtu KCG Holdings LLC."

5. Virtu objects to Supplemental Instruction No. 3 which provides that "The records requested below should include, but not [] limited to, electronically stored records that fulfill Virtu's regulatory and compliance obligation to retain customer and firm order and execution records as required of Virtu in its capacity as a broker-dealer. See Securities Exchange Act Rule 10b-10 and Securities Exchange Act Section 17a-3." There is no legitimate basis for Virtu to have to produce to the Trustee every record Virtu may be required by regulation to retain.

6. Virtu objects to any Request seeking the production of "all relevant order routing and execution records" (Request Nos. 1-3), "all records" (Request No. 4) and "all records of position data" (Request No. 5) on the ground that it is overly broad and unduly burdensome, particularly in the context of electronically stored information. Virtu cannot ensure that it has located every routing and execution record of position, every record, and every record of position data responsive to a particular Request. Subject to the General Objections and any qualifications below, with respect to any Request seeking "all" routing and execution records of position, "all" records, and "all" records of position data and to the extent Virtu is required to produce responsive documents, Virtu will produce the responsive, non-privileged documents within its possession, custody, and control that can be located after a reasonable search conducted in good faith. Specifically, if required to produce responsive documents, Virtu will conduct a reasonable and good faith search for documents in the files of key custodians that it has identified as the most likely to have information responsive to the Document Subpoena and, with respect to electronic information, reserves the right to and will apply date restrictions and search terms before reviewing documents for responsiveness.

7. In addition to the specific objection set forth in paragraph 6 above with respect to Request No. 1, Virtu objects to Request No. 1 which provides that "Order routing and execution records provided by Virtu should reflect the lifespan transactions of orders from origination to completion, capturing all relevant information (i.e. broker info, customer info, long or short indicators, and unique ID), with precision timestamps. These records should also include, but are not limited to, cancel/replaces, order forwarding, executions, and expired orders." This language

David Burnett, Esq.
June 26, 2025
Page 5

is overbroad, vague and ambiguous – particularly "capturing all relevant information."

8.      In addition to the specific objection set forth in paragraph g above with respect to Request No. 2, Virtu objects to Request No. 2 which provides that "Order routing and execution records provided by Virtu should reflect the lifespan transactions of orders from origination to completion, capturing all relevant information (i.e. broker info, customer info, long or short indicators, and unique ID), with precision timestamps. These records should also include, but are not limited to, cancel/replaces, order forwarding, executions, and expired orders. These records should also include transactions where Virtu served as counterparty to the customer and/or broker-dealer client executions on a principal or riskless principal basis and/or executed customers transactions and/or broker-dealer client transactions on an agency basis." This language is overbroad, vague and ambiguous – particularly "capturing all relevant information."

9.      In addition to the specific objection set forth in paragraph 6 above with respect to Request No. 3, Virtu objects to Request No. 3 which provides that "Order routing and execution records provided by Virtu should reflect the lifespan transactions of orders from origination to completion, capturing all relevant information (i.e. broker info, customer info, long or short indicators, and unique ID), with precision timestamps for all related transactions. These records should also include, but are not limited to, cancel/replaces, order forwarding, executions, and expired orders." This language is overbroad, vague and ambiguous – particularly "capturing all relevant information" and "for all related transactions."

10.     In addition to the specific objection set forth in paragraph 6 above with respect to Request No. 4, Virtu objects to Request No. 4 to the extent it directs that Virtu produce "records of how Virtu rectified any outstanding failures to deliver." This language is overbroad, vague and ambiguous – particularly "how Virtu rectified." This language is overbroad, vague, ambiguous and incomprehensible.

11.     In addition to the objection set forth in paragraph 5 above, Virtu objects to Request No. 5 to the extent it directs that "Virtu's production should reflect the same frequency in which such data was recorded." This language is overbroad, vague, ambiguous and incomprehensible.

12.     Virtu objects to the Requests to the extent they seek trading-related information regarding the purchasers and sellers of MMTLP, MMAT and/or TRCH. That information can be obtained directly from the broker-dealers who interacted directly with the purchasers and sellers. Virtu should not be burdened searching for documents and information that the Trustee can obtain more easily from the broker-dealers.

13.     Virtu objects to the Requests to the extent they seek discovery of information that is protected from disclosure by the attorney-client privilege, the work-product doctrine, and/or any other applicable privileges, immunities, or exceptions. To the extent Virtu is required to produce any documents, it will only produce non-privileged documents. Nothing contained in these responses – including, but not limited to, any inadvertent production of documents or materials – is intended as, or shall in any way be deemed, a waiver of any attorney-client

David Burnett, Esq.
June 26, 2025
Page 6

privilege, work-product doctrine, and/or any other applicable privileges, immunities, or exceptions.

14.     Virtu objects to the Requests to the extent they call for the production of documents outside of Virtu's possession, custody, or control as such Requests are overly broad and unduly burdensome.

15.     Virtu objects to the Requests to the extent they purport to require disclosure by Virtu of irrelevant and/or private information.

16.     Virtu objects to the Requests to the extent they seek the production of confidential, commercially sensitive, proprietary, and/or trade secret information prior to the entry of a Stipulation and Order governing the production of Confidential and Highly Confidential Information in this Proceeding.

17.     Virtu objects to the Requests to the extent they would require Virtu to draw a legal conclusion to make a proper response.

18.     Virtu's responses to the Requests are made without in any way waiving or intending to waive: (a) any objections as to the competency, relevancy, materiality, privileged status, or admissibility as evidence, for any purpose, of any documents or information provided in response to the Requests; or (b) the right to object on any ground at any time to a demand for further responses to the Requests.

19.     Virtu objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests. Virtu's responses are not intended to mean that Virtu agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests.

20.     Virtu objects to the "time frame" purporting to govern the Requests on the grounds that the time period is overly broad, unreasonable, unduly burdensome and harassing (in that it will entail production costs and burdens that would far outweigh any likely benefit or probative value); inconsistent with the Applicable Rules; and would require production of documents and information neither relevant to the subject matter involved in this Proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the Document Subpoena purports to require Virtu to search for and produce material from an overly broad and unduly burdensome nearly four-year time period, which begins almost five years ago (September 21, 2020 through August 7, 2024 with respect to trading of MMAT and TRCH, and June 28, 2021 through December 14, 2022 with respect to trading of MMTLP). This is particularly true inasmuch as it is Virtu's understanding that the Meta and/or MMTLP shares at issue traded only during the period October 2021 – December 2022.

21.     Virtu objects to Definition No. 3 ("ESI") to the extent it imposes obligations inconsistent with the Applicable Rules, including without limitation, to the extent it purports to require Virtu to (a) perform anything more than a reasonable and diligent search of ESI,

David Burnett, Esq.
June 26, 2025
Page 7

including without limitation, applying reasonable search terms to any relevant universe of ESI; (b) provide documents maintained only in electronic or digital form on backup tapes, servers, or other similar archival media that would be unreasonable as well as unduly burdensome and expensive to search; (c) produce documents without allowing removal of exact duplicate documents or deduplicating emails to produce only the most complete iteration of an email chain; (d) produce documents, including ESI, in a specified format; and/or (e) provide all of the metadata associated with the document.

22.     Any indication that Virtu will produce documents in response to a Request is not intended as a representation by Virtu that such documents exist or that any such documents are in Virtu's possession, custody, or control.

23.     The responses set forth above are based upon information presently known to Virtu and Virtu reserves the right at any time to supplement, amend, revise, add to, correct, and/or clarify its responses and objections as additional knowledge or information makes such action appropriate.  Should Virtu at any time supplement or amend its responses to these Requests, by agreement or otherwise, Virtu expressly reserves the right to assert any applicable objection, privilege, or other protection in connection with such supplementation or amendment.

The foregoing general and specific objections apply to each of the specific Requests.  If Virtu has possession, custody, or control of non-privileged documents responsive to those requests, it is withholding them at this time on the basis of these objections.

Please do not hesitate to call me to discuss Virtu's objections and responses to the Subpoena.

Very truly yours,

Davis Wright Tremaine LLP

Barry S. Gold

# EXHIBIT 15

# EXHIBIT 15

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

META MATERIALS INC.,

Debtor.

Case No.: 24-50792-hlb
(Chapter 7)

**[PROPOSED] STIPULATED PROTECTIVE ORDER BETWEEN TRUSTEE AND VIRTU FINANCIAL, LLC**

Hearing Date: N/A
Hearing Time: N/A

WHEREAS, in connection with the above-captioned ~~litigation~~ bankruptcy proceedings (the "Action"), Chapter 7 Trustee Christina Lovato ("Trustee") and third-party subpoena respondent Virtu Financial, LLC ("Virtu") (Trustee and Virtu collectively referred to as "the Parties;" each individually a "Party") believe that certain information that is or will be encompassed by discovery demands by the Trustee involves the production or disclosure of trade secrets, confidential business information, other confidential information, personal identifying information, and/or other proprietary information;

WHEREAS, the Parties respectfully request that the Court enter this order ("Protective Order") limiting disclosure thereof in accordance with 11 U.S.C. 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, as applicable, pursuant to Bankruptcy Rules 2004, 7026, and 9014 and Rules 26(c) and 45 of the Federal Rules of Civil Procedure.

NOW, THEREFORE, to facilitate and expedite the production~~, exchange~~ and treatment of material produced in discovery ("Discovery Material"), to facilitate the prompt resolution of disputes over confidentiality, and to protect Discovery Material that ~~a Party~~ Virtu seeks to maintain as confidential, it is hereby stipulated among the Parties and agreed, and, upon Court approval, it is hereby **ORDERED** that the following terms will govern any requests for and production of

1

Discovery Material:

1.　~~Each Party~~Virtu may designate as confidential for protection under this Protective Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of ~~the Party~~Virtu or a third party to whom ~~the Party~~Virtu reasonably and in good faith believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). This includes, but is not limited to, documents, information, or materials that reveal:

　　　　a.　　Confidential trade secrets or proprietary business information;

　　　　b.　　Financial information (including tax return or bank account information; profit and loss reports or estimates; trading positions; transactional data; risk reports; liquidity reports; brokerage commission reports and summaries; commission agreements; employment contracts; documents reflecting dates, amounts and basis of renumeration of compensation; materials related to fees received for services provided; and materials related to employee compensation);

　　　　c.　　Material not previously disclosed to the public related to ownership or control of any non-public company;

　　　　d.　　Proprietary business information or communications, or other confidential research, development, or commercial information or communications;

　　　　e.　　Information, materials, or other documents reflecting non-public business or financial strategies, and/or confidential competitive information that, if disclosed, would result in competitive harm to ~~the disclosing party~~Virtu;

　　　　f.　　Sensitive, non-public personal, client, or customer information concerning individuals or other entities, including information that would be considered personally identifiable information under any applicable law and/or protected from public disclosure under relevant securities laws to include, but not limited to, the Gramm-Leach-Bliley Act and Regulation S-P;

　　　　g.　　The identity and investment positions of persons or entities who have invested in, or hold an interest in, partnerships, trusts, funds, or other investment vehicles that are

produced or otherwise disclosed during the course of this Action;

        h.     Information for which applicable law, regulation, policy, or other guidance or rule of any governmental authority—foreign or domestic—requires confidential treatment, to the extent any disclosure is permitted by law; or

        i.     Any other category of information given confidential status by the Court.

Nothing in this Paragraph 1 or in this Protective Order shall affect the right, if any, of ~~any Party~~Virtu or ~~any~~ witness to make any type of objection, claim, or other response to a discovery request of any type, including ~~interrogatories, requests for admissions,~~ requests for production of documents or questions at deposition, and to withhold production where appropriate.

2.     Protected Material shall be designated by ~~the Party producing it~~Virtu by affixing a legend or stamp on such document, information, or material as "CONFIDENTIAL." The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

3.     With respect to documents, information, or material designated "CONFIDENTIAL" (collectively, "DESIGNATED MATERIAL"), subject to the provisions herein and unless otherwise stated, this Protective Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings, and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIAL shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.     Protected Material may be designated "CONFIDENTIAL" at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as

DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. ~~Any party that~~If Virtu inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL, or having applied an incorrect designation, may request destruction (or if electronic the elimination of that electronic record) of that Protected Material by notifying the recipient(s), as soon as reasonably possible after ~~the producing Party~~Virtu becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then, as reasonably practicable, destroy all copies of the inadvertently or unintentionally produced Protected Material (or if electronic the elimination of that electronic record) and any documents, information or material derived from or based thereon. The recipient(s) shall not be liable for failing to treat as confidential DESIGNATED MATERIAL before it has been designated as such.

5.     "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of ~~the designating party~~Virtu, or upon order of the Court:

a.     outside counsel of record in this Action;

b.     employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

c.     in-house counsel for the Parties who either have decision-making authority for the litigation of this Action or are assisting outside counsel in the litigation of this Action;

d.     to the extent that disclosure is reasonably necessary for the Action, current officers, directors, or employees of the Parties who are assisting counsel in the Action;

e.     outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that:

(1)     the Parties' counsel, in good faith, requires the consultants' or experts' assistance in connection with the Action;

(2)     before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto;

(3)      any part of any report created by such expert or consultant

4

incorporating DESIGNATED MATERIAL in whole or in part shall be designated appropriately by the Party responsible for its creation; and

(4) such experts or consultants may not use DESIGNATED MATERIAL for any purpose that does not relate directly to the Action (including without limitation other litigation and other work in their respective fields);

f. independent litigation support services, including persons working for or as court reporters, interpreters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action;

g. the Court and its personnel for *in camera* review with the specific understanding that all such DESIGNATED MATERIAL may not be filed on the public docket unless under seal, as discussed further herein; and

h. any mediator agreed upon by the Parties, and their personnel; and

i. the author, addressee(s), or recipient(s) of the DESIGNATED MATERIAL, or any other natural person who counsel determines after reasonable inquiry generally would have had access to such information during his or her employment or who is specifically identified in the document or its accompanying metadata, provided, however, that (i) this disclosure is made for the purpose of advancing the disclosing Party's Virtu's claims or defenses, and for no other purposes; and (ii) the person is not permitted to retain copies of the DESIGNATED MATERIAL. In the event any Party leaves the employ of any authorized person hereunder, any CONFIDENTIAL material shall be returned to legal counsel for the Party receiving the data.

6. Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action, and shall not be used for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Protective Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates,

extracts, summaries, or descriptions are DESIGNATED MATERIAL subject to all of the terms and conditions of this Protective Order.

7.      Nothing in this Protective Order shall require production of documents, information, or other material that ~~a Party~~Virtu contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity are inadvertently or unintentionally produced, such production shall not constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. ~~Any Party that~~If Virtu inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity, Virtu may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to ~~the producing Party~~Virtu, or certify in writing to ~~the producing Party~~Virtu that such documents, information, or other material have been destroyed as reasonably practicable.

8.      Nothing in this Protective Order shall affect any obligation ~~a Party~~Virtu may have to produce a privilege log in accordance with Local Civil Rule 26.2.

9.      There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

10.      Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing, provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with ~~the designating party~~Virtu, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy

6

recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of ~~the producing Party~~ Virtu or a current or former officer, director or employee of a company affiliated with ~~the producing Party~~ Virtu; (v) counsel for a Party, including outside counsel and in-house counsel; (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing ~~the producing Party~~ Virtu or from the Court.

11.     ~~Parties~~ Virtu may, at the deposition or hearing or within sixty (60) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" pursuant to this Protective Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Protective Order. Until expiration of the 60-day period, the entire deposition or hearing transcript shall be treated as "CONFIDENTIAL."

12.     The Protective Order applies to pretrial discovery. ~~Nothing in this Protective Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.~~

13.     ~~A Party~~ The Trustee may request in writing to ~~the other Party~~ Virtu that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If ~~the designating Party~~ Virtu does not agree to re-designation within five (5) days of receipt of the written request, the ~~requesting Party~~ Trustee may apply to the Court for relief. Upon any such application to the Court, the burden shall be on ~~the designating Party~~ Virtu to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the

7

Court shall be met. Pending the Court's determination of the application, the designation of ~~the designating Party~~Virtu shall be maintained.

14.  Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Protective Order shall be provided with a copy of this Protective Order, shall be informed that he or she is subject to the terms and conditions of this Protective Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Protective Order. A copy of the acknowledgment form is attached as Appendix A.

15.  If ~~a Party~~the Trustee is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," ~~that Party~~the Trustee must: (a) promptly notify Virtu in writing ~~the designating Party~~, with such notification to include a copy of the subpoena or court order; (b) promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order, with such notification to include a copy of this Protective Order; and (c) cooperate with respect to all reasonable procedures sought to be pursued by ~~the designating Party~~Virtu whose Protected Material may be affected. If ~~the designating Party~~Virtu timely seeks a protective order, the ~~Party~~Trustee served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the ~~Party~~Trustee has obtained ~~the designating Party's~~Virtu's permission. ~~The designating Party~~Virtu shall bear the burden and expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging ~~a receiving Party in this action~~the Trustee to disobey a lawful directive from another court.

16.  Sealing of DESIGNATED MATERIAL Filed with or Submitted to Court: Unless otherwise agreed by ~~the Producing Party~~Virtu, all DESIGNATED MATERIAL filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose CONFIDENTIAL Protected Material, shall be filed under seal in accordance with the Federal

8

Rules of Civil Procedure, Bankruptcy Rules, Local Rules, and the practice rules of the Court. It shall be the burden of the Movant who desires to serve any document to establish with the Court the bona fide reason(s) for which the document(s) requested are to be sealed.

17. Use of DESIGNATED MATERIAL in Open Court: The limitations on disclosure in this Order shall not apply to any DESIGNATED MATERIAL offered or otherwise used by any Party ~~at trial or~~in any hearing held in open court except as provided in this paragraph. As part of any ~~pretrial conference or any~~ meet and confer regarding the use of exhibits in any evidentiary hearing, and where practicable at least 24 hours prior to the use of any DESIGNATED MATERIAL at ~~trial or~~ any hearing to be held in open court, counsel for any Party who desires to offer or use such DESIGNATED MATERIAL at ~~trial or~~ any hearing to be held in open court shall meet and confer in good faith with ~~the Producing Party~~Virtu~~, together with any other Parties who have expressed interest in participating in such meet and confer,~~ to discuss ways to redact the DESIGNATED MATERIAL so that the DESIGNATED MATERIAL may be offered or otherwise used by any Party, in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. If the Parties are unable to resolve a dispute related to such DESIGNATED MATERIAL, then ~~the Producing Party~~Virtu bears the burden of requesting relief from the Court.

18. Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at ~~the producing Party's~~Virtu's election either be returned to ~~the producing Party~~Virtu or be destroyed as reasonably practicable. The ~~receiving Party~~Trustee shall verify the return or destruction by affidavit furnished to ~~the producing party~~Virtu, upon ~~the producing Party's~~Virtu's request.

19. The failure to designate documents, information, or material in accordance with this Protective Order and the failure to object to a designation at a given time shall not preclude redesignation pursuant to paragraph 4 of this Protective Order or the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this

9

Protective Order and/or the production of documents, information, and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

20.     Any Party knowing or believing that any other ~~P~~party is in violation of, or intends to violate, this Protective Order and has raised the question of violation or potential violation with the opposing ~~P~~party and has been unable to resolve the matter by agreement, may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Protective Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation or potential violation of this Protective Order.

21.     Production of DESIGNATED MATERIAL by ~~each of the Parties~~Virtu shall not be deemed a publication of the documents, information, and material (or the contents thereof) produced so as to void or make voidable whatever claim ~~the Parties~~Virtu may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

22.     Nothing in this Protective Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of ~~each of the Parties~~Virtu to assert any applicable discovery or trial privilege.

23.     Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Protective Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

24.     ~~A Party~~The Trustee shall not use ~~any other Party's~~Virtu's DESIGNATED MATERIAL for any purpose not directly related to this Action without ~~the other Party's~~Virtu's approval or as otherwise permitted by a cross-use agreement between the Parties.

25.     Nothing in this Protective Order shall (i) prevent ~~a Party~~Virtu from disclosing its own information that it has designated as "CONFIDENTIAL," as it deems appropriate; (ii) impose any restrictions on the use or disclosure of information obtained other than through discovery in this matter; or (iii) in any way restrict the ability of any ~~P~~party or witness to comply with a legal

10

duty to disclose, regardless of the source of that duty. A disclosure under item (iii) shall not be deemed a waiver of any other ~~p~~Party's obligations under this Protective Order, except as provided by law.

26. The terms of this Protective Order shall survive any settlement, discontinuance, dismissal, judgment, or other disposition of this Action.

27. The ~~p~~Parties acknowledge that the Court retains discretion as to whether, in orders and opinions, to afford confidential treatment to information that ~~the parties have~~Virtu has redacted, sealed or designated as confidential.

28. This Order is a procedural device intended to protect Discovery Materials designated as DESIGNATED MATERIAL. Nothing in this Order shall affect any Party's rights or obligations unrelated to the confidentiality of Discovery Materials.

29. Nothing contained herein shall be deemed a waiver or relinquishment by ~~any Party~~Virtu of any objection, including, but not limited to, any objection concerning the alleged confidentiality or proprietary nature of any documents, information, or data requested by ~~a Party~~the Trustee, any right to object to any discovery request, or any right to object to the admissibility of evidence on any ground, or to seek any further protective order, or to seek relief from the Court or any other applicable court from any provision of this Order by application on notice on any grounds.

30. Nothing in this Order affects ~~the~~ Virtu's right ~~of any Producing Party~~ to use or disclose its own Discovery Material in any way. Such disclosure will not waive the protections of this Order and will not otherwise entitle other Parties, non-Parties, or their attorneys to use or disclose such Discovery Material in violation of this Order.

**SO STIPULATED AND AGREED:**

Davis Wright Tremaine LLP


By: _____/s/ Barry S. Gold_____
      Barry S. Gold
      21st Floor
      1251 Avenue of the Americas

New York, NY 10020-1104
tel:  (212) 880-3978
barrygold@dwt.com

*On behalf of Virtu Financial, LLC*

Christian Attar

By: ___/s/ James W. Christian_____
       James W. Christian
       1177 West Loop South, Suite 1700
       Houston, TX 77027
       T: (713) 659-7617
       JChristian@christianattarlaw.com

       *On behalf of Chapter 7 Trustee Christina Lovato*
       *Pro Hac Vice Application Forthcoming*

Hartman & Hartman

By: ___/s/ Jeffrey L Hartman, Esq._____
       Jeffrey L Hartman, Esq.
       510 West Plumb Lane, Suite B
       Reno, NV 89509
       T: (775) 324-2800
       jlh@bankruptcyreno.com

       *On behalf of Chapter 7 Trustee Christina Lovato*
       *Pro Hac Vice Application Forthcoming*

Kasowitz Benson Torres LLP

By: ___/s/ Stephen W. Tountas_____
       Stephen W. Tountas
       1633 Broadway
       New York, NY 10019
       T:  (212) 506-1739
       stountas@kasowitz.com

       *On behalf of Chapter 7 Trustee Christina Lovato*
       *Pro Hac Vice Application Forthcoming*

13

Schneider Wallace Cottrell Konecky LLP

By: ___ */s/ Jason H. Kim* _____
     Jason H. Kim
     Ryan R. C. Hicks
     David D. Burnett
     2000 Powell Street, Suite 1400
     Emeryville, CA 94608
     Main Line: (415) 421-7100
     jkim@schneiderwallace.com
     rhicks@schneiderwallace.com
     dburnett@schneiderwallace.com

     *On behalf of Chapter 7 Trustee Christina Lovato*
     *Pro Hac Vice Applications* ~~Forthcoming~~ *Filed*

Robinson Sharp Sullivan Brust

By: ___ */s/ Clayton P. Brust* _____
     Clayton P. Brust
     71 Washington Street
     Reno, NV 89503
     T: (775) 329-3151
     cbrust@rssblaw.com

     *On behalf of Chapter 7 Trustee Christina Lovato*
     *Pro Hac Vice Application Forthcoming*

14

1            **UNITED STATES BANKRUPTCY COURT**

2                 **DISTRICT OF NEVADA**

3 In re                 Case No.: 24-50792-hlb

4                      (Chapter 7)
META MATERIALS INC.,

5 Debtor.             **APPENDIX A**

6                 **UNDERTAKING OF EXPERTS OR**

7                 **CONSULTANTS REGARDING
PROTECTIVE ORDER BETWEEN**

8                 **TRUSTEE AND VIRTU FINANCIAL,
LLC**

9

10                 Hearing Date:  N/A

11                 Hearing Time:  N/A

12

13       I, _____, declare that:

14 1.     My address is_____.

15       My current employer is_____.

16       My current occupation is_____.

17 2.     I have received a copy of the Protective Order in this action.  I have carefully read and

18       understand the provisions of the Protective Order.

19 3.     I will comply with all of the provisions of the Protective Order.  I will hold in confidence,

20       will not disclose to anyone not qualified under the Protective Order, and will use only for

21       purposes of this action any information designated as "CONFIDENTIAL" that is disclosed

22       to me.

23 4.     Promptly upon termination of these actions, I will return all documents and things

24       designated as "CONFIDENTIAL" that came into my possession, and all documents and things

25       that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

26 / / /

27 / / /

28 / / /

15

1  / / /

2  5.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the

3          Protective Order in this action.

4

5          I declare under penalty of perjury that the foregoing is true and correct.

6

7

8  Signature _____

9

10  Date _____

16

# EXHIBIT 16

# EXHIBIT 16

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4

5    In the Matter of:

6

7    TRANSMAR COMMODITY GROUP,     Case No. 16-13625-jlg

8    LTD.,

9

10                  Debtor.

11

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13

14                  United States Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  June 9, 2017

19                  11:12 a.m.

20

21

22

23   B E F O R E :

24   HON JAMES L. GARRITY

25   U.S. BANKRUPTCY JUDGE

Page 2

```
 1   Hearing re:  Application for FRBP 2004 Examination Motion

 2   for an Order Pursuant to Rule 2004 of the Federal Rules of

 3   Bankruptcy Procedure Authorizing ABN AMRO Capital USA LLC to

 4   Issue a Subpoena for the Further Production of Documents

 5   from and the Oral Examination of AMERRA Capital Management

 6   LLC, by Nancy Obler (Doc #255)

 7

 8   Hearing re:  Declaration of Kenneth Pasquale in Support of

 9   Motion for an Order Pursuant to Rule 2004 of the Federal

10   Rules of Bankruptcy Procedure Authorizing ABN AMRO Capital

11   USA LLC to Issue a Subpoena for the Further Production of

12   Documents from and the Oral Examination of AMERRA Capital

13   Management LLC, by Nancy Obler (Doc # 256)

14

15   Hearing re:  Objection of AMERRA Capital Management LLC to

16   the Motion for an Order Pursuant to Rule 2004 of the Federal

17   Rules of Bankruptcy Procedure Authorizing ABN AMRO Capital

18   USA LLC to Issue a Subpoena for the Further Production of

19   Documents from and the Oral Examination of AMERRA Capital

20   Management LLC, by Nancy Obler (Doc # 273)

21

22   Hearing re:  Affidavit of John G. Hutchinson filed by John

23   C. Hutchinson on behalf of AMERRA Capital Management LLC

24

25   Hearing re:  Reply to Motion ABN AMRO Capital USA LLCs Reply
```

Page 3

1    in Further Support of its Motion for an Order Pursuant to

2    Rule 2004 of the Federal Rules of Bankruptcy Procedure

3    Authorizing ABN AMRO to Issue a Subpoena for the Further

4    Production of Document from the Oral Examination of AMERRA

5    Capital Management LLC, by Nancy Obler (Doc  289)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

Page 4

```
 1    A P P E A R A N C E S :

 2    RIKER, DANZIG, SCHERER, HYLAND, PERRETTI, LLP

 3         Attorney for the Debtor

 4         Headquarters Plaza

 5         One Speedwell Avenue

 6         Morristown, NJ 07962

 7

 8    BY:  JOSEPH L. SCHWARTZ, ESQ.

 9

10    KLESTADT, WINTERS, JURELLER, SOUTHARD & STEVENS, LLP

11         Attorney for the Debtor

12         200 West 41st Street, 17th Floor

13         New York, NY 10036

14

15    BY:  JOSEPH C. CORNEAU, ESQ.

16

17    STROOCK, STROOCK & LAVAN, LLP

18         Attorney for ABN AMRO

19         180 Maiden Lane

20         New York, NY 10038

21

22    BY:  ANDREW DENATALE, ESQ.

23

24

25
```

Page 5

```
 1    SIDLEY AUSTIN, LLP

 2          Attorneys for AMERRA

 3          787 Seventh Avenue

 4          New York, NY 10019

 5

 6    BY:  LEE S. ATTANASIO, ESQ.

 7          JOHN G. HUTCHINSON, ESQ.

 8

 9    Tarter Krinsky & Drogin

10          Attorney for the Committee

11          1350 Broadway

12          New York, NY 10018

13

14    BY:  ROCCO A. CAVALIERE, ESQ.

15

16    U.S. DEPARTMENT OF JUSTICE

17          Attorney for the U.S. Trustee

18          U.S. Federal Office Building

19          201 Varick Street

20          Suite 1006

21          New York, NY 10014

22

23    BY:  ANDREW D. VELEZ-RIVERA, ESQ.

24

25
```

Page 6

```
 1                    P R O C E E D I N G S

 2           THE COURT:  All right.  Good morning.

 3       (A chorus of good morning)

 4           THE COURT:  This is Transmar Commodity Group Ltd.,

 5   case number 16-13625.  This is the adjourned hearing on the

 6   motion that was filed by ABN AMRO seeking Rule 2004

 7   discovery.

 8           I'm not -- don't need to take appearances.  I

 9   thank you all for being here, and we adjourned this so that

10   -- the argument was on May 31st -- we adjourned it to give

11   the Court a little bit more time to consider the arguments,

12   and I'm now prepared to rule.

13           The matter before the Court is the motion of ABN

14   AMRO Capital USA LLC, I'll refer to it as ABN AMRO, as

15   administrative agent and collateral agent for itself and

16   other secured lenders, I'll refer to as the lenders, under

17   the amended and restated credit agreement dated as of

18   February 26th, 2016, as amended, for the entry of an order

19   pursuant to Rule 2004 of the Federal Rules of Bankruptcy

20   Procedure authorizing ABN AMRO to issue a subpoena for the

21   production of certain documents from and for oral

22   examination of Amerra Capital Management LLC, which I'll

23   refer to as Amerra, by Nancy Obler, a managing director.

24   See ECF document No. 255.

25           This is the second time that ABN AMRO has sought
```

Page 7

1    Rule 2004 discovery from Amerra.

2             At the outset of these cases and by ex parte

3    motion dated January 17, 2017, which I'll refer to as the

4    first Rule 2004 motion, which is at ECF No. 71, it sought

5    such discovery with respect to, among other things -- that's

6    all right -- transactions among Amerra and the debtor,

7    Transmar Commodity Group Ltd., or Transmar, or Transmar's

8    affiliate, Euromar Commodity GmbH, or Euromar.

9             Amerra objected to the discovery; however, after

10   several conferences among ABN AMRO, Amerra, and the Court,

11   Amerra agreed to produce to ABN AMRO documents "dating from

12   January 1, 2016 to the present sufficient to evidence the

13   facts, terms, and conditions or transactions between or

14   among Amerra, Euromar, and/or the debtor, provided that

15   Amerra was a party to some part of the transaction or a

16   related transaction involving the debtor or Euromar and in

17   fact possesses additional documents."

18            See the order pursuant to Rule 2004 of the Federal

19   Rules of Bankruptcy Procedure authorizing ABN AMRO to issue

20   subpoenas to Amerra dated February 14, 2017.  That's ECF

21   document No. 125.  I'll refer to that as the Amerra Rule

22   2004 order.

23            Amerra objected to ABN AMRO obtaining deposition

24   discovery on those matters and none was ordered.

25            In support of the motion, and among other things,

1    ABN AMRO asserts that through discovery obtained from the

2    debtors it is learned that in the months leading up to the

3    commencement of the Chapter 11 cases Ms. Obler played an

4    active role in advising the debtor's management team.

5           It contends that upon learning of that role its

6    counsel requested that Amerra voluntarily produce additional

7    documents beyond the scope of the Amerra Rule 2004 order and

8    voluntarily produce Ms. Obler for examination under oath,

9    but that Amerra refused that request.  See the motion at

10   paragraph 4.

11          ABN AMRO asserts that there is an urgent need for

12   the Court to grant the motion.  It maintains that it

13   requires what it characterizes as limited additional

14   documents from Amerra and Ms. Obler's oral examination in

15   order advance its investigation of the debtor's business and

16   final affairs.  Motion at 17.

17          To that end it maintains that it requested -- that

18   the requested discovery will allow it to continue to (A),

19   investigate the debtor's recordkeeping processes and

20   operations, including, but not limited to, transactions with

21   its affiliates and certain third parties; (B), investigate

22   the facts, circumstances, and events that resulted in the

23   disappearance of hundreds of millions of dollars in

24   collateral value and other property of the debtor's estate

25   reflected in the borrowing of base reports; and (C),

1 determining whether the lenders, individually, and the

2 debtor's creditors, generally, have viable claims against

3 any parties as a result of the facts and circumstances that

4 resulted in this bankruptcy case.  See the motion at 18.

5    Moreover, ABN AMRO asserts that its investigation

6 and any facts and information discovered as a result thereof

7 with inure to the benefit of the debtor's estate and its

8 creditors and will not be duplicative of any investigation

9 conducted by the creditors' committee.  See the motion at

10 19.

11    Amerra opposes the motion.  See the Amerra

12 objection referred to, that is the objection ECF document

13 No. 273.

14    And ABN AMRO submitted a reply to the objection.

15 See ECF document No. 293.

16    Amerra maintains that there's nothing new to ABN

17 AMRO about Amerra's alleged special relationship with the

18 debtor, because as early as January 24th, 2017 ABN AMRO

19 contended that Amerra has a "unique and uniquely close"

20 relationship with Euromar and Transmar and on that basis

21 sought wide ranging discovery, including emails.  See the

22 objection at paragraph 4.

23    Moreover, it asserts that although the motion

24 portrays ABN AMRO's new discovery demands as a means to

25 locate hundreds of millions of dollars in collateral that

1   has disappeared, it made the same exact allegations in

2   support of the first Rule 2004 motion.  See the objection

3   at 4.

4            To that end it maintains that the fundamental

5   basis of the first Rule 2004 motion was that Amerra's

6   transactions with Euromar and Transmar were somehow improper

7   and that documentation would show that Amerra was extracting

8   funds from the debtor.  See the objection at 25.

9            It notes that in support of the first Rule 2004

10  motion ABN AMRO asserted that "whether and to what extent

11  Amerra benefited at the expense of the lenders and the

12  debtor's estate generally as a result of the debtor's

13  transactions and relationship with Euromar is ripe for

14  investigation."  That's the objection at 25 citing the first

15  Rule 2004 motion at paragraph 18.

16           Amerra labels this as "ABN's grand conspiracy

17  theory."  The objection at 31.

18           It maintains that this is the same basis on which

19  ABN AMRO is seeking discovery in this motion, thus as a

20  preliminary matter Amerra argues that the motion should be

21  denied because it amounts to an attempted bait and switch in

22  that ABN AMRO has brought no new information forward and

23  nonetheless is seeking discovery beyond the scope of that

24  authorized in the Amerra Rule 2004 order.  See the objection

25  at paragraph 4.

1      Amerra asserts that in response to the Amerra Rule

2    2004 order it provided documents that were meticulously

3    organized by transaction, including each leg of 48 separate

4    cocoa transactions and was produced in its entirety by

5    April 11, 2017.

6      Although Amerra acknowledges that the Amerra Rule

7    2004 order preserved ABN AMRO's right to seek further Rule

8    2004 discovery from Amerra, it contends that ABN AMRO should

9    not be permitted to seek to obtain additional discovery

10   without first demonstrating to the Court that the

11   transaction documents that Amerra has produced to date

12   support what it characterizes as ABN AMRO's careless

13   allegations and furnish specific facts for burdening Amerra

14   with further discovery.  See the objection at paragraph 30.

15      Amerra says that ABN AMRO's right to seek

16   additional Rule 2004 discovery was conditioned upon its

17   showing that the discovery provided to date is not

18   responsive to the document request.

19      In that regard it notes that the motion does not

20   mention the documents that it is -- that it has produced in

21   response to the Amerra Rule 2004 order, raise any question

22   about the information in those documents, or even indicate

23   that ABN AMRO has received -- has reviewed the documents.

24   See the opposition at -- objection at paragraph 2.

25      Thus Amerra asserts that the motion is an improper

1    attempt by ABN AMRO to get discovery from Amerra that is

2    beyond the scope of the Amerra Rule 2004 order.

3           Moreover, it maintains that there's nothing new in

4    the motion that would justify ABN AMRO's second bite at the

5    apple.  See the objection at paragraph 31.

6           ABN AMRO denies that there has been a bait and

7    switch.  It maintains that it is seeking Rule 2004 discovery

8    based on newly discovered information and precisely because

9    Amerra initially objected to producing emails or agreeing to

10   an oral examination.  See the reply at paragraph 8.

11          Further it denies that its request for additional

12   information is an improper end-around the terms of the

13   Amerra Rule 2004 order and contends that through the motion

14   and the Rule 2004 discovery it is seeking information

15   necessary to determine whether claims beneficial to the

16   estate exist against Amerra or any other third party and to

17   determine what really happened to over $300 million in

18   reported assets that suddenly went missing.  See the reply

19   at paragraphs 4 and 6.

20          ABN AMRO asserts both that Ms. Obler's testimony

21   and documents are unquestionably relevant to such an inquiry

22   and that the discovery is expressly permitted by Rule 2004.

23   See the reply at 4.

24          It explains that the documents produced to date by

25   third parties in response to the Rule 2004 discovery request

1    demonstrate that Amerra was more than a mere trading partner

2    and creditor of Euromar and the debtor as Amerra portrays

3    itself.  See the reply at 7.

4             ABN AMRO asserts that in light of this evidence

5    its renewed and more focused request for Rule 2004 discovery

6    from Amerra is exactly the type of additional discovery

7    expressly contemplated by the Amerra Rule 2004 order.  See

8    the reply at paragraphs 3 and 8.

9             The Court notes that the entry of the Amerra Rule

10   2004 order was expressly "without prejudice to any parties'

11   right to attempt to seek further Rule 2004 discovery from

12   Amerra, and to Amerra's right to attempt to seek Rule 2004

13   discovery from ABN AMRO or any other lenders or interested

14   parties and without prejudice to Amerra's or ABN AMRO's or

15   any other interested parties' right to object to such

16   further Rule 2004 discovery."  See the Amerra Rule 2004

17   order at page 2.

18            The Court does not read that reservation of rights

19   language as narrowly as Amerra reads it, and as such does

20   not agree with Amerra that that's a basis for denying the

21   requested relief.  Accordingly the Court will consider the

22   merits of the motion.

23            In relevant part Rule 2004 provides that the Court

24   may authorize the examination of any entity relating to the

25   -- relating "to the acts, conduct, or property, or to the

1   liabilities and financial condition of the debtor or to any

2   matter which may affect the administration of the debtor's

3   estate."  See Federal Rule of Bankruptcy Procedure 2004(b).

4            To that end the examination may extend to matters

5   relating "to the operation of any business and to the

6   desirability of its continuation -- continuance, the source

7   of any money or property acquired or to be acquired by the

8   debtor for purposes of consummating a plan, and the

9   consideration given or offered therefore in any other matter

10  relevant to the case or the formulation of a plan."  That's

11  Rule 2004(b).

12           Rule 2004 does not mandate that the Court grant

13  discovery, rather it "provides the Court -- that the Court

14  may order disclosure thereunder giving the Court significant

15  discretion."  See In re: Board of Directors of Hopewell

16  International Insurance Ltd., 258 B.R. 580 at 587,

17  Bankruptcy Southern District of New York, 2001.

18           It is settled that in exercising that discretion

19  the Court must "balance the competing interest of the

20  parties weighing the relevance of and necessity of the

21  information sought by examination.  That documents meet the

22  requirement of relevance does not alone demonstrate that

23  there is good cause for requiring their production."  In re:

24  Drexel Burnham Lambert Group, Inc., 123 B.R. 702 at 712,

25  Bankruptcy Southern District of New York, 1992.

1       Courts deny Rule 2004 motions when the "cost and

2   disruption to the examinee attending to the requested

3   examination outweigh the benefits to the examiner."  In re:

4   Express One International, Inc., 217 B.R. 215 at 217,

5   Bankruptcy Eastern District of Texas, 1998.  See also In re:

6   Sunedison, Inc., 562 B.R. at 249.

7       The court note the that requests cannot be so

8   broad as to be more disruptive and costly to the examinee

9   than beneficial to the examiner.

10      Amerra contends that the motion should be denied

11  because the relief sought is unduly burdensome and

12  altogether unnecessary.  See the objection at 5.

13      It asserts that the debtor has produced some 2.6

14  million pages of documents and that the production appears

15  to include all Transmar emails with Amerra, including those

16  with Ms. Obler and emails between Ms. Obler and Peter B.

17  Johnson, one of the debtor's principals.  See the objection

18  at 5.

19      It maintains that it should not have to expend

20  what it says will be hundreds of thousands of dollars and

21  enormous resources and time providing internal emails and

22  emails with parties other than Transmar and Euromar because

23  the Court authorized ABN AMRO to take examinations of the

24  debtor's current and former employees and others, and that

25  discovery, coupled with the debtors' mails and files of ABN

```
 1   AMRO and its lender group, will sufficiently enable ABN AMRO
 2   to make whatever arguments it wants to make about the
 3   debtor's disclosures, reporting, and decision making or
 4   about the debtor's relationship with Amerra.  See the
 5   objection at 5.
 6          ABN AMRO argues that Amerra's focus on its efforts
 7   to obtain deposition testimony from the debtor's former
 8   employees is misplaced since most of the witnesses
 9   subpoenaed by ABN AMRO has refused to testify on the grounds
10   of their First Amendment privilege against self-
11   incrimination.  See the reply at paragraphs 3 and 12.
12          Moreover, it denies that its request for further
13   Rule 2004 discovery is either unduly burdensome or
14   unnecessary.  It asserts that those requests are (1),
15   narrowly tailors; (2), require the electronic search and
16   oral examination of a single Amerra employee; and (3), are
17   not so duly burdensome as to outweigh the benefits to ABN
18   AMRO, the lenders, and other creditors.  I
19          t maintains that the documents produced by the
20   debtor show that Amerra and Ms. Obler's extensive
21   communications concerning the debtors.
22          As a consequence it asserts that Ms. Obler's
23   testimony, emails, and other documents will provide a
24   primary source of information to determine how and why the
25   debtor misrepresented its financial position and what
```

```
 1    happened to the debtor's missing assets.  See the reply at

 2    paragraph 10.

 3              Further it asserts that to minimize burden on

 4    Amerra in responding to the discovery request they have

 5    limited the request to require the search of a single

 6    custodian's electronic communications, that is the

 7    electronic communications (A), between Nancy Obler and any

 8    other Amerra officer, director, or employee, or

 9    representative concerning the debtor, Euromar, any of their

10    affiliates, or related entities; and (B), between Nancy

11    Obler and any non-debtor third party concerning the debtor,

12    Euromar, and any of their affiliates or any related

13    entities.  See the reply at 11.

14              The Court finds that the requested discovery is

15    unduly burdensome.  Not only has ABN AMRO had access to

16    documents produced by the debtor that contained Ms. Obler's

17    emails and other communications between Amerra and the

18    debtor, it is undisputed that throughout 2016 ABN AMRO

19    engaged outside consultants to evaluate Transmar's business,

20    including its financials, the borrowing base inventory, and

21    internal controls.

22              As ABN AMRO has disclosed at hearings before the

23    Court, two of those advisors were Finance Support Services

24    and RPA Advisors, and both entities had access to the

25    debtor's books and records, systems and procedures, and
```

```
 1    employees.  Both produced reports to ABN AMRO regarding,

 2    among other things, the accuracy of the debtor's borrowing

 3    base to be sure the documents and deposition testimony that

 4    ABN AMRO is seeking may shed light on the debtor's

 5    operations and financial affairs.

 6              However, the Court finds that ABN AMRO already has

 7    access to relevant information and that it would be unduly

 8    burdensome to Amerra to provide the documents and deposition

 9    testimony that ABN AMRO is seeking.

10              It is settled that in situations like this where

11    the party seeking Rule 2004 discovery has access to the

12    information it is seeking from other sources courts will

13    deny the request for the discovery.  See In re: Texaco, 79

14    B.R. 551 at 553, Bankruptcy Court Southern District of New

15    York, 1989.  In re: Duratech Industries, Inc., 241 B.R. 283

16    at 289 to 90, Eastern District of New York, 1999.

17              As the party seeking discovery ABN AMRO has the

18    burden of showing good cause for the examination.  See in

19    re: Sunedison, Inc., 562 B.R. 243 at 249, Bankruptcy Court

20    Southern District of New York, 2017.

21              As noted previously by its terms Rule 2004 permits

22    discovery only when it regards the acts, conduct, or

23    property or the liabilities and financial condition of the

24    debtor or to any matter which may affect the administration

25    of the debtor's estate or to the debtor's right to a
```

1    discharge.

2              The underlying purpose of Rule 2004 is to "allow

3    the Court to gain a clear picture of the condition and

4    whereabouts of the bankrupt's estate."  King Corp. versus

5    John Mansville Corp., In re: Johns-Manville Corp., 42 B.R.

6    362 at 364, Southern District of New York, 1984.

7              Thus "a 2004 examination should only be used for

8    the legitimate purpose of obtaining information to the acts,

9    conduct, or property or to the liabilities and financial

10   condition of the debtor."  See In re: Coffee Cupboard, 128

11   B.R. 509 at 514, Bankruptcy Eastern District of New York,

12   1991.

13             Amerra asserts that the motion is nothing more

14   than a transparent attempt by ABN AMRO to obtain a

15   litigation advantage through one-way discovery that should

16   not be countenance under Rule 2004.

17             It contends that ABN AMRO's counsel has advised

18   Amerra's counsel in no uncertain terms that ABN AMRO is

19   looking to file a lawsuit against Amerra.  See the objection

20   at paragraph 6.

21             It maintains that ABN AMRO has singled it out

22   twice for sweeping Rule 2004 discovery requests, and that in

23   the context of these cases ABN AMRO has received from Amerra

24   the discovery that is appropriate under Rule 2004.

25             It maintains that any further discovery as to

1    Amerra should be done in the context of a cause of action

2    against it, if one exists, such that Amerra will have the

3    protections of the Federal Rules of Civil Procedure and the

4    ability to obtain its own reciprocal discovery.  See the

5    objection at 6.

6            ABN AMRO denies that it has determined that it

7    will sue Amerra.  Reply at 16.

8            It contends that investigating the facts,

9    circumstances, and events that resulted in the disappearance

10   of hundreds of millions of dollars in collateral value and

11   other property from the debtor's estate in order to

12   determine whether the lenders, individually, and the

13   debtor's creditors, generally, have viable claims against

14   the parties as a result of the circumstances that resulted

15   in this bankruptcy case.  See the reply at 17.

16           It says that the facts and information that ABN

17   AMRO and the lenders obtained through the Rule 2004 process

18   will inure not only to the benefit of the lenders but also

19   to the benefit of the debtor's estate and its other

20   creditors.  See the reply at paragraph 16.

21           Thus it asserts that the fact that it may discover

22   through this investigation facts supporting a potential

23   claim against Amerra or any other third party does not

24   preclude it from obtaining the requested discovery.  See the

25   reply at 16.

1            Pursuant to the document request ABN AMRO is

2    seeking, (1), all documents, including emails, text

3    messages, and Bloomberg terminal messages to and from Nancy

4    Obler, including communications in which Nancy Obler was

5    copied as a cc, and any employee concerning the debtor

6    and/or any of the affiliates; and (2), all document,

7    including emails, text messages, and Bloomberg terminal

8    messages to and from Nancy Obler, including communications

9    in which Nancy Obler was copied as a cc, and any person

10   concerning the debtor and/or any of the debtor's affiliates

11   expressly excluding any documents sent to or from the debtor

12   and/or any of the affiliates, including as a cc; and (3),

13   any custodian using the email domain TransmarGroup.com.

14           The Court agrees with Amerra that the motion is

15   aimed at gathering information relevant to Amerra's actions

16   and connections with the debtors and its role, if any, in

17   advising the debtor in its dealings with the lenders.

18           ABN AMRO is seeking to confirm not only that

19   Amerra, through Ms. Obler, was aware of the events and

20   causes of action that led to the debtor's failure, but that

21   Amerra played an active role in assisting the debtors in

22   formulating their strategy for dealing with the lenders.  In

23   that way the focus of the requested discovery is on Amerra,

24   not the debtors.

25           It is well settled that Rule 2004 examinations are

Case 1:16-cv-05072-PKC Document 86-6 Filed 08/05/21 Page 228 of 446
16-13625-jlg   Doc 304   Filed 06/19/18   Entered 06/28/17 12:46:51   Main Document
Pg 22 of 32

Page 22

1    not generally permitted once an adversary proceeding has

2    been filed since discovery must be pursuant to the Federal

3    Rules of Civil Procedure.  See, for example, In re: Bennett

4    Funding Group, Inc., B.R. 24 at 28, Bankruptcy Northern

5    District of New York, 1998, and In re: Drexel Burnham

6    Lambert Group, Inc., 128 B.R. at 711.

7           No such litigation is pending, nonetheless it's

8    clear to the Court that ABN AMRO has identified Amerra as a

9    litigation target and is seeking to utilize the liberal

10   discovery available under Rule 2004 to further this ultimate

11   litigation.  That's not permitted.

12          See, for example, In re: J&R Trucking, Inc., 431

13   B.R. 818 at 822 to 823, Bankruptcy for the Northern District

14   of Indiana, 2010, where the court denied a creditor's Rule

15   2004 discovery request to identify third parties with

16   liability as beyond the scope of Rule 2004 and noting that

17   "no matter how artfully one tries to disguise the requested

18   examinations by dressing them up in the robes of bankruptcy

19   administration, their real purpose is to identify another

20   entity movants might be able to collect from and whether

21   those efforts would have any impact on the bankruptcy estate

22   is of no real concern to them."

23          The Court finds that the information ABN AMRO is

24   seeking from Amerra goes beyond "the acts, conduct, or

25   property, or to the liabilities and financial condition of

1    the debtor or to any matter which may affect the

2    administration of the debtor's estate."  For this additional

3    reason ABN AMRO is not entitled to Rule 2004 -- the Rule

4    2004 discovery it is seeking from Amerra.

5              Based on the foregoing the Court's denies the

6    motion and so orders the record.

7              Any questions?  All right.  I think that's

8    everything we had to deal with today; is that right?

9              Thank you very much.

10        (A chorus of thank you)

11        (Whereupon, proceedings concluded at 11:38 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 24

1                              I N D E X

2

3                              RULINGS

4     DESCRIPTION                                        PAGE

5     Application for FRBP 2004 Examination Motion for an

6     Order Pursuant to Rule 2004 of the Federal Rules of

7     Bankruptcy Procedure Authorizing ABN AMRO Capital USA

8     LLC to Issue a Subpoena for the Further Production of

9     Documents from and the Oral Examination of AMERRA

10    Capital Management LLC, by Nancy Obler (Doc #255)      3

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
  1              C E R T I F I C A T I O N

  2

  3       I, Dawn South, certified that the foregoing transcript

  4    is a true and accurate record of the proceedings.

  5
         Dawn South    Digitally signed by Dawn South
                       DN: cn=Dawn South, o=Veritext, ou,
                       email=digital@veritext.com, c=US
  6    _____   Date: 2017.06.13 16:30:25 -04'00'

  7    Dawn South

  8    AAERT Certified Electronic Transcriber CET**D-408

  9

 10    Date:  June 12, 2017

 11

 12

 13

 14

 15

 16

 17

 18

 19

 20

 21

 22    Veritext Legal Solutions

 23    330 Old Country Road

 24    Suite 300

 25    Mineola, NY 11501
```

23:2

**administrative**
6:15

**advance** 8:15

**advantage** 19:15

**adversary** 22:1

**advised** 19:17

**advising** 8:4 21:17

**advisors** 17:23,24

**affairs** 8:16 18:5

**affect** 14:2 18:24
23:1

**affidavit** 2:22

**affiliate** 7:8

**affiliates** 8:21
17:10,12 21:6,10
21:12

**agent** 6:15,15

**agree** 13:20

**agreed** 7:11

**agreeing** 12:9

**agreement** 6:17

**agrees** 21:14

**aimed** 21:15

**allegations** 10:1
11:13

**alleged** 9:17

**allow** 8:18 19:2

**altogether** 15:12

**amended** 6:17,18

**amendment** 16:10

**amerra** 2:5,12,15
2:19,23 3:4 5:2
6:22,23 7:1,6,9,10
7:11,14,15,20,21
7:23 8:6,7,9,14
9:11,11,16,19
10:7,11,16,20,24
11:1,1,6,6,8,11,13
11:15,21,25 12:1
12:2,9,13,16 13:1
13:2,6,7,9,12,16
13:19,20 15:10,15

16:4,16,20 17:4,8
17:17 18:8 19:13
19:19,23 20:1,2,7
20:23 21:14,19,21
21:23 22:8,24
23:4 24:9

**amerra's** 9:17
10:5 13:12,14
16:6 19:18 21:15

**amounts** 10:21

**amro** 2:3,10,17,25
3:3 4:18 6:6,14,14
6:20,25 7:10,11
7:19,23 8:1,11 9:5
9:14,17,18 10:10
10:19,22 11:8,23
12:1,6,20 13:4,13
15:23 16:1,1,6,9
16:18 17:15,18,22
18:1,4,6,9,17
19:14,18,21,23
20:6,17 21:1,18
22:8,23 23:3 24:7

**amro's** 9:24 11:7
11:12,15 12:4
13:14 19:17

**andrew** 4:22 5:23

**appearances** 6:8

**appears** 15:14

**apple** 12:5

**application** 2:1
24:5

**appropriate**
19:24

**april** 11:5

**argues** 10:20 16:6

**argument** 6:10

**arguments** 6:11
16:2

**artfully** 22:17

**asserted** 10:10

**asserts** 8:1,11 9:5
9:23 11:1,25

12:20 13:4 15:13
16:14,22 17:3
19:13 20:21

**assets** 12:18 17:1

**assisting** 21:21

**attanasio** 5:6

**attempt** 12:1
13:11,12 19:14

**attempted** 10:21

**attending** 15:2

**attorney** 4:3,11
4:18 5:10,17

**attorneys** 5:2

**austin** 5:1

**authorize** 13:24

**authorized** 10:24
15:23

**authorizing** 2:3
2:10,17 3:3 6:20
7:19 24:7

**available** 22:10

**avenue** 4:5 5:3

**aware** 21:19

**b**

**b** 1:23 8:21 14:3
14:11 15:16 17:10

**b.r.** 14:16,24 15:4
15:6 18:14,15,19
19:5,11 22:4,6,13

**bait** 10:21 12:6

**balance** 14:19

**bankrupt's** 19:4

**bankruptcy** 1:1
1:14,25 2:3,10,17
3:2 6:19 7:19 9:4
14:3,17,25 15:5
18:14,19 19:11
20:15 22:4,13,18
22:21 24:7

**base** 8:25 17:20
18:3

**based** 12:8 23:5

**basis** 9:20 10:5,18
13:20

**behalf** 2:23

**beneficial** 12:15
15:9

**benefit** 9:7 20:18
20:19

**benefited** 10:11

**benefits** 15:3
16:17

**bennett** 22:3

**beyond** 8:7 10:23
12:2 22:16,24

**bit** 6:11

**bite** 12:4

**bloomberg** 21:3,7

**board** 14:15

**books** 17:25

**borrowing** 8:25
17:20 18:2

**bowling** 1:15

**broad** 15:8

**broadway** 5:11

**brought** 10:22

**building** 5:18

**burden** 17:3
18:18

**burdening** 11:13

**burdensome**
15:11 16:13,17
17:15 18:8

**burnham** 14:24
22:5

**business** 8:15 14:5
17:19

**c**

**c** 2:23 4:1,15 6:1
8:25 25:1,1

**capital** 2:3,5,10
2:12,15,17,19,23
2:25 3:5 6:14,22
24:7,10

careless 11:12
case 1:7 6:5 9:4
  14:10 20:15
cases 7:2 8:3
  19:23
cause 14:23 18:18
  20:1
causes 21:20
cavaliere 5:14
cc 21:5,9,12
certain 6:21 8:21
certified 25:3,8
cet 25:8
chapter 8:3
characterizes
  8:13 11:12
chorus 6:3 23:10
circumstances
  8:22 9:3 20:9,14
citing 10:14
civil 20:3 22:3
claim 20:23
claims 9:2 12:15
  20:13
clear 19:3 22:8
close 9:19
cocoa 11:4
coffee 19:10
collateral 6:15
  8:24 9:25 20:10
collect 22:20
commencement
  8:3
committee 5:10
  9:9
commodity 1:7
  6:4 7:7,8
communications
  16:21 17:6,7,17
  21:4,8
competing 14:19
concern 22:22

concerning 16:21
  17:9,11 21:5,10
concluded 23:11
condition 14:1
  18:23 19:3,10
  22:25
conditioned 11:16
conditions 7:13
conduct 13:25
  18:22 19:9 22:24
conducted 9:9
conferences 7:10
confirm 21:18
connections 21:16
consequence
  16:22
consider 6:11
  13:21
consideration
  14:9
conspiracy 10:16
consultants 17:19
consummating
  14:8
contained 17:16
contemplated
  13:7
contended 9:19
contends 8:5 11:8
  12:13 15:10 19:17
  20:8
context 19:23
  20:1
continuance 14:6
continuation 14:6
continue 8:18
controls 17:21
copied 21:5,9
corneau 4:15
corp 19:4,5,5
cost 15:1
costly 15:8

counsel 8:6 19:17
  19:18
countenance
  19:16
country 25:23
coupled 15:25
court 1:1,14 6:2,4
  6:11,13 7:10 8:12
  11:10 13:9,18,21
  13:23 14:12,13,13
  14:14,19 15:7,23
  17:14,23 18:6,14
  18:19 19:3 21:14
  22:8,14,23
court's 23:5
courts 15:1 18:12
credit 6:17
creditor 13:2
creditor's 22:14
creditors 9:2,8,9
  16:18 20:13,20
cupboard 19:10
current 15:24
custodian 21:13
custodian's 17:6

d

d 5:23 6:1 24:1
  25:8
danzig 4:2
date 11:11,17
  12:24 25:10
dated 6:17 7:3,20
dating 7:11
dawn 3:25 25:3,7
deal 23:8
dealing 21:22
dealings 21:17
debtor 1:10 4:3
  4:11 7:6,14,16
  9:18 10:8 13:2
  14:1,8 15:13
  16:20,25 17:9,11
  17:11,16,18 18:24

19:10 21:5,10,11
  21:17 23:1
debtor's 8:4,15,19
  8:24 9:2,7 10:12
  10:12 14:2 15:17
  15:24 16:3,4,7
  17:1,25 18:2,4,25
  18:25 20:11,13,19
  21:10,20 23:2
debtors 8:2 15:25
  16:21 21:16,21,24
decision 16:3
declaration 2:8
demands 9:24
demonstrate 13:1
  14:22
demonstrating
  11:10
denatale 4:22
denied 10:21
  15:10 22:14
denies 12:6,11
  16:12 20:6 23:5
deny 15:1 18:13
denying 13:20
department 5:16
deposition 7:23
  16:7 18:3,8
description 24:4
desirability 14:6
determine 12:15
  12:17 16:24 20:12
determined 20:6
determining 9:1
director 6:23 17:8
directors 14:15
disappearance
  8:23 20:9
disappeared 10:1
discharge 19:1
disclosed 17:22
disclosure 14:14

**disclosures** 16:3
**discover** 20:21
**discovered** 9:6
  12:8
**discovery** 6:7 7:1
  7:5,9,24 8:1,18
  9:21,24 10:19,23
  11:8,9,14,16,17
  12:1,7,14,22,25
  13:5,6,11,13,16
  14:13 15:25 16:13
  17:4,14 18:11,13
  18:17,22 19:15,22
  19:24,25 20:4,24
  21:23 22:2,10,15
  23:4
**discretion** 14:15
  14:18
**disguise** 22:17
**disruption** 15:2
**disruptive** 15:8
**district** 1:2 14:17
  14:25 15:5 18:14
  18:16,20 19:6,11
  22:5,13
**doc** 2:6,13,20 3:5
  24:10
**document** 3:4
  6:24 7:21 9:12,15
  11:18 21:1,6
**documentation**
  10:7
**documents** 2:4,12
  2:19 6:21 7:11,17
  8:7,14 11:2,11,20
  11:22,23 12:21,24
  14:21 15:14 16:19
  16:23 17:16 18:3
  18:8 21:2,11 24:9
**dollars** 8:23 9:25
  15:20 20:10
**domain** 21:13

**dressing** 22:18
**drexel** 14:24 22:5
**drogin** 5:9
**duly** 16:17
**duplicative** 9:8
**duratech** 18:15

**e**

**e** 1:23,23 4:1,1 6:1
  6:1 24:1 25:1
**early** 9:18
**eastern** 15:5
  18:16 19:11
**ecf** 6:24 7:4,20
  9:12,15
**efforts** 16:6 22:21
**either** 16:13
**electronic** 16:15
  17:6,7 25:8
**email** 21:13
**emails** 9:21 12:9
  15:15,16,21,22
  16:23 17:17 21:2
  21:7
**employee** 16:16
  17:8 21:5
**employees** 15:24
  16:8 18:1
**enable** 16:1
**engaged** 17:19
**enormous** 15:21
**entirety** 11:4
**entities** 17:10,13
  17:24
**entitled** 23:3
**entity** 13:24 22:20
**entry** 6:18 13:9
**esq** 4:8,15,22 5:6
  5:7,14,23
**estate** 8:24 9:7
  10:12 12:16 14:3
  18:25 19:4 20:11
  20:19 22:21 23:2

**euromar** 7:8,8,14
  7:16 9:20 10:6,13
  13:2 15:22 17:9
  17:12
**evaluate** 17:19
**events** 8:22 20:9
  21:19
**evidence** 7:12
  13:4
**ex** 7:2
**exact** 10:1
**exactly** 13:6
**examination** 2:1,5
  2:12,19 3:4 6:22
  8:8,14 12:10
  13:24 14:4,21
  15:3 16:16 18:18
  19:7 24:5,9
**examinations**
  15:23 21:25 22:18
**examinee** 15:2,8
**examiner** 15:3,9
**example** 22:3,12
**excluding** 21:11
**exercising** 14:18
**exist** 12:16
**exists** 20:2
**expend** 15:19
**expense** 10:11
**explains** 12:24
**express** 15:4
**expressly** 12:22
  13:7,10 21:11
**extend** 14:4
**extensive** 16:20
**extent** 10:10
**extracting** 10:7

**f**

**f** 1:23 25:1
**fact** 7:17 20:21
**facts** 7:13 8:22 9:3
  9:6 11:13 20:8,16
  20:22

**failure** 21:20
**february** 6:18
  7:20
**federal** 2:2,9,16
  3:2 5:18 6:19 7:18
  14:3 20:3 22:2
  24:6
**file** 19:19
**filed** 2:22 6:6 22:2
**files** 15:25
**final** 8:16
**finance** 17:23
**financial** 14:1
  16:25 18:5,23
  19:9 22:25
**financials** 17:20
**finds** 17:14 18:6
  22:23
**first** 7:4 10:2,5,9
  10:14 11:10 16:10
**floor** 4:12
**focus** 16:6 21:23
**focused** 13:5
**foregoing** 23:5
  25:3
**former** 15:24 16:7
**formulating** 21:22
**formulation** 14:10
**forward** 10:22
**frbp** 2:1 24:5
**fundamental** 10:4
**funding** 22:4
**funds** 10:8
**furnish** 11:13
**further** 2:4,11,18
  3:1,3 11:7,14
  12:11 13:11,16
  16:12 17:3 19:25
  22:10 24:8

**g**

**g** 2:22 5:7 6:1
**gain** 19:3

[garrity - misplaced]

**garrity** 1:24
**gathering** 21:15
**generally** 9:2
  10:12 20:13 22:1
**give** 6:10
**given** 14:9
**giving** 14:14
**gmbh** 7:8
**goes** 22:24
**good** 6:2,3 14:23
  18:18
**grand** 10:16
**grant** 8:12 14:12
**green** 1:15
**grounds** 16:9
**group** 1:7 6:4 7:7
  14:24 16:1 22:4,6

**h**

**happened** 12:17
  17:1
**headquarters** 4:4
**hearing** 2:1,8,15
  2:22,25 6:5
**hearings** 17:22
**hon** 1:24
**hopewell** 14:15
**hundreds** 8:23
  9:25 15:20 20:10
**hutchinson** 2:22
  2:23 5:7
**hyland** 4:2

**i**

**identified** 22:8
**identify** 22:15,19
**impact** 22:21
**improper** 10:6
  11:25 12:12
**include** 15:15
**including** 8:20
  9:21 11:3 15:15
  17:20 21:2,4,7,8
  21:12

**incrimination**
  16:11
**indiana** 22:14
**indicate** 11:22
**individually** 9:1
  20:12
**industries** 18:15
**information** 9:6
  10:22 11:22 12:8
  12:12,14 14:21
  16:24 18:7,12
  19:8 20:16 21:15
  22:23
**initially** 12:9
**inquiry** 12:21
**insurance** 14:16
**interest** 14:19
**interested** 13:13
  13:15
**internal** 15:21
  17:21
**international**
  14:16 15:4
**inure** 9:7 20:18
**inventory** 17:20
**investigate** 8:19
  8:21
**investigating** 20:8
**investigation** 8:15
  9:5,8 10:14 20:22
**involving** 7:16
**issue** 2:4,11,18 3:3
  6:20 7:19 24:8

**j**

**j&r** 22:12
**james** 1:24
**january** 7:3,12
  9:18
**jlg** 1:7
**john** 2:22,22 5:7
  19:5
**johns** 19:5

**johnson** 15:17
**joseph** 4:8,15
**judge** 1:25
**june** 1:18 25:10
**jureller** 4:10
**justice** 5:16
**justify** 12:4

**k**

**kenneth** 2:8
**king** 19:4
**klestadt** 4:10
**krinsky** 5:9

**l**

**l** 1:24 4:8
**labels** 10:16
**lambert** 14:24
  22:6
**lane** 4:19
**language** 13:19
**lavan** 4:17
**lawsuit** 19:19
**leading** 8:2
**learned** 8:2
**learning** 8:5
**led** 21:20
**lee** 5:6
**leg** 11:3
**legal** 25:22
**legitimate** 19:8
**lender** 16:1
**lenders** 6:16,16
  9:1 10:11 13:13
  16:18 20:12,17,18
  21:17,22
**liabilities** 14:1
  18:23 19:9 22:25
**liability** 22:16
**liberal** 22:9
**light** 13:4 18:4
**limited** 8:13,20
  17:5
**litigation** 19:15
  22:7,9,11

**little** 6:11
**llc** 2:3,6,11,13,15
  2:18,20,23 3:5
  6:14,22 24:8,10
**llcs** 2:25
**llp** 4:2,10,17 5:1
**locate** 9:25
**looking** 19:19

**m**

**maiden** 4:19
**mails** 15:25
**maintains** 8:12,17
  9:16 10:4,18 12:3
  12:7 15:19 16:19
  19:21,25
**making** 16:3
**management** 2:5
  2:13,15,20,23 3:5
  6:22 8:4 24:10
**managing** 6:23
**mandate** 14:12
**mansville** 19:5
**manville** 19:5
**matter** 1:5 6:13
  10:20 14:2,9
  18:24 22:17 23:1
**matters** 7:24 14:4
**means** 9:24
**meet** 14:21
**mention** 11:20
**mere** 13:1
**merits** 13:22
**messages** 21:3,3,7
  21:8
**meticulously** 11:2
**million** 12:17
  15:14
**millions** 8:23 9:25
  20:10
**mineola** 25:25
**minimize** 17:3
**misplaced** 16:8

**misrepresented** 16:25
**missing** 12:18 17:1
**money** 14:7
**months** 8:2
**morning** 6:2,3
**morristown** 4:6
**motion** 2:1,9,16 2:25 3:1 6:6,13 7:3,4,25 8:9,12,16 9:4,9,11,23 10:2,5 10:10,15,19,20 11:19,25 12:4,13 13:22 15:10 19:13 21:14 23:6 24:5
**motions** 15:1
**movants** 22:20

**n**

**n** 4:1 6:1 24:1 25:1
**nancy** 2:6,13,20 3:5 6:23 17:7,10 21:3,4,8,9 24:10
**narrowly** 13:19 16:15
**necessary** 12:15
**necessity** 14:20
**need** 6:8 8:11
**new** 1:2,16,16 4:13,20 5:4,12,21 9:16,24 10:22 12:3 14:17,25 18:14,16,20 19:6 19:11 22:5
**newly** 12:8
**nj** 4:6
**non** 17:11
**northern** 22:4,13
**note** 15:7
**noted** 18:21
**notes** 10:9 11:19 13:9

**noting** 22:16
**number** 6:5
**ny** 4:13,20 5:4,12 5:21 25:25

**o**

**o** 1:23 6:1 25:1
**oath** 8:8
**object** 13:15
**objected** 7:9,23 12:9
**objection** 2:15 9:12,12,14,22 10:2,8,14,17,24 11:14,24 12:5 15:12,17 16:5 19:19 20:5
**obler** 2:6,13,20 3:5 6:23 8:3,8 15:16,16 17:7,11 21:4,4,8,9,19 24:10
**obler's** 8:14 12:20 16:20,22 17:16
**obtain** 11:9 16:7 19:14 20:4
**obtained** 8:1 20:17
**obtaining** 7:23 19:8 20:24
**offered** 14:9
**office** 5:18
**officer** 17:8
**old** 25:23
**once** 22:1
**operation** 14:5
**operations** 8:20 18:5
**opposes** 9:11
**opposition** 11:24
**oral** 2:5,12,19 3:4 6:21 8:14 12:10 16:16 24:9

**order** 2:2,9,16 3:1 6:18 7:18,22 8:7 8:15 10:24 11:2,7 11:21 12:2,13 13:7,10,17 14:14 20:11 24:6
**ordered** 7:24
**orders** 23:6
**organized** 11:3
**outset** 7:2
**outside** 17:19
**outweigh** 15:3 16:17

**p**

**p** 4:1,1 6:1
**page** 13:17 24:4
**pages** 15:14
**paragraph** 8:10 9:22 10:15,25 11:14,24 12:5,10 17:2 19:20 20:20
**paragraphs** 12:19 13:8 16:11
**part** 7:15 13:23
**parte** 7:2
**parties** 8:21 9:3 12:25 13:10,14,15 14:20 15:22 20:14 22:15
**partner** 13:1
**party** 7:15 12:16 17:11 18:11,17 20:23
**pasquale** 2:8
**pending** 22:7
**permits** 18:21
**permitted** 11:9 12:22 22:1,11
**perretti** 4:2
**person** 21:9
**peter** 15:16
**picture** 19:3

**plan** 14:8,10
**played** 8:3 21:21
**plaza** 4:4
**portrays** 9:24 13:2
**position** 16:25
**possesses** 7:17
**potential** 20:22
**precisely** 12:8
**preclude** 20:24
**prejudice** 13:10 13:14
**preliminary** 10:20
**prepared** 6:12
**present** 7:12
**preserved** 11:7
**previously** 18:21
**primary** 16:24
**principals** 15:17
**privilege** 16:10
**procedure** 2:3,10 2:17 3:2 6:20 7:19 14:3 20:3 22:3 24:7
**procedures** 17:25
**proceeding** 22:1
**proceedings** 23:11 25:4
**process** 20:17
**processes** 8:19
**produce** 7:11 8:6 8:8
**produced** 11:4,11 11:20 12:24 15:13 16:19 17:16 18:1
**producing** 12:9
**production** 2:4,11 2:18 3:4 6:21 14:23 15:14 24:8
**property** 8:24 13:25 14:7 18:23 19:9 20:11 22:25

**protections** 20:3
**provide** 16:23
  18:8
**provided** 7:14
  11:2,17
**provides** 13:23
  14:13
**providing** 15:21
**purpose** 19:2,8
  22:19
**purposes** 14:8
**pursuant** 2:2,9,16
  3:1 6:19 7:18 21:1
  22:2 24:6

**q**

**question** 11:21
**questions** 23:7

**r**

**r** 1:23 4:1 6:1 25:1
**raise** 11:21
**ranging** 9:21
**read** 13:18
**reads** 13:19
**real** 22:19,22
**really** 12:17
**reason** 23:3
**received** 11:23
  19:23
**reciprocal** 20:4
**record** 23:6 25:4
**recordkeeping**
  8:19
**records** 17:25
**refer** 6:14,16,23
  7:3,21
**referred** 9:12
**reflected** 8:25
**refused** 8:9 16:9
**regard** 11:19
**regarding** 18:1
**regards** 18:22
**related** 7:16 17:10
  17:12

**relating** 13:24,25
  14:5
**relationship** 9:17
  9:20 10:13 16:4
**relevance** 14:20
  14:22
**relevant** 12:21
  13:23 14:10 18:7
  21:15
**relief** 13:21 15:11
**renewed** 13:5
**reply** 2:25,25 9:14
  12:10,18,23 13:3
  13:8 16:11 17:1
  17:13 20:7,15,20
  20:25
**reported** 12:18
**reporting** 16:3
**reports** 8:25 18:1
**representative**
  17:9
**request** 8:9 11:18
  12:11,25 13:5
  16:12 17:4,5
  18:13 21:1 22:15
**requested** 8:6,17
  8:18 13:21 15:2
  17:14 20:24 21:23
  22:17
**requests** 15:7
  16:14 19:22
**require** 16:15
  17:5
**requirement**
  14:22
**requires** 8:13
**requiring** 14:23
**reservation** 13:18
**resources** 15:21
**respect** 7:5
**responding** 17:4
**response** 11:1,21
  12:25

**responsive** 11:18
**restated** 6:17
**result** 9:3,6 10:12
  20:14
**resulted** 8:22 9:4
  20:9,14
**reviewed** 11:23
**right** 6:2 7:6 11:7
  11:15 13:11,12,15
  18:25 23:7,8
**rights** 13:18
**riker** 4:2
**ripe** 10:13
**rivera** 5:23
**road** 25:23
**robes** 22:18
**rocco** 5:14
**role** 8:4,5 21:16
  21:21
**rpa** 17:24
**rule** 2:2,9,16 3:2
  6:6,12,19 7:1,4,18
  7:21 8:7 10:2,5,9
  10:15,24 11:1,6,7
  11:16,21 12:2,7
  12:13,14,22,25
  13:5,7,9,11,12,16
  13:16,23 14:3,11
  14:12 15:1 16:13
  18:11,21 19:2,16
  19:22,24 20:17
  21:25 22:10,14,16
  23:3,3 24:6
**rules** 2:2,10,17
  3:2 6:19 7:19 20:3
  22:3 24:6
**rulings** 24:3

**s**

**s** 4:1 5:6 6:1
**says** 11:15 15:20
  20:16
**scherer** 4:2

**schwartz** 4:8
**scope** 8:7 10:23
  12:2 22:16
**search** 16:15 17:5
**second** 6:25 12:4
**secured** 6:16
**see** 6:24 7:18 8:9
  9:4,9,11,15,21
  10:2,8,24 11:14
  11:24 12:5,10,18
  12:23 13:3,7,16
  14:3,15 15:5,12
  15:17 16:4,11
  17:1,13 18:13,18
  19:10,19 20:4,15
  20:20,24 22:3,16
**seek** 11:7,9,15
  13:11,12
**seeking** 6:6 10:19
  10:23 12:7,14
  18:4,9,11,12,17
  21:2,18 22:9,24
  23:4
**self** 16:10
**sent** 21:11
**separate** 11:3
**services** 17:23
**settled** 14:18
  18:10 21:25
**seventh** 5:3
**shed** 18:4
**show** 10:7 16:20
**showing** 11:17
  18:18
**sidley** 5:1
**significant** 14:14
**single** 16:16 17:5
**singled** 19:21
**situations** 18:10
**solutions** 25:22
**sought** 6:25 7:4
  9:21 14:21 15:11

**source** 14:6 16:24
**sources** 18:12
**south** 3:25 25:3,7
**southard** 4:10
**southern** 1:2
  14:17,25 18:14,20
  19:6
**special** 9:17
**specific** 11:13
**speedwell** 4:5
**states** 1:1,14
**stevens** 4:10
**strategy** 21:22
**street** 4:12 5:19
**stroock** 4:17,17
**submitted** 9:14
**subpoena** 2:4,11
  2:18 3:3 6:20 24:8
**subpoenaed** 16:9
**subpoenas** 7:20
**suddenly** 12:18
**sue** 20:7
**sufficient** 7:12
**sufficiently** 16:1
**suite** 5:20 25:24
**sunedison** 15:6
  18:19
**support** 2:8 3:1
  7:25 10:2,9 11:12
  17:23
**supporting** 20:22
**sure** 18:3
**sweeping** 19:22
**switch** 10:21 12:7
**systems** 17:25

**t**

**t** 16:19 25:1,1
**tailors** 16:15
**take** 6:8 15:23
**target** 22:9
**tarter** 5:9
**team** 8:4

**terminal** 21:3,7
**terms** 7:13 12:12
  18:21 19:18
**testify** 16:9
**testimony** 12:20
  16:7,23 18:3,9
**texaco** 18:13
**texas** 15:5
**text** 21:2,7
**thank** 6:9 23:9,10
**theory** 10:17
**thereof** 9:6
**thereunder** 14:14
**things** 7:5,25 18:2
**think** 23:7
**third** 8:21 12:16
  12:25 17:11 20:23
  22:15
**thousands** 15:20
**time** 6:11,25
  15:21
**today** 23:8
**trading** 13:1
**transaction** 7:15
  7:16 11:3,11
**transactions** 7:6
  7:13 8:20 10:6,13
  11:4
**transcribed** 3:25
**transcriber** 25:8
**transcript** 25:3
**transmar** 1:7 6:4
  7:7,7 9:20 10:6
  15:15,22
**transmar's** 7:7
  17:19
**transmargroup.c....**
  21:13
**transparent** 19:14
**tries** 22:17
**trucking** 22:12
**true** 25:4

**trustee** 5:17
**twice** 19:22
**two** 17:23
**type** 13:6

**u**

**u.s.** 1:25 5:16,17
  5:18
**ultimate** 22:10
**uncertain** 19:18
**underlying** 19:2
**undisputed** 17:18
**unduly** 15:11
  16:13 17:15 18:7
**unique** 9:19
**uniquely** 9:19
**united** 1:1,14
**unnecessary**
  15:12 16:14
**unquestionably**
  12:21
**urgent** 8:11
**usa** 2:3,11,18,25
  6:14 24:7
**utilize** 22:9

**v**

**value** 8:24 20:10
**varick** 5:19
**velez** 5:23
**veritext** 25:22
**versus** 19:4
**viable** 9:2 20:13
**voluntarily** 8:6,8

**w**

**wants** 16:2
**way** 19:15 21:23
**weighing** 14:20
**went** 12:18
**west** 4:12
**whereabouts** 19:4
**wide** 9:21
**winters** 4:10

**witnesses** 16:8

**x**

**x** 1:3,12 24:1

**y**

**york** 1:2,16,16
  4:13,20 5:4,12,21
  14:17,25 18:15,16
  18:20 19:6,11
  22:5

1   Ryan J. Works (NSBN 9224)
    Jimmy F. Dahu (NSBN 17061)
2   McDONALD CARANO LLP
    2300 West Sahara Avenue, Suite 1200
3   Las Vegas, Nevada 89102
    Telephone: (702) 873-4100
4   rworks@mcdonaldcarano.com
    jdahu@mcdonaldcarano.com
5
    *Attorneys for Non-Party Citadel Securities LLC*
6
    Michael R. Hogue, Esq. (NSBN 12400)
7   10845 Griffith Peak Drive, Suite 600
    GREENBERG TRAURIG, LLP
8   Las Vegas, NV 89135
    Telephone: (702) 938-6909
9   Email: hoguem@gtlaw.com

10  *Attorneys for Non-Party Anson Funds Management LP*

11  Jarrod L. Rickard, Esq. (NSBN 10203)
    SEMENZA RICKARD LAW
12  10161 Park Run Dr., Ste. 150
    Las Vegas, Nevada 89145
13  Telephone: (702) 835-6803
    Email: jlr@semenzarickard.com
14
    *Attorneys for Non-Party Virtu Financial, LLC*
15
                  **UNITED STATES BANKRUPTCY COURT**
16
                       **DISTRICT OF NEVADA**
17

| 18 | In re | Case No.: 24-50792-hlb |
| 19 | META MATERIALS, INC., | Chapter 7 |
| 20 | Debtor. | **DECLARATION OF PETER H. FOUNTAIN REGARDING MEET AND CONFER EFFORTS PURSUANT TO LOCAL RULE 7037(A) OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA** |
| 21 | | |
| 22 | | |
| 23 | | **Hearing Date: TBD** |
| 24 | | **Hearing Time: TBD** |
| 25 | | |

26      I, Peter H. Fountain, declare as follows:

27      1.      I am an attorney at the law firm of Quinn Emanuel Urquhart & Sullivan, LLP and am

28  a member in good standing of the State Bar of New York.  I am counsel for Non-Party Citadel

                                    -1-

Securities LLC ("Citadel Securities") in this matter.

2. My application for *pro hac vice* admission before this Court is forthcoming.

3. I have personal knowledge of the facts set forth below and, if called as a witness, could and would competently testify as to those facts.

4. I submit this declaration concerning Citadel Securities' meet and confer efforts under Local Rule 7037(a) of the United States Bankruptcy Court for the District of Nevada ("Rule 7037") undertaken prior to filing of Non-Parties' Citadel Securities, Anson Funds Management LP, and Virtu Financial, LLC's Motion to Quash and/or for a Protective Order ("Motion").

5. On April 29, 2025, I contacted counsel for Trustee Christina Lovato (the "Trustee") regarding two subpoenas received by Citadel Securities. I explained that Citadel Securities was not properly served with the subpoenas, and proposed a response date the subpoenas. A true and correct copy of this correspondence is attached as Exhibit 8 to the Motion.

6. On May 5, 2025, counsel for the Trustee proposed a call to discuss Citadel Securities' concerns and an extension of the response date. *Id.* I then provided my availability for a call. *Id.*

7. On May 15, 2025, I met and conferred with the Trustee's counsel regarding two subpoenas received by Citadel Securities. True and correct copies of the document requests in these subpoenas are attached as Exhibits 1 & 2 to the Motion. On May 16, 2025, I wrote to the Trustee's counsel to memorialize the meet and confer discussion. A true and correct copy of my email memorializing that discussion is attached as Exhibit 8 to the Motion.

8. On May 22, 2025, in response to my email memorializing the discussion of our meet and confer, the Trustee's counsel declined again to answer questions about the subpoenas, stating that the Trustee "has served many subpoenas on many parties involved in trading Meta securities" and that "every party will have different data and documents." *Id.* The Trustee's counsel also refused to provide information concerning the relevance of the requested information on the grounds doing so would "intrude[] on attorney-client privilege and our work product." *Id.*

9. On May 30, 2025, on behalf of Citadel Securities, I agreed to accept service of the subpoenas by email and on June 13, 2025, Citadel Securities timely served its Responses and Objections ("R&Os") to the subpoenas. *Id.* A true and correct copy of Citadel Securities' R&Os to

1   the subpoena is attached as Exhibit 7 to the Motion.

2      10.    On July 17, 2025, Trustee's counsel acknowledged receipt of Citadel Securities'

3   R&Os and asked for a call pursuant to Rule 7037 to satisfy its meet and confer obligations "before

4   the Trustee moves to compel in the bankruptcy court."  Ex. 8 to the Motion.

5      11.    On July 22, 2025, I responded by emailing, reiterating that Citadel Securities was open

6   to conferring about these issues and proposed a meet and confer on July 25, 2025 to determine

7   whether there was a path forward that would address Citadel Securities' concerns.  *Id.*

8      12.    On July 24, 2025, the Trustee's counsel replied, explaining they were not available for

9   a meet and confer on the proposed date and that they intended to provide "written responses to the

10  points made in [Citadel Securities'] Responses and Objections."  *Id.*  The Trustee's counsel reiterated

11  their intention to "promptly move to compel" should an agreement not be reached.  *Id.*

12     13.    On July 30, 2025, I followed up with the Trustee to schedule a meet and confer and to

13  inquire after the written responses the Trustee intended to send.

14     14.    On July 31, 2025, in advance of the upcoming meet and confer, the Trustee's counsel

15  sent an email to me in which it disclosed that it was investigating manipulation of the Debtor's stock,

16  which, they claimed "may be due in part to spoofing and shorting by third parties such as Citadel

17  [Securities], which is what the Trustee is investigating."  *Id.*  The Trustee's counsel then asserted that

18  Rule 2004 is often used for "pre-litigation discovery" in these cases.  *Id.*

19     15.    On August 1, 2025, I met and conferred with the Trustee's counsel in an attempt to

20  resolve our disputes.

21     16.    On August 5, 2025, I send an email memorializing the meet and confer and informed

22  the Trustee's counsel by email that Citadel Securities continued to have concerns regarding the

23  subpoenas, confirming the parties had reached an impasse.

24     17.    As set forth above and in the Exhibits referenced herein, Non-Party Citadel Securities

25  has made a good-faith attempt to meet and confer with the Trustee to resolve its objections to the

26  subpoenas, but was unsuccessful in resolving the parties' dispute before seeking court intervention.

27     I declare under penalty of perjury under the laws of the State of New York that the

28  foregoing is true and correct to the best of my knowledge.

Executed on this 5th day of August, 2025, in New York, New York.

/s/ *Peter H. Fountain*
Peter H. Fountain
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
peterfountain@quinnemanuel.com

*Attorney for Non-Party Citadel Securities LLC*

1
2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

3
4
5
6
7
8
9
10
11

In re

META MATERIALS, INC.,

Debtor.

Case No.: 24-50792-hlb
(Chapter 7)

**DECLARATION OF BARRY S. GOLD**
**REGARDING MEET AND CONFER EFFORTS**
**PURSUANT TO LOCAL RULE 7037(A) OF**
**THE UNITED STATES BANKRUPTCY**
**COURT FOR THE DISTRICT OF NEVADA**

12
      I, Barry S. Gold, declare as follows:

13
      1.    I am an attorney at the law firm of Davis Wright Tremaine LLP and am a member in

14
good standing of the State Bar of New York. My firm is counsel for Non-Party Virtu Financial,

15
LLC ("Virtu").

16
      2.    I have personal knowledge of the facts set forth below and, if called as a witness,

17
could and would competently testify as to those facts.

18
      3.    I submit this declaration to verify the parties' meet and confer efforts under Local

19
Rule 7037(a) of the United States Bankruptcy Court for the District of Nevada ("Rule 7037") prior

20
to filing of Non-Parties' Citadel Securities, Anson Funds Management LP, and Virtu Financial,

21
LLC's Motion to Quash and/or for a Protective Order.

22
      4.    On or about March 26, 2025, Virtu's registered agent received two subpoenas from

23
Trustee Christina Lovato (the "Trustee") – a Subpoena for Rule 2004 Examination and a Subpoena

24
to Produce Documents. The Subpoenas directed Virtu to produce documents relating to Citadel

25
Securities LLC ("Citadel"), *not* documents relating to Virtu. On April 29, 2025, Virtu served written

26
responses and objections to the Subpoenas including an objection based on the fact that the requests

27
sought Citadel documents, not Virtu documents. Virtu indicated its willingness to meet and confer

28
with the Trustee's counsel. A true and correct copy of the responses and objections is attached as

1 | Exhibit A.

2 |      5.      On May 5, 2025, the Trustee's counsel, David Burnett, emailed me asking to
3 | schedule a call to discuss Virtu's responses and objections. A true and correct copy of the email is
4 | attached as Exhibit B. On May 8, 2025, I responded via email offering certain dates and times to
5 | meet and confer. Mr. Burnett responded via email on May 9, 2025. The email (i) set forth the
6 | dates/times he would be available to meet and confer, (ii) asked his co-counsel to respond with their
7 | availability, (iii) attached a draft protective order, and (iv) asked for Virtu's comments to the draft
8 | protective order. As Mr. Burnett's co-counsel did not respond with their availability, we did not
9 | meet and confer on any of the dates and times I proposed. Mr. Burnett then followed up with an
10 | email on May 22, 2025 seeking to restart the process of scheduling a meet and confer. A true and
11 | correct copy of this email chain is attached as Exhibit C.

12 |      6.      The parties met and conferred on May 30, 2025. During that conference, the
13 | Trustee's counsel stated that the Trustee would be serving a "replacement" list of document requests
14 | for the two Subpoenas. On June 2, 2025, Mr. Burnett sent an email attaching the revised document
15 | requests, along with the two previously served Subpoenas. A true and correct copy of the email is
16 | attached as Exhibit D. On June 6, 2025, I replied to Mr. Burnett's email, stating that we would
17 | accept service of the new subpoena "with the understanding that the new subpoena replaces the
18 | initially-served subpoena and starts anew the time limits for responding to a subpoena set forth in
19 | FRCP 45." I also explained why the proposed protective order he sent was not workable and asked
20 | him to "make the necessary revisions and resend for our review." Mr. Burnett responded via email
21 | on June 10, 2025 questioning why the Trustee's "replacement" list of document requests should
22 | require service of a new subpoena, whether Virtu intended to serve new responses and objections
23 | and, if so, why Virtu should require another 14 day period to respond. Mr. Burnett also attached to
24 | his email a revised draft protective order. I responded by email the following day, June 11, 2025,
25 | reiterating Virtu's position that it understood the Trustee would be serving a new subpoena that
26 | would start the response time anew and it was on that basis that we had agreed to accept service.
27 | Mr. Burnett responded on June 12, 2025 attaching new Subpoenas with new response dates and
28 | agreeing to a June 26, 2025 response date. I responded via email on June 13, 2025 confirming the

1  parties' agreement. A true and correct copy of this email chain is attached as Exhibit E.

2        7.     On June 26, 2025, Virtu served its responses and objections to the two new

3  Subpoenas and invited Mr. Burnett to call to discuss the responses and objections. A true and correct

4  copy of the responses and objections is attached as Exhibit F. Mr. Burnett responded via email more

5  than a week later on July 3, 2025 seeking clarification regarding Virtu's responses and objections.

6  I responded by email on July 10, 2025 proposing that we schedule a meet and confer. Mr. Burnett

7  responded via email a week later on July 17, 2025 seeking further clarification and proposing

8  dates/times for a meet and confer. On July 21, 2025, I emailed Mr. Burnett to schedule the meet

9  and confer. Attached to my email was the draft protective order he had sent with our comments on

10  the draft. On July 22, 2025, Mr. Burnett sent an email scheduling the meet and confer for July 25,

11  2025. A true and correct copy of this email chain is attached as Exhibit G.

12        8.     On July 25, 2025, the parties met and conferred regarding the new Subpoenas and

13  Virtu's responses and objections. Among other things, I asked if the Trustee would limit her

14  requests – either the nature of the documents sought or the date range – so as to make responding

15  less burdensome. The Trustee's counsel responded they could not limit the requests.

16        9.     I also asked why it was appropriate for the Trustee to proceed under Bankruptcy Rule

17  2004. The Trustee's counsel responded by quoting Rule 2004 and stating that the alleged stock

18  manipulation affected the financial condition of the debtor as it caused the debtor to go into

19  bankruptcy. I said that even if that was true, I did not understand those circumstances to satisfy the

20  "financial condition of the debtor" requirement of Rule 2004. I also asked why the use of Rule 2004

21  was appropriate as it appeared the Trustee had already decided to sue Virtu – inasmuch as the estate

22  had already obtained $11 million in litigation funding and conducted a substantial investigation in

23  which supposedly identified trading of 147 million shares affected by spoofing. The Trustee's

24  counsel responded that the Trustee had not made any such decision and referenced two different

25  cases allegedly supporting the Trustee's use of Rule 2004. The Trustee's counsel said they would

26  send me those decisions right away. I then asked why proceeding under Rule 45 of the Federal

27  Rules of Civil Procedure (the document Subpoena) was appropriate and they demurred, saying they

28  would leave that question for bankruptcy counsel to answer.

10.     I then asked why they believed they needed 4 ½ years of trading records if they had already identified particular orders they believe to be baiting orders.  They responded that this is what their experts stated they need, that they have only been able to search certain publicly-available data and therefore cannot possibly know if they have captured all of the allegedly suspect trades, and that the date range of their requests should not matter to Virtu as all it should have to do to produce the requested documents is "push a few buttons" (which is demonstrably false).

11.     In short, the parties were not able to resolve the issues during the July 25, 2025 meet and confer.  However, I said I looked forward to receiving the decisions the Trustee's counsel said they would send on the Rule 2004 issues.  On July 29, 2025, Mr. Burnett sent an email that, among other things, incorrectly stated that Virtu has not "meaningfully engage[d] with the requests."  The history described above shows that to be patently untrue.  The email further purports to explain the legal basis for the Trustee proceeding under Rule 2004 but, in fact, it offers little more than general statements regarding the Rule.  Attached to the email is a motion in an entirely different bankruptcy case seeking an order under Rule 2004 authorizing document discovery and the order granting the motion.  This is apparently one of the two decisions the Trustee's counsel referenced in the July 25, 2025 meet and confer.  (Although the Trustee's counsel mentioned two different decisions, only one was attached to the email.)  In addition to being unopposed, the facts underlying the motion in that case are wholly inapposite to the facts here – apples and oranges.  In short, the decision offers zero support for the Trustee's assertion that Rule 2004 can be used here.  A true and correct copy of the July 29, 2025 email is attached as Exhibit H.

12.     On July 30, 2025, my colleague, Michael Rella, emailed Mr. Burnett informing him that we would review the attachments he sent with his July 29, 2025 email (regarding their position on the applicability of Rule 2004) and respond to him by early the week of August 4, 2025.  Mr. Rella also responded to the (false) allegations in Mr. Burnett's email.  Later that day, Mr. Burnett sent an email responding to Mr. Rella's email.  A true and correct copy of this email chain is attached as Exhibit I.

13.     Based on the foregoing, Non-Party Virtu has made a good-faith attempt to meet and confer with the Trustee to resolve its objections to the subpoenas.

1    I declare under penalty of perjury under the laws of the State of New York that the

2    foregoing is true and correct to the best of my knowledge.

3        Executed on this 31st day of July, 2025, in New York, New York.

4

5                                                    _____

6                                                         BARRY S. GOLD

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-5-

# Exhibit A



**Davis Wright Tremaine** LLP

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Barry S. Gold**
tel: (212) 880-3978
fax: (212) 880-3998

barrygold@dwt.com

April 29, 2025

**Via Email**

Clayton P. Brust, Esq.
Robison, Sharp, Sullivan & Brust
71 Washington Street
Reno, Nevada 89503
Email: cbrust@rssblaw.com

> **Re:** ***In re Meta Materials Inc., Debtor***
> **Bankr. Ct. D. Nev. - Case No. 24-50792-hlb**

Dear Mr. Brust:

We represent Virtu Financial, LLC ("Virtu") in connection with the two Subpoenas – (1) to Produce Documents and (2) for Rule 2004 Examination – you issued as counsel to Trustee Christina Lovato in the above-referenced bankruptcy proceeding. This letter constitutes Virtu's written objections and responses to the Subpoena to Produce Documents (the "Subpoena") pursuant to the Federal Rules of Bankruptcy Procedure. Per your March 18, 2025 letter, it is Virtu's preference that we meet and confer regarding the Subpoena with the expectation that the outcome will be that there will be no need for a Rule 2004 Examination. In the meantime, Virtu objects and reserves all its rights with respect to the Subpoena for Rule 2004 Examination.

Virtu's response below is with respect to the Subpoena.

## **RESERVATION OF RIGHTS**

1. As a non-party, Virtu may not be aware of all appropriate and necessary objections. Virtu expressly reserves the right to amend, expand, or delete any part of the objections stated herein at any time. Virtu reserves the right to object to the admission in evidence of any of the information or documents provided in response to the Subpoena on any ground including, but not limited to, the ground that any such information or document is irrelevant to the issues in this bankruptcy proceeding (the "Proceeding"). Virtu reserves its right to rely on a fact, document, or other evidence that may develop or which may come to its attention at a later time.

2. Virtu reserves the right to object to the use (for any purpose) of these objections or any information or document that Virtu produces or provides pursuant to the Subpoena.

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.
4910-6350-4700v.1 0120140-000042

Clayton P. Brust, Esq.
April 29, 2025
Page 2

Virtu reserves the right to interpose any such objection at any time or as required by the Federal
Rules of Bankruptcy Procedure, any applicable Local Rule, any applicable court rule, as well as
other applicable statutory provisions, rules, caselaw, and court orders (the "Applicable Rules").

      3.     Virtu reserves the right not to produce documents to the extent that the Requests,
including the Definitions and Instructions contained therein, (a) are overly broad, unduly
burdensome, and/or call for documents or information that is obtainable from some other source
that is more convenient, less burdensome, or less expensive; (b) are vague, ambiguous,
duplicative, cumulative, do not identify with reasonable particularity the information sought, or are
otherwise incomprehensible; (c) call for production of documents or information that are neither
relevant nor reasonably calculated to lead to the discovery of admissible evidence; (d) seek to
impose obligations on Virtu beyond, or inconsistent with, those required by the Applicable Rules;
(e) purport to seek documents or information not in Virtu's possession, custody, or control; (f)
impose an unwarranted and undue burden on Virtu, a non-party in this Proceeding, or (g) call for
the production of publicly available documents or information, or documents or information to
which the Trustee has equal or better access, and thus for which the burden on Virtu is equal to or
greater than that of the Trustee in obtaining the requested documents and/or information.

      4.     To the extent Virtu is required to produce any documents in response to the
Subpoena, it will not do so unless and until an appropriate Stipulation and Order governing the
production of possible Confidential and Highly Confidential Information is entered into by the
parties and So Ordered by the Court.

      5.     Virtu does not admit the truth of any purported fact contained in the Subpoena,
and no response by Virtu shall be deemed an admission of any such fact or waiver of any right
to contest any such fact at an appropriate time.

      6.     Any information produced by Virtu pursuant to the Subpoena is produced
without conceding the information's relevance or its admissibility, authenticity, or probative
value.

      7.     Virtu reserves the right to obtain reimbursement for any cost or expense incurred
in connection with the Subpoena, though reimbursement of cost and expense alone does not
diminish the burden imposed by the Subpoena.

      8.     Virtu has not completed its evaluation of the Subpoena, and these objections
and responses are based only on information currently known by Virtu. Virtu reserves the
right to supplement or otherwise amend any response or objection based on the results of its
continuing evaluation.

## OBJECTIONS

      Virtu makes the following General Objections to the Requests and incorporates them into
its responses to each and every Request, whether or not specifically stated in the individual
response. An assertion of the same, similar, or additional objections in response to a specific

Clayton P. Brust, Esq.
April 29, 2025
Page 3

Request does not waive any of these General Objections as to that or any Request. Virtu's failure to object to a specific Request on any particular ground shall not be construed as a waiver of its right to object on any ground.

      1.     Virtu objects to the Subpoena's Definitions, Instructions and Requests to the extent they seek to impose obligations on Virtu in excess of what is required under the Applicable Rules. Virtu's responses to the Requests are on behalf of Virtu only and will be limited to documents or information currently available to Virtu. To the extent Virtu is required to produce any documents, it will not search for, collect, or produce documents in the possession of Virtu's attorneys or other third parties, including parents, affiliates and subsidiaries.

      2.     Virtu objects to any Request seeking the production of "all" messages (Request Nos. 1-3), "all" communications (Request No. 4) or "all" records of position (Request No. 5) on the ground that it is overly broad and unduly burdensome, particularly in the context of electronically stored information. Virtu cannot ensure that it has located every message, communication, or record of position responsive to a particular Request. Subject to the General Objections and any qualifications below, with respect to any Request seeking "all" messages, communications, and/or records of position and to the extent Virtu is required to produce responsive documents, Virtu will produce the responsive, non-privileged documents within its possession, custody, and control that can be located after a reasonable search conducted in good faith. Specifically, if required to produce responsive documents, Virtu will conduct a reasonable and good faith search for documents in the files of key custodians that it has identified as the most likely to have information responsive to the Subpoena and, with respect to electronic information, reserves the right to and will apply date restrictions and search terms before reviewing documents for responsiveness.

      3.     Each of the five Requests seeks production of documents relating to Citadel's involvement in trading of shares of Meta and/or MMTLP. Request No. 1 seeks production of documents "relating to the routing of orders of any type for shares Meta and/or MMTLP . . . received from client broker-dealer of Citadel and sent to client broker-dealers of Citadel." Request No. 2 seeks production of documents "relating to the routing of orders of any type for shares Meta and/or MMTLP . . . routed to an exchange or off-exchange trading venue on behalf of a client broker-dealer of Citadel and received from an exchange or off-exchange trading venue on behalf of a client broker-dealer of Citadel." Request No. 3 seeks production of documents "relating to the routing of orders of any type for shares Meta and/or MMTLP . . . routed to an exchange or off-exchange trading venue on behalf of Citadel and received from an exchange or off-exchange trading venue on behalf of Citadel." Request No. 4 seeks production of documents "related to locating, securing, borrowing, and delivering shares of Meta and/or MMTLP, including records of instances where Citadel failed to deliver (FTD) shares of Meta and/or MMTLP and records of how Citadel rectified the outstanding FTDs." Request No. 5 seeks production of documents "representing Citadel's position in Meta and/or MMTLP, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to naked short sales), produced at the frequency such data was recorded)." Virtu objects to requests for documents regarding orders and trading related to another entity – Citadel – and states that

Clayton P. Brust, Esq.
April 29, 2025
Page 4

the Trustee should request such documents and information from Citadel, as Citadel's documents and trading records are not within Virtu's possession, custody, or control.

      4.     Virtu objects to the Requests to the extent they seek trading-related information regarding the purchasers and sellers of Meta and/or MMTLP. That information can be obtained directly from the broker-dealers who interacted directly with the purchasers and sellers. Virtu should not be burdened searching for documents and information that the Trustee can obtain more easily from the broker-dealers.

      5.     Virtu objects to the Requests to the extent they seek discovery of information that is protected from disclosure by the attorney-client privilege, the work-product doctrine, and/or any other applicable privileges, immunities, or exceptions. To the extent Virtu is required to produce any documents, it will only produce non-privileged documents. Nothing contained in these responses – including, but not limited to, any inadvertent production of documents or materials – is intended as, or shall in any way be deemed, a waiver of any attorney-client privilege, work-product doctrine, and/or any other applicable privileges, immunities, or exceptions.

      6.     Virtu objects to the Requests to the extent they call for the production of documents outside of Virtu's possession, custody, or control and, therefore, are overly broad and unduly burdensome.

      7.     Virtu objects to the Requests to the extent they purport to require disclosure by Virtu of irrelevant and/or private information.

      8.     Virtu objects to the Requests to the extent they seek the production of confidential, commercially sensitive, proprietary, and/or trade secret information prior to the entry of a Stipulation and Order governing the production of Confidential and Highly Confidential Information in this Proceeding.

      9.     Virtu objects to the Requests to the extent they would require Virtu to draw a legal conclusion to make a proper response.

      10.    Virtu's responses to the Requests are made without in any way waiving or intending to waive: (a) any objections as to the competency, relevancy, materiality, privileged status, or admissibility as evidence, for any purpose, of any documents or information provided in response to the Requests; or (b) the right to object on any ground at any time to a demand for further responses to the Requests.

      11.    Virtu objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests. Virtu's responses are not intended to mean that Virtu agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests.

      12.    Virtu objects to the "time frame" purporting to govern the Requests on the grounds that the time period is overly broad, unreasonable, unduly burdensome and harassing (in that it will

Clayton P. Brust, Esq.
April 29, 2025
Page 5

entail production costs and burdens that would far outweigh any likely benefit or probative value); inconsistent with the Applicable Rules; and because it would require production of documents and information neither relevant to the subject matter involved in this Proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the Subpoena purports to require Virtu to search for and produce material from an overly broad and unduly burdensome nearly four-year time period, which begins almost five years ago (September 21, 2020 through August 7, 2024). This is particularly true inasmuch as it is Virtu's understanding that the Meta and/or MMTLP shares at issue traded only during the period October 2021 – December 2022,

13.     Virtu objects to Definition No. 3 ("ESI") to the extent it imposes obligations inconsistent with the Applicable Rules, including without limitation, to the extent it purports to require Virtu to (a) perform anything more than a reasonable and diligent search of ESI, including without limitation, applying reasonable search terms to any relevant universe of ESI; (b) provide documents maintained only in electronic or digital form on backup tapes, servers, or other similar archival media that would be unreasonable as well as unduly burdensome and expensive to search; (c) produce documents without allowing removal of exact duplicate documents or deduplicating emails to produce only the most complete iteration of an email chain; (d) produce documents, including ESI, in a specified format; and/or (e) provide all of the metadata associated with the document.

14.     Any indication that Virtu will produce documents in response to a Request is not intended as a representation by Virtu that such documents exist or that any such documents are in Virtu's possession, custody, or control.

15.     Virtu objects to the Subpoena on the basis that the Trustee lacks standing to seek documents to support potential claims by third-parties, including but not limited to shareholders of MMTLP, as MMTLP does not have standing to bring claims for potential losses that MMTLP shareholders allegedly sustained or to seek documents to support such claims. Virtu further objects to the extent that the Subpoena was issued for an improper purpose to the extent that it seeks documents in a bankruptcy proceeding in an attempt to support potential third-party claims that could only be brought in a separate proceeding. Virtu will not produce any documents in furtherance of a fishing expedition seeking to manufacture baseless claims.

16.     The responses set forth above are based upon information presently known to Virtu and Virtu reserves the right at any time to supplement, amend, revise, add to, correct, and/or clarify its responses and objections as additional knowledge or information makes such action appropriate. Should Virtu at any time supplement or amend its responses to these Requests, by agreement or otherwise, Virtu expressly reserves the right to assert any applicable objection, privilege, or other protection in connection with such supplementation or amendment.

The foregoing Objections apply to each of the specific Requests. If Virtu has possession, custody, or control of non-privileged documents responsive to those requests, it is withholding them at this time on the basis of these objections.

Clayton P. Brust, Esq.
April 29, 2025
Page 6

Please do not hesitate to call me to discuss Virtu's objections to the Subpoena.

Very truly yours,

Davis Wright Tremaine LLP

Barry S. Gold

# Exhibit B

## Gold, Barry

| | |
|---|---|
| **From:** | David D. Burnett <dburnett@schneiderwallace.com> |
| **Sent:** | Monday, May 5, 2025 5:01 PM |
| **To:** | Gold, Barry; Rella, Michael |
| **Cc:** | Stephen W. Tountas; Ryan R. C. Hicks; cbrust@rssblaw.com |
| **Subject:** | Re: In re Meta Materials, Debtor - Subpoena to Virtu |

[EXTERNAL]

Mr. Gold:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Virtu in this case. We're contacting you on behalf of the Trustee. My colleagues and I, copied, would like to schedule a call this week to discuss your April 29 objection letter. Please let us know your availability Wednesday through Friday. We'd like to discuss the requests and map out a plan for Virtu to produce responsive materials, starting with trade data. We believe the parties should be able to find common ground.

By the way, per one of the objections in your letter: the references to Citadel in the subpoenas are in error. They should have referred to Virtu in each instance. Also, there is no applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

> Begin forwarded message:
>
> 
> **SCHNEIDER WALLACE COTTRELL KONECKY** LLP
>
> **David D. Burnett**
> **Attorney at Law**
> 1050 30th Street NW
> Washington, DC 20007
> Main Line: (415) 421-7100
> Toll Free: (800) 689-0024
> Direct:     (510) 740-2939
> Facsimile: (415) 421-7105
> www.schneiderwallace.com
> ***Admitted in New York and District of Columbia.***
> **From:** "Gold, Barry" <BarryGold@dwt.com>
> **Subject: In re Meta Materials, Debtor - Subpoena to Virtu**
> **Date:** April 29, 2025 at 12:59:18 PM PDT
> **To:** "cbrust@rssblaw.com" <cbrust@rssblaw.com>
> **Cc:** "Rella, Michael" <MichaelRella@dwt.com>

# Mr. Brust:

Please see the attached.  Thank you.



**Barry Gold**   He/Him/His
**Of Counsel |** Davis Wright Tremaine LLP
P 212.880.3978  C 347.949.2054  E barrygold@dwt.com
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

**DWT.COM**

in

# Exhibit C

## Gold, Barry

| | |
|---|---|
| **From:** | David D. Burnett <dburnett@schneiderwallace.com> |
| **Sent:** | Thursday, May 22, 2025 12:41 PM |
| **To:** | Gold, Barry; Rella, Michael |
| **Cc:** | Stephen W. Tountas; Ryan R. C. Hicks; cbrust@rssblaw.com; James Wes Christian; Jeffrey L. Hartman |
| **Subject:** | Re: In re Meta Materials, Debtor - Subpoena to Virtu |
| **Attachments:** | In re Meta Materials Virtu protective order -- May 9 draft.docx |

[EXTERNAL]

Barry:

I'm following up about a meet and confer regarding the Trustee's subpoenas.  Please advise your availability for a call tomorrow or next week.  I've copied my colleagues who also represent the trustee.

Also, let us know if the attached proposed protective order is ok.  The bankruptcy judge in this case, Judge Hilary Barnes, just so-ordered a nearly-identical protective order with another subpoena recipient.

David

 SCHNEIDER WALLACE
COTTRELL KONECKY LLP

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line:  (415) 421-7100
Toll Free:  (800) 689-0024
Direct:  (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com
***Admitted in New York and District of Columbia.***

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Friday, May 09, 2025 12:43 PM
**To:** Gold, Barry <BarryGold@dwt.com>; Rella, Michael <MichaelRella@dwt.com>
**Cc:** Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>
**Subject:** Re: In re Meta Materials, Debtor - Subpoena to Virtu

Barry:

Within your time windows, I'm free Tuesday from 1:30 to 4 and your whole period Thursday, 10:30-1:45.  I'll let my colleagues chime in.

1

I've attached a proposed protective order to govern Virtu's future productions in response to the subpoenas.  Let us know if you have any edits.

David



SCHNEIDER  WALLACE
COTTRELL KONECKY LLP

David D. Burnett
Attorney at Law
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:    (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

**\*Admitted in New York and District of Columbia.**

**From:** Gold, Barry
**Sent:** Thursday, May 08, 2025 12:21 PM
**To:** David D. Burnett; Rella, Michael
**Cc:** Stephen W. Tountas; Ryan R. C. Hicks; cbrust@rssblaw.com
**Subject:** RE: In re Meta Materials, Debtor - Subpoena to Virtu

Notice: This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David:

Thanks for reaching out.  We are free for a call next Tuesday 12-4 and Thursday 10:30-1:45.  Please let us know what works for you.

**Barry Gold**   He/Him/His
**Of Counsel,** Davis Wright Tremaine LLP

P 212.880.3978  C 347.949.2054  E barrygold@dwt.com
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
DWT.COM

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:01 PM
**To:** Gold, Barry <BarryGold@dwt.com>; Rella, Michael <MichaelRella@dwt.com>
**Cc:** Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>;
cbrust@rssblaw.com
**Subject:** Re: In re Meta Materials, Debtor - Subpoena to Virtu

[EXTERNAL]

Mr. Gold:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Virtu in this case. We're contacting you on behalf of the Trustee. My colleagues and I, copied, would like to schedule a call this week to discuss your April 29 objection letter. Please let us know your availability Wednesday through Friday. We'd like to discuss the requests and map out a plan for Virtu to produce responsive materials, starting with trade data. We believe the parties should be able to find common ground.

By the way, per one of the objections in your letter: the references to Citadel in the subpoenas are in error. They should have referred to Virtu in each instance. Also, there is no applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

> Begin forwarded message:



David D. Burnett
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*
**From:** "Gold, Barry" <BarryGold@dwt.com>
**Subject: In re Meta Materials, Debtor - Subpoena to Virtu**
**Date:** April 29, 2025 at 12:59:18 PM PDT
**To:** "cbrust@rssblaw.com" <cbrust@rssblaw.com>
**Cc:** "Rella, Michael" <MichaelRella@dwt.com>

Mr. Brust:

Please see the attached. Thank you.



Barry Gold   He/Him/His
Of Counsel | Davis Wright Tremaine LLP
P 212.880.3978  C 347.949.2054  E barrygold@dwt.com
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

DWT.COM

in

# Exhibit D

## Gold, Barry

| | |
|---|---|
| **From:** | David D. Burnett <dburnett@schneiderwallace.com> |
| **Sent:** | Monday, June 2, 2025 8:57 PM |
| **To:** | Gold, Barry; Rella, Michael |
| **Cc:** | Stephen W. Tountas; Ryan R. C. Hicks; Clay Brust; James Wes Christian; Jeff Hartman |
| **Subject:** | Re: In re Meta Materials, Debtor – Subpoena to Virtu |
| **Attachments:** | P-Subpoena for Rule 2004 Exam - Virtu.pdf; P-Subpoena to Produce - Virtu.pdf; Virtu subpoenas revised document requests 6-2-25.docx |

**[EXTERNAL]**

Barry and Michael:

Nice to speak with you on Friday.  As discussed, I've attached a replacement "Items to be Produced" (list of document requests) for the two Virtu subpoenas, also reattached for reference.  The attached requests completely replace the requests in the current subpoenas.  We've included supplemental instructions to go with the replacement requests.  As discussed, please confirm by this Friday whether Virtu will accept email service of the subpoenas and the replacement document requests and supplemental instructions, in lieu of formal service, since we have already been corresponding about these.  I'll note that you didn't object to service in your April 29 objections letter.

As also discussed, please also let us know by Friday if you have any comments or edits on the proposed protective order we sent you.

Best,
David

 SCHNEIDER WALLACE
COTTRELL KONECKY LLP

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:    (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*\*Admitted in New York and District of Columbia.*

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Wednesday, May 28, 2025 10:49 AM
**To:** Gold, Barry <BarryGold@dwt.com>; Rella, Michael <MichaelRella@dwt.com>
**Cc:** Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>;
cbrust@rssblaw.com <cbrust@rssblaw.com>; James Wes Christian <jchristian@christianattarlaw.com>;

Jeffrey L. Hartman <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials, Debtor - Subpoena to Virtu

Barry:

Yes, we can do 1 pm Eastern on Friday. I can circulate a Teams invite.

David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

**From:** Gold, Barry <BarryGold@dwt.com>
**Sent:** Tuesday, May 27, 2025 5:13 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Rella, Michael <MichaelRella@dwt.com>
**Cc:** Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>;
cbrust@rssblaw.com <cbrust@rssblaw.com>; James Wes Christian <jchristian@christianattarlaw.com>;
Jeffrey L. Hartman <jlh@bankruptcyreno.com>
**Subject:** RE: In re Meta Materials, Debtor - Subpoena to Virtu

Notice: This email originated from outside of the organization. Please use caution before opening any attached file you did not
expect from the sender. Contact support@langtech.com if in doubt.

David:

We are free this Friday 12-4:30. Please let us know if that works for you.

**Barry Gold**   He/Him/His
**Of Counsel**, Davis Wright Tremaine LLP

P 212.880.3978  C 347.949.2054  E barrygold@dwt.com
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
**DWT.COM**

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, May 22, 2025 12:41 PM

**To:** Gold, Barry <BarryGold@dwt.com>; Rella, Michael <MichaelRella@dwt.com>
**Cc:** Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials, Debtor - Subpoena to Virtu

[EXTERNAL]

Barry:

I'm following up about a meet and confer regarding the Trustee's subpoenas. Please advise your availability for a call tomorrow or next week. I've copied my colleagues who also represent the trustee.

Also, let us know if the attached proposed protective order is ok. The bankruptcy judge in this case, Judge Hilary Barnes, just so-ordered a nearly-identical protective order with another subpoena recipient.

David



**David D. Burnett**
Attorney at Law
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Friday, May 09, 2025 12:43 PM
**To:** Gold, Barry <BarryGold@dwt.com>; Rella, Michael <MichaelRella@dwt.com>
**Cc:** Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>
**Subject:** Re: In re Meta Materials, Debtor - Subpoena to Virtu

Barry:

Within your time windows, I'm free Tuesday from 1:30 to 4 and your whole period Thursday, 10:30-1:45. I'll let my colleagues chime in.

I've attached a proposed protective order to govern Virtu's future productions in response to the subpoenas. Let us know if you have any edits.

David


SCHNEIDER WALLACE
COTTRELL KONECKY LLP

David D. Burnett
Attorney at Law
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

**\*Admitted in New York and District of Columbia.**

**From:** Gold, Barry
**Sent:** Thursday, May 08, 2025 12:21 PM
**To:** David D. Burnett; Rella, Michael
**Cc:** Stephen W. Tountas; Ryan R. C. Hicks; cbrust@rssblaw.com
**Subject:** RE: In re Meta Materials, Debtor - Subpoena to Virtu

Notice: This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David:

Thanks for reaching out. We are free for a call next Tuesday 12-4 and Thursday 10:30-1:45. Please let us know what works for you.

**Barry Gold** He/Him/His
**Of Counsel,** Davis Wright Tremaine LLP

P 212.880.3978  C 347.949.2054  E barrygold@dwt.com
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
DWT.COM

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:01 PM
**To:** Gold, Barry <BarryGold@dwt.com>; Rella, Michael <MichaelRella@dwt.com>
**Cc:** Stephen W. Tountas <STountas@kasowitz.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com
**Subject:** Re: In re Meta Materials, Debtor - Subpoena to Virtu

**[EXTERNAL]**

Mr. Gold:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Virtu in this case. We're contacting you on behalf of the Trustee. My colleagues and I, copied, would like to

schedule a call this week to discuss your April 29 objection letter.  Please let us know your availability Wednesday through Friday.  We'd like to discuss the requests and map out a plan for Virtu to produce responsive materials, starting with trade data.  We believe the parties should be able to find common ground.

By the way, per one of the objections in your letter:  the references to Citadel in the subpoenas are in error.  They should have referred to Virtu in each instance.  Also, there is no applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

Begin forwarded message:



David D. Burnett
Attorney at Law
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:  (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*
**From:** "Gold, Barry" <BarryGold@dwt.com>
**Subject: In re Meta Materials, Debtor - Subpoena to Virtu**
**Date:** April 29, 2025 at 12:59:18 PM PDT
**To:** "cbrust@rssblaw.com" <cbrust@rssblaw.com>
**Cc:** "Rella, Michael" <MichaelRella@dwt.com>

Mr. Brust:

Please see the attached.  Thank you.

**Barry Gold**   He/Him/His
**Of Counsel** | Davis Wright Tremaine LLP
P 212.880.3978  C 347.949.2054  E barrygold@dwt.com
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

**DWT.COM**

in

# Exhibit E

**Gold, Barry**

| | |
|---|---|
| **From:** | Gold, Barry |
| **Sent:** | Friday, June 13, 2025 11:27 AM |
| **To:** | David D. Burnett |
| **Cc:** | Rella, Michael; James Wes Christian; 'Jeffrey L. Hartman'; Ryan R. C. Hicks; Clay Brust; Stephen W. Tountas |
| **Subject:** | RE: In re Meta Materials, Inc. |

David:

Thank you for your email. While we disagree with your characterization of our past communications, there is no need to continue the back and forth because your service of new subpoenas and recognition of our new 14-day period to serve Responses and Objections moves us past that and whatever prior misunderstandings we had. So, yes, we accept service of the subpoenas as of yesterday and yes, our responses and objections are due June 26. Also, we will review the revised proposed protective order and get back to you with our comments.

**Barry Gold**  He/Him/His
**Of Counsel,** Davis Wright Tremaine LLP

P 212.880.3978  C 347.949.2054  E barrygold@dwt.com
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
DWT.COM

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, June 12, 2025 6:39 PM
**To:** Gold, Barry <BarryGold@dwt.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>; James Wes Christian <jchristian@christianattarlaw.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Clay Brust <cbrust@rssblaw.com>; Stephen W. Tountas <stountas@kasowitz.com>
**Subject:** RE: In re Meta Materials, Inc.

[EXTERNAL]

Barry:

Yes, it's clear we have a misunderstanding.

I explained in my June 2 and June 10 emails, and on our meet and confer, that the Supplemental Instructions and revised Items to be Produced (Updated June 2, 2025) that I attached to those emails replace the Items to be Produced in the original subpoenas. So the "new" subpoenas were just the

1

original subpoenas with the additional instructions and replacement requests, which I've sent you. In my June 2 email I asked you to tell us by June 6 "whether Virtu will accept email service of the subpoenas and the replacement document requests and supplemental instructions, in lieu of formal service, since we have already been corresponding about these." So I was asking you to accept service by email of what I sent you, not to simply tell us by June 6 if Virtu will accept service by email in the future of future subpoenas.

In any event, so we're all clear, I've attached the new subpoenas. These are the subpoenas you received in March with an updated June 26 response date, the supplemental instructions, and the replacement document requests. Please confirm that you accept service by email of these subpoenas, as of today.

As for your responses and objections, if you think you need or want 14 days with the new subpoenas, per FRCP 45, fair enough. You've had the original subpoenas since March, you served R&Os to those in April, and you've had the supplemental instructions and replacement requests since June 2. Given all that, we were hoping that you could respond sooner than 14 days after service. In any event, please serve responses and objections by June 26, as stated in the subpoenas. In the meantime, as discussed on our call, we ask that you also please also speak with your client about what records they have and are willing to produce. We'd like to confer about Virtu's production soon after receiving your R&Os.

You mention Citadel, but I already said in my May 5 email that those references were an error. The attached subpoenas correct that.

Please also send us any further comments or edits on the revised protective order, reattached, which we revised in good faith to address your June 6 comments.

David



SCHNEIDER WALLACE
COTTRELL KONECKY LLP

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct:    (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

**From:** Gold, Barry <BarryGold@dwt.com>
**Sent:** Wednesday, June 11, 2025 4:15 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>; James Wes Christian <jchristian@christianattarlaw.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Clay Brust <cbrust@rssblaw.com>; Stephen W. Tountas <stountas@kasowitz.com>
**Subject:** RE: In re Meta Materials, Inc.

Notice: This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David:

A few clarifications and responses:

- I am puzzled by your email and attachments. I said in my June 6 email that we would accept service "of the new subpoena you intend to serve containing the revised document requests and supplemental instructions . . . with a full reservation of Virtu's rights and with the understanding that the new subpoena replaces the initially-served subpoena and starts anew the time limits for responding to a subpoena set forth in FRCP 45." I never said we were accepting, or would accept, service as of any particular date, including June 6. Service, of course, would be effective on whatever day you sent the new subpoena and when I sent my email, no new subpoena had been served. And attached to the email you sent yesterday are the original subpoenas which means that still, no new subpoena or subpoenas have been served. Please clarify.

- I am also puzzled by your second paragraph inquiring whether we intend that there be a new 14-day period to respond to any new subpoena for production of documents you were going to serve on us. That was the express condition on which we agreed to accept service of a new subpoena. If that is not agreeable to you, then please let me know and, per my June 6 email, we do not agree to accept service of any new subpoena (or subpoenas) – or any new document requests or instructions – on behalf of Virtu. I am also surprised at your second paragraph in light of the fact that your document requests are revised. We are entitled to the statutorily-prescribed time to consider,

and properly respond to, the new document requests in the new subpoena.

- We would not want to schedule a meet and confer until after service (1) by you of a new subpoena and (2) by us of our Responses and Objections to the new subpoena. If, however, you are not planning to serve a new subpoena, then we are prepared to have a meet and confer with respect to the original subpoena and original document requests and our previously-served Responses and Objections – although it will be quite short because Virtu has no responsive documents to those requests, which expressly seek Citadel documents.

- Thank you for sending a revised draft protective order. If you are not serving a new subpoena, then there is no need for us to review it as Virtu has no responsive documents. If you tell us you will be serving a new subpoena with the revised document requests, we will review the draft protective order and get back to you.

**Barry Gold**  He/Him/His
Of Counsel, Davis Wright Tremaine LLP

P 212.880.3978  C 347.949.2054  E barrygold@dwt.com
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
DWT.COM

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, June 10, 2025 10:46 AM
**To:** Gold, Barry <BarryGold@dwt.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>; James Wes Christian <jchristian@christianattarlaw.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Clay Brust <cbrust@rssblaw.com>; Stephen W. Tountas <stountas@kasowitz.com>
**Subject:** Re: In re Meta Materials, Inc.

[EXTERNAL]

Barry:

Thanks for confirming that you agree to accept service, as of June 6. As a reminder, the Trustee served two subpoenas, as you acknowledged in your April 29 letter. The supplemental instructions and replacement document requests I sent you last Monday apply to both subpoenas.

You refer to the FRCP 45 time period for subpoena responses. You're suggesting that you'll respond within 14 days, which is next Friday, June 20? We'd like to get any responses sooner and would like to proceed to discussing the parameters of Virtu's production. You received the subpoenas on or about March 18 and we received your six-page letter with responses and objections to the subpoenas on April 29. Virtu shouldn't require a new 14-day period to respond to the revised subpoenas since you've had the original ones for 2-1/2 months and these supplemental instructions and replacement requests are just an iteration on the original ones. Are you intending to serve formal responses and objections, on top of the April 29 ones?

Can we schedule a meet and confer for end of this week or next to discuss Virtu's production? And in the meantime, can you tell us what records Virtu has which are responsive to the subpoena, in what format they are kept, what data fields are contained in the records, the volume of records at issue, whether you have data for all four CUSIPs for the full date range, etc.?

Regarding the proposed protective order: the same template has been used with other subpoena recipients and so-ordered by the Court. The Rule 2004 subpoena calls for a deposition of a custodian of records, so language related to depositions could be relevant and should stay in. And it's fine for the subpoena to be broader than need be--such provisions simply wouldn't be applicable. That said, because you've asked, I've attached a redline removing clauses which shouldn't be necessary. Let us know if you have any further edits.

Thanks,

David

5



David D. Burnett
Attorney at Law
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

**\*Admitted in New York and District of Columbia.**

---

**From:** Gold, Barry <BarryGold@dwt.com>
**Sent:** Friday, June 6, 2025 6:56 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>
**Subject:** In re Meta Materials, Inc.

Notice: This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David:

As promised, we are getting back to you today regarding the new subpoena you intend to serve containing the revised document requests and supplemental instructions you sent us. We will accept service of the new subpoena with a full reservation of Virtu's rights and with the understanding that the new subpoena replaces the initially-served subpoena and starts anew the time limits for responding to a subpoena set forth in FRCP 45. **Please advise.**

Also, as promised, we reviewed the proposed Stipulated Protective Order you sent. As it contemplates both parties producing documents and references

depositions and interrogatories, etc. (as if it were for an adversary proceeding, not our situation), the format really does not work for our situation and substantial revision would be required. Kindly make the necessary revisions and resend for our review.

We look forward to hearing back from you. Best regards.



**Barry Gold**  He/Him/His
**Of Counsel |** Davis Wright Tremaine LLP

**P** 212.880.3978  **C** 347.949.2054 **E** barrygold@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

DWT.COM       in

7

# Exhibit F



**Davis Wright
Tremaine** LLP

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Barry S. Gold**
tel: (212) 880-3978
fax: (212) 880-3998

barrygold@dwt.com

June 26, 2025

**Via Email**

David Burnett, Esq.
Schneider Wallace Cottrell Konecky LLP
1050 30th Street NW
Washington, DC 20007
Email: dburnett@schneiderwallace.com

> **Re:** ***In re Meta Materials Inc., Debtor***
> **Bankr. Ct. D. Nev. - Case No. 24-50792-hlb**

Dear David:

As you know, we represent Virtu Financial, LLC ("Virtu") in connection with the two new Subpoenas you served on behalf of the Trustee Christina Lovato on June 12, 2025 – (1) to Produce Documents ("Document Subpoena") and (2) for Rule 2004 Examination ("Examination Subpoena") – in the above-referenced bankruptcy proceeding. This letter constitutes Virtu's written objections and responses to the two Subpoenas.

## **RESERVATION OF RIGHTS**

1.      As a non-party, Virtu may not be aware of all appropriate and necessary objections. Virtu expressly reserves the right to amend, expand, or delete any part of the objections stated herein at any time. Virtu reserves the right to object to the admission in evidence of any of the information or documents provided in response to the Subpoenas on any ground including, but not limited to, the ground that any such information or document is irrelevant to the issues in this bankruptcy proceeding (the "Proceeding"). Virtu reserves its right to rely on a fact, document, or other evidence that may develop or which may come to its attention at a later time.

2.      Virtu reserves the right to object to the use (for any purpose) of these objections and responses or any information or document that Virtu produces or provides pursuant to the Subpoenas. Virtu reserves the right to interpose any such objection at any time or as required by the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, any applicable Local Rule, any applicable court rule, as well as other applicable statutory provisions, rules, caselaw, and court orders (the "Applicable Rules").

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

David Burnett, Esq.
June 26, 2025
Page 2

       3.     Virtu reserves the right not to produce documents to the extent that the Requests, including the Definitions and Instructions contained therein, (a) are overly broad, unduly burdensome, and/or call for documents or information that is obtainable from some other source that is more convenient, less burdensome, or less expensive; (b) are vague, ambiguous, duplicative, cumulative, do not identify with reasonable particularity the information sought, or are otherwise incomprehensible; (c) call for production of documents or information that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (d) seek to impose obligations on Virtu beyond, or inconsistent with, those required by the Applicable Rules; (e) purport to seek documents or information not in Virtu's possession, custody, or control; or (f) call for the production of publicly available documents or information, or documents or information to which the Trustee has equal or better access, and thus for which the burden on Virtu is equal to or greater than that of the Trustee in obtaining the requested documents and/or information.

       4.     To the extent Virtu is required to produce any documents in response to the Document Subpoena, it will not do so unless and until an appropriate Stipulation and Order governing the production of possible Confidential and Highly Confidential Information is entered into by the parties and So Ordered by the Court.

       5.     Virtu does not admit the truth of any purported fact contained in the Subpoenas, and no response by Virtu shall be deemed an admission of any such fact or waiver of any right to contest any such fact at an appropriate time.

       6.     Any document or information produced by Virtu pursuant to the Subpoenas is produced without conceding the document's or information's relevance or its admissibility, authenticity, or probative value.

       7.     Virtu reserves the right to obtain reimbursement for any cost or expense incurred in connection with responding to the Subpoenas, though reimbursement of cost and expense alone does not diminish the burden imposed by the Subpoenas.

       8.     Virtu has not completed its evaluation of the Subpoenas, and these objections and responses are based only on information currently known by Virtu. Virtu reserves the right to supplement or otherwise amend any objection or response based on the results of its continuing evaluation.

## OBJECTIONS TO EXAMINATION SUBPOENA

       1.     Virtu objects to the Trustee's issuance of the Examination Subpoena under Bankruptcy Rule 2004 because the Trustee seeks impermissible pre-litigation discovery against a potential defendant not permitted by Bankruptcy Rule 2004. The Trustee has already conducted a thorough investigation, identified alleged wrongdoing, quantified supposed damages, and prepared to file a lawsuit. Instead of following the proper procedure – filing a complaint and conducting discovery under the Federal Rules of Civil Procedure – the Trustee seeks to weaponize Rule 2004 to obtain extensive discovery while circumventing the procedural

David Burnett, Esq.
June 26, 2025
Page 3

safeguards that would otherwise apply.

2.     Virtu objects to the Examination Subpoena as procedurally improper and in violation of FRBP 9016 and FRCP 45(c)(1)(A) as it calls for testimony by a Virtu witness at an office in Wilmington, Delaware which is not within 100 miles of any location where Virtu regularly transacts business.

3.     Virtu objects to the Examination Subpoena on the basis that the Trustee lacks standing to obtain testimony to support potential claims by third-parties, including but not limited to shareholders of MMTLP, MMAT and/or TRCH, as the Trustee does not have standing to bring claims for potential losses that those shareholders allegedly sustained or to seek documents to support such claims. Virtu further objects to the extent that the Examination Subpoena was issued for an improper purpose to the extent that it seeks testimony in a bankruptcy proceeding in an attempt to support potential third-party claims that could only be brought in a separate proceeding. Virtu will not produce a witness in furtherance of a fishing expedition seeking to manufacture baseless claims.

## OBJECTIONS TO DOCUMENT SUBPOENA

Virtu makes the following General Objections to the Requests and incorporates them into its responses to each and every Request in the Document Subpoena, whether or not specifically stated in the individual response. An assertion of the same, similar, or additional objections in response to a specific Request does not waive any of these General Objections as to that or any Request. Virtu's failure to object to a specific Request on any particular ground shall not be construed as a waiver of its right to object on any ground.

1.     Virtu objects to the Trustee's issuance of the Document Subpoena under Bankruptcy Rule 2004 because the Trustee seeks impermissible pre-litigation discovery against a potential defendant not permitted by Bankruptcy Rule 2004. The Trustee has already conducted a thorough investigation, identified alleged wrongdoing, quantified supposed damages, and prepared to file a lawsuit. Instead of following the proper procedure – filing a complaint and conducting discovery under the Federal Rules of Civil Procedure – the Trustee seeks to weaponize Rule 2004 to obtain extensive discovery while circumventing the procedural safeguards that would otherwise apply.

2.     Virtu objects to the Document Subpoena as procedurally improper and in violation of FRBP 9016 and FRCP 45(c)(2)(A) as it calls for production of documents at an office in Wilmington, Delaware which is not within 100 miles of any location where Virtu regularly transacts business.

3.     Virtu objects to the Document Subpoena on the basis that the Trustee lacks standing to request production of documents to support potential claims by third-parties, including but not limited to shareholders of MMTLP, MMAT and/or TRCH, as the Trustee does not have standing to bring claims for potential losses that those shareholders allegedly sustained or to seek documents to support such claims. Virtu further objects to the extent that the

David Burnett, Esq.
June 26, 2025
Page 4

Examination Subpoena was issued for an improper purpose to the extent that it seeks documents in a bankruptcy proceeding in an attempt to support potential third-party claims that could only be brought in a separate proceeding. Virtu will not produce any documents in furtherance of a fishing expedition seeking to manufacture baseless claims.

4.     Virtu objects to the Subpoena's Definitions, Instructions and Requests to the extent they seek to impose obligations on Virtu in excess of what is required under the Applicable Rules. Virtu's responses to the Requests are on behalf of Virtu only and will be limited to documents or information currently available to Virtu. To the extent Virtu is required to produce any documents, it will not search for, collect, or produce documents in the possession of Virtu's attorneys or other third parties, including parents, affiliates and subsidiaries. Thus, Virtu objects to Supplemental Instruction No. 4 which states that "The Trustee is seeking records from the following Virtu entities, at a minimum: Virtu Financial LLC, Virtu Americas LLC, and Virtu KCG Holdings LLC."

5.     Virtu objects to Supplemental Instruction No. 3 which provides that "The records requested below should include, but not [] limited to, electronically stored records that fulfill Virtu's regulatory and compliance obligation to retain customer and firm order and execution records as required of Virtu in its capacity as a broker-dealer. See Securities Exchange Act Rule 10b-10 and Securities Exchange Act Section 17a-3." There is no legitimate basis for Virtu to have to produce to the Trustee every record Virtu may be required by regulation to retain.

6.     Virtu objects to any Request seeking the production of "all relevant order routing and execution records" (Request Nos. 1-3), "all records" (Request No. 4) and "all records of position data" (Request No. 5) on the ground that it is overly broad and unduly burdensome, particularly in the context of electronically stored information. Virtu cannot ensure that it has located every routing and execution record of position, every record, and every record of position data responsive to a particular Request. Subject to the General Objections and any qualifications below, with respect to any Request seeking "all" routing and execution records of position, "all" records, and "all" records of position data and to the extent Virtu is required to produce responsive documents, Virtu will produce the responsive, non-privileged documents within its possession, custody, and control that can be located after a reasonable search conducted in good faith. Specifically, if required to produce responsive documents, Virtu will conduct a reasonable and good faith search for documents in the files of key custodians that it has identified as the most likely to have information responsive to the Document Subpoena and, with respect to electronic information, reserves the right to and will apply date restrictions and search terms before reviewing documents for responsiveness.

7.     In addition to the specific objection set forth in paragraph 6 above with respect to Request No. 1, Virtu objects to Request No. 1 which provides that "Order routing and execution records provided by Virtu should reflect the lifespan transactions of orders from origination to completion, capturing all relevant information (i.e. broker info, customer info, long or short indicators, and unique ID), with precision timestamps. These records should also include, but are not limited to, cancel/replaces, order forwarding, executions, and expired orders." This language

David Burnett, Esq.
June 26, 2025
Page 5

is overbroad, vague and ambiguous – particularly "capturing all relevant information."

8.    In addition to the specific objection set forth in paragraph g above with respect to Request No. 2, Virtu objects to Request No. 2 which provides that "Order routing and execution records provided by Virtu should reflect the lifespan transactions of orders from origination to completion, capturing all relevant information (i.e. broker info, customer info, long or short indicators, and unique ID), with precision timestamps. These records should also include, but are not limited to, cancel/replaces, order forwarding, executions, and expired orders. These records should also include transactions where Virtu served as counterparty to the customer and/or broker-dealer client executions on a principal or riskless principal basis and/or executed customers transactions and/or broker-dealer client transactions on an agency basis." This language is overbroad, vague and ambiguous – particularly "capturing all relevant information."

9.    In addition to the specific objection set forth in paragraph 6 above with respect to Request No. 3, Virtu objects to Request No. 3 which provides that "Order routing and execution records provided by Virtu should reflect the lifespan transactions of orders from origination to completion, capturing all relevant information (i.e. broker info, customer info, long or short indicators, and unique ID), with precision timestamps for all related transactions. These records should also include, but are not limited to, cancel/replaces, order forwarding, executions, and expired orders." This language is overbroad, vague and ambiguous – particularly "capturing all relevant information" and "for all related transactions."

10.    In addition to the specific objection set forth in paragraph 6 above with respect to Request No. 4, Virtu objects to Request No. 4 to the extent it directs that Virtu produce "records of how Virtu rectified any outstanding failures to deliver." This language is overbroad, vague and ambiguous – particularly "how Virtu rectified." This language is overbroad, vague, ambiguous and incomprehensible.

11.    In addition to the objection set forth in paragraph 5 above, Virtu objects to Request No. 5 to the extent it directs that "Virtu's production should reflect the same frequency in which such data was recorded." This language is overbroad, vague, ambiguous and incomprehensible.

12.    Virtu objects to the Requests to the extent they seek trading-related information regarding the purchasers and sellers of MMTLP, MMAT and/or TRCH. That information can be obtained directly from the broker-dealers who interacted directly with the purchasers and sellers. Virtu should not be burdened searching for documents and information that the Trustee can obtain more easily from the broker-dealers.

13.    Virtu objects to the Requests to the extent they seek discovery of information that is protected from disclosure by the attorney-client privilege, the work-product doctrine, and/or any other applicable privileges, immunities, or exceptions. To the extent Virtu is required to produce any documents, it will only produce non-privileged documents. Nothing contained in these responses – including, but not limited to, any inadvertent production of documents or materials – is intended as, or shall in any way be deemed, a waiver of any attorney-client

David Burnett, Esq.
June 26, 2025
Page 6

privilege, work-product doctrine, and/or any other applicable privileges, immunities, or exceptions.

14.     Virtu objects to the Requests to the extent they call for the production of documents outside of Virtu's possession, custody, or control as such Requests are overly broad and unduly burdensome.

15.     Virtu objects to the Requests to the extent they purport to require disclosure by Virtu of irrelevant and/or private information.

16.     Virtu objects to the Requests to the extent they seek the production of confidential, commercially sensitive, proprietary, and/or trade secret information prior to the entry of a Stipulation and Order governing the production of Confidential and Highly Confidential Information in this Proceeding.

17.     Virtu objects to the Requests to the extent they would require Virtu to draw a legal conclusion to make a proper response.

18.     Virtu's responses to the Requests are made without in any way waiving or intending to waive: (a) any objections as to the competency, relevancy, materiality, privileged status, or admissibility as evidence, for any purpose, of any documents or information provided in response to the Requests; or (b) the right to object on any ground at any time to a demand for further responses to the Requests.

19.     Virtu objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests. Virtu's responses are not intended to mean that Virtu agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests.

20.     Virtu objects to the "time frame" purporting to govern the Requests on the grounds that the time period is overly broad, unreasonable, unduly burdensome and harassing (in that it will entail production costs and burdens that would far outweigh any likely benefit or probative value); inconsistent with the Applicable Rules; and would require production of documents and information neither relevant to the subject matter involved in this Proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the Document Subpoena purports to require Virtu to search for and produce material from an overly broad and unduly burdensome nearly four-year time period, which begins almost five years ago (September 21, 2020 through August 7, 2024 with respect to trading of MMAT and TRCH, and June 28, 2021 through December 14, 2022 with respect to trading of MMTLP). This is particularly true inasmuch as it is Virtu's understanding that the Meta and/or MMTLP shares at issue traded only during the period October 2021 – December 2022.

21.     Virtu objects to Definition No. 3 ("ESI") to the extent it imposes obligations inconsistent with the Applicable Rules, including without limitation, to the extent it purports to require Virtu to (a) perform anything more than a reasonable and diligent search of ESI,

David Burnett, Esq.
June 26, 2025
Page 7

including without limitation, applying reasonable search terms to any relevant universe of ESI; (b) provide documents maintained only in electronic or digital form on backup tapes, servers, or other similar archival media that would be unreasonable as well as unduly burdensome and expensive to search; (c) produce documents without allowing removal of exact duplicate documents or deduplicating emails to produce only the most complete iteration of an email chain; (d) produce documents, including ESI, in a specified format; and/or (e) provide all of the metadata associated with the document.

22.     Any indication that Virtu will produce documents in response to a Request is not intended as a representation by Virtu that such documents exist or that any such documents are in Virtu's possession, custody, or control.

23.     The responses set forth above are based upon information presently known to Virtu and Virtu reserves the right at any time to supplement, amend, revise, add to, correct, and/or clarify its responses and objections as additional knowledge or information makes such action appropriate. Should Virtu at any time supplement or amend its responses to these Requests, by agreement or otherwise, Virtu expressly reserves the right to assert any applicable objection, privilege, or other protection in connection with such supplementation or amendment.

The foregoing general and specific objections apply to each of the specific Requests. If Virtu has possession, custody, or control of non-privileged documents responsive to those requests, it is withholding them at this time on the basis of these objections.

Please do not hesitate to call me to discuss Virtu's objections and responses to the Subpoena.

Very truly yours,

Davis Wright Tremaine LLP

Barry S. Gold

Barry S. Gold

# Exhibit G

**Gold, Barry**

| | |
|---|---|
| **From:** | David D. Burnett <dburnett@schneiderwallace.com> |
| **Sent:** | Tuesday, July 22, 2025 1:33 PM |
| **To:** | Gold, Barry |
| **Cc:** | Rella, Michael; James Wes Christian; Jeffrey L. Hartman; Clay Brust; Ryan R. C. Hicks; Stephen W. Tountas |
| **Subject:** | Re: Meta - Subpoenas to Virtu |

[EXTERNAL]

Barry:

We propose 1 pm EST on Friday for the call—or if not, 2 or 3 pm. I'll send an invite for 1 unless you say otherwise.

Thanks
David



SCHNEIDER² WALLACE
COTTRELL KIM LLP

David D. Burnett
Attorney at Law
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct:    (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com
*Admitted in New York and District of Columbia.

**From:** Gold, Barry <BarryGold@dwt.com>
**Sent:** Monday, July 21, 2025 2:07 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** RE: Meta - Subpoenas to Virtu

Notice: This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David:

How does your schedule look for a meet and confer Friday after 11:30?  Also, attached for your review is the draft Stipulated Protective Order with our comments.

Best regards.

**Barry Gold**   He/Him/His
Of Counsel, Davis Wright Tremaine LLP
_____
P 212.880.3978  C 347.949.2054  E barrygold@dwt.com
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
DWT.COM

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, July 17, 2025 3:28 PM
**To:** Gold, Barry <BarryGold@dwt.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: Meta - Subpoenas to Virtu

[EXTERNAL]

Barry:

Sorry for the delay.  I can confer next Tuesday or any day thereafter next week.  I could speak Tuesday morning until noon EST or between 1 and 3 EST.  Wednesday I'm free any time until 4 pm EST.  Please let us know your available time windows and I'll coordinate on our end.

Does your willingness to confer mean that Virtu is willing to produce documents in response to the subpoena?  If so, we'd like to know on or before the call, at a minimum:  1) have you discussed Virtu's records and a production with them, 2) what data and/or documents does Virtu have which are responsive to the Trustee's five document requests, 3) does Virtu have records for all four tickers from the full date range specified in the supplemental instructions, 4) will you produce documents from all three Virtu entities listed in the Supplemental Instructions and are there any other applicable entities, 5) what will Virtu produce, and 6) on what timeframe.  When we conferred previously on May 30, you said you hadn't discussed such specifics with your client.  We assume that at least some of the information responsive to the subpoenas will take the form of data in spreadsheets, which we expect would not be hard to generate from Virtu's computer systems.

If Virtu will not agree to produce, we can discuss that discovery dispute on our call next week, pursuant to Bankr. D. Nev. Local Rule 7037.  If Virtu won't produce the Trustee will promptly move to compel Virtu's production in the bankruptcy court.

I haven't seen your comments/edits to the revised draft of the protective order.  Please send those promptly.  I sent you the revised draft, responding to your June 6 comments, last month.

Best,

David


SCHNEIDER² WALLACE
COTTRELL KIM LLP

**David D. Burnett**
Attorney at Law
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

**\*Admitted in New York and District of Columbia.**

**From:** Gold, Barry <BarryGold@dwt.com>
**Sent:** Thursday, July 10, 2025 8:06 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: Meta - Subpoenas to Virtu

Notice: This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David:

Please give us some times next week you are free to meet and confer. I should be able to send you the draft Protective Order with our comments later today. Thanks.

Barry

Sent from my iPhone

> On Jul 3, 2025, at 2:44 PM, David D. Burnett <dburnett@schneiderwallace.com> wrote:
>
> **[EXTERNAL]**
>
> Mr. Gold:
>
> We received Virtu's responses and objections to the Trustee's subpoenas. We are confused by your document, however, and find it unhelpful. The takeaway point we need to know is, will Virtu produce any materials in response to the subpoenas? Your document repeatedly refers to production "to the extent Virtu is required to produce" and "if Virtu is required to produce." Virtu is required to produce in response to these valid subpoenas, so in our view your statements should not be conditional. Do you mean "if Virtu is required

3

to produce" by the Court in response to a motion to compel? I've not seen subpoena objections phrased the way you have. At the end of the document you write that "If Virtu has possession, custody, or control of non-privileged documents responsive to [the] requests, it is withholding them at this time on the basis of these objections." Is that a catchall statement that Virtu is unwilling to produce any documents? Also, given the language of this sentence, have you done any investigation of Virtu's records to determine what responsive information it has, including documents and data?

If Virtu is open to producing documents as required by the subpoenas, let's set up a time to confer. If Virtu refuses to produce, please confirm that so we can consider our options, including possibly moving to compel.

You asked me to resend the draft protective order last week, two days before you served the R&Os, so you could give comments. Please send us any comments or edits, though if Virtu is refusing to produce, the protective order may be moot for the moment.

David

David D. Burnett
Attorney at Law
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct:    (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** Gold, Barry <BarryGold@dwt.com>
**Sent:** Thursday, June 26, 2025 4:04 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>
**Subject:** Meta - Subpoenas to Virtu

Notice: This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David:

Attached are Virtu's Objections and Responses and to the second Subpoenas.

Best regards.

&lt;image001.png&gt;**Barry Gold**  He/Him/His
**Of Counsel** | Davis Wright Tremaine LLP
**P** 212.880.3978  **C** 347.949.2054 **E** barrygold@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

**DWT.COM**    &lt;image002.png&gt;

&lt;virtu- meta materials - objections and responses to second subpoenas.pdf&gt;

# Exhibit H

## Gold, Barry

| | |
|---|---|
| **From:** | David D. Burnett <dburnett@schneiderwallace.com> |
| **Sent:** | Tuesday, July 29, 2025 6:00 PM |
| **To:** | Gold, Barry; Carvajal, Shanaye; Rella, Michael |
| **Cc:** | James Wes Christian; Jeffrey L. Hartman; Clay Brust; Ryan R. C. Hicks; Stephen W. Tountas |
| **Subject:** | Re: Meta - Subpoenas to Virtu |
| **Attachments:** | Order Granting Debtors' Rule 2004 Motion.pdf; Debtor's Motion for Written Responses from Brokerage Firms Pursuant to Rule 2004 of FRBP.pdf; 20250729 Virtu Protective Order -- Trustee clean.docx |

[EXTERNAL]

Barry:

On our Friday meet and confer, you pressed us for further information about the subpoenas and the Trustee's investigation, which we provided in the spirit of good faith and cooperation, but you did not offer any substantive information about whether Virtu will comply with the subpoenas. Like our prior call two months ago on May 30, you said you had not spoken with your client about the document requests in any detail. That is despite the plain language of the subpoenas, the fact that we conferred about this two months ago, and my July 17 email below which repeated the Trustee's questions in advance of our call. You received the initial subpoenas on March 18, four months ago, and we served the revised subpoenas on June 12, six weeks ago. Your unwillingness to meaningfully engage with the requests over those four months, the contents of your Responses and Objections, and the objections you have raised on our calls, lead us to conclude that Virtu will not produce in response to the subpoenas. If you change your mind, please let us know by this Thursday, as discussed. We plan to promptly move to compel Virtu's compliance.

To summarize what we told you by phone on Friday, in the interest of full transparency and good faith: the Trustee has received productions of trade data from multiple other subpoena recipients. We will cite those to the Court in contrast with Virtu's refusals. None of those parties' materials overlap with what we are seeking from Virtu, so there is no other party that can narrow or satisfy Virtu's production obligation. We would like Virtu to produce trade data, which should not be burdensome and would at least partly satisfy the document requests. Whatever statements the Trustee has made in the past regarding trading of Meta Materials shares do not diminish the Trustee's need for discovery from Virtu, because we are seeking non-public information from you. We served two subpoenas because the Rule 2004 subpoena also calls for a custodian of records deposition, in addition to the identical document requests in both subpoenas. You have not answered any of our questions about Virtu's records, so we will include the deposition request in a motion to compel. The Trustee is investigating potential wrongdoing related to trading of Meta securities, but we have not made any decisions on which parties to sue, if any. The Trustee is investigating possible manipulation of the debtor's stock which may have affected its financial condition. Meta's stock price plummeted over time, which may be due in part to spoofing and shorting, which is what the Trustee is investigating.

The subpoenas are based on a number of statutes and rules: FRCP 45; Fed. R. Bankr. P. 2004, 6009, and 9016; Local Rule 2004 of the U.S. Bankruptcy Court for D. Nev.; and 11 U.S.C. 704, at a minimum. Rule 2004 applies to "to the acts, conduct, or property or to the liabilities and financial condition of the debtor,

or to any matter which may affect the administration of the debtor's estate," and Section 704 states that the Trustee "shall . . . Investigate the financial affairs of the debtor." "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate." *In re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015). There is ample additional caselaw from the Bankr. D. Nev. about these statutes and rules.

Courts have endorsed subpoenas in cases with similar fact patterns. See the attached order from *In re: Sorrento Therapeutics, Inc.*, No. 23-90085 (Bankr. S.D. Tex. Apr. 4, 2023), Dkt. No. 334. The decision granted the attached Debtors' Emergency Motion from that case, Dkt. No. 330. The motion concerned documents requested from 25 brokers, dealers, and other firms (Exhibit A to the motion). The motion includes citation to caselaw about the broad scope of a Rule 2004 examination. Page 6 of 12. See also *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626-28 (Bankr. D. Del. 2016), and the authorities cited therein. In *Millenium*, the court (like others) described Rule 2004 discovery as a permissible "fishing expedition," which speaks to this discovery mechanism as a unique tool for the Trustee to investigate on the debtor's behalf: "Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a 'fishing expedition' and 'an inquisition.' Indeed, a Rule 2004 examination is generally not available once an adversary proceeding or contested matter has been commenced; at that point, discovery is made pursuant to the Federal Rules of Bankruptcy Procedure." 562 B.R. at 626 (internal citations and certain quotations omitted). There is ample additional caselaw stating that the scope of examination under Rule 2004 is broad, broader than under the FRCP, and the investigatory powers extend to third parties with any information relevant to the debtor's financial affairs. There are many other examples of Rule 2004 discovery being granted for pre-litigation discovery in bankruptcies.

Your edits to the protective order are fine with us. I accepted all the edits and made two further edits--I changed "proceedings" to singular in the first line and deleted "outside" in paragraph 5(a), "the Trustee's counsel of record in this Action," since the Trustee isn't an entity and doesn't have in-house counsel. Clean version attached. Let us know whose signature we should use for DWT. If you have nothing further we'll get this on file. Whether Virtu produces voluntarily or in response to a court order, it will be useful to have this on file.

Best,
David



**SCHNEIDER² WALLACE COTTRELL KIM** LLP

David D. Burnett
Attorney at Law
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com
*Admitted in New York and District of Columbia.*

**From:** Gold, Barry <BarryGold@dwt.com>
**Sent:** Monday, July 21, 2025 2:07 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L.

# Exhibit I

## Carvajal, Shanaye

| | |
|---|---|
| **From:** | Rella, Michael |
| **Sent:** | Tuesday, August 5, 2025 6:28 PM |
| **To:** | David D. Burnett; Carvajal, Shanaye |
| **Cc:** | James Wes Christian; Jeffrey L. Hartman; Clay Brust; Ryan R. C. Hicks; Stephen W. Tountas |
| **Subject:** | RE: Meta - Subpoenas to Virtu |

David,

We've conferred with our client. Virtu is standing on its objections and will not be producing any documents.

Best,

**Michael Rella**   He/Him/His
**Partner,** Davis Wright Tremaine LLP

**P** 212.880.3973  **C** 914.525.1916  **E** michaelrella@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Wednesday, July 30, 2025 2:58 PM
**To:** Rella, Michael <MichaelRella@dwt.com>; Gold, Barry <BarryGold@dwt.com>; Carvajal, Shanaye <ShanayeCarvajal@dwt.com>
**Cc:** James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: Meta - Subpoenas to Virtu

[EXTERNAL]

Michael:

That's fine, please get back to us early next week on whether Virtu will produce.

Since you mention it, though, your reference to "sanctionable" actions is inappropriate and counterproductive. The Trustee has been acting in good faith throughout this process, and has provided you all the information your team has asked for, while your team has provided little in return. We've been asking for months now simply whether Virtu will produce and if so, what.

We do not have a transcript of our meet and confers, but my detailed notes of the May 30 and July 25 calls confirm that Barry said on both calls that your team had not spoken with Virtu in any detail about what records Virtu may have which are responsive to the document requests (presumably because you haven't been planning to produce voluntarily). He said on our May 30 call that your team had only had the "highest-level discussion" with Virtu, with "no specifics," because you were awaiting the meet and confer. He said again on July 26 that he had not spoken with the client about the requested trade data. All he said about Virtu's records on July 26 was a confirmation that Virtu *has* trading data. It is not

"demonstrably false," but actually demonstrably true, that you have not answered our basic questions, recopied from below, whether by email or on the May 30 or June 25 calls: "2) what data and/or documents does Virtu have which are responsive to the Trustee's five document requests, 3) does Virtu have records for all four tickers from the full date range specified in the supplemental instructions, 4) will you produce documents from all three Virtu entities listed in the Supplemental Instructions and are there any other applicable entities, 5) what will Virtu produce, and 6) on what timeframe." These questions are not a comprehensive list of everything the Trustee needs to know in order to agree on the scope of Virtu's production, but rather the questions were merely meant to prompt you and guide our discussion.

Also, we provided you the statutes, citations, and additional information about the Trustee's process as a courtesy. Your team could have investigated the relevant authorities yourselves, and/or raised questions about the subpoenas, at any time over the last four months. It's not the Trustee's obligation to endlessly defend these valid subpoenas to you or to conduct legal research for you. On the contrary, it's Virtu's obligation to respond to these valid subpoenas. If you believe relevant legal authorities justify a refusal to produce, you have been free to tell us that. Your June 26 Objections and Responses contain no citations to caselaw and only the barest reference to applicable rules.

In any event, you can provide any answers early next week, as part of a substantive discussion about a scope of production, or just let us know if Virtu will not comply.

David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com
***Admitted in New York and District of Columbia.***

---

**From:** Rella, Michael <MichaelRella@dwt.com>
**Sent:** Wednesday, July 30, 2025 12:55 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Gold, Barry <BarryGold@dwt.com>; Carvajal, Shanaye <ShanayeCarvajal@dwt.com>
**Cc:** James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** RE: Meta - Subpoenas to Virtu

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

Thanks for your email.

As you know, Barry Gold, who has been leading the charge on our side on the subpoenas, is retiring tomorrow, so we're going through a transition on our end. That said, your assertions that we have "not spoken with [our] client about the document requests in any detail" and have shown an "unwillingness to meaningfully engage with the requests over those four months" are demonstrably false, as reflected by the record, including our significant back and forth with you and your team members both via email and telephone calls.

As you noted below, we asked you for additional information last week about the subpoenas and you just provided the information – including attachments and citations to numerous statutes and cases – yesterday evening. Of course, we need time to review the information you provided and further discuss with our client. I'm leaving early today and am out of pocket tomorrow to attend services for a close family friend who passed away, but we plan on connecting with our client on the new information you provided by Friday and then responding to you early next week with our final position. Any motion to compel before the meet and confer process concludes would violate the applicable rules and be sanctionable. To that end, we continue to reserve all rights.

Best,


**Michael Rella**   He/Him/His
**Partner,** Davis Wright Tremaine LLP

**P** 212.880.3973  **C** 914.525.1916  **E** michaelrella@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, July 29, 2025 6:00 PM
**To:** Gold, Barry <BarryGold@dwt.com>; Carvajal, Shanaye <ShanayeCarvajal@dwt.com>; Rella, Michael <MichaelRella@dwt.com>
**Cc:** James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: Meta - Subpoenas to Virtu

[EXTERNAL]

---

Barry:

On our Friday meet and confer, you pressed us for further information about the subpoenas and the Trustee's investigation, which we provided in the spirit of good faith and cooperation, but you did not offer any substantive information about whether Virtu will comply with the subpoenas. Like our prior call two months ago on May 30, you said you had not spoken with your client about the document requests in any detail. That is despite the plain language of the subpoenas, the fact that we conferred about this two months ago, and my July 17 email below which repeated the Trustee's questions in advance of our call. You received the initial subpoenas on March 18, four months ago, and we served the revised subpoenas on June 12, six weeks ago. Your unwillingness to meaningfully engage with the requests over those four months, the contents of your Responses and Objections, and the objections you have raised on our calls, lead us to conclude that Virtu will not produce in response to the subpoenas. If you change your mind, please let us know by this Thursday, as discussed. We plan to promptly move to compel Virtu's compliance.

To summarize what we told you by phone on Friday, in the interest of full transparency and good faith: the Trustee has received productions of trade data from multiple other subpoena recipients. We will cite those to the Court in contrast with Virtu's refusals. None of those parties' materials overlap with what we are seeking from Virtu, so there is no other party that can narrow or satisfy Virtu's production obligation. We would like Virtu to produce trade data, which should not be burdensome and would at least partly satisfy the document requests. Whatever statements the Trustee has made in the past regarding trading of Meta Materials shares do not diminish the Trustee's need for discovery from Virtu, because we are seeking non-public information from you. We served two subpoenas because the Rule 2004 subpoena also calls for a custodian of records deposition, in addition to the identical document requests in both subpoenas. You have not answered any of our questions about Virtu's records, so we will include the deposition request in a motion to compel. The Trustee is investigating potential wrongdoing related to trading of Meta securities, but we have not made any decisions on which parties to sue, if any. The Trustee is investigating possible manipulation of the debtor's stock which may have affected its financial condition. Meta's stock price plummeted over time, which may be due in part to spoofing and shorting, which is what the Trustee is investigating.

The subpoenas are based on a number of statutes and rules: FRCP 45; Fed. R. Bankr. P. 2004, 6009, and 9016; Local Rule 2004 of the U.S. Bankruptcy Court for D. Nev.; and 11 U.S.C. 704, at a minimum. Rule 2004 applies to "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate," and Section 704 states that the Trustee "shall . . . Investigate the financial affairs of the debtor." "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate." *In re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015). There is ample additional caselaw from the Bankr. D. Nev. about these statutes and rules.

Courts have endorsed subpoenas in cases with similar fact patterns. See the attached order from *In re: Sorrento Therapeutics, Inc*., No. 23-90085 (Bankr. S.D. Tex. Apr. 4, 2023), Dkt. No. 334. The decision granted the attached Debtors' Emergency Motion from that case, Dkt. No. 330. The motion concerned documents requested from 25 brokers, dealers, and other firms (Exhibit A to the motion). The motion includes citation to caselaw about the broad scope of a Rule 2004 examination. Page 6 of 12. See also *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626-28 (Bankr. D. Del. 2016), and the authorities cited therein. In *Millenium*, the court (like others) described Rule 2004 discovery as a permissible "fishing expedition," which speaks to this discovery mechanism as a unique tool for the Trustee to investigate on the debtor's behalf: "Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a 'fishing expedition' and 'an inquisition.' Indeed, a Rule 2004 examination is generally not available once an adversary proceeding or contested matter has been commenced; at that point, discovery is made pursuant to the Federal Rules of Bankruptcy Procedure." 562 B.R. at 626 (internal citations and certain quotations omitted). There is ample additional caselaw stating that the scope of examination under Rule 2004 is broad, broader than under the FRCP, and the investigatory powers extend to third parties with any information relevant to the debtor's financial affairs. There are many other examples of Rule 2004 discovery being granted for pre-litigation discovery in bankruptcies.

Your edits to the protective order are fine with us. I accepted all the edits and made two further edits--I changed "proceedings" to singular in the first line and deleted "outside" in paragraph 5(a), "the Trustee's counsel of record in this Action," since the Trustee isn't an entity and doesn't have in-house counsel. Clean version attached. Let us know whose signature we should use for DWT. If you have

nothing further we'll get this on file. Whether Virtu produces voluntarily or in response to a court order, it will be useful to have this on file.

Best,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com
***Admitted in New York and District of Columbia.***

---

**From:** Gold, Barry <BarryGold@dwt.com>
**Sent:** Monday, July 21, 2025 2:07 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** RE: Meta - Subpoenas to Virtu

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David:

How does your schedule look for a meet and confer Friday after 11:30? Also, attached for your review is the draft Stipulated Protective Order with our comments.

Best regards.

**Barry Gold**  He/Him/His
**Of Counsel,** Davis Wright Tremaine LLP
**P** 212.880.3978  **C** 347.949.2054  **E** barrygold@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
DWT.COM

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, July 17, 2025 3:28 PM
**To:** Gold, Barry <BarryGold@dwt.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Ryan R. C. Hicks

<rhicks@schneiderwallace.com>; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: Meta - Subpoenas to Virtu

[EXTERNAL]

Barry:

Sorry for the delay.  I can confer next Tuesday or any day thereafter next week.  I could speak Tuesday morning until noon EST or between 1 and 3 EST.  Wednesday I'm free any time until 4 pm EST.  Please let us know your available time windows and I'll coordinate on our end.

Does your willingness to confer mean that Virtu is willing to produce documents in response to the subpoena?  If so, we'd like to know on or before the call, at a minimum:  1) have you discussed Virtu's records and a production with them, 2) what data and/or documents does Virtu have which are responsive to the Trustee's five document requests, 3) does Virtu have records for all four tickers from the full date range specified in the supplemental instructions, 4) will you produce documents from all three Virtu entities listed in the Supplemental Instructions and are there any other applicable entities, 5) what will Virtu produce, and 6) on what timeframe.  When we conferred previously on May 30, you said you hadn't discussed such specifics with your client.  We assume that at least some of the information responsive to the subpoenas will take the form of data in spreadsheets, which we expect would not be hard to generate from Virtu's computer systems.

If Virtu will not agree to produce, we can discuss that discovery dispute on our call next week, pursuant to Bankr. D. Nev. Local Rule 7037.  If Virtu won't produce the Trustee will promptly move to compel Virtu's production in the bankruptcy court.

I haven't seen your comments/edits to the revised draft of the protective order.  Please send those promptly.  I sent you the revised draft, responding to your June 6 comments, last month.

Best,
David



**SCHNEIDER² WALLACE
COTTRELL KIM LLP**

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com
***Admitted in New York and District of Columbia.***

**From:** Gold, Barry <BarryGold@dwt.com>
**Sent:** Thursday, July 10, 2025 8:06 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>; Clay Brust <cbrust@rssblaw.com>; Ryan R. C. Hicks

<rhicks@schneiderwallace.com>; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: Meta - Subpoenas to Virtu

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David:

Please give us some times next week you are free to meet and confer. I should be able to send you the draft Protective Order with our comments later today. Thanks.

Barry

Sent from my iPhone

> On Jul 3, 2025, at 2:44 PM, David D. Burnett <dburnett@schneiderwallace.com> wrote:

**[EXTERNAL]**

---

Mr. Gold:

We received Virtu's responses and objections to the Trustee's subpoenas. We are confused by your document, however, and find it unhelpful. The takeaway point we need to know is, will Virtu produce any materials in response to the subpoenas? Your document repeatedly refers to production "to the extent Virtu is required to produce" and "if Virtu is required to produce." Virtu is required to produce in response to these valid subpoenas, so in our view your statements should not be conditional. Do you mean "if Virtu is required to produce" by the Court in response to a motion to compel? I've not seen subpoena objections phrased the way you have. At the end of the document you write that "If Virtu has possession, custody, or control of non-privileged documents responsive to [the] requests, it is withholding them at this time on the basis of these objections." Is that a catchall statement that Virtu is unwilling to produce any documents? Also, given the language of this sentence, have you done any investigation of Virtu's records to determine what responsive information it has, including documents and data?

If Virtu is open to producing documents as required by the subpoenas, let's set up a time to confer. If Virtu refuses to produce, please confirm that so we can consider our options, including possibly moving to compel.

You asked me to resend the draft protective order last week, two days before you served the R&Os, so you could give comments. Please send us any comments or edits, though if Virtu is refusing to produce, the protective order may be moot for the moment.

David

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:      (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Gold, Barry <BarryGold@dwt.com>
**Sent:** Thursday, June 26, 2025 4:04 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** Rella, Michael <MichaelRella@dwt.com>
**Subject:** Meta - Subpoenas to Virtu

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David:

Attached are Virtu's Objections and Responses and to the second Subpoenas.

Best regards.

<image001.png> **Barry Gold**   He/Him/His
**Of Counsel | Davis Wright Tremaine LLP**
**P** 212.880.3978  **C** 347.949.2054  **E** barrygold@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

DWT.COM        <image002.png>

<virtu- meta materials - objections and responses to second subpoenas.pdf>

Ryan J. Works (NSBN 9224)
Jimmy F. Dahu (NSBN 17061)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
jdahu@mcdonaldcarano.com

*Attorneys for Non-Party Citadel Securities LLC*

Michael R. Hogue, Esq. (NSBN 12400)
10845 Griffith Peak Drive, Suite 600
GREENBERG TRAURIG, LLP
Las Vegas, NV 89135
Telephone: (702) 938-6909
Email: hoguem@gtlaw.com

*Attorneys for Non-Party Anson Funds Management LP*

Jarrod L. Rickard, Esq. (NSBN 10203)
SEMENZA RICKARD LAW
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
Email: jlr@semenzarickard.com

*Attorneys for Non-Party Virtu Financial, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No.: 24-50792-hlb |
| | Chapter 7 |
| META MATERIALS, INC., | |
| | **DECLARATION OF SYLVIA E. SIMSON REGARDING MEET AND CONFER EFFORTS OF NON-PARTY ANSON FUNDS MANAGEMENT LP PURSUANT TO LOCAL RULE 7037(A) OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA** |
| Debtor. | |
| | **Hearing Date: TBD** |
| | **Hearing Time: TBD** |

I, Sylvia E. Simson, declare as follows:

1.      I am a shareholder at the law firm of Greenberg Traurig, LLP and am a member in

4928-5588-8731.1

good standing of the State Bars of New York and Texas. I am counsel for Non-Party Anson Funds Management LP ("Anson Funds").

2. My application for *pro hac vice* admission before this Court is forthcoming.

3. I have personal knowledge of the facts set forth below and, if called as a witness, could and would competently testify as to those facts.

4. I submit this declaration to verify the parties' meet and confer efforts under Local Rule 7037(a) of the United States Bankruptcy Court for the District of Nevada ("Rule 7037") prior to filing of Non-Parties' Anson Funds, Citadel Securities LLC, and Virtu Financial, LLC's Joint Motion to Quash and/or for a Protective Order.

5. On April 7, 2025, I served upon counsel for Trustee Christina Lovato ("the Trustee"), Anson Funds' Responses and Objections to the two Third-Party Subpoenas served on Anson Funds on March 20, 2025 (the "March Subpoenas"). A true and correct copy of this correspondence is attached as Exhibit A.

6. On Monday, May 5, 2025, counsel for the Trustee contacted me to schedule a meet and confer to discuss Anson Funds' Responses and Objections to the March Subpoenas. That same day, I responded that my colleagues and I would be available for a meet and confer on Thursday, May 8, 2025, or Friday, May 9, 2025 and requested, prior to the meet and confer, that the Trustee's counsel provide case law and/or authorities which supported the subpoena requests. A true and correct copy of this correspondence is attached as Exhibit B.

7. By Friday, May 9, 2025, the Trustee's counsel did not confirm the timing for a meet and confer, nor did they provide any cases or other authorities supporting the March Subpoenas. I therefore emailed the Trustee's counsel asking if any authority was forthcoming and for their renewed availability for a call. *See* Exhibit B. Trustee's counsel confirmed that "schedules didn't work out on [their] end" and that they would circle back on Anson Funds' request and then "schedule the meet and confer at that point." *Id.*

8. Two weeks later, on Friday, May 23, 2025, the Trustee's counsel responded to my May 9, 2025 message, providing generic caselaw and authorities which failed to support the Trustee's position as to the March Subpoenas and requesting to reschedule the meet and confer to a later date.

A true and correct copy of this correspondence is attached as <u>Exhibit C</u>.

9.     On Tuesday, June 10, 2025, both I and my partner Alan Brody met and conferred with the Trustee's counsel via Microsoft Teams, explaining in detail Anson Funds' objections to the March Subpoenas.  Following this meet and confer, on Thursday, June 12, 2025, the Trustee sent us additional distinguishable caselaw and drafts of two new subpoenas directed towards Anson Funds. A true and correct copy of this correspondence is attached as <u>Exhibit D</u>.

10.     On June 24, 2025, I informed the Trustee's counsel that Anson Funds would accept service of the proposed new subpoenas on two conditions: (1) that Anson Funds have the same amount of time to respond with its position as to these new subpoenas as it would in the ordinary course (14 days) and (2) that the new subpoenas would serve to replace and moot the March Subpoenas (and necessarily be replacement subpoenas, not additional subpoenas).  The Trustee's counsel accepted these conditions, and the June Subpoenas were emailed to me to accept service on behalf of Anson Funds on June 27, 2025.  A true and correct copy of this correspondence is attached as <u>Exhibit E</u>.

11.     On July 11, 2025, I caused to be served upon the Trustee's counsel Anson Funds' Responses and Objections to the June Subpoenas.  A true and correct copy of this correspondence is attached as <u>Exhibit F</u>.

12.     On August 1, 2025, both I and my partner Alan Brody met and conferred with the Trustee's counsel via Microsoft Teams for a second time.  During this conference we inquired as to whether the Trustee had any new information or authority they wished to share with us but were not made aware of any new information or authority; via email on August 3, 2024 Trustee's counsel reiterated its reliance on the same distinguishable case law.  A true and correct copy of this correspondence is attached as <u>Exhibit G</u>.  We were unable to reach an agreement with the Trustee that resolved Anson Funds' concerns regarding the documents requested by the June Subpoenas and advised Trustee's counsel of this on August 5, 2025.

13.     Based on the foregoing, Non-Party Anson Funds has made a good faith attempt to meet and confer with the Trustee to resolve its objections to the June Subpoenas and their predecessor March Subpoenas.

1    Executed on this 5th day of August, 2025, in New York, New York.

2

3                                              /s/ Sylvia E. Simson
                                               Sylvie E. Simson
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

| **From:** | Simson, Sylvia (Shld-NY-LT) |
|---|---|
| **To:** | CBrust@rssblaw.com |
| **Cc:** | Brody, Alan (Shld-NJ-Bky) |
| **Subject:** | In re Meta Materials - Objections to Subpoenas |
| **Date:** | Monday, April 7, 2025 2:16:26 PM |
| **Attachments:** | 2025.04.07 In re Meta Materials Objections to Subpoenas.pdf |
| | image001.png |

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

**In re**

**META MATERIALS, INC.,**

**Debtor.**

Case No. 24-50792-hlb
(Chapter 7)

To:     Clayton P. Brust, Esq.
        Robison, Sharp, Sullivan and Brust
        71 Washington Street
        Reno, Nevada 89503
        *Counsel for Chapter 7 Trustee Christina Lovato*

### NON-PARTY ANSON FUNDS MANAGEMENT LP'S
### OBJECTIONS TO SUBPOENAS FOR RULE 2004 EXAMINATION

Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, which incorporates Federal Rule of Civil Procedure 45, non-party Anson Funds Management LP ("Anson Funds"), misidentified as Anson Funds USA, hereby provides its Objections (the "Objections") to the March 20, 2025 Subpoenas (the "Subpoenas") served by Chapter 7 Trustee Christina Lovato (the "Trustee") in connection with the above captioned bankruptcy case (the "Bankruptcy") of Meta Materials, Inc. ("Meta Materials"). These Objections are made to both the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (the "First Subpoena") and the Subpoena for Rule 2004 Examination (the "Second Subpoena"). Unless otherwise indicated, every Objection herein is made to both the First Subpoena and the Second Subpoena. Pursuant to and subject to these Objections, Anson Funds **will not** produce any documents at the address indicated in both the First Subpoena and Second Subpoena on April 8, 2025, and **will not** produce any witness to provide testimony on April 8, 2025, pursuant to the Second Subpoena.  Anson Funds does remain available to meet and confer with the Trustee.

1

Anson Funds' Objections to the Subpoenas are based on the best information currently available to Anson Funds. Anson Funds reserves the right to amend, supplement, correct, or clarify its Objections in accordance with the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any applicable court order. In doing so, Anson Funds assumes no obligation not required by the Federal or Local Rules to supplement Anson Funds' Objections to the Requests.

## **GENERAL OBJECTIONS**

Each of the foregoing General Objections is incorporated into each and every Specific Objection set forth below. Notwithstanding the Specific Objection to any individual request in either of the Subpoenas, Anson Funds does not waive any of its General Objections. Anson Funds may repeat a General Objection below for emphasis or for some other reason, and the failure to repeat a General Objection shall not be construed as a waiver of any General Objection to any of the requests in either of the Subpoenas. Below, Anson Funds will refer to the request in both of the Subpoenas as the "Subpoena Requests."

1. Anson Funds objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, which permits examination which "relate[s] only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b).

2. Anson Funds objects to the Subpoenas to the extent they were pursued and/or served *ex parte* and without any notice to or opportunity by Anson Funds to object to their issuance, including before the Court overseeing the Bankruptcy.

3. Anson Funds objects to the Subpoena Requests to the extent they seek information irrelevant to the Bankruptcy, are not proportional to the needs of the Bankruptcy, are not reasonably calculated to lead to the discovery of admissible evidence, or are otherwise beyond the scope of

permissible discovery under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, applicable case law, and/or any other source of applicable law.

4.     Anson Funds objects to the Subpoena Requests as they appear to be targeted at seeking discovery beyond the administration of the estate of Meta Materials, included but not limited to seeking information relating to non-party Anson Funds, its business, and Anson Funds' business with further non-debtor third parties.  The Trustee has no basis, whether under Bankruptcy Rule 2004 or otherwise, on which to seek the information it is seeking through the Subpoena Requests.

5.     Anson Funds objects to the Subpoena Requests to the extent they could be interpreted to call for the disclosure of protected information and/or communications, including, but not limited to, (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

6.     Anson Funds objects to the Subpoena Requests to the extent they seek to end-run compliance with any applicable and/or official process, procedure, law, or rule on obtaining ex-U.S. discovery.

7.     Anson Funds objects to the Subpoena Requests to the extent that they seek (a) information that is protected from disclosure by law and/or confidentiality obligations that Anson Funds has to non-parties, its employees, its clients, or others or (b) discovery of sensitive and non-public personal, business, or proprietary information that concerns such other non-parties and is

irrelevant to the Bankruptcy of Meta Materials. Anson Funds will not violate any such confidentiality obligations to non-parties in responding to the Subpoenas.

8.       Anson Funds objects to the Subpoena Requests to the extent they imply or suggest that Anson Funds bears any responsibility or liability, in whole or in part, for Meta Materials pursuing its Bankruptcy.

9.       Anson Funds objects to the Subpoena Requests to the extent that they are vague, overbroad, harassing, oppressive, and/or unduly burdensome and/or where compliance with any or all of the Subpoena Requests would be unreasonably difficult, prohibitively expensive, and/or unduly time-consuming pursuant to the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

10.      Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to produce information or documents not within Anson Funds' possession, custody, or control.

11.      Anson Funds objects to the Subpoena Requests to the extent that they purport to seek discovery from any entity or individual other than Anson Funds. The Objections herein are made only on behalf of Anson Funds.

12.      Anson Funds objects to the Subpoena Requests to the extent they seek to impose obligations on Anson Funds beyond those imposed under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

13. Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to provide information that cannot be obtained by a reasonably diligent investigation and search.

14. Anson Funds objects to the Subpoena Requests to the extent that they assume facts that do not exist or are incorrect, assume legal conclusions, or relate to the construction of applicable law. Any statement herein does not indicate and should not be construed as an agreement by Anson Funds as to the truth or accuracy of any of the Trustee's characterizations of fact or law, the factual expressions or assumptions contained in any of the Subpoena Requests, the propriety of the Subpoena Requests, or the relevance or admissibility of any Subpoena Requests or documents produced in response thereto, if any.

15. Anson Funds objects to the four-year "time frame" identified in the Subpoenas as overbroad, disproportionate to the administration of the Meta Materials estate, and unduly burdensome on Anson Funds, a non-party.

## OBJECTIONS TO THE SUBPOENAS' DEFINITIONS

16. Anson Funds objects to the definitions of "Acceptable Records", "ESI" and "electronically stored information" as overbroad, vague, and ambiguous, and insofar as they seek to impose obligations on Anson Funds inconsistent with, greater than, or not permitted under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, or any other source of applicable law. Anson Funds further objects to all of these definitions to the extent they call for the disclosure of (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or

communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

## OBJECTIONS TO THE SUBPOENAS' INSTRUCTIONS

17.     Anson Funds objects to the instructions of both Subpoenas on the grounds that they seek to impose upon Anson Funds duties that are greater and more burdensome than those imposed by the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any other sources of applicable law. Anson Funds object to the instructions of both Subpoenas which direct Anson Funds to produce "information in the possession, custody, or control of any of Your attorney's, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships, parents or subsidiaries, and persons under their control" as overbroad and unduly burdensome for Anson Funds, a non-party.

18.     Anson Funds objects to Instruction 1 of both Subpoenas on the grounds that the instructions to produce "attachments, enclosures, memoranda, and cover letters" as well as an explanation for any documents which cannot be produced are vague, ambiguous, and unduly burdensome for Anson Funds, a non-party.

19.     Anson Funds objects to Instruction 2 of both Subpoenas on the grounds that the instructions to produce documents "without abbreviation or redaction" calls for Anson Funds to produce privileged or otherwise protected information or information that may be sensitive, proprietary, and/or confidential to other non-parties.

20.     Anson Funds objects to Instruction 10 of both Subpoenas on the grounds that the reference to the "ESI Protocol agreed to by the parties and/or ordered by the court" presumes that Anson Funds is a party to Meta Materials' Bankruptcy or that it has agreed to any ESI Protocol. Anson Funds is a non-party and has not agreed to any ESI Protocol.

21.     Anson Funds objects to Instruction 11 of both Subpoenas on the grounds that they are incomplete and ambiguous, abruptly cutting off midsentence after the word "supplementary." As such, Anson Funds is unable to interpret these instructions.  Anson Funds also will not agree to be subject to continuing obligations under the Subpoenas as a non-party.

## SPECIFIC OBJECTIONS TO REQUESTS FOR PRODUCTION

The General Objections are incorporated into each and every Specific Objection as if set forth fully therein. Because the requests for production in the First Subpoena and Second Subpoena are substantively identical, the below Specific Objections apply equally to the Requests in both Subpoenas.

## REQUEST NO. 1:

All records of order routing instructions for shares Meta and/or MMTLP received by Broker from a customer, such as the relevant security, quantity, or price, through an electronic interface or any other means of receiving such instructions from all records of responses sent to a customer related to Broker executing such instructions.

## OBJECTION TO REQUEST NO. 1:

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "Broker," "customer," "electronic interface," and "relevant security, quantity, or price."  Anson Funds further objects to this Request as it calls for the production of materials outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks documents which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b). The documents sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to

the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party. Anson Funds further objects to this Request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004.

**REQUEST NO. 2:**

All messages relating to the routing of orders for shares Meta and/or MMTLP of any type using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, routed to an exchange or off-exchange trading venue on behalf of a customer of Broker and received from an exchange or off-exchange trading venue on behalf of customers of Broker.

**OBJECT TO REQUEST NO. 2:**

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "FIX," "binary protocol," "Broker," "customers of Broker," and "exchange or off-exchange trading venue." Anson Funds further objects to this Request as it calls for the production of materials outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks documents which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b). The messages sought by this Request bears no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party. Anson Funds further objects to this Request to the extent it calls on Anson

Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004.

**REQUEST NO. 3:**

All communications electronically stored in the original form captured, including transactions records and emails, related to locating, securing, borrowing, and delivering shares of Meta and/or MMTLP, including records of instances where Broker failed to deliver (FTD) Meta and/or MMTLP and records of how Broker rectified the outstanding FTDs.

**OBJECTION TO REQUEST NO. 3:**

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "transactions records," "Broker," "failed to deliver," and "rectified." Anson Funds further objects to this Request as it calls for the production of materials outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks communications which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b). The communications sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party. Anson Funds further objects to this Request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004. Anson Funds further objects to this Request to the extent it presumes that there were instances that Anson Funds "failed to deliver" shares of certain stocks.

**REQUEST NO. 4:**

All records of position data representing both Broker's net position as well as the net position of each of Broker's customers in Meta and/or MMTLP, including tallies of shares sold short that were located and/or successfully borrowed as well as shares that were sold short that were not located and/or successfully borrowed (e.g. the position corresponding to naked short sales), produced at the frequency such data was recorded).

**OBJECTION TO REQUEST NO. 4:**

In addition to its General Objections, Anson Funds objects to the use of undefined and ambiguous language in this Request, including the terms "position data," "Broker," "customers," "successfully borrowed," and "naked short sales." Anson Funds further objects to this Request as it calls for the production of documents outside the scope of Bankruptcy Rule 2004. In particular, this Request seeks documents which do not relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" and do not pertain to "any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b). The documents sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request as overbroad, harassing, and unduly burdensome on Anson Funds, a non-party. Anson Funds further objects to this request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information outside the scope of Bankruptcy Rule 2004.

\*\*\*

Subject to and without waiving its General Objections and Specific Objections, and as set forth above, Anson Funds responds that it is willing to meet and confer with the Trustee.

Dated: April 7, 2025

GREENBERG TRAURIG, LLP

*/s/ Sylvia E. Simson*

_____

Sylvia E. Simson
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9275
Sylvia.Simson@gtlaw.com

*/s/ Alan Brody*

_____

Alan Brody
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932-0677
Tel: (973) 443-3543
BrodyA@gtlaw.com

*Attorneys for Anson Funds Management LP*

# Exhibit B

| | |
|---|---|
| **From:** | David D. Burnett |
| **To:** | Simson, Sylvia (Shld-NY-LT); Brody, Alan (Shld-NJ-Bky) |
| **Cc:** | Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com |
| **Subject:** | Re: In re Meta Materials - Objections to Subpoenas |
| **Date:** | Friday, May 9, 2025 5:21:14 PM |
| **Attachments:** | image002.png |
| | image001.png |
| | image684765.png |

Sylvia:

Yes, schedules didn't work out on our end for a call this week.  We'll circle back early next week with a full response to your request, and we can schedule the meet and confer at that point.

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:    (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*\*Admitted in New York and District of Columbia.*

**From:** Sylvia.Simson@gtlaw.com
**Sent:** Friday, May 09, 2025 11:17 AM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have not received the authorities requested to be provided by the Trustee in support of its position, so we assume the call is going to be rescheduled until those are sent.  Please advise as to when we can expect to hear from the Trustee with those authorities and your corresponding availability thereafter for a meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Simson, Sylvia (Shld-NY-LT)
**Sent:** Wednesday, May 7, 2025 11:37 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

David,

Throughout the subpoena, Anson Funds made clear it objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, that bears no nexus to the administration of the debtor's estate, and is irrelevant to the conduct, property, liabilities, or financial condition of the debtor. If the Trustee has specific case law/authorities involving trading transactions by non-debtor parties that it believes supports the subpoena requests, please provide them in advance of any call and by Thursday COB if we are having a call on Friday. This request is not intended to limit, waive, or alter any of Anson Funds' other valid objections but so that we understand the Trustee's position in advance of any meet and confer. Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, May 6, 2025 5:19 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky)

&lt;BrodyA@gtlaw.com&gt;
**Cc:** Ryan R. C. Hicks &lt;rhicks@schneiderwallace.com&gt;; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Friday works for me any time during your time window, but I'll let my colleagues chime in on their availability as well.  As for authorities that support the Trustee's position, do you mean authority supporting the Trustee's responses to all of the objections raised in your April 7 Objections to Subpoenas document?  I anticipate discussing the parties' positions on our call.  Or are you speaking specifically about authority for the Trustee's grounds for serving the subpoenas?

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:   (800) 689-0024
Direct:      (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

---

**From:** Sylvia.Simson@gtlaw.com
**Sent:** Monday, May 05, 2025 10:32 PM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We are willing to have a call regarding our objections and are available Thursday afternoon between 2 and 5 EST and Friday between 10:30 and 2 EST.  However, before any call, please identify what

authorities the Trustee has that support the Trustee's position so we can review them in advance of the call.  Please note Anson is not committing to anything by virtue of us agreeing to a call and that Anson reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

**\*EXTERNAL TO GT\***

Sylvia:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Anson Funds in this case.  We're contacting you on behalf of the Trustee.  My colleagues and I, copied, would like to schedule a call to discuss your objections.  Please let us know your availability later this week.  We'd like to discuss the requests and map out a plan for Anson to produce responsive materials, starting with trade data.  We believe the parties should be able to find common ground.

In the interim, to address your objections about producing confidential information:  there isn't an applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

Begin forwarded message:



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:      (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***
**From:** <Sylvia.Simson@gtlaw.com>
**Subject: In re Meta Materials - Objections to Subpoenas**
**Date:** April 7, 2025 at 11:16:26 AM PDT
**To:** <CBrust@rssblaw.com>
**Cc:** <BrodyA@gtlaw.com>

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# Exhibit C

| From: | David D. Burnett |
|---|---|
| To: | Simson, Sylvia (Shld-NY-LT); Brody, Alan (Shld-NJ-Bky) |
| Cc: | Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com; James Wes Christian; Jeffrey L. Hartman |
| Subject: | Re: In re Meta Materials - Objections to Subpoenas |
| Date: | Friday, May 23, 2025 3:26:15 PM |
| Attachments: | image002.png |
| | image001.png |
| | image510094.png |
| | In re Meta Materials Anson Funds protective order -- May 23 draft.docx |

Sylvia:

Please let us know your availability for a meet and confer next week about the Anson subpoenas.  I've copied my colleagues who also represent the trustee.

I've attached a proposed protective order between the parties, in anticipation of Anson's future productions after we've conferred.  We've used the same template with all subpoena recipients, and the Court so-ordered a nearly-identical one yesterday.

You asked us for substantive responses to your objections to the subpoenas before agreeing to a meet and confer.  That does not bode well for the likelihood that Anson will comply with the subpoenas.  Nonetheless, as requested:

The two subpoenas were issued pursuant to Fed. R. Civ. P. 45 and Fed. R. Bankr. P. 9016, as stated on their cover pages.  Rule 9016 allows for service of subpoenas in bankruptcy proceedings, stating that "Fed. R. Civ. P. 45 applies in a bankruptcy case." Local Rule 2004 of the U.S. Bankruptcy Court for the District of Nevada provides as follows:  "(c) Production of documents. Production of documents[may] be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016."

Fed. R. Bankr. P. 2004, Examinations, provides that "On a party in interest's motion, the court may order the examination of any entity," and such examination can involve "any matter that may affect the administration of the debtor's estate."  Section (c) of Rule 2004 provides as follows:  "Compelling Attendance and the Production of Documents or Electronically Stored Information. Regardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information. An attorney may issue and sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court."

Fed. R. Bankr. P. 6009 is the "Right of the Trustee or Debtor in Possession to Prosecute and Defend Proceedings."  It states that "With or without court approval, the trustee or

debtor in possession may: . . . (b) commence and prosecute in any tribunal an action or proceeding on the estate's behalf."

Authorities in this district explain these rules further: "Outside the usual discovery tools available in federal civil practice, Bankruptcy Rule 2004 also allows any party in interest to seek a court order permitting the examination of any entity. To assist in such examinations or production of records, Bankruptcy Rule 9016 provides for the issuance of subpoenas under Civil Rule 45. Like compelled discovery and testimony of third parties in federal civil practice, the usual protections and limitations may be sought." *Cash Cloud, Inc. v. Lux Vending, LLC (In re Cash Cloud, Inc.)*, 2024 Bankr. LEXIS 2159, *15 (Bankr. D. Nev. Sept. 10, 2024). In *In re Quicker Liquor LLC*, 2022 Bankr. LEXIS 1846, *5 (Bankr. D. Nev. June 22, 2022), the court explained that

> Any party in interest may request permission to conduct a 2004 Examination. Fed.R.Bankr.P. 2004(a). The examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed.R.Bankr.P. 2004(b). The "..production of documents or electronically stored information ...may be compelled as provided in Rule 9016 for the attendance of a witness as a hearing or trial." Fed.R.Bankr.P. 2004(c). Bankruptcy Rule 9016 provides for the attendance of witnesses to be compelled by issuance of a subpoena under Civil Rule 45. See Fed.R.Bankr.P. 9016. In addition to compelling a witness to give testimony, subpoenas issued under Civil Rule 45 also may compel the production of documents and electronically stored information . . . .

Also, 11 U.S. Code § 704, part of the Chapter 7 bankruptcy statutes, sets forth the "Duties of trustee." "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate." *In re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015). Section 704 provides in relevant part that "(a) The trustee *shall* . . . (4) investigate the financial affairs of the debtor" (emphasis added). Those financial affairs include, here, the Trustee's investigation of trading in the debtor's stock, which may have affected the debtor's financial affairs in various ways. "The role of counsel for the trustee . . . is to perform those tasks [under 11 U.S. Code § 704] that require special expertise beyond that expected of an ordinary trustee." *In re Virissimo*, 354 B.R. 284, 290.

Christina Lovato, the Trustee in this bankruptcy action, *In re Meta Materials Inc*., Case No.: 24-50792-hlb (Bankr. D. Nev.), acting through counsel, has chosen to issue subpoenas to many parties related to the trading of Meta securities (including the tickers MMAT, TRCH, and MMTLP). We believe that Anson traded Meta securities during the

time period listed in the subpoenas. The subpoenas were issued as part of the Trustee's ongoing investigations into the financial affairs of the debtor. The decisionmaking behind which parties received subpoenas and why, including as it relates to the Anson subpoenas, is not something we can disclose given privilege and attorney work product concerns.

Best,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct:    (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*\*Admitted in New York and District of Columbia.*

---

**From:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>
**Sent:** Friday, May 9, 2025 11:17 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have not received the authorities requested to be provided by the Trustee in support of its position, so we assume the call is going to be rescheduled until those are sent. Please advise as to when we can expect to hear from the Trustee with those authorities and your corresponding availability thereafter for a meet and confer. Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017

T +1 212.801.9275
Sylvia.Simson@gtlaw.com | www.gtlaw.com | View GT Biography



---

**From:** Simson, Sylvia (Shld-NY-LT)
**Sent:** Wednesday, May 7, 2025 11:37 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

David,

Throughout the subpoena, Anson Funds made clear it objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, that bears no nexus to the administration of the debtor's estate, and is irrelevant to the conduct, property, liabilities, or financial condition of the debtor.  If the Trustee has specific case law/authorities involving trading transactions by non-debtor parties that it believes supports the subpoena requests, please provide them in advance of any call and by Thursday COB if we are having a call on Friday.  This request is not intended to limit, waive, or alter any of Anson Funds' other valid objections but so that we understand the Trustee's position in advance of any meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com | www.gtlaw.com | View GT Biography

---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, May 6, 2025 5:19 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Friday works for me any time during your time window, but I'll let my colleagues chime in on their availability as well. As for authorities that support the Trustee's position, do you mean authority supporting the Trustee's responses to all of the objections raised in your April 7 Objections to Subpoenas document? I anticipate discussing the parties' positions on our call. Or are you speaking specifically about authority for the Trustee's grounds for serving the subpoenas?

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** Sylvia.Simson@gtlaw.com
**Sent:** Monday, May 05, 2025 10:32 PM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We are willing to have a call regarding our objections and are available Thursday afternoon between 2 and 5 EST and Friday between 10:30 and 2 EST. However, before any call, please identify what authorities the Trustee has that support the Trustee's position so we can review them in advance of the call. Please note Anson is not committing to anything by virtue of us agreeing to a call and that Anson reserves all rights.

Thank you.

**Sylvia Simson**

Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com | www.gtlaw.com | View GT Biography



**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky)
<BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; Stephen W. Tountas
<STountas@kasowitz.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

**\*EXTERNAL TO GT\***

Sylvia:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas
to Anson Funds in this case. We're contacting you on behalf of the Trustee. My colleagues
and I, copied, would like to schedule a call to discuss your objections. Please let us know your
availability later this week. We'd like to discuss the requests and map out a plan for Anson to
produce responsive materials, starting with trade data. We believe the parties should be able
to find common ground.

In the interim, to address your objections about producing confidential information: there
isn't an applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

Begin forwarded message:



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:    (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** <Sylvia.Simson@gtlaw.com>
**Subject: In re Meta Materials - Objections to Subpoenas**
**Date:** April 7, 2025 at 11:16:26 AM PDT
**To:** <CBrust@rssblaw.com>
**Cc:** <BrodyA@gtlaw.com>

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

May 23, 2025 Trustee draft

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 24-50792-hlb |
| META MATERIALS INC., | (Chapter 7) |
| Debtor. | **[PROPOSED] STIPULATED PROTECTIVE ORDER BETWEEN TRUSTEE AND ANSON FUNDS MANAGEMENT LP** |
| | Hearing Date: N/A |
| | Hearing Time: N/A |

WHEREAS, in connection with the above-captioned litigation (the "Action"), Chapter 7 Trustee Christina Lovato ("Trustee") and third-party subpoena respondent Anson Funds Management LP ("Anson") (Trustee and Anson collectively referred to as "the Parties;" each individually a "Party") believe that certain information that is or will be encompassed by discovery demands by the Trustee involves the production or disclosure of trade secrets, confidential business information, other confidential information, personal identifying information, and/or other proprietary information;

WHEREAS, the Parties respectfully request that the Court enter this order ("Protective Order") limiting disclosure thereof in accordance with 11 U.S.C. 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, as applicable, pursuant to Bankruptcy Rules 2004, 7026, and 9014 and Rules 26(c) and 45 of the Federal Rules of Civil Procedure.

NOW, THEREFORE, to facilitate and expedite the production, exchange and treatment of material produced in discovery ("Discovery Material"), to facilitate the prompt resolution of disputes over confidentiality, and to protect Discovery Material that a Party seeks to maintain as confidential, it is hereby stipulated among the Parties and agreed, and, upon Court approval, it is hereby **ORDERED** that the following terms will govern any requests for and production of

May 23, 2025 Trustee draft

Discovery Material:

    1.     Each Party may designate as confidential for protection under this Protective Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a third party to whom the Party reasonably and in good faith believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). This includes, but is not limited to, documents, information, or materials that reveal:

        a.     Confidential trade secrets or proprietary business information;

        b.     Financial information (including tax return or bank account information; profit and loss reports or estimates; trading positions; transactional data; risk reports; liquidity reports; brokerage commission reports and summaries; commission agreements; employment contracts; documents reflecting dates, amounts and basis of renumeration of compensation; materials related to fees received for services provided; and materials related to employee compensation);

        c.     Material not previously disclosed to the public related to ownership or control of any non-public company;

        d.     Proprietary business information or communications, or other confidential research, development, or commercial information or communications;

        e.     Information, materials, or other documents reflecting non-public business or financial strategies, and/or confidential competitive information that, if disclosed, would result in competitive harm to the disclosing party;

        f.     Sensitive, non-public personal, client, or customer information concerning individuals or other entities, including information that would be considered personally identifiable information under any applicable law and/or protected from public disclosure under relevant securities laws to include, but not limited to, the Gramm-Leach-Bliley Act and Regulation S-P;

        g.     The identity and investment positions of persons or entities who have

May 23, 2025 Trustee draft

invested in, or hold an interest in, partnerships, trusts, funds, or other investment vehicles that are produced or otherwise disclosed during the course of this Action;

        h.    Information for which applicable law, regulation, policy, or other guidance or rule of any governmental authority—foreign or domestic—requires confidential treatment, to the extent any disclosure is permitted by law; or

        i.    Any other category of information given confidential status by the Court.

Nothing in this Paragraph 1 or in this Protective Order shall affect the right, if any, of any Party or witness to make any type of objection, claim, or other response to a discovery request of any type, including interrogatories, requests for admissions, requests for production of documents or questions at deposition, and to withhold production where appropriate.

2.    Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as "CONFIDENTIAL." The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

3.    With respect to documents, information, or material designated "CONFIDENTIAL" (collectively, "DESIGNATED MATERIAL"), subject to the provisions herein and unless otherwise stated, this Protective Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings, and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIAL shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

May 23, 2025 Trustee draft

4.     Protected Material may be designated "CONFIDENTIAL" at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL, or having applied an incorrect designation, may request destruction (or if electronic the elimination of that electronic record) of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then, as reasonably practicable, destroy all copies of the inadvertently or unintentionally produced Protected Material (or if electronic the elimination of that electronic record) and any documents, information or material derived from or based thereon. The recipient(s) shall not be liable for failing to treat as confidential DESIGNATED MATERIAL before it has been designated as such.

5.     "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, or upon order of the Court:

       a.     outside counsel of record in this Action;

       b.     employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

       c.     in-house counsel for the Parties who either have decision-making authority for the litigation of this Action or are assisting outside counsel in the litigation of this Action;

       d.     to the extent that disclosure is reasonably necessary for the Action, current officers, directors, or employees of the Parties who are assisting counsel in the Action;

       e.     outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that:

              (1)     the Parties' counsel, in good faith, requires the consultants' or experts' assistance in connection with the Action;

May 23, 2025 Trustee draft

(2)     before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto;

(3)     any part of any report created by such expert or consultant incorporating DESIGNATED MATERIAL in whole or in part shall be designated appropriately by the Party responsible for its creation; and

(4)     such experts or consultants may not use DESIGNATED MATERIAL for any purpose that does not relate directly to the Action (including without limitation other litigation and other work in their respective fields);

f.     independent litigation support services, including persons working for or as court reporters, interpreters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action;

g.     the Court and its personnel for *in camera* review with the specific understanding that all such DESIGNATED MATERIAL may not be filed on the public docket unless under seal, as discussed further herein;

h.     any mediator agreed upon by the Parties, and their personnel; and

i.     the author, addressee(s), or recipient(s) of the DESIGNATED MATERIAL, or any other natural person who counsel determines after reasonable inquiry generally would have had access to such information during his or her employment or who is specifically identified in the document or its accompanying metadata, provided, however, that (i) this disclosure is made for the purpose of advancing the disclosing Party's claims or defenses, and for no other purposes; and (ii) the person is not permitted to retain copies of the DESIGNATED MATERIAL. In the event any Party leaves the employ of any authorized person hereunder, any CONFIDENTIAL material shall be returned to legal counsel for the Party receiving the data.

6.     Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action, and shall not be used

May 23, 2025 Trustee draft

for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Protective Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries, or descriptions are DESIGNATED MATERIAL subject to all of the terms and conditions of this Protective Order.

7.      Nothing in this Protective Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity are inadvertently or unintentionally produced, such production shall not constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, or certify in writing to the producing Party that such documents, information, or other material have been destroyed as reasonably practicable.

8.      Nothing in this Protective Order shall affect any obligation a Party may have to produce a privilege log in accordance with Local Civil Rule 26.2.

9.      There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

10.      Nothing contained herein shall be construed to prejudice any Party's right to use

May 23, 2025 Trustee draft

any DESIGNATED MATERIAL in taking testimony at any deposition or hearing, provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel; (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

11.     Parties may, at the deposition or hearing or within sixty (60) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" pursuant to this Protective Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Protective Order. Until expiration of the 60-day period, the entire deposition or hearing transcript shall be treated as "CONFIDENTIAL."

12.     The Protective Order applies to pretrial discovery. Nothing in this Protective Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

13.     A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within five (5) days of receipt of the written request, the requesting Party may apply

May 23, 2025 Trustee draft

to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

14. Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Protective Order shall be provided with a copy of this Protective Order, shall be informed that he or she is subject to the terms and conditions of this Protective Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Protective Order. A copy of the acknowledgment form is attached as Appendix A.

15. If a Party is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," that Party must: (a) promptly notify in writing the designating Party, with such notification to include a copy of the subpoena or court order; (b) promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order, with such notification to include a copy of this Protective Order; and (c) cooperate with respect to all reasonable procedures sought to be pursued by the designating Party whose Protected Material may be affected. If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission. The designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this action to disobey a lawful directive from another court.

May 23, 2025 Trustee draft

16. **Sealing of DESIGNATED MATERIAL Filed with or Submitted to Court:** Unless otherwise agreed by the Producing Party, all DESIGNATED MATERIAL filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose CONFIDENTIAL Protected Material, shall be filed under seal in accordance with the Federal Rules of Civil Procedure, Bankruptcy Rules, Local Rules, and the practice rules of the Court. It shall be the burden of the Movant who desires to serve any document to establish with the Court the bona fide reason(s) for which the document(s) requested are to be sealed.

17. **Use of DESIGNATED MATERIAL in Open Court:** The limitations on disclosure in this Order shall not apply to any DESIGNATED MATERIAL offered or otherwise used by any Party at trial or any hearing held in open court except as provided in this paragraph. As part of any pretrial conference or any meet and confer regarding the use of exhibits in any evidentiary hearing, and where practicable at least 24 hours prior to the use of any DESIGNATED MATERIAL at trial or any hearing to be held in open court, counsel for any Party who desires to offer or use such DESIGNATED MATERIAL at trial or any hearing to be held in open court shall meet and confer in good faith with the Producing Party, together with any other Parties who have expressed interest in participating in such meet and confer, to discuss ways to redact the DESIGNATED MATERIAL so that the DESIGNATED MATERIAL may be offered or otherwise used by any Party, in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. If the Parties are unable to resolve a dispute related to such DESIGNATED MATERIAL, then the Producing Party bears the burden of requesting relief from the Court.

18. Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed as reasonably practicable. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

May 23, 2025 Trustee draft

19.     The failure to designate documents, information, or material in accordance with this Protective Order and the failure to object to a designation at a given time shall not preclude redesignation pursuant to paragraph 4 of this Protective Order or the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Protective Order and/or the production of documents, information, and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

20.     Any Party knowing or believing that any other party is in violation of, or intends to violate, this Protective Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement, may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Protective Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation or potential violation of this Protective Order.

21.     Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information, and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

22.     Nothing in this Protective Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

23.     Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Protective Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

24.     A Party shall not use any other Party's DESIGNATED MATERIAL for any purpose not directly related to this Action without the other Party's approval or as otherwise

May 23, 2025 Trustee draft

permitted by a cross-use agreement between the Parties.

25.     Nothing in this Protective Order shall (i) prevent a Party from disclosing its own information that it has designated as "CONFIDENTIAL," as it deems appropriate; (ii) impose any restrictions on the use or disclosure of information obtained other than through discovery in this matter; or (iii) in any way restrict the ability of any party or witness to comply with a legal duty to disclose, regardless of the source of that duty. A disclosure under item (iii) shall not be deemed a waiver of any other party's obligations under this Protective Order, except as provided by law.

26.     The terms of this Protective Order shall survive any settlement, discontinuance, dismissal, judgment, or other disposition of this Action.

27.     The parties acknowledge that the Court retains discretion as to whether, in orders and opinions, to afford confidential treatment to information that the parties have redacted, sealed or designated as confidential.

28.     This Order is a procedural device intended to protect Discovery Materials designated as DESIGNATED MATERIAL. Nothing in this Order shall affect any Party's rights or obligations unrelated to the confidentiality of Discovery Materials.

29.     Nothing contained herein shall be deemed a waiver or relinquishment by any Party of any objection, including, but not limited to, any objection concerning the alleged confidentiality or proprietary nature of any documents, information, or data requested by a Party, any right to object to any discovery request, or any right to object to the admissibility of evidence on any ground, or to seek any further protective order, or to seek relief from the Court or any other applicable court from any provision of this Order by application on notice on any grounds.

30.     Nothing in this Order affects the right of any Producing Party to use or disclose its own Discovery Material in any way. Such disclosure will not waive the protections of this Order and will not otherwise entitle other Parties, non-Parties, or their attorneys to use or disclose such Discovery Material in violation of this Order.

**SO STIPULATED AND AGREED:**

GREENBERG TRAURIG, LLP

May 23, 2025 Trustee draft

By:   */s/ Sylvia E. Simson*
     Sylvia E. Simson
     One Vanderbilt Avenue
     New York, New York 10017
     Tel: (212) 801-9275
     Sylvia.Simson@gtlaw.com
     *On behalf of Anson Funds Management LP*

May 23, 2025 Trustee draft

Christian Attar

By: _____/s/ James W. Christian_____
       James W. Christian
       1177 West Loop South, Suite 1700
       Houston, TX 77027
       T: (713) 659-7617
       JChristian@christianattarlaw.com

       *On behalf of Chapter 7 Trustee Christina Lovato*
       *Pro Hac Vice Application Forthcoming*

Hartman & Hartman

By: _____/s/ Jeffrey L Hartman, Esq._____
       Jeffrey L Hartman, Esq.
       510 West Plumb Lane, Suite B
       Reno, NV 89509
       T: (775) 324-2800
       jlh@bankruptcyreno.com

       *On behalf of Chapter 7 Trustee Christina Lovato*
       *Pro Hac Vice Application Forthcoming*

Kasowitz Benson Torres LLP

By: _____/s/ Stephen W. Tountas_____
       Stephen W. Tountas
       1633 Broadway
       New York, NY 10019
       T: (212) 506-1739
       stountas@kasowitz.com

       *On behalf of Chapter 7 Trustee Christina Lovato*
       *Pro Hac Vice Application Forthcoming*

May 23, 2025 Trustee draft

Schneider Wallace Cottrell Konecky LLP

By: ___/s/ Jason H. Kim___ _____
     Jason H. Kim
     Ryan R. C. Hicks
     David D. Burnett
     2000 Powell Street, Suite 1400
     Emeryville, CA 94608
     Main Line: (415) 421-7100
     jkim@schneiderwallace.com
     rhicks@schneiderwallace.com
     dburnett@schneiderwallace.com

     *On behalf of Chapter 7 Trustee Christina Lovato*
     *Pro Hac Vice Applications Forthcoming*

Robinson Sharp Sullivan Brust

By: ___/s/ Clayton P. Brust___ _____
     Clayton P. Brust
     71 Washington Street
     Reno, NV 89503
     T: (775) 329-3151
     cbrust@rssblaw.com

     *On behalf of Chapter 7 Trustee Christina Lovato*
     *Pro Hac Vice Application Forthcoming*

May 23, 2025 Trustee draft

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 24-50792-hlb |
| META MATERIALS INC., | (Chapter 7) |
| Debtor. | **APPENDIX A** |
| | **UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER BETWEEN TRUSTEE AND ANSON FUNDS MANAGEMENT LP** |
| | Hearing Date:  N/A<br>Hearing Time:  N/A |

I, _____, declare that:

1. My address is_____.

    My current employer is_____.

    My current occupation is_____.

2. I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" that is disclosed to me.

4. Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

/ / /

/ / /

/ / /

/ / /

May 23, 2025 Trustee draft

5.    I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective

Order in this action.


I declare under penalty of perjury that the foregoing is true and correct.



Signature _____


Date _____

# Exhibit D

| From: | David D. Burnett |
|---|---|
| To: | Simson, Sylvia (Shld-NY-LT); Brody, Alan (Shld-NJ-Bky) |
| Cc: | Ryan R. C. Hicks; Clay Brust; Stephen W. Tountas; James Wes Christian; "Jeffrey L. Hartman" |
| Subject: | Re: In re Meta Materials - Objections to Subpoenas |
| Date: | Thursday, June 12, 2025 6:50:09 PM |
| Attachments: | image002.png |
| | image001.png |
| | image510094.png |
| | image265693.png |
| | Debtor"s Motion for Written Responses from Brokerage Firms Pursuant to Rule 2004 of FRBP.pdf |
| | Order Granting Debtors" Rule 2004 Motion.pdf |
| | Anson Subpoenas--Supplemental Instructions and Replacement Document Requests.pdf |
| | In re Meta Materials Anson Funds protective order -- May 23 draft.docx |

Sylvia and Alan:

Thanks for the call on Tuesday about the Trustee's two subpoenas to Anson.

To sum up what Wes explained by phone:  Wes, myself, and others have been retained by the Trustee, Christina Lovato, to investigate potential manipulation of Meta Materials stock and to potentially obtain recoveries for the estate.  (Alan, on the call you focused on shareholders, but we are not only or specifically seeking recoveries for shareholders).  The Trustee has authorized the Anson subpoenas and others as part of that investigation.  As Wes said, as part of the Trustee's investigation, we are working with experts who have identified Anson, among other market participants, as likely having information relevant to our investigation.

I've recopied below my prior email with rules and caselaw showing the legal basis for the subpoenas.  You asked for additional caselaw regarding the use of subpoenas in similar fact patterns.  My colleague Wes referenced a few applicable bankruptcies.  See the attached decision from *In re: Sorrento Therapeutics, Inc.*, No. 23-90085 (Bankr. S.D. Tex. Apr. 4, 2023), Order Granting Debtors' Rule 2004 Motion, Dkt. No. 334.  The decision granted the attached Debtors' Emergency Motion from that case, Dkt. No. 330.  The motion concerned documents requested from 25 brokers, dealers, and other firms (Exhibit A to the motion).  The motion includes citation to caselaw about Rule 2004.  Page 6 of 12.  See also *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626-28 (Bankr. D. Del. 2016), and the authorities cited therein.

In consultation with the Trustee's experts, we have prepared Supplemental Instructions and replacement Items to be Produced, attached.  These replace the Items to be Produced in the original subpoenas.  In the spirit of cooperation, we'd like Anson to accept service of the attached Supplemental Instructions and replacement Items to be Produced.  Please advise.

As we requested on the call, while we are in good faith answering your questions about

the subpoenas, per below and in this email and with our explanations by phone, we would in parallel appreciate you speaking with your client to determine 1) whether Anson will produce documents in response to the subpoenas, 2) what materials does Anson have which are potentially responsive to the attached replacement Items to be Produced, in what format, from what date range, etc., and 3) what is a realistic timeline for production. If Anson is unwilling to produce documents, notwithstanding our explanations of the legal and factual grounds for the subpoenas, we would like to know that soon so the Trustee can proceed to next steps.

Assuming Anson will produce documents, please also let us know any comments or edits to the draft protective order I sent you on May 23, reattached. It's based on a standard template; a Nasdaq subpoena using the same template was recently so-ordered by Bankr. D. Nev. Judge Barnes in this proceeding.

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Friday, May 23, 2025 3:22 PM
**To:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Please let us know your availability for a meet and confer next week about the Anson

subpoenas.  I've copied my colleagues who also represent the trustee.

I've attached a proposed protective order between the parties, in anticipation of Anson's future productions after we've conferred.  We've used the same template with all subpoena recipients, and the Court so-ordered a nearly-identical one yesterday.

You asked us for substantive responses to your objections to the subpoenas before agreeing to a meet and confer.  That does not bode well for the likelihood that Anson will comply with the subpoenas.  Nonetheless, as requested:

The two subpoenas were issued pursuant to Fed. R. Civ. P. 45 and Fed. R. Bankr. P. 9016, as stated on their cover pages.  Rule 9016 allows for service of subpoenas in bankruptcy proceedings, stating that "Fed. R. Civ. P. 45 applies in a bankruptcy case." Local Rule 2004 of the U.S. Bankruptcy Court for the District of Nevada provides as follows:  "(c) Production of documents. Production of documents[may] be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016."

Fed. R. Bankr. P. 2004, Examinations, provides that "On a party in interest's motion, the court may order the examination of any entity," and such examination can involve "any matter that may affect the administration of the debtor's estate."  Section (c) of Rule 2004 provides as follows:  "Compelling Attendance and the Production of Documents or Electronically Stored Information. Regardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information. An attorney may issue and sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court."

Fed. R. Bankr. P. 6009 is the "Right of the Trustee or Debtor in Possession to Prosecute and Defend Proceedings."  It states that "With or without court approval, the trustee or debtor in possession may:  . . . (b) commence and prosecute in any tribunal an action or proceeding on the estate's behalf."

Authorities in this district explain these rules further:  "Outside the usual discovery tools available in federal civil practice, Bankruptcy Rule 2004 also allows any party in interest to seek a court order permitting the examination of any entity. To assist in such examinations or production of records, Bankruptcy Rule 9016 provides for the issuance of subpoenas under Civil Rule 45. Like compelled discovery and testimony of third parties in federal civil practice, the usual protections and limitations may be sought."

*Cash Cloud, Inc. v. Lux Vending, LLC (In re Cash Cloud, Inc.)*, 2024 Bankr. LEXIS 2159, *15 (Bankr. D. Nev. Sept. 10, 2024).  In *In re Quicker Liquor LLC*, 2022 Bankr. LEXIS 1846, *5 (Bankr. D. Nev. June 22, 2022), the court explained that

> Any party in interest may request permission to conduct a 2004 Examination. Fed.R.Bankr.P. 2004(a). The examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed.R.Bankr.P. 2004(b). The "..production of documents or electronically stored information ...may be compelled as provided in Rule 9016 for the attendance of a witness as a hearing or trial." Fed.R.Bankr.P. 2004(c). Bankruptcy Rule 9016 provides for the attendance of witnesses to be compelled by issuance of a subpoena under Civil Rule 45. See Fed.R.Bankr.P. 9016. In addition to compelling a witness to give testimony, subpoenas issued under Civil Rule 45 also may compel the production of documents and electronically stored information . . . .

Also, 11 U.S. Code § 704, part of the Chapter 7 bankruptcy statutes, sets forth the "Duties of trustee."  "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate."  *In re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015).  Section 704 provides in relevant part that "(a) The trustee *shall* . . . (4) investigate the financial affairs of the debtor" (emphasis added).  Those financial affairs include, here, the Trustee's investigation of trading in the debtor's stock, which may have affected the debtor's financial affairs in various ways.  "The role of counsel for the trustee . . . is to perform those tasks [under 11 U.S. Code § 704] that require special expertise beyond that expected of an ordinary trustee."  *In re Virissimo*, 354 B.R. 284, 290.

Christina Lovato, the Trustee in this bankruptcy action, *In re Meta Materials Inc*., Case No.: 24-50792-hlb (Bankr. D. Nev.), acting through counsel, has chosen to issue subpoenas to many parties related to the trading of Meta securities (including the tickers MMAT, TRCH, and MMTLP)  We believe that Anson traded Meta securities during the time period listed in the subpoenas.  The subpoenas were issued as part of the Trustee's ongoing investigations into the financial affairs of the debtor.  The decisionmaking behind which parties received subpoenas and why, including as it relates to the Anson subpoenas, is not something we can disclose given privilege and attorney work product concerns.

Best,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>
**Sent:** Friday, May 9, 2025 11:17 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have not received the authorities requested to be provided by the Trustee in support of its position, so we assume the call is going to be rescheduled until those are sent.  Please advise as to when we can expect to hear from the Trustee with those authorities and your corresponding availability thereafter for a meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Simson, Sylvia (Shld-NY-LT)
**Sent:** Wednesday, May 7, 2025 11:37 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>

**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

David,

Throughout the subpoena, Anson Funds made clear it objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, that bears no nexus to the administration of the debtor's estate, and is irrelevant to the conduct, property, liabilities, or financial condition of the debtor. If the Trustee has specific case law/authorities involving trading transactions by non-debtor parties that it believes supports the subpoena requests, please provide them in advance of any call and by Thursday COB if we are having a call on Friday. This request is not intended to limit, waive, or alter any of Anson Funds' other valid objections but so that we understand the Trustee's position in advance of any meet and confer. Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com | www.gtlaw.com | View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, May 6, 2025 5:19 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Friday works for me any time during your time window, but I'll let my colleagues chime in on their availability as well. As for authorities that support the Trustee's position, do you mean authority supporting the Trustee's responses to all of the objections raised in your April 7 Objections to Subpoenas document? I anticipate discussing the parties' positions on our call. Or are you speaking specifically about authority for the Trustee's grounds for serving the subpoenas?

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line:  (415) 421-7100
Toll Free:   (800) 689-0024
Direct:      (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

---

**From:** Sylvia.Simson@gtlaw.com
**Sent:** Monday, May 05, 2025 10:32 PM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We are willing to have a call regarding our objections and are available Thursday afternoon between 2 and 5 EST and Friday between 10:30 and 2 EST.  However, before any call, please identify what authorities the Trustee has that support the Trustee's position so we can review them in advance of the call.  Please note Anson is not committing to anything by virtue of us agreeing to a call and that Anson reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky)

<BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

**\*EXTERNAL TO GT\***

Sylvia:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Anson Funds in this case.  We're contacting you on behalf of the Trustee.  My colleagues and I, copied, would like to schedule a call to discuss your objections.  Please let us know your availability later this week.  We'd like to discuss the requests and map out a plan for Anson to produce responsive materials, starting with trade data.  We believe the parties should be able to find common ground.

In the interim, to address your objections about producing confidential information:  there isn't an applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

Begin forwarded message:



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***
**From:** <Sylvia.Simson@gtlaw.com>
**Subject: In re Meta Materials - Objections to Subpoenas**
**Date:** April 7, 2025 at 11:16:26 AM PDT
**To:** <CBrust@rssblaw.com>
**Cc:** <BrodyA@gtlaw.com>

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

If you are not an intended recipient of confidential and privileged information in
this email, please delete it, notify us immediately at postmaster@gtlaw.com, and
do not use or disseminate the information.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER COMPELLING WRITTEN RESPONSES FROM BROKERAGE FIRMS PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

> **Emergency relief has been requested. Relief is requested not later than April 3, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), by and through their undersigned counsel, move this Court for entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") compelling written responses to certain Information Requests (as defined below) from the brokers, dealers, banks and other nominees listed on <u>Exhibit A</u> hereto (the "<u>Brokerages</u>"). In support of this motion (the "<u>Motion</u>"), the Debtors respectfully state as follows:

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956). The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief sought herein are 11 U.S.C. § 105(a), Bankruptcy Rules 2004 and 9016, and Federal Rules of Civil Procedure 30, 31 and 45.

3.      Pursuant to this *Court's Order Granting Debtors' Motion to Quash Notice of Examination of Sorrento Therapeutics, Inc. Pursuant to Bankruptcy Rule 2004* [Docket No. 161], the Debtors are seeking this relief by motion, in strict compliance with Bankruptcy Rule 2004.  Given the Court's temporary suspension of Bankruptcy Local Rule 2004-1, the Debtors did not seek to meet and confer with the Brokerages prior to filing the Motion.

**Background**

4.      On February 13, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases are set forth in greater detail in the *Declaration of Mohsin Meghji, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions* [Docket No. 5] (the "First Day Declaration").

5.      One of the Debtors' most significant assets is Sorrento Therapeutics, Inc.'s ("Sorrento") 52% equity interest in Scilex Holding Company ("Scilex").  Scilex is a publicly traded company that had a closing trading price of $9.61 on February 10, 2023 (the last business day before the Petition Date)—which, at the time, made Sorrento's (i) approximately 59 million shares of common stock, par value $0.0001 per share, of Scilex (the "Scilex Common Stock") and (ii) approximately 29 million shares of Series A Preferred Stock, par value $0.0001 per share, of

Scilex (the "Scilex Preferred Stock") worth approximately $850 million in prevailing market value. First Day Declaration ¶ 12. Immediately following a merger involving Scilex in November 2022, Sorrento held a 96.2% interest in shares of Scilex Common Stock subject to a 180-day lock-up agreement. Pursuant to the terms of the Amended and Restated Registration Rights Agreement of Scilex, dated November 10, 2022, Sorrento is restricted from transferring its shares of Scilex Common Stock until May 11, 2023, subject to certain exceptions specified therein (including dividends).

6.      On December 30, 2022, Sorrento announced a dividend to its shareholders of 76,000,000 shares of Scilex Common Stock (the "Sorrento Dividend" and the shares so distributed, the "Dividend Stock"), which occurred on January 23, 2023, and reduced Sorrento's ownership interest in Scilex Common Stock to 42.5%. The Dividend Stock was primarily received by each "record owner," who are primarily brokers, dealers, banks and other nominees acting as agent for the shareholders (e.g., the "beneficial owners"). The Brokerages hold, in aggregate, approximately 89.5% of the shares of Dividend Stock that were transferred to Sorrento shareholders pursuant to the Sorrento Dividend. The Brokerages, as record owners, hold the shares of Scilex distributed under the Sorrento Dividend in custody as agents for the Sorrento shareholders, who are the beneficial owners. Sorrento shareholders who received the Dividend Stock are similarly restricted from transferring the Dividend Stock until May 11, 2023.

7.      Scilex has announced that its annual shareholder meeting will occur on April 6, 2023. The record date for the shareholders entitled to receive notice of and vote at the annual shareholder meeting was March 6, 2023 (the "Meeting Record Date"). Scilex filed proxy materials with the Securities and Exchange Commission, in compliance with its obligations under the federal securities laws. Contrary to normal practice, however, the proxy materials mandated to be

delivered to beneficial owners of more than 44,000,000 shares of Scilex Common Stock have not been delivered. The brokers, dealers, banks and other nominees that act as agents for the Sorrento shareholders have failed to report the ownership of such shares to Broadridge Financial Solutions, Inc. ("Broadridge"), the entity designated to collect, verify, and tabulate shareholder votes for the upcoming annual meeting. *See* Scilex Press Release dated March 27, 2023.[2] Sorrento, as the owner of a majority of the aggregate voting power of Scilex (after taking into account the voting power of the Scilex Preferred Stock that is held by Sorrento), is therefore faced with a corporate governance dilemma—a substantial number of minority shareholders of Scilex may be actually or functionally disenfranchised by the inexplicable failure of the Brokerages to report all holdings of Scilex Common Stock (notwithstanding their obligation to do so) and to deliver proxy materials in compliance with federal securities laws, thereby impairing the ability to operate (and thus the value) of Sorrento's largest asset.

## **Relief Requested**

8. The Debtors seek entry of an order, substantially in the form attached hereto (the "Proposed Order"), compelling the Brokerages to provide written responses to the requests set forth below (collectively, the "Information Requests") on or before April 5, 2023.

9. The Information Requests are intended to provide the Debtors with information regarding which Brokerages have failed to report or have underreported the Scilex Common Stock, so that they may seek to remedy such failure, and its effect on the value of Scilex stock and Scilex's ability to operate, in the near term. The Information Requests are as follows:

---

[2]       Available at https://www.scilexholding.com/scilex-holding-company-reports-substantial-underreporting-of-more-than-44-million-shares-of-its-common-stock-by-brokerage-firms-for-the-upcoming-annual-meeting-of-stockholders-scheduled-for-april-6-2/.

<u>Request 1</u>: State the aggregate number of shares of Scilex Common Stock, reported daily since January 9, 2023 (the "<u>Dividend Record Date</u>"), held by the Brokerage as record owner, beneficial owner, or in any other capacity, each reported separately. As to each customer or client account, state the number of shares of Scilex Common Stock held by the Brokerage, reported daily, by account, on an anonymized basis (referencing each account by a new alpha-numeric name), since the date of the Sorrento Dividend.

<u>Request 2</u>: As to each customer or client account, by account, on an anonymized basis, using the same anonymized alpha-numeric name above state: (1) the number of shares of Scilex Common Stock on the Dividend Record Date, and the number of shares of Dividend Stock such account is eligible to receive (based on pending trades or dividends); and (2) on March 6, 2023 (the "<u>Scilex Shareholder Meeting Record Date</u>"): (a) the number of shares of Dividend Stock held in the account; (b) the total number of shares of Scilex Common Stock held in the account; (c) the number of shares of Dividend Stock that the account is eligible to receive (based on pending dividends); and (d) the number of shares of Scilex Common Stock that the account is eligible to receive (based on pending trades or other dividends).

<u>Request 3</u>: State the aggregate number of shares of Scilex Common Stock, reported separated on a daily basis, traded by or within the Brokerage, (1) on behalf of customers or beneficial owners, and, separately, and (2) as principal, for the Brokerage's own account, or otherwise, between the Dividend Record Date and the present.

<u>Request 4</u>: As to each customer or client account, on an anonymized basis, using the same alpha-numeric name above, state the number of shares of Scilex Common Stock purchased on or after the Record Date.

<u>Request 5</u>: As to each such customer or client account, on an anonymized basis, using the same alpha-numeric name above, (1) state whether the account is part of a stock loan program or whose shares are otherwise eligible to enter into stock loan transactions, and (2) state the number of shares of Scilex Common Stock loaned attributed to such account on a daily basis from the Record Date to the present.

## Basis for Relief

10.     Bankruptcy Rule 2004(b) provides that, upon the motion of any party in interest, this Court may order the examination of any person relative to (a) the acts, conduct, property, liabilities or financial condition of the Debtors, (b) any matter that may affect the administration of the Debtors' estates, (c) the operation of the Debtors' businesses and the desirability of its continuance, (d) the source of money or property acquired or to be acquired for the purpose of consummating a plan of reorganization and the consideration given or offered therefor, and (e) any

other matter relevant to the case or to the formulation of a plan of reorganization. *See* Fed. R.

Bank. P. 2004.

11.     Under Section 105 of the Bankruptcy Code, the Court possesses broad equitable

powers to issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of the Bankruptcy Code. In a reorganization case under chapter 11 of the Bankruptcy

Code, Rule 2004 authorizes this Court, on motion of any party in interest, to order the examination

of "any . . . matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b).

The scope of a Rule 2004 examination is "unfettered and broad." *In re Washington Mut., Inc.,* 408

B.R. 45, 49 (Bankr. D. Del. 2009); *see also In re Drexel Burnham Lambert Group, Inc.*, 123 B.R.

702, 711 (Bankr. S.D.N.Y. 1991) (noting Rule 2004 examinations may be "very broad").

"Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions,

and determining whether wrongdoing has occurred." *Washington Mut., Inc.,* 408 B.R. at 50

(citation omitted). "Potential examinees include third parties that possess knowledge of the

debtor's acts, conduct, liabilities or financial condition which relate to the administration of the

bankruptcy estate." *In re DeWitt*, 608 B.R. 794, 797 (Bankr. W. D. Pa. 2019) (citation omitted).

It is well established that a debtor may take a Rule 2004 examination of third parties. *See, e.g.*, *In*

*re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) (noting that Rule 2004 "may properly extend

to creditors and third parties who have had dealings with the debtor"); *see also In re Recoton Corp.*,

307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("Any third party who has a relationship with a debtor

may be made subject to a Rule 2004 investigation.").

12.     Federal Rule of Bankruptcy Procedure 2004(c) provides that compliance may be

compelled through Federal Rule of Bankruptcy Procedure 9016, which allows issuance of a

subpoena under Federal Rule of Civil Procedure 45 and a subpoena compelling a deposition

through written examination may be issued under Federal Rule of Civil Procedure 45. *See* Fed. R. Bank. Pro. 2004, 9016; Fed. R. Civil Pro. 31, 45. At a hearing in these cases held on March 29, 2023, the Court expressed a willingness to permit the Debtors to request written responses from the Brokerages with respect to requests relating to the shares of Scilex Common Stock, which will be a much more efficient process than seeking oral examination and/or the production of documents relating to the topics of the Information Requests.

13. The Debtors' requests fall squarely within the scope of a Bankruptcy Rule 2004 examination, are fully consistent with the Court's authority under section 105(a) of the Bankruptcy Code, and are supported by the foregoing authorities:

a. Sorrento's most significant asset is its majority of the voting power in Scilex. The value of the shares of Scilex Common Stock and Scilex Preferred Stock is intertwined with the ability of Scilex to govern itself and operate as a legal entity. Thus, information regarding the impediments to that governance relates to "property . . . of the Debtors."

b. Further, to the extent Sorrento may seek to monetize its shares of Scilex Common Stock and/or Scilex Preferred Stock, either through a sale pursuant to section 363 of the Bankruptcy Code or through a plan of reorganization, information bearing on the potential depression of the value of Scilex Common Stock resulting from not knowing who owns and can vote a substantial number of shares of such stock, certainly constitutes a "matter that may affect the administration of the Debtors' estates," relates to a "source of money or property acquired or to be acquired for the purpose of consummating a plan of reorganization and the consideration given or offered therefor," and is "relevant to the case or to the formulation of a plan of reorganization."

c.      Moreover, due to the restriction prohibiting the actual transfer by Sorrento shareholders of the Dividend Stock, the Brokerages should still retain such shares within their platform.  Their failure to report such shares to Broadridge may result in a failure to deliver proxy materials to Sciflex shareholders in violation of federal securities laws and applicable regulations that require the delivery of such proxy materials.  The information requested herein thus assists the goal of "determining whether any wrongdoing has occurred."

d.      Finally, the Brokerages, each of which should have received at least 500,000 shares of Scilex Common Stock pursuant to the Sorrento Dividend, have a pre-existing relationship with Sorrento, given that they are the custodians for shareholders of Sorrento and, in that capacity, received the Dividend Stock that has remained un-reported or under-reported.

14.      For the foregoing reasons, the Debtors request that this Court (a) enter the Proposed Order compelling written responses to the Information Requests from the Brokerages no later than April 5, 2023, without prejudice to the Debtors' rights to seek further and other forms of discovery from the Brokerages, and (b) grant such other and further relief as this Court deems just and proper under the circumstances.

<u>**Emergency Consideration**</u>

15.      The Debtors request emergency consideration of this Motion on or prior to April 3, 2023.  Scilex's annual shareholder meeting has been scheduled for April 6, 2023 for the purpose of, among other things, electing two Class I directors to serve until the 2026 annual meeting of shareholders and until their successors are duly elected and qualified and to ratify the employment of Ernst & Young LLP as independent registered public accounting firm for the fiscal year ending December 31, 2023.  The information requested by the Brokerages pursuant to this Motion will help to determine the beneficial owners of the remaining shares of Dividend Stock so that proxy

materials may be delivered to such owners in advance of the shareholder meeting so that they may meaningfully participate in the meeting. The Debtors have previously reached out to each of the Brokerages to request that they distribute the Dividend Stock to the beneficial owners thereof and reflect Scilex's CUSIP number and the value of the shares of Scilex Common Stock on each beneficial owner's brokerage statement, but such requests have been largely ignored.

### Notice

16.     The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Unsecured Creditors' Committee; (c) JMB Capital Partners Lending, LLC; (d) counsel to the Sorrento shareholders who moved for the appointment of an Equity Committee; (e) the Office of the United States Attorney for the Southern District of Texas; (f) the state attorney generals for states in which the Debtors conduct business; (g) the Internal Revenue Services; (h) the Securities and Exchange Commission; (i) the Environmental Protection Agency; (j) other governmental agencies having a regulatory or statutory interest in these cases; (k) the Brokerages; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

The Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: March 31, 2023

/s/ *Kristhy M. Peguero*
**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Genevieve M. Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
        kpeguero@jw.com
        ggraham@jw.com

*Proposed Counsel to the Debtors*

**Certificate of Conference**

       I certify that on March 30, 2023, counsel for the Debtors provided to counsel for the Unsecured Creditors' Committee and counsel for the Sorrento shareholders who moved for the appointment of an Equity Committee a draft of the Proposed Order filed with the Motion. Debtors' counsel corresponded with counsel for both the Unsecured Creditors' Committee and the Sorrento shareholders who moved for the appointment of an Equity Committee which expressed that the Unsecured Creditors' Committee and such shareholders are not opposed to the relief requested.

*/s/ Kristhy M. Peguero*
Kristhy M. Peguero

**Certificate of Accuracy**

       I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Kristhy M. Peguero*
Kristhy M. Peguero

**Certificate of Service**

       I certify that on March 31, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Kristhy M. Peguero*
Kristhy M. Peguero

## Exhibit A

## Brokerages

1.  TD AMERITRADE CLEARING, INC.
2.  CHARLES SCHWAB & CO., INC.
3.  NATIONAL FINANCIAL SERVICES LLC
4.  E*TRADE CLEARING LLC
5.  BANK OF NEW YORK MELLON
6.  STATE STREET BANK & TRUST/STATE STREET
7.  JPMORGAN CHASE BANK/IA
8.  CITIBANK, NATIONAL ASSOCIATION
9.  APEX CLEARING CORPORATION
10. J.P. MORGAN CHASE BANK NA/FBO
11. MERRILL LYNCH, PIERCE, FENNER & SMITH
12. INTERACTIVE BROKERS LLC
13. STATE STREET BANK AND TRUST COMPANY
14. WELLS FARGO CLEARING SERVICES LLC
15. ROBINHOOD SECURITIES, LLC
16. PERSHING LLC
17. JPMORGAN CHASE BANK, NATIONAL
18. VANGUARD MARKETING CORPORATION
19. BROWN BROTHERS HARRIMAN & CO.
20. J.P. MORGAN CLEARING CORP.
21. BNY MELLON
22. PHILLIP CAPITAL INC.
23. TD WATERHOUSE CANADA INC
24. TRADESTATION SECURITIES, INC.
25. MORGAN STANLEY

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 04, 2023

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. 330** |

## ORDER GRANTING DEBTORS' RULE 2004 MOTION

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") compelling written responses to certain Information Requests from the Brokerages, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein; and this Court having determined that the legal and factual bases set forth in support of the Motion establish

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842); and Scintilla Pharmaceuticals, Inc. (7956). The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

just cause for the relief granted herein; and upon all of the proceedings had before this Court; and

after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      On or before April 5, 2023, the Brokerages are compelled to produce non-privileged written responses to the following Information Requests:

Request 1: State the aggregate number of shares of Scilex Common Stock, reported daily since January 9, 2023 (the "Dividend Record Date"), held by the Brokerage as record owner, beneficial owner, or in any other capacity, each reported separately. As to each customer or client account, state the number of shares of Scilex Common Stock held by the Brokerage, reported daily, by account, on an anonymized basis (referencing each account by a new alpha-numeric name), since the date of the Sorrento Dividend.

Request 2: As to each customer or client account, by account, on an anonymized basis, using the same anonymized alpha-numeric name above state: (1) the number of shares of Scilex Common Stock on the Dividend Record Date, and the number of shares of Dividend Stock such account is eligible to receive (based on pending trades or dividends); and (2) on March 6, 2023 (the "Scilex Shareholder Meeting Record Date"): (a) the number of shares of Dividend Stock held in the account; (b) the total number of shares of Scilex Common Stock held in the account; (c) the number of shares of Dividend Stock that the account is eligible to receive (based on pending dividends); and (d) the number of shares of Scilex Common Stock that the account is eligible to receive (based on pending trades or other dividends).

Request 3: State the aggregate number of shares of Scilex Common Stock, reported separated on a daily basis, traded by or within the Brokerage, (1) on behalf of customers or beneficial owners, and, separately, and (2) as principal, for the Brokerage's own account, or otherwise, between the Dividend Record Date and the present.

Request 4: As to each customer or client account, on an anonymized basis, using the same alpha-numeric name above, state the number of shares of Scilex Common Stock purchased on or after the Record Date.

Request 5: As to each such customer or client account, on an anonymized basis, using the same alpha-numeric name above, (1) state whether the account is part of a stock loan program or whose shares are otherwise eligible to enter into stock loan transactions, and (2) state the number of shares of Scilex Common Stock loaned attributed to such account on a daily basis from the Record Date to the present.

2.     This Order is immediately effective upon entry.

3.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

 **Signed:  April 04, 2023.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

14

## SUPPLEMENTAL INSTRUCTIONS (updated June 12, 2025)

1.   **CUSIPs and tickers:**  Anson should produce documents related to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPs, tickers, or legend identifiers related to Meta Materials Inc. (all together, "Meta"):

- MMAT:  59134N 10 4  META MATLS INC

- MMAT:  59134N 30 2  META MATLS INC

- TRCH:  89102U103

- MMTLP:  59134N 20 3  PFD META MATLS

2.   **Date range:**  records related to the MMAT and TRCH CUSIPs should be produced from a date range of September 21, 2020 through August 21, 2024.  Records related to the MMTLP CUSIP should be produced from a date range of June 28, 2021 to December 14, 2022.

3.   **Regulatory obligations:**  The records requested below should include, but are limited to, electronically-stored records that Anson retained to satisfy its regulatory and compliance obligations during the relevant time period.

## ITEMS TO BE PRODUCED (updated June 12, 2025)

**Request No. 1:**

All relevant order routing and execution records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to the routing of orders of any type for shares in Meta CUSIPs, using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including records of orders sent by Anson to any broker-dealer, exchange or off-exchange trading venue and orders received by Anson from any broker-dealer, exchange or off-exchange trading venue.

1

Order routing and execution records provided by Anson should reflect the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records include but are not limited to cancel/replaces, order forwarding, executions, and expired orders.

**Request No. 2:**

All records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to locating, securing, borrowing, and delivering shares of Meta CUSIPs, including any records of instances where Anson failed to deliver shares of Meta and records of how Anson rectified the outstanding failures to deliver, where applicable.

**Request No. 3:**

All records of position data showing Anson's positions in all Meta CUSIPs, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to any naked short sales), produced with full data in the frequency such data was recorded, in the original format in which the data was generated.

May 23, 2025 Trustee draft

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 24-50792-hlb |
| META MATERIALS INC., | (Chapter 7) |
| Debtor. | **[PROPOSED] STIPULATED PROTECTIVE ORDER BETWEEN TRUSTEE AND ANSON FUNDS MANAGEMENT LP** |
| | Hearing Date: N/A |
| | Hearing Time: N/A |

WHEREAS, in connection with the above-captioned litigation (the "Action"), Chapter 7 Trustee Christina Lovato ("Trustee") and third-party subpoena respondent Anson Funds Management LP ("Anson") (Trustee and Anson collectively referred to as "the Parties;" each individually a "Party") believe that certain information that is or will be encompassed by discovery demands by the Trustee involves the production or disclosure of trade secrets, confidential business information, other confidential information, personal identifying information, and/or other proprietary information;

WHEREAS, the Parties respectfully request that the Court enter this order ("Protective Order") limiting disclosure thereof in accordance with 11 U.S.C. 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, as applicable, pursuant to Bankruptcy Rules 2004, 7026, and 9014 and Rules 26(c) and 45 of the Federal Rules of Civil Procedure.

NOW, THEREFORE, to facilitate and expedite the production, exchange and treatment of material produced in discovery ("Discovery Material"), to facilitate the prompt resolution of disputes over confidentiality, and to protect Discovery Material that a Party seeks to maintain as confidential, it is hereby stipulated among the Parties and agreed, and, upon Court approval, it is hereby **ORDERED** that the following terms will govern any requests for and production of

May 23, 2025 Trustee draft

Discovery Material:

1.	Each Party may designate as confidential for protection under this Protective Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a third party to whom the Party reasonably and in good faith believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). This includes, but is not limited to, documents, information, or materials that reveal:

    a.	Confidential trade secrets or proprietary business information;

    b.	Financial information (including tax return or bank account information; profit and loss reports or estimates; trading positions; transactional data; risk reports; liquidity reports; brokerage commission reports and summaries; commission agreements; employment contracts; documents reflecting dates, amounts and basis of renumeration of compensation; materials related to fees received for services provided; and materials related to employee compensation);

    c.	Material not previously disclosed to the public related to ownership or control of any non-public company;

    d.	Proprietary business information or communications, or other confidential research, development, or commercial information or communications;

    e.	Information, materials, or other documents reflecting non-public business or financial strategies, and/or confidential competitive information that, if disclosed, would result in competitive harm to the disclosing party;

    f.	Sensitive, non-public personal, client, or customer information concerning individuals or other entities, including information that would be considered personally identifiable information under any applicable law and/or protected from public disclosure under relevant securities laws to include, but not limited to, the Gramm-Leach-Bliley Act and Regulation S-P;

    g.	The identity and investment positions of persons or entities who have

May 23, 2025 Trustee draft

invested in, or hold an interest in, partnerships, trusts, funds, or other investment vehicles that are produced or otherwise disclosed during the course of this Action;

        h.     Information for which applicable law, regulation, policy, or other guidance or rule of any governmental authority—foreign or domestic—requires confidential treatment, to the extent any disclosure is permitted by law; or

        i.     Any other category of information given confidential status by the Court.

Nothing in this Paragraph 1 or in this Protective Order shall affect the right, if any, of any Party or witness to make any type of objection, claim, or other response to a discovery request of any type, including interrogatories, requests for admissions, requests for production of documents or questions at deposition, and to withhold production where appropriate.

2.     Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as "CONFIDENTIAL." The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

3.     With respect to documents, information, or material designated "CONFIDENTIAL" (collectively, "DESIGNATED MATERIAL"), subject to the provisions herein and unless otherwise stated, this Protective Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings, and other court filings; (d) affidavits; and (e) stipulations. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIAL shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

May 23, 2025 Trustee draft

4.      Protected Material may be designated "CONFIDENTIAL" at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL, or having applied an incorrect designation, may request destruction (or if electronic the elimination of that electronic record) of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then, as reasonably practicable, destroy all copies of the inadvertently or unintentionally produced Protected Material (or if electronic the elimination of that electronic record) and any documents, information or material derived from or based thereon. The recipient(s) shall not be liable for failing to treat as confidential DESIGNATED MATERIAL before it has been designated as such.

5.      "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, or upon order of the Court:

        a.      outside counsel of record in this Action;

        b.      employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

        c.      in-house counsel for the Parties who either have decision-making authority for the litigation of this Action or are assisting outside counsel in the litigation of this Action;

        d.      to the extent that disclosure is reasonably necessary for the Action, current officers, directors, or employees of the Parties who are assisting counsel in the Action;

        e.      outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that:

                (1)      the Parties' counsel, in good faith, requires the consultants' or experts' assistance in connection with the Action;

May 23, 2025 Trustee draft

(2)     before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto;

(3)     any part of any report created by such expert or consultant incorporating DESIGNATED MATERIAL in whole or in part shall be designated appropriately by the Party responsible for its creation; and

(4)     such experts or consultants may not use DESIGNATED MATERIAL for any purpose that does not relate directly to the Action (including without limitation other litigation and other work in their respective fields);

f.     independent litigation support services, including persons working for or as court reporters, interpreters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action;

g.     the Court and its personnel for *in camera* review with the specific understanding that all such DESIGNATED MATERIAL may not be filed on the public docket unless under seal, as discussed further herein;

h.     any mediator agreed upon by the Parties, and their personnel; and

i.     the author, addressee(s), or recipient(s) of the DESIGNATED MATERIAL, or any other natural person who counsel determines after reasonable inquiry generally would have had access to such information during his or her employment or who is specifically identified in the document or its accompanying metadata, provided, however, that (i) this disclosure is made for the purpose of advancing the disclosing Party's claims or defenses, and for no other purposes; and (ii) the person is not permitted to retain copies of the DESIGNATED MATERIAL. In the event any Party leaves the employ of any authorized person hereunder, any CONFIDENTIAL material shall be returned to legal counsel for the Party receiving the data.

6.     Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action, and shall not be used

May 23, 2025 Trustee draft

for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Protective Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries, or descriptions are DESIGNATED MATERIAL subject to all of the terms and conditions of this Protective Order.

7.     Nothing in this Protective Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity are inadvertently or unintentionally produced, such production shall not constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, or certify in writing to the producing Party that such documents, information, or other material have been destroyed as reasonably practicable.

8.     Nothing in this Protective Order shall affect any obligation a Party may have to produce a privilege log in accordance with Local Civil Rule 26.2.

9.     There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

10.     Nothing contained herein shall be construed to prejudice any Party's right to use

May 23, 2025 Trustee draft

any DESIGNATED MATERIAL in taking testimony at any deposition or hearing, provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel; (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

11.     Parties may, at the deposition or hearing or within sixty (60) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" pursuant to this Protective Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Protective Order. Until expiration of the 60-day period, the entire deposition or hearing transcript shall be treated as "CONFIDENTIAL."

12.     The Protective Order applies to pretrial discovery. Nothing in this Protective Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

13.     A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within five (5) days of receipt of the written request, the requesting Party may apply

May 23, 2025 Trustee draft

to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

14.     Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Protective Order shall be provided with a copy of this Protective Order, shall be informed that he or she is subject to the terms and conditions of this Protective Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Protective Order. A copy of the acknowledgment form is attached as Appendix A.

15.     If a Party is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," that Party must: (a) promptly notify in writing the designating Party, with such notification to include a copy of the subpoena or court order; (b) promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order, with such notification to include a copy of this Protective Order; and (c) cooperate with respect to all reasonable procedures sought to be pursued by the designating Party whose Protected Material may be affected. If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission. The designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this action to disobey a lawful directive from another court.

May 23, 2025 Trustee draft

16. Sealing of DESIGNATED MATERIAL Filed with or Submitted to Court: Unless otherwise agreed by the Producing Party, all DESIGNATED MATERIAL filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose CONFIDENTIAL Protected Material, shall be filed under seal in accordance with the Federal Rules of Civil Procedure, Bankruptcy Rules, Local Rules, and the practice rules of the Court. It shall be the burden of the Movant who desires to serve any document to establish with the Court the bona fide reason(s) for which the document(s) requested are to be sealed.

17. Use of DESIGNATED MATERIAL in Open Court: The limitations on disclosure in this Order shall not apply to any DESIGNATED MATERIAL offered or otherwise used by any Party at trial or any hearing held in open court except as provided in this paragraph. As part of any pretrial conference or any meet and confer regarding the use of exhibits in any evidentiary hearing, and where practicable at least 24 hours prior to the use of any DESIGNATED MATERIAL at trial or any hearing to be held in open court, counsel for any Party who desires to offer or use such DESIGNATED MATERIAL at trial or any hearing to be held in open court shall meet and confer in good faith with the Producing Party, together with any other Parties who have expressed interest in participating in such meet and confer, to discuss ways to redact the DESIGNATED MATERIAL so that the DESIGNATED MATERIAL may be offered or otherwise used by any Party, in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. If the Parties are unable to resolve a dispute related to such DESIGNATED MATERIAL, then the Producing Party bears the burden of requesting relief from the Court.

18. Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed as reasonably practicable. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

May 23, 2025 Trustee draft

19.     The failure to designate documents, information, or material in accordance with this Protective Order and the failure to object to a designation at a given time shall not preclude redesignation pursuant to paragraph 4 of this Protective Order or the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Protective Order and/or the production of documents, information, and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

20.     Any Party knowing or believing that any other party is in violation of, or intends to violate, this Protective Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement, may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Protective Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation or potential violation of this Protective Order.

21.     Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information, and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

22.     Nothing in this Protective Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

23.     Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Protective Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

24.     A Party shall not use any other Party's DESIGNATED MATERIAL for any purpose not directly related to this Action without the other Party's approval or as otherwise

May 23, 2025 Trustee draft

permitted by a cross-use agreement between the Parties.

25.     Nothing in this Protective Order shall (i) prevent a Party from disclosing its own information that it has designated as "CONFIDENTIAL," as it deems appropriate; (ii) impose any restrictions on the use or disclosure of information obtained other than through discovery in this matter; or (iii) in any way restrict the ability of any party or witness to comply with a legal duty to disclose, regardless of the source of that duty. A disclosure under item (iii) shall not be deemed a waiver of any other party's obligations under this Protective Order, except as provided by law.

26.     The terms of this Protective Order shall survive any settlement, discontinuance, dismissal, judgment, or other disposition of this Action.

27.     The parties acknowledge that the Court retains discretion as to whether, in orders and opinions, to afford confidential treatment to information that the parties have redacted, sealed or designated as confidential.

28.     This Order is a procedural device intended to protect Discovery Materials designated as DESIGNATED MATERIAL. Nothing in this Order shall affect any Party's rights or obligations unrelated to the confidentiality of Discovery Materials.

29.     Nothing contained herein shall be deemed a waiver or relinquishment by any Party of any objection, including, but not limited to, any objection concerning the alleged confidentiality or proprietary nature of any documents, information, or data requested by a Party, any right to object to any discovery request, or any right to object to the admissibility of evidence on any ground, or to seek any further protective order, or to seek relief from the Court or any other applicable court from any provision of this Order by application on notice on any grounds.

30.     Nothing in this Order affects the right of any Producing Party to use or disclose its own Discovery Material in any way. Such disclosure will not waive the protections of this Order and will not otherwise entitle other Parties, non-Parties, or their attorneys to use or disclose such Discovery Material in violation of this Order.

**SO STIPULATED AND AGREED:**

GREENBERG TRAURIG, LLP

May 23, 2025 Trustee draft

By: _/s/ Sylvia E. Simson_____
  Sylvia E. Simson
  One Vanderbilt Avenue
  New York, New York 10017
  Tel: (212) 801-9275
  Sylvia.Simson@gtlaw.com
  *On behalf of Anson Funds Management LP*

Christian Attar

By: _____/s/ James W. Christian_____
      James W. Christian
      1177 West Loop South, Suite 1700
      Houston, TX 77027
      T: (713) 659-7617
      JChristian@christianattarlaw.com

      *On behalf of Chapter 7 Trustee Christina Lovato*
      *Pro Hac Vice Application Forthcoming*

Hartman & Hartman

By: _____/s/ Jeffrey L Hartman, Esq._____
      Jeffrey L Hartman, Esq.
      510 West Plumb Lane, Suite B
      Reno, NV 89509
      T: (775) 324-2800
      jlh@bankruptcyreno.com

      *On behalf of Chapter 7 Trustee Christina Lovato*
      *Pro Hac Vice Application Forthcoming*

Kasowitz Benson Torres LLP

By: _____/s/ Stephen W. Tountas_____
      Stephen W. Tountas
      1633 Broadway
      New York, NY 10019
      T: (212) 506-1739
      stountas@kasowitz.com

      *On behalf of Chapter 7 Trustee Christina Lovato*
      *Pro Hac Vice Application Forthcoming*

May 23, 2025 Trustee draft

Schneider Wallace Cottrell Konecky LLP

By: ___*/s/ Jason H. Kim*___ _____
        Jason H. Kim
        Ryan R. C. Hicks
        David D. Burnett
        2000 Powell Street, Suite 1400
        Emeryville, CA 94608
        Main Line: (415) 421-7100
        jkim@schneiderwallace.com
        rhicks@schneiderwallace.com
        dburnett@schneiderwallace.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Applications Forthcoming*

Robinson Sharp Sullivan Brust

By: ___*/s/ Clayton P. Brust*___ _____
        Clayton P. Brust
        71 Washington Street
        Reno, NV 89503
        T: (775) 329-3151
        cbrust@rssblaw.com

        *On behalf of Chapter 7 Trustee Christina Lovato*
        *Pro Hac Vice Application Forthcoming*

May 23, 2025 Trustee draft

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 24-50792-hlb |
| META MATERIALS INC., | (Chapter 7) |
| Debtor. | **APPENDIX A** |
| | **UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER BETWEEN TRUSTEE AND ANSON FUNDS MANAGEMENT LP** |
| | Hearing Date: N/A<br>Hearing Time: N/A |

I, _____, declare that:

1. My address is_____.

    My current employer is_____.

    My current occupation is_____.

2. I have received a copy of the Protective Order in this action. I have carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" that is disclosed to me.

4. Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

/ / /

/ / /

/ / /

/ / /

May 23, 2025 Trustee draft

5.   I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective

Order in this action.


I declare under penalty of perjury that the foregoing is true and correct.



Signature _____


Date _____

# Exhibit E

| | |
|---|---|
| **From:** | David D. Burnett |
| **To:** | Simson, Sylvia (Shld-NY-LT) |
| **Cc:** | Brody, Alan (Shld-NJ-Bky); Ryan R. C. Hicks; cbrust@rssblaw.com; stountas@kasowitz.com; jchristian@christianattarlaw.com; jlh@bankruptcyreno.com |
| **Subject:** | Re: In re Meta Materials - Objections to Subpoenas |
| **Date:** | Friday, June 27, 2025 4:12:03 PM |
| **Attachments:** | image644589.png<br>P-Subpoena for Rule 2004 Exam - Anson 250627.pdf<br>P-Subpoena to Produce - Anson 250627.pdf |

Sylvia:

Thanks for confirming that you'll accept electronic service. I've attached the replacement subpoenas, dated as of today. We confirm that these replace the prior, initial subpoenas. These are not additional subpoenas.

The response date is July 11, 2025, 14 days from today. That said, if you can respond sooner, please do so. As you know, the initial subpoenas were served on March 20. You served responses to those on April 7, and we've been conferring since then, including providing extensive information about the legal and factual bases for the subpoenas in my emails below. We sent you these revised document requests and instructions on June 12, so you have had them for two weeks. The replacement subpoenas call for production of similar information as was requested in the initial subpoenas, and I expect your responses and objections will be similar to what you served on April 7. The Trustee is not waiting on your responses before we continue to confer--we're prepared to confer further at any time.

For all those reasons, we appreciate your prompt response in addressing the outstanding issues and moving this forward. To that end, we'd appreciate responses in the near term, independent of your formal responses to the subpoenas, to the topics we've been conferring about, as per the questions and comments in my May 23 and June 12 emails below. We asked whether Anson will produce in response to the subpoenas, what records Anson has, and what's a reasonable timeline for production.

Best,
David



**David D. Burnett**
**Attorney at Law**

1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>
**Sent:** Tuesday, June 24, 2025 6:25 PM
**To:** David D. Burnett <dburnett@schneiderwallace.com>
**Cc:** BrodyA@gtlaw.com <BrodyA@gtlaw.com>; Ryan R. C. Hicks
<rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>;
stountas@kasowitz.com <stountas@kasowitz.com>; jchristian@christianattarlaw.com
<jchristian@christianattarlaw.com>; jlh@bankruptcyreno.com <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have conferred with our client and if you send us new subpoenas with these new requests and instructions, we are authorized to accept service of same on Anson's behalf, provided that (1) we have the same amount of time to respond with our position as we would in the ordinary course (14 days) and (2) these new subpoenas would serve to replace and moot the previously-served subpoenas (and necessarily be replacement subpoenas, not additional subpoenas).

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9275
Sylvia.Simson@gtlaw.com


On Jun 12, 2025, at 6:50 PM, David D. Burnett
<dburnett@schneiderwallace.com> wrote:

Sylvia and Alan:

Thanks for the call on Tuesday about the Trustee's two subpoenas to Anson.

To sum up what Wes explained by phone: Wes, myself, and others have been retained by the Trustee, Christina Lovato, to investigate potential manipulation of Meta Materials stock and to potentially obtain recoveries for the estate. (Alan, on the call you focused on shareholders, but we are not only or specifically seeking recoveries for shareholders). The Trustee has authorized the Anson subpoenas and others as part of that investigation. As Wes said, as part of the Trustee's investigation, we are working with experts who have identified Anson, among other market participants, as likely having information relevant to our investigation.

I've recopied below my prior email with rules and caselaw showing the legal basis for the subpoenas. You asked for additional caselaw regarding the use of subpoenas in similar fact patterns. My colleague Wes referenced a few applicable bankruptcies. See the attached decision from *In re: Sorrento Therapeutics, Inc*., No. 23-90085 (Bankr. S.D. Tex. Apr. 4, 2023), Order Granting Debtors' Rule 2004 Motion, Dkt. No. 334. The decision granted the attached Debtors' Emergency Motion from that case, Dkt. No. 330. The motion concerned documents requested from 25 brokers, dealers, and other firms (Exhibit A to the motion). The motion includes citation to caselaw about Rule 2004. Page 6 of 12. See also *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626-28 (Bankr. D. Del. 2016), and the authorities cited therein.

In consultation with the Trustee's experts, we have prepared Supplemental Instructions and replacement Items to be Produced, attached. These replace the Items to be Produced in the original subpoenas. In the spirit of cooperation, we'd like Anson to accept service of the attached Supplemental Instructions and replacement Items to be Produced. Please advise.

As we requested on the call, while we are in good faith answering your questions about the subpoenas, per below and in this email and with our explanations by phone, we would in parallel appreciate you speaking with your client to determine 1) whether Anson will produce documents in response to the subpoenas, 2) what materials does Anson have which are potentially responsive to the attached replacement Items to be Produced, in what format, from what date range, etc., and 3) what is a realistic timeline for

production.  If Anson is unwilling to produce documents, notwithstanding our explanations of the legal and factual grounds for the subpoenas, we would like to know that soon so the Trustee can proceed to next steps.

Assuming Anson will produce documents, please also let us know any comments or edits to the draft protective order I sent you on May 23, reattached.  It's based on a standard template; a Nasdaq subpoena using the same template was recently so-ordered by Bankr. D. Nev. Judge Barnes in this proceeding.

Thanks,
David

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Friday, May 23, 2025 3:22 PM
**To:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Please let us know your availability for a meet and confer next week about the Anson subpoenas.  I've copied my colleagues who also represent the trustee.

I've attached a proposed protective order between the parties, in anticipation of Anson's future productions after we've conferred.  We've used the same template with all subpoena recipients, and the Court so-

ordered a nearly-identical one yesterday.

You asked us for substantive responses to your objections to the subpoenas before agreeing to a meet and confer. That does not bode well for the likelihood that Anson will comply with the subpoenas. Nonetheless, as requested:

The two subpoenas were issued pursuant to Fed. R. Civ. P. 45 and Fed. R. Bankr. P. 9016, as stated on their cover pages. Rule 9016 allows for service of subpoenas in bankruptcy proceedings, stating that "Fed. R. Civ. P. 45 applies in a bankruptcy case." Local Rule 2004 of the U.S. Bankruptcy Court for the District of Nevada provides as follows: "(c) Production of documents. Production of documents[may] be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016."

Fed. R. Bankr. P. 2004, Examinations, provides that "On a party in interest's motion, the court may order the examination of any entity," and such examination can involve "any matter that may affect the administration of the debtor's estate." Section (c) of Rule 2004 provides as follows: "Compelling Attendance and the Production of Documents or Electronically Stored Information. Regardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information. An attorney may issue and sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court."

Fed. R. Bankr. P. 6009 is the "Right of the Trustee or Debtor in Possession to Prosecute and Defend Proceedings." It states that "With or without court approval, the trustee or debtor in possession may: . . . (b) commence and prosecute in any tribunal an action or proceeding on the estate's behalf."

Authorities in this district explain these rules further: "Outside the usual discovery tools available in federal civil practice, Bankruptcy Rule 2004 also allows any party in interest to seek a court order permitting the examination of any entity. To assist in such examinations or production of records, Bankruptcy Rule 9016 provides for the issuance of subpoenas under Civil Rule 45. Like compelled discovery and testimony of third parties in federal civil practice, the usual protections and limitations may be sought." *Cash Cloud, Inc. v. Lux Vending, LLC (In re Cash Cloud, Inc.)*, 2024 Bankr. LEXIS

2159, *15 (Bankr. D. Nev. Sept. 10, 2024).  In *In re Quicker Liquor LLC*, 2022 Bankr. LEXIS 1846, *5 (Bankr. D. Nev. June 22, 2022), the court explained that

> Any party in interest may request permission to conduct a 2004 Examination. Fed.R.Bankr.P. 2004(a). The examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed.R.Bankr.P. 2004(b). The "..production of documents or electronically stored information ...may be compelled as provided in Rule 9016 for the attendance of a witness as a hearing or trial." Fed.R.Bankr.P. 2004(c). Bankruptcy Rule 9016 provides for the attendance of witnesses to be compelled by issuance of a subpoena under Civil Rule 45. See Fed.R.Bankr.P. 9016. In addition to compelling a witness to give testimony, subpoenas issued under Civil Rule 45 also may compel the production of documents and electronically stored information . . . .

Also, 11 U.S. Code § 704, part of the Chapter 7 bankruptcy statutes, sets forth the "Duties of trustee."  "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate."  *In re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015).  Section 704 provides in relevant part that "(a) The trustee *shall* . . . (4) investigate the financial affairs of the debtor" (emphasis added).  Those financial affairs include, here, the Trustee's investigation of trading in the debtor's stock, which may have affected the debtor's financial affairs in various ways.  "The role of counsel for the trustee . . . is to perform those tasks [under 11 U.S. Code § 704] that require special expertise beyond that expected of an ordinary trustee."  *In re Virissimo*, 354 B.R. 284, 290.

Christina Lovato, the Trustee in this bankruptcy action, *In re Meta Materials Inc*., Case No.: 24-50792-hlb (Bankr. D. Nev.), acting through counsel, has chosen to issue subpoenas to many parties related to the trading of Meta securities (including the tickers MMAT, TRCH, and MMTLP).  We believe that Anson traded Meta securities during the time period listed in the subpoenas. The subpoenas were issued as part of the Trustee's ongoing investigations into the financial affairs of the debtor.  The decisionmaking behind which parties received subpoenas and why, including as it relates to the Anson subpoenas, is not something we can disclose given privilege and attorney work product concerns.

Best,

David

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>
**Sent:** Friday, May 9, 2025 11:17 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have not received the authorities requested to be provided by the Trustee in support of its position, so we assume the call is going to be rescheduled until those are sent. Please advise as to when we can expect to hear from the Trustee with those authorities and your corresponding availability thereafter for a meet and confer. Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

---

**From:** Simson, Sylvia (Shld-NY-LT)
**Sent:** Wednesday, May 7, 2025 11:37 AM

**To:** David D. Burnett <dburnett@schneiderwallace.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

David,

Throughout the subpoena, Anson Funds made clear it objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, that bears no nexus to the administration of the debtor's estate, and is irrelevant to the conduct, property, liabilities, or financial condition of the debtor. If the Trustee has specific case law/authorities involving trading transactions by non-debtor parties that it believes supports the subpoena requests, please provide them in advance of any call and by Thursday COB if we are having a call on Friday. This request is not intended to limit, waive, or alter any of Anson Funds' other valid objections but so that we understand the Trustee's position in advance of any meet and confer. Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com | www.gtlaw.com | View GT Biography

<image001.png>

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, May 6, 2025 5:19 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Friday works for me any time during your time window, but I'll let my colleagues chime in on their availability as well. As for authorities that support the Trustee's position, do you mean authority supporting the Trustee's responses to all of the objections raised in your April 7 Objections

to Subpoenas document? I anticipate discussing the parties' positions on our call. Or are you speaking specifically about authority for the Trustee's grounds for serving the subpoenas?

Thanks,
David

&lt;image002.png&gt;

**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:      (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***

**From:** Sylvia.Simson@gtlaw.com
**Sent:** Monday, May 05, 2025 10:32 PM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We are willing to have a call regarding our objections and are available Thursday afternoon between 2 and 5 EST and Friday between 10:30 and 2 EST.  However, before any call, please identify what authorities the Trustee has that support the Trustee's position so we can review them in advance of the call.  Please note Anson is not committing to anything by virtue of us agreeing to a call and that Anson reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

&lt;image001.png&gt;

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

**\*EXTERNAL TO GT\***

Sylvia:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Anson Funds in this case.  We're contacting you on behalf of the Trustee.  My colleagues and I, copied, would like to schedule a call to discuss your objections.  Please let us know your availability later this week.  We'd like to discuss the requests and map out a plan for Anson to produce responsive materials, starting with trade data.  We believe the parties should be able to find common ground.

In the interim, to address your objections about producing confidential information:  there isn't an applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

> Begin forwarded message:
>
> <image002.png>
>
> **David D. Burnett**
> **Attorney at Law**
> 1050 30th Street NW
> Washington, DC 20007
> Main Line: (415) 421-7100
> Toll Free:  (800) 689-0024
> Direct:     (510) 740-2939
> Facsimile: (415) 421-7105
> www.schneiderwallace.com
>
> *\*Admitted in New York and District of Columbia.*
> **From:** <Sylvia.Simson@gtlaw.com>
> **Subject: In re Meta Materials - Objections to Subpoenas**
> **Date:** April 7, 2025 at 11:16:26 AM PDT
> **To:** <CBrust@rssblaw.com>
> **Cc:** <BrodyA@gtlaw.com>

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

<Debtor's Motion for Written Responses from Brokerage Firms Pursuant to Rule 2004 of FRBP.pdf>
<Order Granting Debtors' Rule 2004 Motion.pdf>
<Anson Subpoenas--Supplemental Instructions and Replacement Document Requests.pdf>
<In re Meta Materials Anson Funds protective order -- May 23 draft.docx>

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of NEVADA

In re META MATERIALS, INC.,

Debtor

Case No. 24-50792-hlb

Chapter _____

## SUBPOENA FOR RULE 2004 EXAMINATION

To: The Custodian of Records of ANSON FUNDS USA | 16000 Dallas Parkway, Suite 800, Dallas, TX 75248

*(Name of person to whom the subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Lexitas<br>325 North St. Paul Street, #1900<br>Dallas, TX 75201 | July 11, 2025 OR as arranged with Trustee Lovato's counsel (see contact info below) |

The examination will be recorded by this method: stenographic and/or audiovisual means

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attachment titled "Items to be Produced" along with the attachment "Definitions and Instructions"

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

/s/ Clayton P. Brust

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Christina Lovato, Chapter 7 Trustee , who issues or requests this subpoena, are:

Clayton P. Brust | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

  My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date: _____


                                                        _____
                                                                    *Server's signature*


                                                        _____
                                                                    *Printed name and title*


                                                        _____
                                                                    *Server's address*


Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
     (i) is a party or a party's officer; or
     (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     (i) fails to allow a reasonable time to comply;
     (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
     (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     (iv) subjects a person to undue burden.
   *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     (i) disclosing a trade secret or other confidential research, development, or commercial information; or

     (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     (i) expressly make the claim; and
     (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## <u>DEFINITIONS AND INSTRUCTIONS</u>

### DEFINITIONS

1.      "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.      "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

### INSTRUCTIONS

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

parents or subsidiaries, and persons under their control.

1.      Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.      Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3.      All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4.      Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5.      If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6.      If there are no Documents responsive to any particular request, the response shall state so in writing.

7.      In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8.      Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

and label them to correspond to the enumerated requests of the demand.

10.     Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

11.     These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary.

**SUPPLEMENTAL INSTRUCTIONS (updated June 12, 2025)**

1.      **CUSIPs and tickers:**  Anson should produce documents related to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPs, tickers, or legend identifiers related to Meta Materials Inc. (all together, "Meta"):

- MMAT:  59134N 10 4  META MATLS INC

- MMAT:  59134N 30 2  META MATLS INC

- TRCH:  89102U103

- MMTLP:  59134N 20 3  PFD META MATLS

2.      **Date range:**  records related to the MMAT and TRCH CUSIPs should be produced from a date range of September 21, 2020 through August 21, 2024.  Records related to the MMTLP CUSIP should be produced from a date range of June 28, 2021 to December 14, 2022.

3.      **Regulatory obligations:**  The records requested below should include, but are limited to, electronically-stored records that Anson retained to satisfy its regulatory and compliance obligations during the relevant time period.

**ITEMS TO BE PRODUCED (updated June 12, 2025)**

**Request No. 1:**

All relevant order routing and execution records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to the routing of orders of any type for shares in Meta CUSIPs, using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including records of orders sent by Anson to any broker-dealer, exchange or off-exchange trading venue and orders received by Anson from any broker-dealer, exchange or off-exchange trading venue.

Order routing and execution records provided by Anson should reflect the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records include but are not limited to cancel/replaces, order forwarding, executions, and expired orders.

**Request No. 2:**

All records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to locating, securing, borrowing, and delivering shares of Meta CUSIPs, including any records of instances where Anson failed to deliver shares of Meta and records of how Anson rectified the outstanding failures to deliver, where applicable.

**Request No. 3:**

All records of position data showing Anson's positions in all Meta CUSIPs, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to any naked short sales), produced with full data in the frequency such data was recorded, in the original format in which the data was generated.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

## District of Nevada

In re META MATERIALS INC.,
<div style="text-align:center">Debtor</div>

*(Complete if issued in an adversary proceeding)*

Case No. 24-50792-hlb

Chapter 7

_____
<div style="text-align:center">Plaintiff</div>
<div style="text-align:center">v.</div>
_____
<div style="text-align:center">Defendant</div>

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: The Custodian of Records of ANSON FUNDS USA | 16000 Dallas Parkway, Suite 800, Dallas, TX 75248

<div style="text-align:center">*(Name of person to whom the subpoena is directed)*</div>

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: see "Items to be Produced" attached hereto, along with the attachment "Definitions and Instructions"

| PLACE   Lexitas<br>325 North St. Paul Street, #1900<br>Dallas, TX 75201 | DATE AND TIME<br> July 11, 2025 OR as arranged with Trustee<br>Lovato's counsel (see contact info below) |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

<div style="text-align:center">CLERK OF COURT</div>

<div style="text-align:center">OR</div>

_____     /s/ Clayton P. Brust
<div style="text-align:center">*Signature of Clerk or Deputy Clerk*          *Attorney's signature*</div>

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Christine Lovato, Chapter 7 Trustee , who issues or requests this subpoena, are:

Clayton P. Brust, Esq. | Robison, Sharp, Sullivan & Brust, 71 Washington Street, Reno, NV 89503 | cbrust@rssblaw.com

<div style="text-align:center">**Notice to the person who issues or requests this subpoena**</div>

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**DEFINITIONS AND INSTRUCTIONS**

**DEFINITIONS**

1.      "Acceptable Records" means records of such messages in the original format such data was saved (e.g., FIX log files or ASCII text).

2.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Civil Rule 26.3, and shall also be used to Include any "communication," as defined by Local Civil Rule 26.3. By definition, non-identical copies of the same document are different original documents, and different types of media containing identical information are different original documents.

3.      "ESI" or "electronically stored information," is defined to be any portion of data available only on a computer or other device capable of storing electronic data. ESI Includes, but is not limited to, email (whether conducted intra-company using company email addresses or conducted through an individual, non-company account, e.g., Bloomberg, Gmail, Yahoo!, or AOL), spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing ESI Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and all other forms of online or offline storage, whether on or off company premises. ESI is meant to Include instant messages (such as Cisco Jabber, IBM Sametime, ICQ, Kik, BBM, and similar types of messages), cell phone text messages (SMS messages and MMS messages), and other similar types of messages. For any document kept in electronic form, the term "document" Includes all metadata associated with the document.

**INSTRUCTIONS**

You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships,

parents or subsidiaries, and persons under their control.

1.     Each Document requested shall be produced in its entirety, including, without limitation, attachments, enclosures, cover letters, memoranda and appendices. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.     Each Document is to be produced along with all non-identical versions thereof in their entirety, without abbreviation or redaction.

3.     All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4.     Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during Relevant Time Period.

5.     If You object to part of a request, You must specifically state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object. In further accordance with Rule 34 of the Federal Rules of Civil Procedure, each objection must state whether any responsive materials are being withheld on the basis of that objection.

6.     If there are no Documents responsive to any particular request, the response shall state so in writing.

7.     In the event that any Document called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document is to be identified as required by Local Civil Rule 26.2.

8.     Each request herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

9.     Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, You shall produce responsive Documents as they have been kept in the usual course of business or shall organize

and label them to correspond to the enumerated requests of the demand.

10. Documents, including ESI, will be produced pursuant to the ESI Protocol agreed to by the parties and/or ordered by the Court.

11. These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional Documents between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary.

## SUPPLEMENTAL INSTRUCTIONS (updated June 12, 2025)

**1.    CUSIPs and tickers:**  Anson should produce documents related to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPs, tickers, or legend identifiers related to Meta Materials Inc. (all together, "Meta"):

- MMAT:  59134N 10 4  META MATLS INC
- MMAT:  59134N 30 2  META MATLS INC
- TRCH:  89102U103
- MMTLP:  59134N 20 3  PFD META MATLS

**2.    Date range:**  records related to the MMAT and TRCH CUSIPs should be produced from a date range of September 21, 2020 through August 21, 2024.  Records related to the MMTLP CUSIP should be produced from a date range of June 28, 2021 to December 14, 2022.

**3.    Regulatory obligations:**  The records requested below should include, but are limited to, electronically-stored records that Anson retained to satisfy its regulatory and compliance obligations during the relevant time period.

## ITEMS TO BE PRODUCED (updated June 12, 2025)

**Request No. 1:**

All relevant order routing and execution records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to the routing of orders of any type for shares in Meta CUSIPs, using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including records of orders sent by Anson to any broker-dealer, exchange or off-exchange trading venue and orders received by Anson from any broker-dealer, exchange or off-exchange trading venue.

Order routing and execution records provided by Anson should reflect the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records include but are not limited to cancel/replaces, order forwarding, executions, and expired orders.

**Request No. 2:**

All records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to locating, securing, borrowing, and delivering shares of Meta CUSIPs, including any records of instances where Anson failed to deliver shares of Meta and records of how Anson rectified the outstanding failures to deliver, where applicable.

**Request No. 3:**

All records of position data showing Anson's positions in all Meta CUSIPs, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to any naked short sales), produced with full data in the frequency such data was recorded, in the original format in which the data was generated.

# **Exhibit F**

| **From:** | Pollock, Stewart R. (Assoc-NY-LT) |
|---|---|
| **To:** | David D. Burnett; cbrust@rssblaw.com |
| **Cc:** | Brody, Alan (Shld-NJ-Bky); Simson, Sylvia (Shld-NY-LT) |
| **Subject:** | In re Meta Materials: Objections to Subpoenas |
| **Date:** | Friday, July 11, 2025 2:50:04 PM |
| **Attachments:** | image001.png |
| | 2025.07.11 In re Meta Materials Anson R_Os to Subpoenas Served 6_27.pdf |

Counsel,

On behalf of Sylvia Simson and Alan Brody, please see the attached. Copies will be mailed to you by UPS.

Thank you,

**Stewart Pollock**
Associate

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9367
Stewart.Pollock@gtlaw.com  |  www.gtlaw.com



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

**In re**

**META MATERIALS, INC.,**

**Debtor.**

Case No. 24-50792-hlb
(Chapter 7)

To:     Clayton P. Brust, Esq.
        Robison, Sharp, Sullivan and Brust
        71 Washington Street
        Reno, Nevada 89503

        David Burnett, Esq.
        Schneider Wallace Cottrell Kim LLP
        1050 30th Street NW
        Washington, DC 20007

*Counsel for Chapter 7 Trustee Christina Lovato*

### NON-PARTY ANSON FUNDS MANAGEMENT LP'S
### OBJECTIONS TO NON-PARTY SUBPOENAS

Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, which incorporates

Federal Rule of Civil Procedure 45, as well as the applicable Federal Rules of Civil Procedure,

non-party Anson Funds Management LP ("Anson Funds"), misidentified as Anson Funds USA,

hereby provides its Objections (the "Objections") to the June 27, 2025 Subpoenas (the

"Subpoenas") served by Chapter 7 Trustee Christina Lovato (the "Trustee") in connection with the

above captioned bankruptcy case (the "Bankruptcy") of Meta Materials, Inc. ("Meta Materials").

Pursuant to the Trustee's email dated June 27, 2025, the Subpoenas were "replacement subpoenas"

that "replace the prior, initial subpoenas" served on Anson Funds by the Trustee and "are not

additional subpoenas." That notwithstanding, Anson Funds incorporates by reference its prior

1

Objections to the "prior, initial subpoenas" served onto it by the Trustee, which were served on April 7, 2025.

For the avoidance of doubt, these Objections are made to both the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) (the "First Subpoena") and the Subpoena for Rule 2004 Examination (the "Second Subpoena"), the latter of which included requests for the production of documents identical to that in the First Subpoena. Necessarily, the Specific Objections herein to these Requests for Production (hereinafter, the "Subpoena Requests") apply to both the First Subpoena and the Second Subpoena with equal force. And unless otherwise indicated, every Objection herein is made to both the First Subpoena and the Second Subpoena.

Pursuant to and subject to these Objections, Anson Funds **will not** produce any documents at the address indicated in both the First Subpoena and Second Subpoena on July 11, 2025, and **will not** produce any witness to provide testimony (nor produce any documents) on July 11, 2025 pursuant to the Second Subpoena. Anson Funds does remain available to continue to meet and confer with the Trustee.

Anson Funds' Objections to the Subpoenas are based on the best information currently available to Anson Funds. Anson Funds reserves the right to amend, supplement, correct, or clarify its Objections in accordance with the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any applicable court order. In doing so, Anson Funds assumes no obligation not required by the Federal or Local Rules to supplement Anson Funds' Objections to the Requests.

# GENERAL OBJECTIONS

Each of the foregoing General Objections is incorporated into each and every Specific Objection set forth below. Notwithstanding the Specific Objection to any individual request in either of the Subpoenas, Anson Funds does not waive any of its General Objections. Anson Funds may repeat a General Objection below for emphasis or for some other reason, and the failure to repeat a General Objection shall not be construed as a waiver of any General Objection to any of the requests in either of the Subpoenas. Below, Anson Funds will refer to the request in both of the Subpoenas as the "Subpoena Requests."

1.      Anson Funds objects to the First Subpoena on the basis that the Trustee failed to comply with Local Rule 9016(b)'s requirement to file subpoenas under Federal Rule of Civil Procedure 45 "concurrently with the[ir] issuance and service." LR 9016(b). The Trustee has not filed the First Subpoena to the docket as required by the Local Rules.

2.      Anson Funds further objects to the First Subpoena on the basis that there is no adversary proceeding pending against Anson Funds, nor does any contested matter exist under Fed. R. Bankr. P. 9014, and therefore discovery under the Federal Rules of Civil Procedure is not permissible.

3.      Anson Funds further objects to the First Subpoena on the basis that it is facially overbroad, unduly burdensome, and entirely disproportionate to the scope of permissible non-party discovery under the applicable Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 45, and would require Anson Funds, a non-party, to devote significant resources to collecting, processing, and reviewing highly sensitive and proprietary trading data and records.

4.      Anson Funds objects to the Second Subpoena as seeking material well beyond the scope of Bankruptcy Rule 2004, which permits examination which "relate[s] only to the acts,

conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate […]." Fed. R. Bankr. P. 2004(b).

5. Anson Funds objects to the Second Subpoena as the Trustee cannot establish good cause for the Rule 2004 examination requested.

6. Anson Funds objects to the Second Subpoena as improper to the extent the Trustee has already identified it as a potential or actual litigation target, as this would render the Second Subpoena an improper use of Rule 2004.

7. Anson Funds objects to the document requests contained in the Second Subpoena as the Court's Order relating to the requested Rule 2004 Examination was limited to an examination and because Local Rule 2004(c) does not permit the production of documents by court order under Rule 2004 in any event.

8. Anson Funds objects to the Second Subpoena to the extent that the Trustee's motion for non-party Rule 2004 examination of Anson Funds was pursued *ex parte* and without any notice to or opportunity by Anson Funds to object to its issuance (or to the issuance of either of the Subpoenas), including before the Court overseeing the Bankruptcy.

9. Anson Funds objects to the Subpoena Requests as they are nothing more than a broad-based fishing expedition to potentially obtain information that would support a lawsuit against Anson Funds and/or other non-parties, as the Trustee has intimated in various filings to the Bankruptcy Court.

10. Anson Funds objects to the Subpoena Requests to the extent they seek information irrelevant to the Bankruptcy, are not proportional to the needs of the Bankruptcy, are not reasonably calculated to lead to the discovery of admissible evidence, or are otherwise beyond the scope of permissible discovery under the Federal Rules of Civil Procedure, Federal Rules of

Bankruptcy Procedure, the Local Rules of this Court, applicable case law, and/or any other source of applicable law.

11.     Anson Funds objects to the Subpoena Requests as they appear to be targeted at seeking discovery beyond the assets of the debtor or the administration of the estate of Meta Materials, included but not limited to seeking information relating to non-party Anson Funds, its business, and Anson Funds' business with further non-debtor third parties.  The Trustee has no basis, whether under Bankruptcy Rule 2004, the Federal Rules of Civil Procedure, or any other applicable rule, on which to seek the information it is seeking through the Subpoena Requests.

12.     Anson Funds objects to the Subpoena Requests to the extent they could be interpreted to call for the disclosure of protected information and/or communications, including, but not limited to, (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

13.     Anson Funds objects to the Subpoena Requests to the extent they seek to end-run compliance with any applicable and/or official process, procedure (including but not limited to the appropriate procedure by which one can seek document discovery in federal courts), law, the Federal Rules of Civil Procedure, or rule on obtaining ex-U.S. discovery.

14.     Anson Funds objects to the Subpoena Requests to the extent that they seek (a) information that is protected from disclosure by law and/or confidentiality obligations that Anson Funds has to non-parties, its employees, its clients, or others or (b) discovery of sensitive and non-public personal, business, or proprietary information that concerns such other non-parties and is

irrelevant to the Bankruptcy of Meta Materials. Anson Funds will not violate any such confidentiality obligations to non-parties in responding to the Subpoenas.

15.     Anson Funds objects to the Subpoena Requests to the extent they imply or suggest that Anson Funds has engaged in any misconduct and/or bears any responsibility or liability, in whole or in part, for Meta Materials pursuing its Bankruptcy.

16.     Anson Funds objects to the Subpoena Requests to the extent that they are vague, overbroad, harassing, oppressive, and/or unduly burdensome and/or where compliance with any or all of the Subpoena Requests would be unreasonably difficult, prohibitively expensive, and/or unduly time-consuming pursuant to the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

17.     Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to produce information or documents not within Anson Funds' possession, custody, or control.

18.     Anson Funds objects to the Subpoena Requests to the extent that they purport to seek discovery from any entity or individual other than Anson Funds. The Objections herein are made only on behalf of Anson Funds.

19.     Anson Funds objects to the Subpoena Requests to the extent they seek to impose obligations on Anson Funds beyond those imposed under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure 2004 and 9016, applicable case law, and/or any other source of applicable law.

20.     Anson Funds objects to the Subpoena Requests to the extent that they purport to require Anson Funds to provide information that cannot be obtained by a reasonably diligent investigation and search.

21.     Anson Funds objects to the Subpoena Requests to the extent that they assume facts that do not exist or are incorrect, assume legal conclusions, or relate to the construction of applicable law. Any statement herein does not indicate and should not be construed as an agreement by Anson Funds as to the truth or accuracy of any of the Trustee's characterizations of fact or law, the factual expressions or assumptions contained in any of the Subpoena Requests, the propriety of the Subpoena Requests, or the relevance or admissibility of any Subpoena Requests or documents produced in response thereto, if any.

## OBJECTIONS TO THE SUBPOENAS' DEFINITIONS

22.     Anson Funds objects to the definitions of "Acceptable Records", "ESI" and "electronically stored information" as overbroad, vague, and ambiguous, and insofar as they seek to impose obligations on Anson Funds inconsistent with, greater than, or not permitted under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, or any other source of applicable law.  Anson Funds further objects to all of these definitions to the extent they call for the disclosure of (i) information and/or communications protected by the attorney-client privilege; (ii) information and/or communications prepared for, or in anticipation of, litigation and, therefore, protected under the work-product doctrine; (iii) information and/or communications protected by the consulting expert privilege; and/or (iv) information and/or communications otherwise privileged or immune from such discovery.

7

## OBJECTIONS TO THE SUBPOENAS' INSTRUCTIONS

23.    Anson Funds objects to the instructions of both Subpoenas on the grounds that they seek to impose upon Anson Funds duties that are greater and more burdensome than those imposed by the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any other sources of applicable law. Anson Funds object to the instructions of both Subpoenas which direct Anson Funds to produce "information in the possession, custody, or control of any of Your attorney's, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships, parents or subsidiaries, and persons under their control" as overbroad and unduly burdensome for Anson Funds, a non-party.

24.    Anson Funds objects to Instruction 1 of both Subpoenas on the grounds that the instructions to produce "attachments, enclosures, memoranda, and cover letters" as well as an explanation for any documents which cannot be produced are vague, ambiguous, and unduly burdensome for Anson Funds, a non-party.

25.    Anson Funds objects to Instruction 2 of both Subpoenas on the grounds that the instructions to produce documents "without abbreviation or redaction" calls for Anson Funds to produce privileged or otherwise protected information or information that may be sensitive, proprietary, and/or confidential to other non-parties.  The request in Instruction 2 of both Subpoenas to produce "all non-identical versions" of every document is overly burdensome for a non-party like Anson Funds and so Anson Funds objections to this Instruction on that basis, too.

26.    Anson Funds objects to Instruction 4 of both Subpoenas as the "Relevant Time Period" is approximately four years rendering the Subpoenas unduly burdensome.

27.    Anson Funds objects to Instructions 5 and 6 of both Subpoenas as it need not do more than object to each of the Subpoena Requests and relay the bases for each objection.

28.     Anson Funds objects to Instruction 9 of Both Subpoenas on the grounds that it assumes that Anson Funds will be producing all of the requested documents in the Subpoenas.

29.     Anson Funds objects to Instruction 10 of both Subpoenas on the grounds that the reference to the "ESI Protocol agreed to by the parties and/or ordered by the court" presumes that Anson Funds is a party to Meta Materials' Bankruptcy or that it has agreed to any ESI Protocol. Anson Funds is a non-party and has not agreed to any ESI Protocol.

30.     Anson Funds objects to Instruction 11 of both Subpoenas on the grounds that they are incomplete and ambiguous, abruptly cutting off midsentence after the word "supplementary." As such, Anson Funds is unable to interpret these instructions.  Anson Funds also will not agree to be subject to continuing obligations under the Subpoenas as a non-party.

### OBJECTIONS TO THE SUBPOENAS' SUPPLEMENTAL INSTRUCTIONS

31.     Anson Funds objects to Supplemental Instruction 1 of both Subpoenas on the grounds that the request for "documents related to the following CUSIPs and tickers related to Meta Materials Inc., at a minimum, along with any other CUSIPS, tickers, or legend identifiers related to Meta Materials Inc." is overbroad and unduly burdensome.

32.     Anson Funds objects to Supplemental Instruction 2 of both Subpoenas on the grounds that the four-year "date range" identified is overbroad, disproportionate to the administration of the Meta Materials estate, and unduly burdensome on Anson Funds, a non-party.

33.     Anson Funds objects to Supplemental Instruction 3 of both Subpoenas on the grounds that the instruction that produced materials "should include but are limited to" is contradictory, vague, and ambiguous. Anson Funds further objects to Supplemental Instruction 3 on the grounds that the term "regulatory and compliance obligations during the relevant time

period" is vague and ambiguous. Anson Funds further objections to Supplemental Instruction 3 as it requests highly sensitive, proprietary, privileged, and/or work product protected information.

### SPECIFIC OBJECTIONS TO REQUESTS FOR PRODUCTION

The General Objections are incorporated into each and every Specific Objection as if set forth fully therein. As noted above, because the requests for production in the First Subpoena and Second Subpoena are substantively identical, the below Specific Objections apply equally to the Requests in both Subpoenas, unless otherwise indicated.

### REQUEST NO. 1:

All relevant order routing and execution records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to the routing of orders of any type for shares in Meta CUSIPs, using FIX or binary protocol or any other protocol used for similar purposes, in the original format the data was saved, including records of orders sent by Anson to any broker-dealer, exchange or off-exchange trading venue and orders received by Anson from any broker-dealer, exchange or off-exchange trading venue.

Order routing and execution records provided by Anson should reflect the lifespan transactions of orders from origination to completion capturing all relevant information (i.e. broker info, customer info, long or short indicators, unique ID etc.), with precision timestamps. These records include but are not limited to cancel/replaces, order forwarding, executions, and expired orders.

### OBJECTION TO REQUEST NO. 1:

In addition to its General Objections, which are incorporated herein by reference, Anson Funds objects to Request No. 1 as overbroad, unduly burdensome, oppressive, and harassing on Anson Funds, a non-party. Anson Funds further objects to the use of undefined and ambiguous language in this Request, including the terms "broker-dealer" and "exchange or off-exchange trading venue." Anson Funds further objects to this Request as it calls for the production of materials outside the scope of the applicable Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure. The documents sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or

financial condition of the debtor. Anson Funds further objects to this Request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers, or other parties, or proprietary information.

**REQUEST NO. 2:**

All records retained by Anson in the course of conducting its business and/or fulfilling its compliance obligations related to locating, securing, borrowing, and delivering shares of Meta CUSIPs, including any records of instances where Anson failed to deliver shares of Meta and records of how Anson rectified the outstanding failures to deliver, where applicable.

**OBJECTION TO REQUEST NO. 2:**

In addition to its General Objections, which are incorporated herein by reference, Anson Funds objects to Request No. 2 as overbroad, unduly burdensome, oppressive, and harassing on Anson Funds, a non-party. Anson Funds further objects to the use of inflammatory and unsubstantiated language in this Request, including the terms "failed to deliver" and "rectified." Anson Funds further objects to this Request to the extent it presumes that there were instances that Anson Funds "failed to deliver" shares of certain stocks. Anson Funds further objects to this Request as it calls for the production of materials outside the scope of the applicable Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure. The documents sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this Request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information.

**REQUEST NO. 3:**

All records of position data showing Anson's positions in all Meta CUSIPs, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to any

naked short sales), produced with full data in the frequency such data was recorded, in the original format in which the data was generated.

**OBJECTION TO REQUEST NO. 3:**

In addition to its General Objections, which are incorporated herein by reference, Anson Funds objects to Request No. 3 as overbroad, unduly burdensome, oppressive, and harassing on Anson Funds, a non-party. Anson Funds further objects to the use of inflammatory and unsubstantiated language in this Request, including the terms "sold short" and "naked short sales." Anson Funds further objects to this Request to the extent it presumes that Anson Funds or any other party engaged in "naked short sales" of certain stocks. Anson Funds further objects to this Request as it calls for the production of materials outside the scope of the applicable Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure. The records sought by this Request bear no nexus to the administration of the debtor's estate and are not relevant to the conduct, property, liabilities, or financial condition of the debtor. Anson Funds further objects to this request to the extent it calls on Anson Funds to disclose its own confidential business information, confidential information from its customers or other parties, or proprietary information.

\*\*\*

Subject to and without waiving its General Objections and Specific Objections, and as set forth above, Anson Funds responds that it is willing to continue to meet and confer with the Trustee. Further, Anson Funds reserves the right to take any action or position that it is permitted to take Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any applicable court order and/or to amend, supplement, correct, or clarify the above Objections.

12

Dated: July 11, 2025

GREENBERG TRAURIG, LLP

*/s/ Sylvia E. Simson*

_____

Sylvia E. Simson
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9275
Sylvia.Simson@gtlaw.com

*/s/ Alan J. Brody*

_____

Alan J. Brody
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932-0677
Tel: (973) 443-3543
BrodyA@gtlaw.com

*Attorneys for Anson Funds Management LP*

# Exhibit G

| From: | David D. Burnett |
|---|---|
| To: | Simson, Sylvia (Shld-NY-LT); Brody, Alan (Shld-NJ-Bky) |
| Cc: | Ryan R. C. Hicks; Clay Brust; Stephen W. Tountas; James Wes Christian; "Jeffrey L. Hartman" |
| Subject: | Re: In re Meta Materials - Objections to Subpoenas |
| Date: | Sunday, August 3, 2025 1:05:50 PM |
| Attachments: | image002.png |
| | image001.png |
| | image510094.png |
| | image265693.png |
| | image952652.png |

Sylvia and Alan:

Thanks for the call on Friday.  The *Millenium* decision is the one cited below, *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626-28 (Bankr. D. Del. 2016).

David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:      (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Thursday, June 12, 2025 6:46 PM
**To:** Sylvia.Simson@gtlaw.com <sylvia.simson@gtlaw.com>; BrodyA@gtlaw.com <brodya@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; Clay Brust <cbrust@rssblaw.com>; Stephen W. Tountas <stountas@kasowitz.com>; James Wes Christian <jchristian@christianattarlaw.com>; 'Jeffrey L. Hartman' <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia and Alan:

Thanks for the call on Tuesday about the Trustee's two subpoenas to Anson.

To sum up what Wes explained by phone:  Wes, myself, and others have been retained by the Trustee, Christina Lovato, to investigate potential manipulation of Meta Materials

stock and to potentially obtain recoveries for the estate. (Alan, on the call you focused on shareholders, but we are not only or specifically seeking recoveries for shareholders). The Trustee has authorized the Anson subpoenas and others as part of that investigation. As Wes said, as part of the Trustee's investigation, we are working with experts who have identified Anson, among other market participants, as likely having information relevant to our investigation.

I've recopied below my prior email with rules and caselaw showing the legal basis for the subpoenas. You asked for additional caselaw regarding the use of subpoenas in similar fact patterns. My colleague Wes referenced a few applicable bankruptcies. See the attached decision from *In re: Sorrento Therapeutics, Inc*., No. 23-90085 (Bankr. S.D. Tex. Apr. 4, 2023), Order Granting Debtors' Rule 2004 Motion, Dkt. No. 334. The decision granted the attached Debtors' Emergency Motion from that case, Dkt. No. 330. The motion concerned documents requested from 25 brokers, dealers, and other firms (Exhibit A to the motion). The motion includes citation to caselaw about Rule 2004. Page 6 of 12. See also *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626-28 (Bankr. D. Del. 2016), and the authorities cited therein.

In consultation with the Trustee's experts, we have prepared Supplemental Instructions and replacement Items to be Produced, attached. These replace the Items to be Produced in the original subpoenas. In the spirit of cooperation, we'd like Anson to accept service of the attached Supplemental Instructions and replacement Items to be Produced. Please advise.

As we requested on the call, while we are in good faith answering your questions about the subpoenas, per below and in this email and with our explanations by phone, we would in parallel appreciate you speaking with your client to determine 1) whether Anson will produce documents in response to the subpoenas, 2) what materials does Anson have which are potentially responsive to the attached replacement Items to be Produced, in what format, from what date range, etc., and 3) what is a realistic timeline for production. If Anson is unwilling to produce documents, notwithstanding our explanations of the legal and factual grounds for the subpoenas, we would like to know that soon so the Trustee can proceed to next steps.

Assuming Anson will produce documents, please also let us know any comments or edits to the draft protective order I sent you on May 23, reattached. It's based on a standard template; a Nasdaq subpoena using the same template was recently so-ordered by Bankr. D. Nev. Judge Barnes in this proceeding.

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*\*Admitted in New York and District of Columbia.*

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Friday, May 23, 2025 3:22 PM
**To:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>; STountas@kasowitz.com <STountas@kasowitz.com>; James Wes Christian <jchristian@christianattarlaw.com>; Jeffrey L. Hartman <jlh@bankruptcyreno.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Please let us know your availability for a meet and confer next week about the Anson subpoenas.  I've copied my colleagues who also represent the trustee.

I've attached a proposed protective order between the parties, in anticipation of Anson's future productions after we've conferred.  We've used the same template with all subpoena recipients, and the Court so-ordered a nearly-identical one yesterday.

You asked us for substantive responses to your objections to the subpoenas before agreeing to a meet and confer.  That does not bode well for the likelihood that Anson will comply with the subpoenas.  Nonetheless, as requested:

The two subpoenas were issued pursuant to Fed. R. Civ. P. 45 and Fed. R. Bankr. P. 9016, as stated on their cover pages.  Rule 9016 allows for service of subpoenas in bankruptcy proceedings, stating that "Fed. R. Civ. P. 45 applies in a bankruptcy case." Local Rule 2004 of the U.S. Bankruptcy Court for the District of Nevada provides as

follows: "(c) Production of documents. Production of documents[may] be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016."

Fed. R. Bankr. P. 2004, Examinations, provides that "On a party in interest's motion, the court may order the examination of any entity," and such examination can involve "any matter that may affect the administration of the debtor's estate." Section (c) of Rule 2004 provides as follows: "Compelling Attendance and the Production of Documents or Electronically Stored Information. Regardless of the district where the examination will be conducted, an entity may be compelled under Rule 9016 to attend and produce documents or electronically stored information. An attorney may issue and sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court."

Fed. R. Bankr. P. 6009 is the "Right of the Trustee or Debtor in Possession to Prosecute and Defend Proceedings." It states that "With or without court approval, the trustee or debtor in possession may: . . . (b) commence and prosecute in any tribunal an action or proceeding on the estate's behalf."

Authorities in this district explain these rules further: "Outside the usual discovery tools available in federal civil practice, Bankruptcy Rule 2004 also allows any party in interest to seek a court order permitting the examination of any entity. To assist in such examinations or production of records, Bankruptcy Rule 9016 provides for the issuance of subpoenas under Civil Rule 45. Like compelled discovery and testimony of third parties in federal civil practice, the usual protections and limitations may be sought." *Cash Cloud, Inc. v. Lux Vending, LLC (In re Cash Cloud, Inc.)*, 2024 Bankr. LEXIS 2159, *15 (Bankr. D. Nev. Sept. 10, 2024). In *In re Quicker Liquor LLC*, 2022 Bankr. LEXIS 1846, *5 (Bankr. D. Nev. June 22, 2022), the court explained that

> Any party in interest may request permission to conduct a 2004
> Examination. Fed.R.Bankr.P. 2004(a). The examination "may relate only to the
> acts, conduct, or property or to the liabilities and financial condition of the debtor,
> or to any matter which may affect the administration of the debtor's estate, or to
> the debtor's right to a discharge." Fed.R.Bankr.P. 2004(b). The "..production of
> documents or electronically stored information ...may be compelled as provided
> in Rule 9016 for the attendance of a witness as a hearing or
> trial." Fed.R.Bankr.P. 2004(c). Bankruptcy Rule 9016 provides for the attendance of
> witnesses to be compelled by issuance of a subpoena under Civil Rule 45.
> See Fed.R.Bankr.P. 9016. In addition to compelling a witness to give testimony,

subpoenas issued under Civil Rule 45 also may compel the production of documents and electronically stored information . . . .

Also, 11 U.S. Code § 704, part of the Chapter 7 bankruptcy statutes, sets forth the "Duties of trustee." "In light of these duties, a Chapter 7 trustee is described as a fiduciary charged with protecting the interests of all creditors of the estate." *In re Bollinger*, 2015 Bankr. LEXIS 4572, *17 (Bankr. D. Nev. June 29, 2015). Section 704 provides in relevant part that "(a) The trustee *shall* . . . (4) investigate the financial affairs of the debtor" (emphasis added). Those financial affairs include, here, the Trustee's investigation of trading in the debtor's stock, which may have affected the debtor's financial affairs in various ways. "The role of counsel for the trustee . . . is to perform those tasks [under 11 U.S. Code § 704] that require special expertise beyond that expected of an ordinary trustee." *In re Virissimo*, 354 B.R. 284, 290.

Christina Lovato, the Trustee in this bankruptcy action, *In re Meta Materials Inc*., Case No.: 24-50792-hlb (Bankr. D. Nev.), acting through counsel, has chosen to issue subpoenas to many parties related to the trading of Meta securities (including the tickers MMAT, TRCH, and MMTLP). We believe that Anson traded Meta securities during the time period listed in the subpoenas. The subpoenas were issued as part of the Trustee's ongoing investigations into the financial affairs of the debtor. The decisionmaking behind which parties received subpoenas and why, including as it relates to the Anson subpoenas, is not something we can disclose given privilege and attorney work product concerns.

Best,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

*\*Admitted in New York and District of Columbia.*

**From:** Sylvia.Simson@gtlaw.com <Sylvia.Simson@gtlaw.com>
**Sent:** Friday, May 9, 2025 11:17 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; BrodyA@gtlaw.com <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com <cbrust@rssblaw.com>;

STountas@kasowitz.com <STountas@kasowitz.com>
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We have not received the authorities requested to be provided by the Trustee in support of its position, so we assume the call is going to be rescheduled until those are sent.  Please advise as to when we can expect to hear from the Trustee with those authorities and your corresponding availability thereafter for a meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Simson, Sylvia (Shld-NY-LT)
**Sent:** Wednesday, May 7, 2025 11:37 AM
**To:** David D. Burnett <dburnett@schneiderwallace.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

David,

Throughout the subpoena, Anson Funds made clear it objects to the Subpoena Requests as seeking material beyond the scope of Bankruptcy Rule 2004, that bears no nexus to the administration of the debtor's estate, and is irrelevant to the conduct, property, liabilities, or financial condition of the debtor.  If the Trustee has specific case law/authorities involving trading transactions by non-debtor parties that it believes supports the subpoena requests, please provide them in advance of any call and by Thursday COB if we are having a call on Friday.  This request is not intended to limit, waive, or alter any of Anson Funds' other valid objections but so that we understand the Trustee's position in advance of any meet and confer.  Anson Funds reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Tuesday, May 6, 2025 5:19 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

Sylvia:

Friday works for me any time during your time window, but I'll let my colleagues chime in on their availability as well.  As for authorities that support the Trustee's position, do you mean authority supporting the Trustee's responses to all of the objections raised in your April 7 Objections to Subpoenas document?  I anticipate discussing the parties' positions on our call.  Or are you speaking specifically about authority for the Trustee's grounds for serving the subpoenas?

Thanks,
David



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:     (510) 740-2939
Facsimile:  (415) 421-7105
www.schneiderwallace.com

*Admitted in New York and District of Columbia.*

---

**From:** Sylvia.Simson@gtlaw.com

**Sent:** Monday, May 05, 2025 10:32 PM
**To:** David D. Burnett; BrodyA@gtlaw.com
**Cc:** Ryan R. C. Hicks; cbrust@rssblaw.com; STountas@kasowitz.com
**Subject:** RE: In re Meta Materials - Objections to Subpoenas

> **Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

David,

We are willing to have a call regarding our objections and are available Thursday afternoon between 2 and 5 EST and Friday between 10:30 and 2 EST. However, before any call, please identify what authorities the Trustee has that support the Trustee's position so we can review them in advance of the call. Please note Anson is not committing to anything by virtue of us agreeing to a call and that Anson reserves all rights.

Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** David D. Burnett <dburnett@schneiderwallace.com>
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** Simson, Sylvia (Shld-NY-LT) <Sylvia.Simson@gtlaw.com>; Brody, Alan (Shld-NJ-Bky) <BrodyA@gtlaw.com>
**Cc:** Ryan R. C. Hicks <rhicks@schneiderwallace.com>; cbrust@rssblaw.com; Stephen W. Tountas <STountas@kasowitz.com>
**Subject:** Re: In re Meta Materials - Objections to Subpoenas

**\*EXTERNAL TO GT\***

Sylvia:

I'm following up on your email below to my colleague Clay regarding the Trustee's subpoenas to Anson Funds in this case. We're contacting you on behalf of the Trustee. My colleagues and I, copied, would like to schedule a call to discuss your objections. Please let us know your availability later this week. We'd like to discuss the requests and map out a plan for Anson to produce responsive materials, starting with trade data. We believe the parties should be able to find common ground.

In the interim, to address your objections about producing confidential information: there isn't an applicable protective order in place yet but we can send you a proposed one.

Thanks,
David

Begin forwarded message:



**David D. Burnett**
**Attorney at Law**
1050 30th Street NW
Washington, DC 20007
Main Line: (415) 421-7100
Toll Free:  (800) 689-0024
Direct:      (510) 740-2939
Facsimile: (415) 421-7105
www.schneiderwallace.com

***Admitted in New York and District of Columbia.***
**From:** <Sylvia.Simson@gtlaw.com>
**Subject: In re Meta Materials - Objections to Subpoenas**
**Date:** April 7, 2025 at 11:16:26 AM PDT
**To:** <CBrust@rssblaw.com>
**Cc:** <BrodyA@gtlaw.com>

Clayton, please see the attached, a copy of which will be mailed to you by UPS.  Thank you.

**Sylvia Simson**
Shareholder

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.9275
Sylvia.Simson@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.