# EXHIBIT B

Jeffrey L. Hartman, Esq. – NSB #1607
HARTMAN & HARTMAN
510 W. Plumb Lane
Suite B
Reno, NV 89509
Tel: 775-324-2800
Fax: 775-324-1818
Email: notices@bankruptcyreno.com

Kent R. Robison, Esq. – NSB #1167
Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington Street
Reno, NV 89503
Tel: 775-329-3151
Email: krobison@rssblaw.com
cbrust@rssblaw.com
hwinston@rssblaw.com

*Attorneys for Christina Lovato, Trustee*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-hlb<br>(Chapter 7)<br><br>**OPPOSITION TO NON-PARTY CITADEL SECURITIES LLC, ANSON FUNDS MANAGEMENT LP, AND VIRTU FINANCIAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER**<br><br>Hearing Date:   October 30, 2025<br>Hearing Time:  10:30 a.m. |

Christina Lovato,  Chapter 7 Trustee for the Estate of Meta Materials Inc. ("Trustee"), by and through her undersigned counsel, opposes Non-Party Citadel Securities LLC (individually, "Citadel"), Anson Funds Management LP (individually, "Anson"), and Virtu Financial, LLC's (individually, "Virtu") (collectively, "Moving Parties") Memorandum of Law in Support of Motion to Quash And/Or For A Protective Order ("Motion").

This Opposition is based on the following Memorandum of Points and Authorities, the Declaration of Christina W. Lovato ("Lovato Decl."), and Declaration of David D. Burnett ("Burnett Decl.") filed contemporaneously herewith, the exhibits attached hereto, and the papers on file with this Court.

1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.     INTRODUCTION**

3

"A chapter 7 trustee is under a statutory duty to, among other things, 'collect the property

4

of the estate and 'investigate the financial affairs of the debtor'". *In re Mastro*, 585 B.R. 587, 595

5

(B.A.P. 9th Cir. 2018) (citing 11 U.S.C. § 704(a)(1) and (4)). "The Code and Rules provide powers

6

and tools that allow a trustee to meet her responsibilities to investigate a debtor's financial affairs

7

and to collect and liquidate a debtor's estate." *Id*. at 596.

8

One of those tools is Rule 2004. "Rule 2004 is the basic discovery device in bankruptcy

9

cases." *Id*. Rule 2004 allows broad examination relating to "the acts, conduct, or property or to

10

the liabilities and financial condition of the debtor, or to any matter which may affect the

11

administration of the debtor's estate, or to the debtor's right to a discharge." *Id*. at 596-97 (citing

12

Fed. R. Bankr. P. 2004(b)).

13

"As the Rule's text makes clear, the scope of a Rule 2004 examination is unfettered and

14

broad; the rule essentially permits a fishing expedition." *Id*. at 597 (internal quotation marks

15

omitted). "And the examination may extend to third parties who have had dealings with the

16

debtor." *Id*. (internal quotation marks omitted). Rule 2004 allows for pre-litigation discovery,

17

prior to initiating any adversary proceeding in bankruptcy.

18

In accordance with the foregoing principles defining a trustee's duties, the Trustee obtained

19

this Court's orders allowing her to conduct Rule 2004 examinations of Citadel, Anson, and Virtu.

20

Moreover, the Trustee served Citadel, Anson, and Virtu with subpoenas as provided by Fed. R.

21

Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016.

22

The Trustee seeks to investigate and gather information about the financial condition of

23

Meta Materials Inc. ("Debtor") and to explore any wrongdoing and potential claims that may exist.

24

This process allows the Trustee to comply with the requirements of F.R.Civ.P. 11 and F.R.Bankr.P.

25

9011, which require a reasonable factual investigation to be performed before a complaint is filed.

26

*In re Schivo*, 462 B.R. 765, 777 (Bankr. D. Nev. 2011).

27

The Trustee's decision as to whether to commence one or more adversary proceedings is

28

guided by two seminal Supreme Court decisions: *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Iqbal* reinforces and broadens the application of the heightened pleading standard initially set forth in *Twombly*, establishing that plaintiffs must provide more than just conclusory statements to survive a motion to dismiss. Accordingly, Trustee Lovato is proceeding with pre-litigation discovery to assess whether viable claims exist. The Trustee served the Subpoenas on the Moving Parties in furtherance of this investigation. These are the exact reasons Rule 2004 exists. *In re Subpoena Duces Tecum*, 461 B.R. 823, 831-32 (Bankr. C.D. Cal. 2011) ("The 2004 examination procedure clearly contemplates the absence of litigation. This has been accentuated as a result of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), because any complaint that might be filed would be required to contain specific allegations potentially only discoverable through 2004 examinations.").

The Moving Parties' Motion is based on a fundamental misunderstanding of Rule 2004. Nearly all the cases upon which the Moving Parties rely ***do not involve a trustee investigating potential claims and the financial affairs of a debtor***, like this case. Instead, the majority of cases cited in the Motion involve debtors, creditors, and people who do not even qualify as parties in interest trying to use Rule 2004 to pursue self-serving goals and private litigation. In this case, the Trustee issued the Subpoenas in her capacity as a chapter 7 trustee, pursuant to her statutory obligation to investigate the Debtor's financial affairs.

The Moving Parties' reliance on entirely inapplicable cases involving non-trustees' efforts to use Rule 2004 has led them astray. Indeed, a great deal of the Motion condemns the Trustee for her effort to investigate potential claims against third parties. But that is expressly one of the reasons why Rule 2004 is available to trustees. Chapter 7 trustees are in a much different position than creditors, interested parties, non-interested parties, and Chapter 11 debtors. Trustees have a duty to investigate the financial condition of debtors and are afforded broad powers to do so. As noted above, Rule 2004 is the "basic discovery device in bankruptcy cases" and is regularly used by trustees to investigate the financial affairs of the debtor.

The Trustee served appropriate Rule 2004 orders and Subpoenas on the Moving Parties,

and the Moving Parties' objections are factually and legally untenable. Accordingly, the Trustee respectfully requests that the Court deny the Motion in entirety and compel the Moving Parties to comply with the Subpoenas, starting by engaging in meaningful telephonic meet-and-confers followed by productions of agreed-upon information responsive to the Subpoenas.

## II.    RELEVANT BACKGROUND

1.      The Voluntary Petition for Non-Individuals Filing for Bankruptcy was filed on August 9, 2024. ECF No. 1.

2.      On August 15, 2024, the United States Trustee appointed Christina W. Lovato as Trustee in this case. ECF No. 14.

3.      On August 21, 2024, the Trustee filed an *ex parte* application to employ Jeffrey L. Hartman, Esq. and Hartman & Hartman as the Trustee's attorney. ECF No. 15. Mr. Hartman has practiced exclusively in bankruptcy law and related matters for over 40 years and has represented the Trustee in numerous complex matters over the last 10 years. ECF No. 16.

4.      In fulfilling her duties under § 704, and based upon her investigation of the events leading up to the filing of the Chapter 7 case, the Trustee learned that, prior to the filing of the case, the Christian Attar firm began a preliminary investigation into activities related to a merger in which the Debtor acquired Torchlight Energy Resources ("TRCH"), both of which were listed on NASDAQ. *See Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, ECF No. 98, 1-2; *see also* Lovato Decl. (describing the Trustee's initial investigation and retention of Special Litigation Counsel).

5.      The preliminary investigation conducted by Christian Attar and securities consultants showed that third parties engaged in market manipulation through tactics including "naked short selling" and "spoofing," which create a false impression of market activity. Summary of Potential Litigation, ECF No. 98-1, 1-2. In turn, traders make misinformed trading decisions that artificially suppress or inflate stock prices and allow wrongdoers to profit. *Id*. at 98-1, 2.

6.      This preliminary investigation showed that market manipulation led to serious

4

financial losses for the Debtor. *Id.*

7.  This Court approved the Trustee's application to employ the law firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel to investigate these market manipulation claims and litigate them, as applicable. ECF No. 118. This Court later approved the Trustee's retention of the firm Schneider Wallace Cottrell Kim LLP as additional Special Litigation Counsel. ECF Nos. 1956, 1962.

8.  The Trustee additionally requested and was granted permission by this Court to retain the law firm of Robison, Sharp, Sullivan & Brust as litigation counsel to conduct Rule 2004 examinations and document requests related to voidable transfer litigation and to ultimately litigate those voidable transfer matters. ECF Nos. 105, 119.

9.  To investigate and obtain an understanding of the financial affairs of the Debtor and to investigate potential claims that may be asserted, the Trustee began seeking information under Rule 2004 and via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C), as adopted by Fed. R. Bankr. P. 9016.

10.  As part of the Trustee's investigation of the Debtor's financial condition and potential claims, the Trustee filed *ex parte* motions for 2004 examination for Anson, Citadel, Depository Trust Clearing Corporation ("DTCC"), Financial Industry Regulatory Authority ("FINRA"), the NASDAQ Stock Market LLC ("NASDAQ"). Charles Schwab & Co. Inc. ("Schwab"), TD Ameritrade, Tradestation Securities Inc., and Virtu, and this Court granted the requests for examination. *See* ECF No. 1614 (Anson); ECF No. 1635 (Citadel); ECF No. 1636 (TD Ameritrade); ECF No. 1637 (DTCC); ECF No. 1639 (Schwab); ECF No. 1641 (Virtu); ECF No. 1642 (FINRA); ECF No. 1643 (Tradestation); ECF No. 1644 (NASDAQ).

11.  The Trustee also served subpoenas on many of the same entities seeking specific data and documents. The Trustee also filed a notice with the Court on March 6, 2025, that she intended to serve Rule 9016 document Subpoenas on Citadel, Anson, and Virtu. ECF No. 1617 (Citadel); ECF No. 1615 (Anson); ECF No. 1631 (Virtu).

12.  Charles Schwab & Co., Inc., TD Ameritrade, TradeStation Securities, Inc., and Think or Swim (together, the "Schwab parties") and NASDAQ have provided spreadsheets

containing data on individual trades in Meta Materials stock in response to the Subpoenas served on them. Burnett Decl., ¶5. The Schwab parties made a production on May 16, 2025. NASDAQ made a production on July 3, 2023. Also, DTCC offered to produce reports on Meta Materials market activity, albeit for a fee, and the Trustee and DTCC are continuing to discuss the offer. *Id*.

13. The Moving Parties objected to the Rule 2004 examinations. *Id*. at ¶6.

14. The information the Trustee seeks from the Moving Parties consists of trade data and communications related to the Debtor's stock. The Subpoenas are limited to a four-year period. *Id*. at ¶8.

15. Counsel for the Moving Parties and counsel for the Trustee engaged in meet and confer efforts but were unable to resolve their disagreements and reach agreement on responsive productions. *Id*. at ¶7.

16. The Moving Parties have asserted that the requested information can be obtained from the other third parties served with Rule 2004 examinations and Subpoenas, but this is untrue. Each third party served with Rule 2004 examinations and Subpoenas has specific and unique trade data that the Trustee seeks for her investigation of the Debtor's financial affairs and potential claims. Because the subpoena recipients are mostly market participants with their own clients and accounts, there should be no overlap in the information requested in the Subpoenas. *Id*. at ¶9-10.

17. As set forth in Mr. Burnett's Declaration, Special Litigation Counsel expect that in the ordinary course of business, financial companies such as the Moving Parties maintain databases of trading data for their proprietary accounts and any customer accounts. *Id*. at ¶11. Special Litigation Counsel further expect that each of the Moving Parties have the technical ability to run queries on those databases and generate spreadsheets of relevant trading data, using search terms including, at a minimum, the date range and Meta Materials CUSIPs listed in the Subpoenas. *Id*.

18. The work necessary for the Moving Parties to generate productions of such spreadsheets should not be burdensome, because it would not require the Moving Parties to

review voluminous individual documents, like a production of emails would require.[4] *Id*. at ¶12. Generating spreadsheets should simply require inputting parameters into software to search the trading data. *Id*. Moreover, it should not be appreciably more burdensome to generate large spreadsheets (containing a lot of individual Meta Materials trades) than it would be to generate smaller spreadsheets (with fewer trades), because the process of inputting parameters into a software program to collect trading data would be the same. *Id*.

### III. STANDARD OF REVIEW

Rule 2004(b) of the Federal Rules of Bankruptcy Procedure provides that the court may order the examination of any entity relating "only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."

Because Rule 2004(a) provides that the court *may* order the examination of any entity, its plain meaning grants the bankruptcy court's complete discretion in determining whether a Rule 2004 examination is appropriate. *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D. N.Y. 2002); *In re French*, 145 B.R. 991, 993 (Bankr. D. S.D. 1992).

While the scope of a Rule 2004 examination is not unlimited, it is "unfettered and broad" and properly described as allowing a "fishing expedition". *In re The Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D. N.Y. 1996).

The Rule 2004 examinations and Subpoenas are proper and within the scope of Rule 2004. Therefore, the Motion should be denied.

### IV. ARGUMENT

#### A. The Rule 2004 Subpoenas Do Not Violate Local Rule 2004(c).

The Moving Parties argue that the Rule 2004 Subpoenas violate Local Rule 2004(c) and that "[t]his defect alone is dispositive and requires that the document requests in the Rule 2004 Subpoenas be quashed." Mot., 9-10. The Moving Parties have apparently neglected to read the

---

4 The Trustee did request Virtu and Citadel to produce communications, which includes e-mails. However, Virtu and Citadel have not met their burden to show that production of responsive e-mails is overly burdensome. The parties could have conferred to reduce any alleged burden, but instead, Virtu and Citadel refused to produce any documents.

rules and cases they cite in support of this argument.

Local Rule 2004(c) (in its entirety) states, "Production of documents may not be obtained via an order under Fed. R. Bankr. P. 2004. ***Production of documents may, however, be obtained via subpoena as provided by Fed. R. Civ. P. 45(a)(1)(C)***, as adopted by Fed. R. Bankr. P. 9016." (Emphasis added). Not only did Moving Parties blatantly omit the second sentence from their brief, but they also ignore that the Trustee served Subpoenas pursuant to Fed. R. Civ. P. 45, as adopted by Fed. R. Bankr. P. 9016, which is explicitly permitted by Local Rule 2004(c). The Subpoenas cite Rule 45 and Rule 9016. *See* Exhibit 2 to Motion (Rule 45 subpoena to Citadel); Exhibit 4 to Motion (Rule 45 subpoena to Anson); Exhibit 6 to Motion (Rule 45 subpoena to Virtu).

Moving Parties further fail to acknowledge that this Court's Orders granting the *ex parte* motions for 2004 examination do not include a requirement for production of documents. *See* Order Granting Ex Parte Motion for Order Requiring Custodian of Records for Citadel Securities LLC to Appear for Examination Pursuant to F.R.Bankr.P. 2004 (ECF No. 1635); Order Granting Amended Ex Parte Motion for Order Requiring Custodian of Records for Virtu Financial, LLC to Appear for Examination Pursuant to F.R.Bankr.P. 2004 (ECF No. 1641); Order Granting Ex Parte Motion for Order Requiring Custodian of Records for Anson Funds USA to Appear for Examination Pursuant to F.R.Bankr.P. 2004 (ECF No. 1686). Given that Local Rule 2004(c) states that "Production of documents may not be obtained via an order under Fed. R. Bankr. P. 2004." and there is no Court order requiring any of the Moving Parties to produce documents, then Local Rule 2004(c) has not been violated.

Moving Parties rely on *In re CWNevada LLC*, 602 B.R. 717, 721 n.3 (Bankr. D. Nev. 2019) for the proposition that 2004 Subpoenas with document requests "'run afoul of Local Rule 2004(c)' and ***cannot be enforced***." Mot., 9 (emphasis added). The case does ***not*** support Moving Parties' contention. Moving Parties (again) ignore the full discussion in the cited source, here set forth in footnote 3 of the case. In *In re CWNevada LLC*, the Court ***did not*** conclude that the 2004 subpoena could not be enforced, as Moving Parties represent to this Court. Rather, the Court allowed the 2004 examination to proceed, explaining that "[a]s a party in interest, CIMA Group is

permitted to conduct a 2004 Exam of the Debtor's principal and should not be whipsawed, of course, between two poorly drafted local rules." *Id.*

The "poorly drafted local rules" to which the Court referred were Local Rule 2004(c) and Local Rule 5075(a)(2)(L). Local Rule 5075(a)(2)(L) provides that the Clerk of the Court has authorization to sign orders approving Rule 2004 examinations "***if*** the date set for examinations is set on not less than fourteen (14) days' notice ***and the request for examination does not include a request for production of documents***" (emphasis added). Local Rule 5075(a)(2)(L) further states that "Orders that do not meet these requirements and orders under Fed. R. Bankr. P. 2004(d), must be signed by a judge." The Court noted that "[t]he language of Local Rule 5075(a)(2)(L) is simply inconsistent with the language of Local Rule 2004(c) that precludes a production of documents from being obtained through an order authorizing a 2004 Exam." *Id.*

The party seeking the 2004 examination did so in *In re CWNevada LLC* in the same manner as the Trustee did in this case—by using the United States Bankruptcy Court Form B2540 for "Subpoena for Rule 2004 Examination." *See* ECF No. 11 in Case 19-12300-mkn. The party in *In re CWNevada LLC* also checked the box for "Production," just as the Trustee did in this case. *See id.* Checking the box on the form does not make the Subpoenas improper nor violate the Local Rules. Instead, checking the box simply informs the recipient that a subpoena for documents is also being served, which Rule 2004 and Local Rule 2004(c) expressly contemplate.

The Trustee did not and would not violate this Court's orders. By checking the box for production, the Trustee notified the Moving Parties of the Rule 2004 examination and the request for documents pursuant to Fed. R. Bankr. P. 9016. The Moving Parties clearly received such notice. Thus, this issue is not one that requires quashing the Subpoenas, and the Motion should be denied.

### B. The Rule 2004 Motions and the Subpoenas are Supported by Good Cause.

The Moving Parties argue that good cause does not exist for the Rule 2004 examination. "Generally, good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.,* 318 B.R. 263, 268 (S.D.N.Y.2004) (quoting *In re*

1 | *Dinubilo,* 177 B.R. 932, 943 (E.D.Cal.1993)).

2 |      As set forth herein, the Rule 2004 Subpoenas are appropriate, and the Trustee has

3 | established good cause to seek such discovery. Once the Trustee establishes the existence of

4 | "good cause," the burden shifts back to the objecting party to show that examination would be

5 | oppressive or burdensome. *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill.

6 | 1985) (citing *Freeman v. Seligson,* 405 F.2d 1326, 1337 (D.C. Cir. 1968)).

7 |      The Moving Parties contend that the Rule 2004 motions and the Subpoenas do not seek

8 | information within the permissible scope of Rule 2004. However, in making this argument, the

9 | Moving Parties mischaracterize the topics of information the Trustee seeks to make it seem as

10 | though the Trustee is seeking information entirely unrelated to the Debtor. *See* Mot., p. 11. This

11 | is untrue, since the Subpoenas specifically request documents related to the Debtor (Meta). For

12 | example, the following topics are included in the Citadel Subpoena:

13 |     Request 1:
    All messages relating to the routing of orders of any type for shares **Meta and/or**

14 |     **MMTLP** using FIX or binary protocol or any other protocol used for similar
    purposes, in the original format the data was saved, received from client broker-

15 |     dealer of Citadel and sent to client broker-dealers of Citadel.

16 |     Request 2:

17 |     All messages relating to the routing of orders of any type for shares **Meta and/or**
    **MMTLP** using FIX or binary protocol or any other protocol used for similar

18 |     purposes, in the original format the data was saved, routed to an exchange or off-
    exchange trading venue on behalf of a client broker-dealer of Citadel and received

19 |     from an exchange or off-exchange trading venue on behalf of a client broker-

20 |     dealer of Citadel.

21 |     Request 3:

22 |     All messages relating to the routing of orders of any type for shares **Meta and/or**
    **MMTLP** using FIX or binary protocol or any other protocol used for similar

23 |     purposes, in the original format the data was saved, routed to an exchange or off-
    exchange trading venue on behalf of Citadel and received from an exchange or

24 |     off-exchange trading venue on behalf of Citadel.

25 |     Request 4:

26 |     All communications electronically stored in the original format captured,
    including transactions records and emails, related to locating, securing,

27 |     borrowing, and delivering shares of **Meta and/or MMTLP**, including records of
    instances where Citadel failed to deliver (FTD) shares of **Meta and/or MMTLP**

28 |     and records of how Citadel rectified the outstanding FTDs.

Request 5:
All records of position data representing Citadel's position in **Meta and/or MMTLP**, including tallies of shares sold short that were located and/or successfully borrowed as well as shares sold short that were not located and/or successfully borrowed (e.g. the position corresponding to naked short sales), produced at the frequency such data was recorded).

ECF No. 1617 (emphasis added).

The Moving Parties egregiously omit the fact that each request is focused on information about the shares of Meta specifically. That information should help inform the Trustee's investigation into the financial condition of the Debtor, as contemplated by Rule 2004. As noted above, the Trustee is investigating possible manipulation of the Debtor's stock which may have affected its financial condition. The Debtor's stock price plummeted over time, which may be due in part to market manipulation (spoofing, shorting), which is what the Trustee is investigating.

The 2004 examinations and Subpoenas should also help the Trustee to determine the scope of viable claims that may exist for the Debtor. "'[A]s a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate . . . and for discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Jasper Pellets, LLC*, 647 B.R. 151, 157 (Bankr. D.S.C. 2022) (citing *In re Enron Corp.*, 281 B.R. at 840). Assessing potential wrongdoing is exactly what the Trustee seeks to accomplish with the Rule 2004 examinations and related Subpoenas.

Ignoring the broad scope and purpose of a Rule 2004 examination as a pre-litigation tool to investigate the financial condition of the debtor and to investigate *potential* claims of the debtor, the Moving Parties want to judge the Trustee's Subpoenas based on hypothetical future claims against them, prior to the investigation being conducted and prior to and litigation, in an effort to preclude the investigation from occurring at all. This is absurd and not a basis to quash a Rule 2004 examination or the Subpoenas.

Indeed, the Moving Parties' objection is essentially based on relevance, but the scope of Rule 2004 examinations is much broader than the typical relevance standard in discovery during litigation. Because Rule 2004 examinations are investigatory, pre-litigation tools, the Trustee need

11

not identify specific claims that may be brought in the future at the time the Rule 2004 discovery is sought.  *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 630-31 (Bankr. D. Del. 2016) ("[T]he Rule 2004 Motion does not seek information related to any particular claim or proceeding; rather, the Rule 2004 Motion seeks information regarding prospective claims that the Trustee *may* bring in the future, whether against KPMG or another party.") (Emphasis in original).

In *In re Millenium Lab*, the Court rejected the objecting party's arguments that "the court, in conducting its post-confirmation jurisdictional analysis, should not look at the Rule 2004 Motion itself, but rather should look through the Motion to the underlying causes of actions that the Trustee *may* bring based on information gathered from his investigations." *Id*. at 623 (emphasis in original).  The objecting parties argued that "because the causes of action that will follow an investigation are non-core and do not have the requisite 'close nexus' to the bankruptcy proceeding, the Court does not have jurisdiction to adjudicate this Rule 2004 Motion." *Id*.

The Court rejected these arguments, explaining that "[s]uch a contention endows the Court with prophetic powers it does not, and cannot, have.  As numerous courts have recognized when presented with a Rule 2004 motion, 'there is no way to determine where the investigations will lead, what claims may be revealed, and what issues are core and non-core.'" *Id*. (citing cases).  *In re Millenium Lab* makes clear that there is no requirement that a Rule 2004 motion identify the specific information the trustee will seek, nor which particular claims may be brought in the future. *See id*. at 631 (explaining that "the Court will not speculate as to what causes of action the Trustee may unearth through the Rule 2004 investigations").  Rather, the entire purpose of Rule 2004 discovery is to investigate ***potential claims*** and the financial condition of the Debtor.  That is what the Trustee seeks to do here.

The Moving Parties argue that market manipulation claims related to the Debtor's stock "could not possibly concern administration of the Debtor's estate because these claims belong to the shareholders and are not assets of the estate." Mot., 12. Whether the myriad of potential claims which may be pursued by the Trustee in this case are derivative is not an issue which should be addressed at this early stage of the case.  Until the Trustee has proceeded far enough in her investigation to determine whether she can articulate claims which comply with requirements of

12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Trustee cannot possibly know what viable claims the Estate may hold. Trustee Lovato is proceeding with discovery to be in a better position to make those determinations.

In *Brookfield Asset Mgmt. v. Rosson*, 261 A.3d 1251 (Del. 2021), the Delaware court was dealing with issues surrounding questions of derivative claims versus direct claims among other things. Stating the obvious, the Court observed: "Classification of a particular claim as derivative or direct can be difficult." 261 A.2d at 1263. The court highlighted the issue in footnote 42:

> *See, e.g.*, *Agostino v. Hicks*, 845 A.2d 1110, 1117-1118 (Del. Ch. 2004) (noting that "[t]he distinction between direct and derivative claims is frustratingly difficult to describe with precision," and that "[r]eference to Supreme Court opinions, while certainly instructive, does not conclusively resolve how this Court should draw the line between direct and derivative claims."). Other courts applying our law have experienced this difficulty as evidenced by our issuance of several opinions responding to other courts' request to answer certified questions involving distinguishing between a direct and derivative claim. *See, e.g.*, *Citigroup Inc. v. AHW Investment P'ship*, 140 A.3d 1125 (Del. 2016) (en banc); *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175 (Del. 2015) (en banc); *Culverhouse v. Paulson & Co.*, 133 A.3d 195 (Del. 2016) (en banc).

At such time as the Trustee has commenced one or more adversary proceedings, determination of direct vs. derivative may become an issue for the Court to decide after motion practice; however, the issue is premature at this stage in the proceeding.

Separate and apart from the issue of derivative vs. direct claims, on the known facts of this case, Trustee Lovato has standing to maintain actions on behalf of the Estate for related securities fraud under Rule 10b-5 of the Securities and Exchange Act of 1934. *Profilet v. Cambridge Financial Corp.*, 231 B.R. 373 (Bankr. S.D.Fla. 1999). In *Profilet,* the plaintiff was a chapter 11 trustee prosecuting claims for violation of state and federal securities laws. The Court concluded that the trustee had standing to bring a § 10 and Rule 10b-5 claim against the defendants. *See id.* at 379 (collecting cases supporting trustee standing to pursue securities fraud claims).[5] Thus, the

---

[5] The Court relied on *Hooper v. Mountain States Securities Corp.,* 282 F.2d 195, 200-03 (5th Cir. 1960), cert. denied, 365 U.S. 814, 5 L. Ed. 2d 693, 81 S. Ct. 695 (1961), as establishing that a bankruptcy trustee on behalf of a debtor corporation as issuer of stock has a private right of action for violations of Section 10 and Rule 10b-5. The Court further referenced the following string cite: *Estate of Soler v. Rodriguez,* 63 F.3d 45, 54 (1st Cir.1995) ("It is now well-established that a corporation has a claim under § 10(b) if the corporation was defrauded in respect to the sale of its own securities by some or even all of its directors."); *In re Stat–Tech Securities Litig.,* 905 F.Supp. 1416,

13

Moving Parties' contention that any such claims "belong to the shareholders" (Mot. 12) is unsupported.

Moving Parties cite *In re J & R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010) to support their argument, describing it as "denying Rule 2004 examination where it was employed as 'private collection device for creditors' rather than a tool 'to efficiently administer bankruptcy estates.'" *Id.* However, the Moving Parties ignore that *In re J & R Trucking, Inc.* involved **creditors** seeking information through Rule 2004 to use in private litigation. *See In re J & R Trucking, Inc.*, 431 B.R. at 819. The facts of *In re J & R Trucking, Inc.* make it entirely distinguishable from this case where the Trustee seeks information under Rule 2004 to investigate the financial condition of the Debtor.

In fact, the Court admonished the creditors, "Remember, these are chapter 7 cases and it is the trustee's the duty to investigate the debtor's affairs and the rights of the bankruptcy estate. To the extent the movants seek to discover avoidable transfers, ***they are intruding upon the trustee's duties and taking those duties upon themselves***." *Id.* at 822 (emphasis added). The Court further explained that Rule 2004 "allows the trustee to do the necessary investigatory work without the need for initiating formal litigation which would trigger the traditional discovery tools. Indeed, one purpose for such an examination is to give the trustee the information needed to determine whether litigation should be filed." *Id.* at 822. The Trustee in this case is using Rule 2004 for the exact purpose described in the case—not to further private litigation on behalf of creditors. Therefore, the Moving Parties' reliance on *In re J & R Trucking, Inc.* is misplaced.

Likewise, the Moving Parties liken the Rule 2004 discovery sought by the Trustee in this case to the discovery sought by a *pro per* litigant engaging in a "pattern of repetitive, frivolous, and harassing filings" in *In re Vital Pharms., Inc.*, No. 22-17842-PDR, 2025 WL 1189882, at *4 (Bankr. S.D. Fla. Apr. 23, 2025), but that holding is entirely inapplicable. In *In re Vital Pharms.,*

---

1423 (D.Colo.1995) (holding that corporation emerging from bankruptcy has standing under 10b–5 because "it is 'well established' that § 10(b) and Rule 10b–5 protect corporations as well as individuals. Thus a corporation that issues its own stock in reliance on another's deceptive or manipulative practice may be deemed a 'seller' with standing to sue under § 10(b) and Rule 10b–5.") (citing *Hooper; Superintendent of Ins. Of New York v. Bankers Life & Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971)).

*Inc.*, the court denied the Rule 2004 subpoenas and reprimanded the individual seeking Rule 2004 discovery because the subpoenas were predicated on "[s]peculative or inflammatory claims – unsupported by any facts." *In re Vital Pharms., Inc.*, at *4. It is baffling that the Moving Parties represent to this Court that the Rule 2004 Subpoenas in this case are "similar to those recently rejected in *In re Vital Pharms., Inc.*," claiming that the Trustee is fishing for information to "assert potential personal litigation claims rather than a genuine concern for the administration of the estate." Mot., 12.

The Subpoenas in this case are ***nothing*** like the discovery sought in *In re Vital Pharms., Inc.* The Court described the *pro per* litigant's history of inappropriate litigation conduct and the substantial information and discovery the litigant had already obtained that showed his accusations were not credible or substantiated. *See In re Vital Pharms., Inc.* at *4. The Court explained that instead of legitimate 2004 discovery, "[t]he motion appears instead to be a forum for [the party's] personal grievances and to assert potential personal litigation claims rather than a genuine concern for the administration of the estate." *Id*. Moreover, the Court concluded that the Rule 2004 motion was "both frivolous and vexatious" and that "[i]t is both factually and legally frivolous, as it has no reasonable factual basis, is unsupported by any competent evidence, and has no chance of succeeding." *Id*. The *pro per* litigant in that case even threatened the Court and all of the parties involved. *Id*. at *5.

This case involves a Chapter 7 Trustee serving legitimate discovery to investigate the Debtor's financial condition and potential claims for the Debtor. The Moving Parties are making unsupported comparisons to try and preclude the Trustee's very basic discovery.

While they contest the need to produce documents, the Moving Parties do not meaningfully support their arguments that the Trustee's Rule 2004 examinations would be oppressive or burdensome. *See* Mot., 18-19. Therefore, the Moving Parties have failed to show that the Subpoenas should be quashed or that a protective order should be issued. The Motion should be denied.

### C. The Rule 2004 Subpoenas were Served for a Proper Purpose.

The Moving Parties next argue that the Trustee has identified "litigation targets", so Rule

1     2004 discovery is unavailable. That is factually inaccurate. The Trustee has nowhere stated that

2     it has identified "litigation targets" in its investigation of stock manipulation. For example, the

3     description of potential litigation filed with the Court does not name any specific targets. *See*

4     Summary of Potential Litigation, ECF No. 98-1, 1-2. In conversations with each of the Moving

5     Parties, the Trustee's counsel explicitly said that it had not reached any conclusions about potential

6     wrongdoers. The Trustee is merely investigating the facts.

7         Again, the cases cited by the Moving Parties do not support their arguments because the

8     cases the Moving Parties rely on do not involve trustees in Chapter 7 cases, who have a duty to

9     investigate the financial condition of the debtor's estate.[6] In *In re GHR Energy Corp.*, 35 B.R.

10     534, 535 (Bankr. D. Mass. 1983) five related Chapter 11 debtors in possession sought a Rule 2004

11     examination—not the trustee. The Court noted that "Rule 2004 is creditor and trustee oriented"

12     and rejected the debtors' arguments that they needed the information to determine whether to file

13     a lawsuit. The Court found that the evidence presented showed that the debtors were trying "to

14     circumvent the procedural safeguards provided a litigant by the Federal Rules of Civil Procedure"

15     because the debtors already had sufficient evidence to file a complaint. *Id*. at 538-39.

16         *In re Defoor Ctr., LLC*, 634 B.R. 630, 632 (Bankr. M.D. Fla. 2021), cited by the Moving

17     Parties, also involved a debtor in a Chapter 11 matter that sought discovery under Rule 2004 for

18     claims against a third party who allegedly failed to fund a loan to the debtor, which caused the

19     debtor to file for bankruptcy. Even these cursory facts highlight the fundamental difference

20     between cases involving ***debtors*** seeking Rule 2004 discovery and cases like this one, where the

21     Trustee is investigating the financial condition of the Debtor. As the Court in *In re Defoor Ctr.,*

22     *LLC* explained: "the Debtor is not a newcomer to the scene. Rather, the Debtor was one party to

23     the transaction that gives rise to the alleged claims" against the third party. *Id*. at 639 (footnotes

24

---

25   6 Moving Parties also rely on numerous cases involving non-trustees and even non-interested parties, which are therefore inapplicable to this case. *See, e.g.*, *In re Interpictures, Inc.*, 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988) (the

26   movant was not the trustee and not even a "party in interest" and "the examination [was] not so much to discover the existence of assets on behalf of the debtor, but rather for the purpose of discovery in a pending or proposed

27   proceeding"); *In re Waddell*, No. 24-11769 (JLG), 2025 WL 957733, at *7 (Bankr. S.D.N.Y. Mar. 28, 2025) (court rejected Rule 2004 examination that the debtor's ex-husband sought to further litigation between the parties in

28   family court).

omitted). Thus, the debtor possessed all facts giving rise to its causes of action. *See id*. "Given that, it is apparent the Debtor has the preliminary information needed to bring whatever claims it may have against [the third party]. That preliminary information is all Rule 2004 is intended to provide." *Id*.

In contrast, the Trustee here is not similarly situated to the debtor in *In re Defoor*. The Trustee does not have sufficient information to file a complaint with specific allegations of wrongdoing. The Trustee does not yet have adequate information to fully evaluate the trades of Meta stock, whether there was market manipulation, and how that impacted the value of the Debtor's stock and the Debtor's overall financial condition.[7]

The Moving Parties also argue that the Trustee's counsel's invocation of the work product doctrine in response to certain questions they raised about the Subpoenas "is a judicial admission that forecloses any argument that the Subpoenas serve a legitimate Rule 2004 purpose." Mot., 14. Not so. One cannot infer anything from an invocation of the work product doctrine, other than that the invoking party believes the requested information is attorney work product and thus need not be shared. Certainly, the invocation of the doctrine in a meet and confer is not a judicial admission.[8] The Moving Parties' argument overlooks the purpose of a Rule 2004 examination. "Indeed, one purpose for such an examination is to give the trustee the information needed ***to determine whether litigation should be filed***." *In re J & R Trucking, Inc.*, 431 B.R. at 821–22 (emphasis added). Trustees are entitled to work product protection for decisions made in relation to Rule 2004 examinations, which involve a process undertaken by counsel and prior to litigation, which presents a textbook situation for application of the work product doctrine. Investigation of the Debtor's estate and invoking that doctrine by the Trustee's counsel does not make the Rule

---

7 The Moving Parties attach as Exhibit 16 to their Motion a transcript from a 2016 case called "*Transmar*", wherein a non-trustee sought an additional 2004 examination. *Transmar* is distinguishable from this case because the movant was not the trustee, had identified a litigation target, and the Court determined that the "real purpose" of the 2004 motion was "to identify another entity movants might be able to collect from and whether those efforts would have any impact on the bankruptcy estate [was] of no real concern to them." Mot. Ex. 16, p. 22.

8 "Judicial admissions are 'formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.'" *Christensen v. Findlay ARN, LLC*, 780 F. Supp. 3d 1077, 1081 (D. Nev. 2025) (citing *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)) (internal quotation marks omitted).

2004 Subpoenas inappropriate.  In any case, the Trustee's counsel provided the Moving Parties substantial information to explain the requests.

While complaining that the Trustee's counsel was not specific enough, the Moving Parties simultaneously argue that the Trustee has been too specific and that the information in the Trustee's *Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar, Schneider Wallace Cottrell Kim LLP, and Kasowitz Benson Torres LLP as Special Litigation Counsel shows that "[b]efore the bankruptcy case was even filed, the Debtor's advisors had completed their investigation and reached their conclusion." Mot., 14.  This is factually wrong, as the Trustee's counsel tried to explain to the Moving Parties before they filed their Motion.  The Trustee's Summary of Potential Litigation referred to an analysis by Meta Materials which analysis "identified over 55 million shares of MMAT and 92 million shares of TRCH that were impacted by this fraudulent activity," ECF No. 98-1 at 2, but that preliminary analysis relied on public information from public records.  It is far short of the detailed and potentially more conclusive analysis that the Trustee's counsel and experts could do with detailed trading data from relevant parties.  This analysis based on publicly available information alone is not adequate to identify culpable parties and provide sufficient allegations about their wrongdoing.

While the Trustee's initial investigation has suggested that third parties manipulated Meta Materials' stock, the Trustee needs internal information from third parties, like the Moving Parties, to provide trading data to further aid the investigation by the Trustee's counsel and non-testifying consulting experts in securities, including determining how any such market manipulation has impacted the value of Meta Materials stock and the financial condition of the Debtor.  Moreover, the Trustee cannot yet attribute wrongful conduct to specific parties.  The Trustee must conduct further investigation to determine whether viable market-manipulation claims exist and, if so, to obtain sufficient information required to satisfy the necessary pleading standard.  The publicly available information underlying the reference in the Summary of Potential Litigation does not provide detailed trade data that may inform the Trustee of potential claims with the requisite particularity to survive Rule 12 scrutiny.  The Trustee seeks internal trading data from the Moving Parties possess which should inform the Trustee's investigation of potential claims and, ultimately,

the financial condition of the Debtor.

Simply because the Trustee made passing reference to preliminary reasons for suspecting wrongdoing, it does not follow that the Trustee has sufficient information to pursue specific claims against particular defendants. Indeed, the Trustee has nowhere claimed to have such information yet. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627-28 (Bankr. D. Del. 2016) ("The fact that the Trustee already has access to certain documents and information of the Debtors does not detract from the Trustee's testimony that the documents already in his purview are not sufficient to determine the scope of the Trustee's viable claims."). Thus, the Motion should be denied.[9]

### D. The Subpoenas Are Not Overbroad, Irrelevant, or Unduly Burdensome.

"The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Pate v. Pac. Harbor Line, Inc.*, No. 5:21-CV-01300-JWH-SHK, 2023 WL 2629867, at *8 (C.D. Cal. Feb. 6, 2023) (citing *Bryant v. Ochoa*, No. 07cv200 JM, 2009 WL 1390794, at * 1 S.D. Cal. May 14, 2009)). "The party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied." *Id.* (citing *Reece v. Basi*, No. 2:11-CV-2712 TLN, 2014 WL 2565986, at *2 E.D. Cal. June 6, 2014, *aff'd*, 704 F. App'x 685 (9th Cir. 2017)). Moreover, the party seeking a protective order bears the burden "for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Id.* at *7 (internal quotation marks omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test." *Id*.

Here, the Moving Parties have failed to carry their burden to show undue burden in seeking to quash the Subpoenas. Moving Parties' overheated description of the Subpoenas as "grossly overbroad and wildly disproportionate to the alleged needs of the Debtor" (Mot., p. 16) is belied by the fact that the Subpoenas seek only four years of trading data, specific to Meta Materials only,

---

9 The Moving Parties' criticism of the number of law firms retained by the Trustee is irrelevant. The Trustee properly and transparently sought approval to employ special litigation counsel pursuant to 11 U.S.C. § 328(a) and F.R.Bankr.P. 2014. The Trustee's requests were granted. The Moving Parties' attempt to imply that some nefarious activity has occurred must be rejected by this Court.

1   and which should be readily available to the Moving Parties from their records.  The Moving
2   Parties do not support any of their assertions concerning the cost and "potentially millions of
3   documents" that they claim *might* have to be reviewed to respond to the Subpoenas.  Mot., p. 18.
4   They do not say which document requests call for "potentially millions of documents," and that
5   claim is facially implausible given that the Subpoenas only relate to trading in the stock of just one
6   company, Meta Materials.   It is also unclear whether the Moving Parties mean millions of
7   **documents**, which might require individualized review for responsiveness, or millions of **stock
8   trades**, which should almost certainly not require individualized review, but rather could be
9   produced on a bulk basis in spreadsheets.  Brunett Decl., ¶13.  The Trustee offered to work with
10  the Moving Parties on the scope of the requests, to both explain what information the Trustee seeks
11  and talk through the Moving Parties' concerns, but the Moving Parties did not meaningfully
12  engage.

13        Setting aside the hyperbole in the Motion, the Subpoenas are not unduly burdensome.  The
14  Subpoenas include only a few document requests each, and the Trustee's assumption is that the
15  Moving Parties maintain databases with all trade data electronically stored therein, which the
16  Moving Parties can query to generate spreadsheets of relevant data.  The Moving Parties have not
17  suggested otherwise.  There should be no need for the Moving Parties to conduct a document-by-
18  document review to respond to the requests for trade data, since such data would simply be
19  generated as rows and columns in spreadsheets.  In fact, several other similarly situated entities
20  have produced data showing Meta Materials stock trades in the form of large spreadsheets.  *See*
21  Burnett Decl., ¶5.

22        The Moving Parties specifically object that Request 1 is "facially" overbroad, arguing
23  without support that the request "would encompass every single communication related to every
24  single order for Meta Materials shares—buy, sell, market, limit—over a four-year period".
25  However, the Moving Parties do not explain how many responsive documents this request would
26  implicate or why these communications would be burdensome to produce.  The Trustee suspects
27  that producing trading data about Meta Materials shares would not be burdensome, regardless of
28  the number of trades.  Burnett Decl., ¶13.  Similarly, the Moving Parties' arguments that the

requests seek information they may not have is unavailing, since the Subpoenas' instructions explicitly ask for information within the Moving Parties' "possession, custody, or control." Thus, Moving Parties have failed to meet their burden to quash the Subpoenas. *See In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 612 ("When a non-party claims that a subpoena is burdensome and oppressive, the non-party must support its claim by showing how production would be burdensome.").

As set forth above, the information requested in the Subpoenas served on the Moving Parties is important to the Trustee's investigation of potential manipulation of Meta Materials stock. Any manipulation would by definition affect the Debtor's financial condition, so the Trustee's investigation ultimately aids her statutory duty to investigate the financial condition of the Debtor. *See In re Mastro*, 585 B.R. 587, 595 (B.A.P. 9th Cir. 2018) (citing 11 U.S.C. § 704(a)(1) and (4)). The Moving Parties' criticism of the Trustee's counsel's statements during meet and confers is refuted by the meet and confer correspondence. *See, e.g*., Mot. Exh. 8, pp. 2-3; Mot. Exh. 12, pp. 1-2. The Trustee's counsel explained the purpose for the requests—i.e., for the Trustee to conduct an investigation into the Debtor's financial condition and investigate potential claims—but the Moving Parties rejected the Trustee's explanation. *Id*. This does not mean that the Trustee's explanations were inadequate.

The Trustee has served narrowly tailored requests, focused on just trades of Meta Materials stock and limited to a four-year period leading up to the Debtor's bankruptcy filing. The Moving Parties have failed to demonstrate that the Subpoenas are unduly burdensome, irrelevant, or overbroad. Accordingly, the Motion should be denied.

**V.      CONCLUSION**

Based on the foregoing, the Trustee respectfully requests that this Court deny the Motion and order the Moving Parties to confer with the Trustee's counsel further and produce information

/ / /

/ / /

/ / /

/ / /

1  responsive to the Subpoenas.

2     DATED this 23rd day of September, 2025.

3                                    ROBISON, SHARP, SULLIVAN & BRUST
                                     71 Washington Street
4                                    Reno, NV 89503

5

6                                    _____/s/ Hannah E. Winston_____
                                     KENT R. ROBISON, ESQ.
7                                    CLAYTON P. BRUST, ESQ.
                                     HANNAH E. WINSTON, ESQ.
8

9                                    JEFFREY L. HARTMAN, ESQ.
                                     HARTMAN & HARTMAN
10                                   510 W. Plumb Lane, Suite B
                                     Reno, NV 89509
11

12                                   *Attorneys for Christina Lovato, Trustee*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeffrey L. Hartman, Esq. – NSB #1607
HARTMAN & HARTMAN
510 W. Plumb Lane
Suite B
Reno, NV 89509
Tel: 775-324-2800
Fax: 775-324-1818
Email: notices@bankruptcyreno.com

Kent R. Robison, Esq. – NSB #1167
Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington Street
Reno, NV 89503
Tel: 775-329-3151
Email: krobison@rssblaw.com
        cbrust@rssblaw.com
        hwinston@rssblaw.com

*Attorneys for Christina Lovato, Trustee*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-hlb<br>(Chapter 7)<br><br>**DECLARATION OF DAVID D. BURNETT IN SUPPORT OF OPPOSITION TO NON-PARTY CITADEL SECURITIES LLC, ANSON FUNDS MANAGEMENT LP, AND VIRTU FINANCIAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER**<br><br><br>Hearing Date:  October 30, 2025<br>Hearing Time:  10:30 a.m. |

I, DAVID D. BURNETT, under penalty of perjury of the laws of the United States, declare as follows.

1.      My law firm, Schneider Wallace Cottrell Kim LLP, has been employed as Special Litigation Counsel for Christina Lovato, the chapter 7 trustee ("Trustee") for the estate of Meta Materials, Inc. ("Debtor"), to investigate and potentially litigate claims related to market manipulation of the Debtor's stock. *See* Order Approving *Ex Parte* Application by Chapter 7

1

Trustee to Employ the Law Firm of Schneider Wallace Cottrell [Kim] LLP as Special Litigation Counsel, ECF No. 1962. I submitted a declaration in support of the firm's application. ECF No. 1959.

2.    I make this Declaration in support of the Trustee's OPPOSITION TO NON-PARTY CITADEL SECURITIES LLC, ANSON FUNDS MANAGEMENT LP, AND VIRTU FINANCIAL, LLC'S ("Citadel," "Anson," and "Virtu," respectively; collectively, the "Moving Parties") MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER (the "Motion").

3.    As part of the Trustee's investigation of the Debtor's financial condition and potential claims, the Trustee filed *ex parte* motions for 2004 examinations for Anson, Citadel, the Depository Trust Clearing Corporation ("DTCC"), the Financial Industry Regulatory Authority ("FINRA"), the NASDAQ Stock Market LLC ("NASDAQ"), Charles Schwab & Co. Inc. ("Schwab"), TD Ameritrade, Tradestation Securities Inc., and Virtu. This Court granted the requests for examination. *See* ECF No. 1614 (Anson); ECF No. 1635 (Citadel); ECF No. 1636 (TD Ameritrade); ECF No. 1637 (DTCC); ECF No. 1639 (Schwab); ECF No. 1641 (Virtu); ECF No. 1642 (FINRA); ECF No. 1643 (Tradestation); ECF No. 1644 (NASDAQ).

4.    The Trustee also served subpoenas on many of the same entities seeking specific data and documents. The Trustee filed notices with the Court on March 6, 2025, that she intended to serve Rule 9016 document subpoenas on Citadel, Anson, and Virtu. ECF No. 1617 (Citadel); ECF No. 1615 (Anson); ECF No. 1631 (Virtu).

5.    Charles Schwab & Co., Inc., TD Ameritrade, TradeStation Securities, Inc., and Think or Swim (together, the "Schwab parties") and NASDAQ have provided trade data for Meta Materials stock in response to the subpoenas served on them. The information requested of those parties was similar to that requested of the Moving Parties. My colleagues and I were able to obtain Schwab and NASDAQ's agreement to produce trading data cooperatively, over the course of a handful of emails and meet-and-confers, without prolonged discussion or motion practice. The Schwab parties made a production on May 16, 2025, and NASDAQ made a production on July 3, 2023. Their productions consisted of a handful of spreadsheets and supporting documents. DTCC offered to produce reports on Meta Materials market activity, albeit for a fee, and the

Trustee and DTCC are continuing to discuss the offer.

6. The Moving Parties objected to the Rule 2004 examinations and subpoenas.

7. I engaged in substantial efforts to meet and confer with counsel for the Moving Parties, over a period of months, to seek agreement on their productions and avoid motion practice for the Rule 2004 examinations and accompanying subpoenas, but my colleagues and I were unsuccessful in asking the Moving Parties to agree to produce.

8. The information the Trustee seeks from the Moving Parties consists of trade data and communications related to the Debtor's stock. The subpoenas are limited to a four-year period.

9. Counsel for the Moving Parties have asserted that the information can be obtained through the other third parties served with Rule 2004 examinations and subpoenas, and perhaps other sources, but this is incorrect. Mot. at 19. Each financial-industry business has unique financial data specific to their business. Because the subpoena recipients are mostly market participants with their own clients and accounts, with individual trades in Meta Materials stocks, there should be no overlap in the information requested in the subpoenas.

10. The Moving Parties also mention that perhaps the Trustee can obtain the requested information from FINRA or NASDAQ. *Id.* Those entities collect marketwide data. I am unaware of any reason to expect that, to the extent those entities have information responsive to everything requested in the Subpoenas to the Moving Parties, including trading data on every transaction in Meta Materials stock by the Moving Parties, that the information held by FINRA and NASDAQ would be *identical* to the information held by the Moving Parties. Nor have the Moving Parties proved that. It is very plausible that the Moving Parties would have more extensive information responsive to the Subpoenas in their own records, or at a minimum *somewhat different* information, than FINRA and NASDAQ would. The Moving Parties have not shown, and I am unaware of any factual basis to believe, as the Moving Parties claim, that "Any relevant information (to the extent there is any) would be captured in these other productions [from FINRA and NASDAQ], making the Non-Parties' production cumulative and duplicative." *Id.* Indeed, the Moving Parties have not even compared their subpoenas to the FINRA and NASDAQ subpoenas to determine if there is facial overlap in the document requests.

11. Also, there is no guarantee that the Trustee could obtain the requested information

3

from other sources more easily than from the Moving Parties, if at all.  Indeed, FINRA has filed a similar motion to quash the Trustee's subpoenas served on it, making the same argument as the Moving Parties:  the Trustee should obtain the requested data elsewhere.  Motion to Quash Subpoenas or, in the Alternative, For a Protective Order, *In the Matter of:  Motion to Quash Subpoenas to Nonparty Financial Industry Regulatory Authority, Inc.*, No. 1:25-mc-00129 (D.D.C. Aug. 6, 2025), Dkt. No. 1 at 17-20.

12.    Based on my experience with securities litigation involving financial institutions, in the ordinary course of business, financial companies such as the Moving Parties maintain databases of trading data for their proprietary investment accounts and any customer accounts.  I expect that each of the Moving Parties have such databases, used to record their trading activities, and I expect that they each have the technical ability to run queries on those databases and generate spreadsheets of relevant trading data.  In this case, I expect the Moving Parties could use search terms such as, at a minimum, the date range and Meta Materials CUSIPs at issue with these subpoenas, to run queries on their databases of trades.

13.    I expect that the work necessary for the Moving Parties to generate productions of such spreadsheets should not be burdensome, because it would not require the Moving Parties to review voluminous individual documents, like a production of emails would require.  Generating spreadsheets should simply require inputting search criteria into software for their trading databases to search the data.  Moreover, I expect that it would not be appreciably more burdensome to generate large spreadsheets (containing many individual Meta Materials trades) than it would be to generate smaller spreadsheets reflecting fewer trades, because the technical process of inputting queries into a software program to collect trading data should be the same.


Dated: September 23, 2025


DAVID D. BURNETT

4

Jeffrey L. Hartman, Esq. – NSB #1607
HARTMAN & HARTMAN
510 W. Plumb Lane
Suite B
Reno, NV 89509
Tel: 775-324-2800
Fax: 775-324-1818
Email: notices@bankruptcyreno.com

Kent R. Robison, Esq. – NSB #1167
Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington Street
Reno, NV 89503
Tel: 775-329-3151
Email: krobison@rssblaw.com
       cbrust@rssblaw.com
       hwinston@rssblaw.com

*Attorneys for Christina Lovato, Trustee*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

META MATERIALS INC.,

Debtor.

Case No.: 24-50792-gs
(Chapter 7)

**DECLARATION OF CHRISTINA W. LOVATO IN SUPPORT OF OPPOSITION TO NON-PARTY CITADEL SECURITIES LLC, ANSON FUNDS MANAGEMENT LP, AND VIRTU FINANCIAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER**

Hearing Date:   October 30, 2025
Hearing Time:  10:30 a.m.

I, CHRISTINA W. LOVATO, under penalty of perjury of the laws of the United States, declare as follows.

1.      I am the duly appointed and acting trustee for the chapter 7 estate of Meta Materials, Inc. ("Meta" or "Debtor"). I have personal knowledge of the matters stated herein. The Meta chapter 7 case was filed on August 9, 2024.

2.      I make this Declaration in support of the Trustee's OPPOSITION TO NON-PARTY CITADEL SECURITIES LLC, ("Citadel") ANSON FUNDS MANAGEMENT LP,

1

("Anson") AND VIRTU FINANCIAL, LLC'S ("Virtu") (collectively, the "Moving Parties") MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER (the "Motion").

3.    Included among my duties under 11 U.S.C. 704 is the requirement to investigate the financial affairs of the Debtor. Following my appointment, I reviewed the petition and the schedules of assets and liabilities and the statement of financial affairs. I spoke with former officers and directors of the Debtor and gained a preliminary understanding of events leading up to and resulting in the filing of the chapter 7 petition.

4.    I concluded that I would need legal representation to assist in my administration of the estate and employed Jeffrey Hartman of Hartman & Hartman for that purpose. Mr. Hartman has represented me as my general counsel in other complex cases including In re Double Jump, Inc., case no.19-50102 and related cases. Utilizing special litigation counsel, as Trustee I filed more than 50 adversary proceedings and have collected significant monies for creditors of the consolidated estates. In that same matter, I have also settled many claims without litigation, approved by the Court pursuant to F.R.Bankr.P. 9019 motions. Preliminary to commencing adversary proceedings, my litigation counsel conducted dozens of Rule 2004 examinations and, through other discovery, obtained documentation which formed the basis for commencing adversary proceedings.

5.    Preliminary analysis of the information gathered in this case lead me to conclude that the Meta estate has potential claims against a variety of individuals and/or entities related to the purchase and sale of the company's publicly traded stock, prior to the halt by NASDAQ of further trading.

6.    As a result, I interviewed attorney James W. Christian of Christian Attar regarding possible representation of the Meta estate. I was aware that Christian Attar had previously represented Meta regarding an initial investigation into market manipulation of its securities.

7.    I filed applications to employ Christian Attar, Kasowitz, Benson & Torres, and a third firm, Schneider Wallace, Cottrell & Konecky. The three firms represent the Meta estate on a contingent fee basis. In addition, the litigation funding firm of Parabellum Capital is

funding an amount in excess of $11 million for the litigation.

8.   The scope of the potential litigation involves market manipulation, spoofing and 'naked short' selling all of which require highly specialized litigation expertise.

9.   At this point in time, the litigation team is pursuing discovery utilizing F.R.Bankr. P. 2004 and 9016 to determine whether viable claims exist against a variety of entities in the publicly traded securities arena.

10.   As part of the investigation of the Debtor's financial condition and potential claims, my counsel filed *ex parte* motions for 2004 examination for Anson, Citadel, Depository Trust Clearing Corporation ("DTCC"), Financial Industry Regulatory Authority ("FINRA"), the NASDAQ Stock Market LLC ("NASDAQ"); Charles Schwab & Co. Inc. ("Schwab"), TD Ameritrade, Tradestation Securities Inc., and Virtu, which this Court granted.  *See* ECF No. 1635 (Citadel); ECF No. 1636 (TD Ameritrade); ECF No. 1637 (DTCC); ECF No. 1639 (Schwab); ECF No. 1641 (Virtu); ECF No. 1642 (FINRA); ECF No. 1643 (Tradestation); ECF No. 1644 (NASDAQ).  Separate subpoenas were issued in accordance with F.R.Bankr.P. 9016.

11.   The Rule 2004 examinations and subpoenas will assist me in the investigation of potential claims related to market manipulation and the financial condition of the Debtor.

Dated: September 23, 2025

*/s/ Christina Lovato*
CHRISTINA LOVATO, Trustee