IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the matter of:<br><br>MOTION TO QUASH SUBPOENAS TO NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. | Miscellaneous Action No.<br>1:25-mc-00129-LLA-GMH |

**NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S
REPLY BRIEF REGARDING RULE 45(f) TRANSFER**

The Trustee has the burden under Rule 45(f) to establish that "exceptional circumstances" require this Court to transfer the Motion to the Bankruptcy Court in Nevada. Fed. R. Civ. P. 45(f). The Trustee pays lip service to the "exceptional circumstances" requirement. She acknowledges that the applicable legal standard requires exceptional circumstances. But she never advances anything "exceptional" in her arguments about the circumstances here.

That is because there are no "exceptional circumstances" warranting transfer. This is not even an ordinary case, where transfer would still not be authorized under Rule 45(f).

Instead, this matter presents ***anti***-exceptional circumstances. There is no underlying litigation to disrupt because the Subpoenas seek information for hypothetical legal claims the Trustee may never bring. Transfer would burden FINRA, who has a significant interest in local resolution of issues involving its self-regulatory responsibilities under the Exchange Act—like its investigative file privilege and protected CAT data—while avoiding burdens that divert valuable resources away from those responsibilities. And unlike an ordinary case where the issuing court would have presided over initial pleadings, dispositive motions, discovery disputes between the parties, and more, the Bankruptcy Court has considered (but not yet decided) only a single discovery motion involving different subpoenas, seeking different information, issued to different parties, involving different issues to be resolved under different law.

-1-

For these reasons, set forth below and in FINRA's Supplemental Brief, the Court should deny the Trustee's request to transfer this matter pursuant to Rule 45(f).

## ARGUMENT

**I.     The Underlying Litigation Will Not Be Disrupted.**

FINRA's Supplemental Brief (at 4) shows that transfer is not required to avoid disrupting the underlying litigation because the Trustee has told this Court "*there is no litigation here.*" Opp. at 4 (Doc. 14) (emphasis in original).

The Trustee suggests (at 8) this point is "spurious" because the "'underlying litigation' here obviously refers to the *In re Meta Materials* Bankruptcy." Tr. Suppl. Br. at 8 (Doc. 19). But the Trustee has said the entire point of the Subpoenas is to evaluate "hypothetical legal claims that the Trustee might never bring." Opp. at 33 (Doc. 14). Transfer cannot be required to avoid disrupting litigation that does not and may never exist.

Even as to the *Meta Materials* bankruptcy, the Trustee cannot identify any disruption. The Trustee suggests (at 7–8) that resolution of the Motion in this Court would "disrupt Judge Spraker's management of the underlying Bankruptcy." But in the ***ordinary*** case where a subpoena is issued, there are pleadings, a scheduling order, ongoing discovery, and a trial scheduled. These ordinary circumstances do not warrant Rule 45(f) transfer unless there are ***exceptional*** circumstances, like an imminent trial. *Compare O.T. v. Int'l Hip Dysplasia Inst.*, 2022 WL 22806222, at *2 (M.D. Fla. Feb. 25, 2022) (denying transfer where "the discovery deadline has not passed, and trial is several months away"), *with Fed. Home Loan Mortgage Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 44 (D.D.C. 2015) (finding exceptional circumstances due to a "time-sensitive discovery schedule") *and In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 378 (D.D.C. 2017) (finding exceptional circumstances where underlying litigation was a consolidated MDL with

"more than 50 separate actions" and involved "complex case management orders," with "detailed pretrial schedules for discovery, dispositive motion, and class certification").

This matter presents ***anti***-exceptional circumstances. There is no scheduling order in the *Meta Materials* bankruptcy to interfere with, no trial scheduled at all (let alone imminently), and the Trustee says the one discovery motion the Bankruptcy Court is handling "will not be resolved for months." Tr. Suppl. Br. at 12; *see Found. to Support Animal Prot. v. Vital Farms, Inc.*, 2023 WL 3446200, at *4 (E.D. Va. Apr. 3, 2023) ("Discovery between parties in a lawsuit regularly runs parallel to non-party discovery, and there is nothing remarkable about an issuing court having already ruled on discovery matters before a court in a compliance district becomes involved.").

The Trustee next argues (at 11–15) that transfer is required to avoid a "risk of inconsistent rulings" with the Bankruptcy Court's pending ruling on that lone discovery dispute, a motion to quash filed by broker dealers like Citadel who believe they are the targets of the Trustee's investigation. But the Trustee seeks different discovery from those broker-dealers than it seeks from FINRA. The Trustee seeks three categories of documents (with no subparts) from Citadel: (1) "routing of orders" of Meta shares (Requests 1–3); (2) the "borrowing[] and delivering" of Meta shares (Request 4); and (3) position records in Meta shares (Request 5). Ex. A to Tr. Supp. Br. (Doc. 19-2 at pp.32–33). The Trustee demands FINRA produce **nine categories** of documents (15 with subparts), including privileged investigative files, protected CAT data, short interest data, and privileged, internal communications. Ex. 1 to Mot. (Doc. 2-1 at p. 41). The undue burden of the Trustee's Subpoenas to FINRA is thus entirely different and much greater than any burden on Citadel. There is nothing inconsistent with this Court denying the Trustee's improper requests for burdensome, privileged, and protected information from FINRA, even if the Bankruptcy Court permits more limited discovery from targets of the Trustee's investigation. Indeed, Rule 45 requires the Trustee to seek discovery from these targets first. *See* Motion at 17–20 (Doc. 2-1).

The Trustee further admits (at 19) that FINRA's Motion is briefed under D.C. Circuit precedent, while the Citadel dispute pending in the Bankruptcy Court is briefed under Nevada law. There is no inconsistency in different courts, deciding different discovery motions, involving different nonparties and different issues, under different law. *See, e.g.*, *Vital Farms*, 2023 WL 3446200, at *3 ("[T]he 'exceptional circumstances' standard was selected to ensure that transfer is a rare event." (quoting 9A Wright & Miller, Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.))).

Against all of this, the Trustee has identified one facially-similar argument between Citadel's motion and FINRA's—the role of Nevada Local Rule 2000(c). But on closer examination, the similarities disappear. Citadel argued the local rule prohibits the Trustee from seeking any documents under Bankruptcy Rule 2004. *See* Ex. A to Tr. Suppl. Br. (Doc. 19-2 at pp. 12–13). FINRA instead demonstrates that—contrary to the Trustee's argument—the Bankruptcy Court never authorized the Trustee's document requests to FINRA because after the Trustee sought leave to issue **three** requests to FINRA, the Trustee unilaterally modified her demand to seek **nine** requests (15 with subparts). *See* Reply at 7–9 (Doc. 16). This further shows the lack of any disruption to the *Meta Materials* bankruptcy from resolving FINRA's Motion in this Court, because the Trustee has never even sought—much less obtained—leave from the Bankruptcy Court to issue the nine document requests in the Subpoenas to FINRA.

## II. Transferring the Motion to Nevada Would Burden FINRA.

FINRA establishes in its Supplemental Brief (at 5–6) that transfer would unduly burden FINRA because FINRA is a frequent subpoena recipient as an SRO that is part of the Exchange Act's comprehensive plan for regulating the national securities markets and should not be burdened with litigating disputes across the United States every time it receives a subpoena. The Trustee provides no valid response.

A.      **Transfer Would Burden FINRA.**

The Trustee argues (at 19) that FINRA "does not substantiate th[e] claim" that it frequently receives subpoenas. But FINRA's brief (at 2, 5) cited *Ross*, where 40 years ago the court rejected a subpoena to FINRA's predecessor the National Association of Securities Dealers for investigative files. 106 F.R.D. at 24 (private litigants cannot "shortcut their own discovery efforts and instead reap the benefits of the Association's ongoing, statutorily governed work."). FINRA's Motion to Quash cited more cases over the next four decades quashing similar subpoenas to FINRA. Mot. at 21–22 (citing *Gulf Coast Energy*, 2014 WL 12616133, at *2; *McGinn*, 2011 WL 13136028, at *5–*8) (Doc. 2-1). The Trustee's Opposition to the Motion to Quash cited another bankruptcy case where the same lawyers who represent the Trustee in this case tried (unsuccessfully) to subpoena protected CAT data from FINRA. Reply at 15–16 (Doc. 16); Opp. 38 (Doc. 14). Contrary to her argument, the Trustee knows FINRA's point is substantiated.

The Trustee further argues (at 18) that FINRA cannot be burdened because it is a sophisticated organization with significant "net revenue." But the "fact that the party subject to subpoena is a large profitable company cannot mean exceptional circumstances." *Isola USA Corp. v. Taiwan Union Tech. Corp.*, 2015 WL 5934760, at *4 (D. Mass. June 18, 2015). The Trustee also bases her argument on FINRA's 2024 Annual Financial Report but conveniently ignores that report's acknowledgement that FINRA is "a not-for-profit, self-regulatory organization." *See* FINRA, [Annual Financial Report](#) (2024). FINRA thus uses the revenue it earns "to support our mission of protecting investors and promoting market integrity in a manner that facilitates vibrant capital markets." *Id.* FINRA even operated at a "net loss of $22.2 million in 2023." *Id.* at 2.

That is why this is the ***anti***-exceptional case. The Trustee's unduly burdensome Subpoenas and demands for privileged and protected information divert valuable time and resources from FINRA's self-regulatory responsibilities. *Id.*; *Barbara v. NYSE, Inc.*, 99 F.3d 49, 59 (2d Cir. 1996)

(burdening SROs with litigation "would clearly 'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' namely, to encourage forceful self-regulation of the securities industry."); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 448 (S.D.N.Y. 2013) ("SRO immunity provides protection not only from liability, but also from the burdens of litigation, including discovery …").

The Trustee next argues (at 19) that FINRA's burden in responding to the Subpoenas is "no reason to allow FINRA to force parties issuing subpoenas, like the Trustee here, to come to D.C. to enforce their subpoenas." But FINRA did not "force" anything. It is the **Trustee** who is attempting to force FINRA to produce privileged investigative files, protected CAT data, and other overbroad and unduly burdensome categories of documents through a subpoena that requires compliance in Washington, D.C. Exs. 1 & 2 to Mot. (Doc. 2-1 at pp.41, 51). In bringing its Motion here, FINRA follows Rule 45's mandate to move to quash in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3); *Cohen v. Grp. Health Inc.*, 2022 WL 4534552, at *3 (S.D.N.Y. Sept. 28, 2022) (holding that subpoenaed party "appropriately sought relief from the court in the district where his compliance was sought").

**B.     The Alleged Burdens on the Trustee Are Irrelevant and Nonexistent.**

The Trustee's remaining burden arguments erect irrelevant strawmen. The Trustee argues (at 15–18) that **the Trustee** will be burdened by litigating in this Court and that **FINRA's counsel** will not be burdened by litigating in the Bankruptcy Court. But both arguments are irrelevant. The only relevant question under Rule 45(f) is whether **FINRA**—the "local nonpart[y] subject to subpoenas—will be burdened. Fed. R. Civ. P. 45(f) Advisory Comm. Notes (2013) ("The prime concern should be avoiding burdens on local nonparties subject to subpoenas …."); *In re Disposable Contact Lens,* 306 F. Supp. 3d at 376 (courts must assess "whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred").

The Trustee's alleged burdens are not only irrelevant, they are nonexistent. The Trustee argues (at 4) that when FINRA "moved to quash in this Court, rather than in the Bankruptcy, [it] requir[ed] the Trustee to hire D.C.-barred counsel." But the Trustee applied to retain its D.C.-barred counsel David D. Burnett of Schneider Wallace Cottrell Konecky LLP in May 2025, three months before FINRA moved to quash in August 2025. *See Ex Parte* Application by Chapter 7 Trustee to Employ the Law Firm of Schneider Wallace Cottrell Konecky LLP, *In re Meta Materials Inc.*, No. 24–50792-hlb (Bankr. D. Nev. filed May 21, 2025) (Doc. 1956). And the Trustee has $11 million in litigation funding to hire counsel to pursue aggressive subpoenas and motions practice, Ex. 5 to Mot. ¶ 4 (Doc. 2-1 at p.95), while FINRA must divert resources from its self-regulatory responsibilities to respond to the Trustee's overreach.

The Trustee argues that transfer is necessary because every subpoenaed nonparty either has moved or is likely to move to quash. Tr. Suppl. Br. at 14–15 (arguing Nasdaq, Citadel, Anson, and Virtu have moved to quash, the "DTCC has stopped communicating" and "might move to quash," and "Schwab and TradeStation … could stop cooperating, like FINRA and other parties"). This is the exact opposite of what the Trustee told this Court in Opposition to the Motion. *See* Opp. at 14 (Doc. 14). There, the Trustee argued that "FINRA has not met its burden of showing that the Requests are unduly burdensome" because "other financial businesses have already produced information about Meta Materials stock trading to the Trustee in response to similar subpoenas." *Id.* at 5, 14 (highlighting supposed compliance by Nasdaq, the DTCC, Schwab, and TradeStation). The Trustee's about-face, now arguing that virtually every subpoenaed nonparty is pushing back on the Trustee's overreach just demonstrates how the Trustee has unduly burdened FINRA already and why FINRA should not be further burdened with transfer.

### III. This Court Is Better Positioned to Resolve FINRA's Motion.

FINRA demonstrates in the Supplemental Brief (at 6–8) that this Court is better situated to resolve the Motion because the Motion depends on the application of D.C. Circuit precedent, FINRA has a strong interest in obtaining local resolution of important issues like its investigative file privilege and protected CAT data, and this is an ***anti***-exceptional case where this Court has presided over this matter longer than Judge Spraker has presided over the *Meta Materials* bankruptcy, because the bankruptcy was only just reassigned to Judge Spraker in September 2025.

<u>This Court Is Better Positioned to Apply D.C. Circuit Precedent</u>: The Trustee admits (at 19) that the briefs apply D.C. Circuit precedent, and she does not (and cannot) dispute that this Court is better suited to apply such precedent than a Nevada bankruptcy court. But the Trustee argues (at 19) that this is "only because FINRA filed its motion to quash in this district, so FINRA's argument is circular and deserves no weight." But FINRA had to move to quash in this Court under Rule 45 because the Trustee set this district as "the district where compliance is required" in the Subpoenas. Exs. 1 & 2 to Motion (Doc. 1); Fed. R. Civ. P. 45(d)(3). This Court is thus better suited to resolve the fully-briefed Motion to Quash under D.C. Circuit precedent. *Korsah*, 2020 WL 7868166, at *2 (a D.C. court "would clearly be better equipped to apply its own law").

The Trustee also argues (at 13) that the Bankruptcy Court is better suited to resolve FINRA's Motion because it involves "application of Federal Rules of Bankruptcy 2004 and 9016." But Bankruptcy Rule 2004 incorporates Bankruptcy Rule 9016, which in turn just incorporates Rule 45. Fed. R. Bank. P. 2004(c) (incorporating Rule 9016 into Rule 2004 requests); Fed. R. Bankr. R. 9016 ("Fed. R. Civ. P. 45 applies in a bankruptcy case."). That is why the parties briefed the Motion under cases from this Court and the D.C. Circuit applying Rule 45, including the D.C. Circuit's mandate "district courts supervising discovery [under Rule 45 must] be generally sensitive to the costs imposed on third parties." *Watts v. SEC,* 482 F.3d 501, 508 (D.C. Cir. 2007).

<u>FINRA Has a Strong Interest in Local Resolution</u>: The Trustee bizarrely accuses (at 18–19) FINRA of "forum-shopping" to seek a "sympathetic home court." But the Trustee is the one who issued the subpoenas to require compliance in Washington, D.C. Exs. 1 & 2 to Motion (Doc. 1). FINRA thus had to move to quash in this Court to comply with Rule 45. Fed. R. Civ. P. 45(d)(3). Nor does FINRA expect any "sympathy[y]" or 'home" favor from this Court. That is in apparent contrast to the Trustee, who expressly argues (at 5) that she expects the Bankruptcy Court will "sid[e] with the Trustee."

FINRA has an interest in resolving the Subpoenas locally in this Court, particularly given the Trustee's demands that FINRA produce its privileged investigative files and protected CAT data. *See* Mot. at 21–26 (Doc. 2-1); Reply at 18–21 (Doc. 16). FINRA's interest in local resolution is entirely proper. The Advisory Committee drafted Rule 45 to ensure subpoenas were resolved locally in all but the most "exceptional circumstances." Fed. R. Civ. P. 45, Advisory Comm. Notes (2013) ("To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c).… In the absence of consent, the court may transfer in exceptional circumstances, … only if [those circumstances] outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.").

<u>These Are *Anti*-Exceptional Circumstances</u>: The Trustee admits (at 11) that "the *Meta Materials* Bankruptcy was recently assigned" to Judge Spraker in September 2025. The Trustee nonetheless argues Judge Spraker is "better-suited" to resolve the Motion because he held **one** oral argument on **one** discovery motion that is pending decision and presented different issues.

The Trustee cannot avoid how ***anti***-exceptional these circumstances are. In an ordinary case, the issuing court will have presided over the initial pleadings, dispositive motions, discovery disputes between the parties, and much more. This Court refused to transfer under Rule 45(f) in

*Hood* even though the underlying litigation had been "pending for several years and the [issuing] court has ruled on a number of discovery motions in that time," because there were still no "exceptional circumstances." 2019 WL 5295169, at *3. If the fact that "an issuing court ha[d] already ruled on discovery matters … necessitated transfer, then transfer would cease to be a 'rare event'" in contravention to the purpose of the "exceptional circumstances" standard. *Vital Farms, Inc.*, 2023 WL 3446200, at *4; Fed. R. Civ. P. 45, Advisory Comm. Notes (2013) ("[I]t should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions."). And—as already shown—the **one** discovery motion that Judge Spraker has considered (but not yet decided) involves different subpoenas, issued to different parties, seeking different information, that involve different issues to be resolved under different law. *See supra* p.3.

The Trustee argues (at 9) that transfer is necessary because FINRA's Motion supposedly raises "fact-intensive issues related to the Trustee's investigation, her potential securities claims, potential wrongdoers, and the relevance of FINRA's documents." But there are no underlying pleadings as the Trustee is investigating "hypothetical claims." Opp. at 4 (Doc. 14) ("There are no 'parties' to litigation, no 'plaintiff' or 'defendants,' no 'complaint,' no motions to dismiss …."). The key (undisputed) facts FINRA identified in the Motion bearing on relevance thus involved proceedings **outside of the bankruptcy**, namely, the SEC's charges that Meta Materials and its former executives manipulated Meta Materials' stock through a "short squeeze." *See* Ex. 7 to Mot. (Doc. 2-1 at p.117) (Meta Materials' SEC settlement); *SEC v. Brda,* 2024 WL 4817475 (S.D.N.Y. Nov. 18, 2024) (SEC's lawsuit against the former executives involved in forming Meta Materials).

IV.    **This Court Is Free to Consult with the Bankruptcy Court.**

The Trustee finally argues (at 20) that this Court "may find it useful to discuss" with Judge Spraker whether to transfer the matter. FINRA has no objection to that, though consultation cannot change how *anti*-exceptional these circumstances are.

## **CONCLUSION**

The Trustee has not met her burden to show there are "exceptional circumstances" warranting a transfer of this matter to the U.S. Bankruptcy Court for the District of Nevada under Rule 45(f). This proceeding should remain in this Court, where FINRA is headquartered and where the Trustee has requested FINRA produce documents and a custodian of records to testify.

Dated: December 9, 2025

Respectfully submitted,

/s/ *David S. Norris*
David S. Norris (DC Bar No. 1024996)
**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW
Washington, DC 20037
Tel.: (202) 457-6000 | Fax: (202) 457-6315
david.norris@squirepb.com

*Counsel for Nonparty*
*Financial Industry Regulatory Authority, Inc.*

**CERTIFICATE OF SERVICE**

      I certify that on December 9, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia using the CM/ECF system. Respondent is represented by counsel who are registered CM/ECF users. I also certify that I served a copy of the forgoing document via mail on pro se Movant Jeffrey S. Pittman, who is not a registered CM/ECF user, at the address below:

    Jeffrey S. Pittman
    PO Box 461
    Newport, WA 99156

                                            */s/ David S. Norris*
                                            David S. Norris