UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE MOTION TO QUASH SUBPOENAS TO NONPARTY FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.** | Case No. 25-mc-129 (LLA) (GMH)<br><br>*In re Meta Materials Inc.*, No. 24-br-50792 (Related case in the U.S. Bankruptcy Court for the District of Nevada) |

**MEMORANDUM OPINION AND ORDER**

In 2024, Meta Materials, Inc., a Nevada corporation, filed for bankruptcy in the U.S. Bankruptcy Court for the District of Nevada. As part of that ongoing proceeding, the bankruptcy court authorized the Trustee to subpoena information from nine nonparties. At least five of those nonparties moved to quash their respective subpoenas, including Petitioner Financial Industry Regulatory Association ("FINRA"), raising many of the same arguments. Those five nonparties filed their motions to quash in three different courts (presumably because compliance with the subpoenas was required in those jurisdictions, *see* Fed. R. Civ. P. 45(d)(3)(A)): three filed in the U.S. Bankruptcy Court for the District of Nevada, one filed the U.S. District Court for the Southern District of New York, and one filed in the U.S. District Court for the District of Columbia.

FINRA moved to quash two subpoenas in this Court. After the Trustee raised the possibility of transferring FINRA's motion to the bankruptcy court under Federal Rule of Civil Procedure 45(f), this Court ordered supplemental briefing on that issue. In the meantime, the U.S. District Court for the Southern District of New York transferred the motion to quash pending before it to the District of Nevada where the underlying bankruptcy proceeding is pending, meaning that all the other motions to quash are now before the bankruptcy court. As explained below, this Court similarly concludes that transfer is warranted and will impose no undue burden on FINRA.

1

Accordingly, the Court will order that FINRA's motion to quash be transferred to the U.S. Bankruptcy Court for the District of Nevada under Rule 45(f).[1]

## I. BACKGROUND

On August 9, 2024, Meta Materials, a Nevada corporation, filed for bankruptcy in the U.S. Bankruptcy Court for the District of Nevada. Bankruptcy Petition, *In re Meta Materials, Inc.*, 24-br-50792 (Bankr. D. Nev. Aug. 9, 2024), ECF No. 1. Meta Materials declared bankruptcy in the wake of a settlement with the SEC regarding allegations that Meta Materials violated federal securities laws by misleading investors. *See* ECF No. 1-2 at 28–29. Christina W. Lovato ("the Trustee") was appointed as the Chapter 7 Trustee of Meta Materials' estate. Appointment of Christina W. Lovato as Trustee & Designation of Bond, *In re Meta Materials, Inc.*, 24-br-50792 (Bankr. D. Nev. Aug. 15, 2024), ECF No. 14. Since the bankruptcy began, 65 claims have been filed by creditors, totaling nearly $51 million in claims against Meta Materials' estate. Claims Register, *In re Meta Materials, Inc.*, 24-br-50792.

The Trustee launched an investigation into potential manipulation of Meta Materials' stock by third parties. ECF No. 14 at 14. To conduct that investigation and litigate any resulting claims, the bankruptcy court authorized a litigation fund of $11 million. ECF No. 1-2 at 6. And the bankruptcy court allowed the Trustee to retain multiple law firms to pursue claims on behalf of the estate arising from the Trustee's investigation. *See, e.g.*, Order Approving Ex Parte Application by Chapter 7 Trustee to Employ the Law Firms of Christian Attar and Kasowitz Benson Torres LLP as Special Litigation Counsel, *In re Meta Materials, Inc.*, 24-br-50792 (Bankr. D. Nev. Nov.

---

[1] The documents relevant to this Memorandum Opinion and Order are: (1) FINRA's motion to quash, ECF No. 1; the Trustee's memorandum in opposition to FINRA's motion to quash, ECF No. 14; FINRA's reply in support of its motion to quash, ECF No. 16; FINRA's supplemental brief, ECF No. 18; the Trustee's supplemental brief, ECF No. 19; FINRA's supplemental reply, ECF No. 20; the Trustee's notice of supplemental authority, ECF No. 21; and FINRA's response to the Trustee's notice of supplemental authority, ECF No. 22.

4, 2024), ECF No. 118; Order Approving Ex Parte Application by Chapter 7 Trustee to Employ the Law Firm of Schneider Wallace Cottrell Konecky LLP as Special Litigation Counsel, *In re Meta Materials, Inc.*, 24-br-50792 (Bankr. D. Nev. May 22, 2025), ECF No. 1962.

As part of that investigation, the bankruptcy court authorized the Trustee to issue subpoenas to nonparties seeking documents and examinations of custodians under Federal Rule of Bankruptcy Procedure 2004. *See, e.g.*, Order Granting Ex Parte Motion for Order Requiring Custodian of Records for Financial Industry Regulatory Authority to Appear for Examination Pursuant to F.R.Bankr.P. 2004, *In re Meta Materials, Inc.*, 24-br-50792 (Bankr. D. Nev. Mar. 10, 2025), ECF No. 1642. The nonparties subpoenaed by the Trustee include Citadel Securities, Anson Funds Management, Virtu Financial, Charles Schwab and Company, TradeStation Securities, the Depository Trust and Clearing Corporation, Nasdaq, and FINRA. ECF No. 19-3 at 30.

So far, five of those nonparties have moved to quash the subpoenas. Citadel, Anson, and Virtu jointly moved to quash their subpoenas in the U.S. Bankruptcy Court for the District of Nevada. Non-party Citadel Securities LLC, Anson Funds Management LP, & Virtu Financial, LLC's Memorandum of Law in Support of Motion to Quash and/or for a Protective Order, *In re Meta Materials, Inc.*, 24-br-50792 (Bankr. D. Nev. Aug. 5, 2025), ECF No. 2088. Nasdaq moved to quash in the U.S. District Court for the Southern District of New York. Nonparty Nasdaq's Motion to Quash, *In re Meta Materials, Inc.*, 25-mc-00453 (S.D.N.Y. Oct. 15, 2025), ECF No. 1. And FINRA moved to quash its two subpoenas in this Court. ECF No. 1.

The Trustee opposed FINRA's motion to quash in this Court. ECF No. 14. Alternatively, the Trustee asked the Court to transfer FINRA's motion to the U.S. Bankruptcy Court for the District of Nevada under Rule 45(f). ECF No. 14 at 23. Because the Trustee did not make any argument supporting its request to transfer FINRA's motion, the Court ordered supplemental briefing

3

on that issue.  ECF No. 17.  Shortly thereafter, the U.S. District Court for the Southern District of New York transferred Nasdaq's motion to quash to the bankruptcy court under Rule 45(f).  Order, *In re Meta Materials, Inc.*, 25-mc-453 (S.D.N.Y. Dec. 11, 2025), ECF No. 13.

## II.     DISCUSSION

A motion to quash a subpoena must initially be filed in the jurisdiction where compliance with the subpoena is required—here, the U.S. District Court for the District of Columbia.  Fed. R. Civ. P. 45(d)(3)(A).  But Rule 45(f) allows transfer of subpoena-related motions to the issuing court (here, the U.S. Bankruptcy Court for the District of Nevada) if the target consents or "if the court finds exceptional circumstances" warrant transfer.  Fed. R. Civ. P. 45(f).  Although the "prime concern" when deciding whether to transfer is "avoiding burdens on local nonparties subject to subpoenas," a motion to quash may be transferred to "avoid disrupting the issuing court's management of the underlying litigation."  Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment.

The Court therefore must "balance the 'interest of the nonparty in obtaining local resolution of the subpoena-related motion' against the interest 'in ensuring the efficient, fair and orderly progress of ongoing litigation before the issuing court.'"  *In re Subpoena to Nat'l Acad. of Scis.*, 347 F.R.D. 45, 48 (D.D.C. 2024) (citation modified) (quoting *Jud. Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)).  Courts have distilled three factors from that balancing test:  (1) whether the "underlying litigation will be disrupted" by this Court's resolution of the motion; (2) which court "is in the best position" to resolve the motion; and (3) whether transferring the motion will impose an "undue burden on cost" on the target of the subpoena.  *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 376 (D.D.C. 2017).

Here, the Trustee argues that this Court should transfer FINRA's motion to quash to the U.S. Bankruptcy Court for the District of Nevada.  FINRA opposes transfer to the bankruptcy

4

court, so the Trustee must demonstrate "exceptional circumstances" warrant transfer. Fed. R. Civ. P. 45(f). As explained below, the Court finds that the Trustee has shown such circumstances here because (1) resolution of FINRA's motion by this Court could disrupt the bankruptcy court's management of the underlying proceeding; (2) the bankruptcy court is best positioned to resolve FINRA's motions; and (3) transfer will not unduly burden FINRA. Accordingly, the Court will transfer FINRA's motion to quash to the bankruptcy court.

*First*, the resolution of similar motions to quash by the bankruptcy court and this Court "risks disrupting the underlying litigation." *Nat'l Acad. of Scis.*, 347 F.R.D. at 48. Citadel, Anson, and Virtu jointly moved to quash similar subpoenas issued by the Trustee in the bankruptcy court in Nevada. *See* Non-Party Citadel Securities LLC, Anson Funds Management LP, and Virtu Financial, LLC's Motion to Quash, *In re Meta Materials, Inc.*, No. 24-50792 (Bankr. D. Nev.), ECF No. 2088. The bankruptcy court has already heard argument on that motion. *See* ECF No. 19-5. And the U.S. District Court for the Southern District of New York recently transferred Nasdaq's motion to quash to the bankruptcy court. *See* Order, *In re Meta Materials, Inc.*, 25-mc-453 (S.D.N.Y. Dec. 11, 2025), ECF No. 13. Transferring FINRA's similar motion to quash would therefore allow the "bankruptcy court to maintain the orderly progression of the underlying proceedings, particularly given the other pending discovery motions." *See Dunn as Tr. for Zohar Litig. Trust-A v. Anchin, Block & Anchin*, No. 24-mc-46, 2024 WL 871029, at *1 (S.D.N.Y. Feb. 29, 2024) (finding the pendency of "two closely related discovery motions" before the issuing court warranted transfer); *see also Honeywell Int'l Inc. v. Law Offs. Of Peter T. Nicholl*, No. 21-mc-151, 2022 WL 43494, at *3 (D.D.C. Jan. 5, 2022) (transferring in part because "[a]t least one other court ha[d] already transferred motions to quash" to the issuing court).

The "risk of conflicting rulings" on the similar issues raised by those motions confirms the risk of disrupting the underlying proceeding. *Honeywell Int'l Inc.*, 2022 WL 43494, at *3. For example, each of the motions challenges the Trustee's subpoenas as improper under Bankruptcy Rule 2004. *See* ECF No. 16 at 12; Non-Party Citadel Securities LLC, Anson Funds Management LP, and Virtu Financial, LLC's Motion to Quash at 9, *In re Meta Materials, Inc.*, No. 24-50792 (Bankr. D. Nev. Aug. 5, 2025), ECF No. 2088; Nonparty Nasdaq's Motion to Quash at 3, *In re Meta Materials, Inc.*, 25-mc-00453 (S.D.N.Y. Oct. 15, 2025), ECF No. 1. And each of the motions challenges the relevance of the information sought by the Trustee to the underlying bankruptcy. *See* ECF No. 1 at 22; Non-Party Citadel Securities LLC, Anson Funds Management LP, and Virtu Financial, LLC's Motion to Quash at 17, *In re Meta Materials, Inc.*, No. 24-50792 (Bankr. D. Nev. Aug. 5, 2025), ECF No. 2088; Nonparty Nasdaq's Motion to Quash at 5, *In re Meta Materials, Inc.*, 25-mc-00453 (S.D.N.Y. Oct. 15, 2025), ECF No. 1. "The potential for inconsistent rulings" on these issues accordingly "should be avoided and weighs in favor of a single judicial officer deciding all of these disputes." *See Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014).

Moreover, the subpoena targets' finger-pointing at one another presents an acute risk of inconsistent orders. FINRA argues to this Court that the subpoenas the Trustee directed to it are overly burdensome because the Trustee could receive the information from others, including "the suspected wrongdoers." ECF No. 1 at 28. On the other hand, Citadel, Anson, and Virtu—who appear to be some of "the suspected wrongdoers," *see* ECF No. 19-2 at 20—argue to the bankruptcy court that subpoenas directed to them are overly burdensome because the Trustee "will obtain much of th[e] information from other sources," including "FINRA." Non-Party Citadel Securities LLC, Anson Funds Management LP, and Virtu Financial, LLC's Motion to Quash at 19, *In re Meta Materials, Inc.*, No. 24-50792 (Bankr. D. Nev. Aug. 5, 2025), ECF No. 2088. Were

6

both courts to accept the argument before them, the Trustee would be left with two orders quashing the Trustee's subpoenas, each finding that the Trustee should seek information from the petitioner in the other case. Indeed, the U.S. District Court for the Southern District of New York cited this possibility in its oral ruling transferring Nasdaq's motion to quash. *See* ECF No. 21-1 at 11. Accordingly, resolution of FINRA's motion by this Court threatens to disrupt the bankruptcy court's management of the underlying proceeding.

*Second*, the bankruptcy court is better positioned to resolve FINRA's motion. Determining which court is best situated to decide the motion depends on the case's "complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *In re UBS Fin. Servs., Inc. of P.R. Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015) (quoting *Jud. Watch*, 307 F.R.D. at 34).

Most fundamentally, many of FINRA's arguments implicate the bankruptcy court's local rules and prior orders. For instance, FINRA argues that "the local rules for the U.S. Bankruptcy Court for the District of Nevada" prohibit the Trustee from subpoenaing documents. ECF No. 1 at 20. And FINRA contends that "the Trustee never obtained approval from the Bankruptcy Court to issue the Subpoenas to FINRA," which, FINRA claims, exceed the scope of discovery authorized by the bankruptcy court. ECF No. 16 at 12–13. As the U.S. District Court for the Southern District of New York explained, "the effect of the local bankruptcy rules of the Bankruptcy Court of the District of Nevada is an issue in which that Court has a particular interest and this Court has none." ECF No. 21-1 at 11–12 (transcript of the court's oral ruling). And this Court certainly agrees with the U.S. District Court for the Southern District of New York that both courts should "be very hesitant to wade into what . . . is a disputed issue as to what is permitted under the local rules of another court." *Id.* Similarly, the bankruptcy court is clearly better positioned to interpret

its own prior orders authorizing the subpoenas to determine whether the Trustee's subpoenas exceed their scope.

The "questions regarding the relevance of subpoenaed material" also support the conclusion that the bankruptcy court is best positioned to resolve FINRA's motion. *Iyer v. Nexus Pharm.*, No. 23-mc-8, 2023 WL 3040604, at *8 (D.D.C. Apr. 21, 2023). As this Court has recognized, "the issuing court is generally in a better position to rule on [relevance] issues because of its greater familiarity with the underlying case." *Id.* That is because such disputes "require[] an understanding of the full scope of the underlying litigation to properly assess the need for subpoenaed documents." *Nat'l Acad. of Scis.*, 347 F.R.D. at 50. Here, FINRA claims that "the Subpoenas seek irrelevant information." ECF No. 1 at 22. FINRA then spends the next four pages of its brief outlining the convoluted factual basis, grounded in technical financial matters and the scope of the bankruptcy court's prior orders, for its argument that the information sought by the Trustee is irrelevant to the investigation authorized by the bankruptcy court. *See id.* at 22–26. The bankruptcy court is better positioned than this Court—which has no familiarity with the underlying facts or the scope of the bankruptcy court's prior orders—to determine whether the information the Trustee seeks is relevant to her investigation, and ultimately, to Meta Material's bankruptcy. *See Brown & Rudnick, LLP v. Off. Comm. of Unsecured Creditors*, No. 24-mc-57, 2024 WL 756311, at *2 (S.D.N.Y. Feb. 23, 2024) (transferring in part because "the Bankruptcy Court [wa]s in a far better position to assess how the subpoena at issue relates to the overall bankruptcy proceeding").[2]

---

[2] FINRA claims that this Court is better situated to address its challenge to the subpoenas based on the apex doctrine, relying on *FDIC v. Galan-Alvarez*, No. 15-mc-752, 2015 WL 5602342 (D.D.C. Sep. 4, 2015). *See* ECF No. 18 at 2. The Court is unpersuaded. To be sure, *Galan-Alvarez* declined to transfer the petitioner's motion to quash because it raised "a legal question severable from the merits of the underlying litigation"—the applicability of the apex doctrine—that did "not necessitate wading into the merits or intricacies of the" underlying litigation. *Galan-Alvarez*, 2015 WL 5602342, at *3. And as FINRA observes, it also raises an apex doctrine challenge. So, FINRA reasons, transfer is unwarranted. But unlike in *Galan-Alvarez*, FINRA raises its apex doctrine challenge in addition to its numerous other arguments, which, for the reasons already given, require delving into the merits of the underlying

8

The "complexity of the underlying bankruptcy proceeding" confirms the bankruptcy court's superior positioning to resolve the motion. *See Brown & Rudnick*, 2024 WL 756311, at *2. So far, 65 claims have been filed against Meta Materials' estate, totaling nearly $51 million. Claims Register, *In re Meta Materials, Inc.*, 24-bk-50792. In the year and a half since the bankruptcy began, over 2500 entries have been filed on the docket. As just one component of that broader proceeding, the bankruptcy court authorized a litigation fund of $11 million to hire multiple law firms to serve as special litigation counsel to pursue claims on behalf of the estate related to the Trustee's market manipulation investigation. ECF No. 1-2 at 6. And that investigation has already spurred the issuance of numerous subpoenas to nonparties across the country. The complexity of the underlying dispute therefore weighs in favor of transferring this matter to the bankruptcy court. *See Brown Rudnick LLP*, 2024 WL 756311, at *2 (finding complexity favored transfer where "the bankruptcy proceeding ha[d] been pending for nearly a year," the bankruptcy court had resolved "numerous motions involving bids to enforce" subpoenas, the "debtor ha[d] debts in excess of $10 million[,] and the case involve[d] more than 50 parties in interest").[3]

All of these concerns are amplified in the bankruptcy context. The simultaneous adjudication by multiple far-flung courts of motions arising from one bankruptcy threatens to "interfere

---

proceeding. *See Nat'l Acad. of Scis.*, 347 F.R.D. at 51 (distinguishing *Galan-Alvarez* because the petitioner's "motion d[id] not present a legal question entirely separate from the underlying litigation").

[3] FINRA contends that this Court is better situated to resolve its motion because FINRA and the Trustee "briefed the [motion to quash] on this Court's and D.C. Circuit precedent." ECF No. 18 at 6. But "the transfer of a motion to quash to the jurisdiction where the underlying litigation is pending should 'require few, if any, modifications of the written submissions.'" *Iyer*, 2023 WL 3040604, at *7 (citation modified) (quoting *Braden*, 344 F. Supp. at 95). That is because FINRA's motion to quash is governed by Rule 45—which applies in every circuit—not some arcane quirk of D.C. Circuit caselaw. In fairness, FINRA also notes that it objects to the Trustee's subpoenas in part based on "the investigative file privilege from *In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988)." ECF No. 18 at 6. But the Ninth Circuit has similarly "acknowledged a qualified privilege that applies to government investigative files" and "because further authority from the Ninth Circuit on the privilege is scant, District Courts in [the Ninth] Circuit rely heavily upon *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988)" and cases applying it. *Walsh v. KP Poultry, Inc.*, No. 19-cv-3546, 2021 WL 5917106, at *1 (C.D. Cal. Dec. 9, 2021); *see also Shah v. DOJ*, 89 F. Supp. 3d 1074, 1080 (D. Nev. 2015) (applying the three-part test from *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988)).

with 'a chief purpose of the bankruptcy laws': 'to secure a prompt and effectual' resolution of bankruptcy cases 'within a limited period.'" *Taggart v. Lorenzen*, 587 U.S. 554, 564 (2017) (quoting *Katchen v. Landry*, 382 U.S. 323, 328 (1966)). To that end, Congress "intended" bankruptcy courts "to hear and to determine all matters and issues which arise in or are related to bankruptcy cases." 1 William L. Norton, Norton Bankr. L & Prac. § 3:1 (3d. 2025); *see also Wellness Int'l Network Ltd. v. Sharif*, 575 U.S. 665, 669–70 (2015). Congress provided, for example, that the debtor filing for bankruptcy "triggers an automatic stay" of, and "strips [other] court[s] of jurisdiction" over, other proceedings against the debtor. *FTC v. Endo Pharms. Inc.*, 82 F.4th 1196, 1202 (D.C. Cir. 2023) (citing 11 U.S.C. § 362(a)(1)). Disparate resolution of discovery-related motions arising from a bankruptcy by non-bankruptcy courts runs counter to the manifest preference for channeling such disputes to the bankruptcy court adjudicating the bankruptcy.

To be sure, the Trustee points to nothing in the Bankruptcy Code that bars this Court from resolving FINRA's motion. But as other courts have recognized, "the fact that an issuing court was tasked with overseeing an underlying action '*precisely because* a single tribunal needs to adjudicate all discovery issues and other pretrial matters for the sake of consistency and efficiency,' . . . 'weighs heavily in favor of transfer.'" *Nat'l Acad. of Scis.*, 347 F.R.D. at 48 (quoting *Disposable Contact Lens*, 306 F. Supp. 3d at 377). Like the multidistrict litigation procedure those courts were describing, the Bankruptcy Code channels many claims against a debtor into a single proceeding to be resolved in "one go." *Serv. Emp. Int'l Union, Local 32BJ v. Preeminent Protective Servs., Inc.*, 415 F. Supp. 3d 29, 37 (D.D.C. 2019) (quoting *Shales v. Gen. Chauffeurs, Sales Drivers & Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009)). In other words, "[a] bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Bullard v. Blue Hills Bank*, 575

10

U.S. 496, 501 (2015) (quoting 1 Collier on Bankruptcy ¶ 50.08[1][b], at 5-42 (16th ed. 2014)). And that preference for "manag[ing] those proceedings in a centralized fashion" heightens the concerns associated with multiple courts resolving discovery disputes arising from a single proceeding. *See Disposable Contact Lens*, 306 F. Supp. 3d at 378.

*Third*, transfer will not "impose a burden or undue cost" on FINRA. *See Nat'l Acad. of Scis.*, 347 F.R.D. at 49. To start, FINRA's status as a "national securities association," 15 U.S.C. § 78*o*-3(a), substantially lessens any concern of unduly burdening FINRA. *See UBS Fin. Servs.*, 113 F. Supp. 3d at 288 ("Given the [SEC's] 'national reach and familiarity with litigation in courts outside this jurisdiction, the general interest in protecting local nonparties by requiring local resolution of subpoena-related disputes is significantly reduced.'" (quoting *Jud. Watch*, 307 F.R.D. at 35)). For example, although FINRA is headquartered in Washington, D.C., it has fifteen offices in twelve states spread across the country. Locations, FINRA, https://www.finra.org/about/locations [https://perma.cc/25TL-9VLB]. And Congress has tasked FINRA with regulating "virtually all securities traders" throughout the country. *See Alpine Securities Co. v. FINRA*, 121 F.4th 1314, 1321 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2751 (2025).

In any event, transfer is unlikely to impose an undue burden. The bankruptcy court held the hearing on Citadel, Anson, and Virtu's motion to quash over Zoom, as appears to be its usual practice for all hearings. *See* ECF No. 19-5. So it is unlikely that FINRA's representatives will be required to travel to Nevada to appear in the bankruptcy court in person. *See In re Braden*, 344 F. Supp. 3d 83, 95 (D.D.C. 2018) (finding no undue burden where the issuing court allowed telephonic hearings); *Disposable Contact Litig.*, 306 F. Supp. 3d at 380 (same). Moreover, as FINRA acknowledges, the subpoenas "require[] compliance in Washington, D.C." ECF No. 20 at 9; *see also* ECF No. 1-1 at 12. Thus, "enforcement of the subpoenas" by the bankruptcy court "would

impose no greater burden" on FINRA "than would enforcement by this Court" because FINRA's compliance obligations "appear to be identical regardless of which court" enforces the subpoenas. *See Disposable Contact Lens*, 306 F. Supp. 3d at 380.

Moreover, FINRA's current counsel and law firm may continue to represent FINRA in the bankruptcy court. FINRA is represented by an international law firm whose website boasts that "[w]ith over 40 offices across four continents, our global legal practice is in the markets where our clients do business." Our Firm, Squire Patton Boggs, https://www.squirepattonboggs.com/our-firm/ [https://perma.cc/34CX-T2S5]; *see Iyer*, 2023 WL 3040604, at *6 (finding no undue burden in part because petitioner was represented "an international firm" that frequently litigated across the country); *Lipman v. Antoon*, 284 F. Supp. 3d 8, 11 (D.D.C. 2018) (same where petitioner was represented by a "'global' law firm" that was familiar with "the issuing court"). And FINRA's counsel is listed on his firm's website as "a partner in [the firm's] Phoenix office," which is far closer to Nevada than it is to this Court. David S. Norris, Squire Patton Boggs, https://www.squire-pattonboggs.com/our-people/david-norris/ [https://perma.cc/HKS7-GVCN]. Moreover, FINRA's counsel may "appear on the motion [in the bankruptcy court] as an officer of the issuing court" on FINRA's behalf in the bankruptcy court, even if he is not admitted to that court. Fed. R. Civ. P. 45(f). And as mentioned above, FINRA's counsel is unlikely to be required to travel to Nevada given that the bankruptcy court allows telephonic hearings.[4]

---

[4] FINRA appears primarily to object to the burdens imposed by the subpoenas, not transfer. For instance, FINRA laments that the "unduly burdensome Subpoenas and demands for privileged and protected information divert valuable time and resources from FINRA's self-regulatory responsibilities." ECF No. 20 at 5. FINRA asserts that the information it collects as part of its regulatory duties "makes FINRA a frequent recipient of third-party subpoenas from private parties." ECF No. 18 at 5. And FINRA protests that it "has no claim or interest in the underlying bankruptcy proceeding." *Id.* But the relevant question is whether an undue burden will be imposed "if the subpoena dispute is transferred," not whether the subpoenas themselves impose an undue burden. *Disposable Contact Lens*, 306 F. Supp. at 376. For the reasons explained above, the Court concludes that the answer to that question is no. FINRA may raise its objections concerning the burden imposed by the subpoenas to the bankruptcy court, which is perfectly capable resolving them.

Accordingly, the Court concludes that "exceptional circumstances" warrant transferring FINRA's motion to the U.S. Bankruptcy Court for the District of Nevada under Rule 45(f).

### III.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Trustee's request to transfer this matter to the U.S. Bankruptcy Court for the District of Nevada is **GRANTED**.  The Clerk of Court is respectfully directed to transfer the case and terminate all pending motions in this Court.

**SO ORDERED.**

Date:  February 4, 2026

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

13